1   **Michael C. Kelley (SBN 090062)**
    **mkelley@sidley.com**
2   **Jose F. Sanchez (SBN 161362)**
    **jose.sanchez@sidley.com**
3   **SIDLEY AUSTIN LLP**
    **555 West Fifth Street, 40th Floor**
4   **Los Angeles, California 90013**
    **Telephone:     (213) 896-6000**
5   **Facsimile:      (213) 896-6600**

6   **Geoffrey M. Ezgar (SBN 184243)**
    **gezgar@sidley.com**
7   **Robert B. Martin III (SBN 235489)**
    **rbmartin@sidley.com**
8   **SIDLEY AUSTIN LLP**
    **555 California Street, Suite 2000**
9   **San Francisco, California  94104**
    **Telephone:     (415) 772-1200**
10  **Facsimile:      (415) 772-7400**

11  **Attorneys For Defendant KPMG LLP**

12                  UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15  IN RE NEW CENTURY          )   Consolid. Case No. 2:07-CV-00931-DDP
                               )   (FMOx)
16                             )
                               )   CLASS ACTION
17                             )
                               )   **DEFENDANT KPMG LLP'S NOTICE**
18                             )   **OF MOTION AND MOTION TO**
                               )   **DISMISS PLAINTIFFS' SECOND**
19                             )   **AMENDED CONSOLIDATED**
                               )   **CLASS ACTION COMPLAINT;**
20                             )   **MEMORANDUM OF POINTS AND**
                               )   **AUTHORITIES IN SUPPORT**
21                             )   **THEREOF**
                               )
22                             )
                               )   [Request for Judicial Notice and
23                             )   Declaration of Robert B. Martin III Filed
                               )   Concurrently Herewith]
24                             )
                               )
25                             )   Date:  September 8, 2008, 10:00 a.m.
                               )   Before:  Honorable Dean D. Pregerson
26 _____   )

27

28

---

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 6

    I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE
        PLAINTIFFS HAVE FAILED TO COMPLY WITH THE
        COURT'S JANUARY 31, 2008 ORDER AND FRCP 8(A) ................... 6

    II. COUNTS THREE (SECTION 11) AND SEVEN (SECTION 10(b))
        SHOULD BE DISMISSED AS TO KPMG BECAUSE
        PLAINTIFFS' COMPLAINT MAKES CLEAR THAT KPMG
        DID NOT CAUSE PLAINTIFFS TO SUFFER ANY LOSS. .................. 8

    III. COUNT SEVEN SHOULD BE DISMISSED BECAUSE IT DOES
        NOT PLEAD FACTS GIVING RISE TO A STRONG
        INFERENCE OF SCIENTER ................................................................ 14

        A.    The Scienter Allegations in the Second Amended Complaint
                Are Taken Entirely from the Examiner's Report and Should
                Not Be Considered by This Court ................................................. 15

        B.    Plaintiffs Do Not Plead with Particularity Facts Giving Rise
                to a Strong Inference that KPMG Acted with Deliberate
                Recklessness or Conscious Misconduct. ...................................... 16

             1.    Plaintiffs' allegations that KPMG was "unduly willing
                    to acquiesce" in New Century's violations of GAAP
                    do not raise a strong inference of scienter ......................... 16

             2.    Plaintiffs' allegation that KPMG failed to staff its
                    2005 audits with auditors of sufficient experience
                    does not raise a strong inference of scienter. ..................... 20

             3.    KPMG's alleged failures to conduct its 2005 audits in
                    compliance with GAAS do not raise a strong
                    inference of scienter. .......................................................... 21

                  a.    Allowance for repurchase losses reserve ................. 22

-ii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

b.      Allowance for loan losses .........................................23

c.      Mortgage servicing rights ........................................24

d.      Goodwill impairment ...............................................25

e.      Internal controls ......................................................26

CONCLUSION..............................................................................................27

DEFENDANT KPMG LLP's NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - CASE NO. 2:07-cv-00931-DDP (FMOx)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alamosa Holdings, Inc. Sec. Litig.*,
  382 F. Supp. 2d 832 (N.D. Tex. 2005) ...........................................................9, 11

*In re Avista Corp. Sec. Litig.*,
  415 F. Supp. 2d 1214 (E.D. Wash. 2005)...........................................................13

*In re Bally Total Fitness Sec. Litig.*,
  2006 WL 3714708 (N.D. Ill. July 12, 2006) ......................................................24

*Cats v. Protection One, Inc.*,
  2001 U.S. Dist. LEXIS 25725 (C.D. Cal. June 5, 2001).......................................9

*In re Connetics Corp. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 9634 (N.D. Cal. Jan. 29, 2008).....................................15

*In re Daou Sys., Inc. Sec. Litig.*,
  411 F.3d 1006 (9th Cir. 2005) .................................................................9, 10, 12

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005).................................................................18

*In re DNAP Sec. Litig.*,
  2000 U.S. Dist. LEXIS 13482 (N.D. Cal. Sept. 14, 2000)...................................9

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ...........................................................14, 21, 25, 26

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ..............................8, 9

*In re FARO Techs. Sec. Litig.*,
  534 F. Supp. 2d 1248 (M.D. Fla. 2007) ............................................................22

*Geinko v. Padda*,
  2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002).....................................15

*In re Hansen Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007)..............................................9, 10, 11, 12

*In re Hypercom Corp. Sec. Litig.*,
  2006 WL 726791 (D. Ariz. Mar. 9, 2006).........................................................24

*In re Interpool, Inc. Sec. Litig.*,
  2005 WL 2000237 (D.N.J. Aug. 17, 2005) ......................................................24

*In re Leapfrog Enters., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007)........................................................9, 10

*McCalden v. Cal. Library Ass'n*,
  955 F.2d 1214 (9th Cir. 1990) ...........................................................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ...............................................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  218 F.R.D. 76 (S.D.N.Y. 2003)........................................................................16

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d. 671 (6th Cir. 2004) ..........................................................................24

*Reiger v. Price Waterhouse Coopers, LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000) .........................................17, 21, 25, 26

*In re Remec Inc. Sec. Litig.*,
  415 F. Supp. 2d 1106 (S.D. Cal. 2006) ...........................................................20

*Scottish Re Group Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007) .............................................................21

*SEC v. Price Waterhouse*,
  797 F. Supp. 1217 (S.D.N.Y. 1992) ................................................................20

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) .....................................................................14, 26

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
  124 F. Supp. 2d 505 (S.D. Ohio 2000).............................................................17

*In re Splash Tech. Holdings Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001).............................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  – U.S. –, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ..................................14, 16

-v-

DEFENDANT KPMG LLP's NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - CASE NO. 2:07-CV-00931-DDP (FMOx)

*United States v. Lockheed-Martin Corp.*,
   328 F.3d 374 (7th Cir. 2003) ................................................................8

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173, 1186 (C.D. Cal. 2004)....................................19

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079, 1084–85 (9th Cir. 2002) ............................................23

*Weiss v. Amkor Tech., Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) ............................................11, 12

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp.2d 1148 (C.D. Cal. 2007) ...............................................19

*In re Williams Sec. Litig.*,
   496 F. Supp. 2d 1195 (N.D. Okla. 2007) ............................................25

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) .......................................................*passim*

### STATUTES & RULES

15 U.S.C. § 77k.......................................................................................1, 9

15 U.S.C. § 78j.............................................................................................1

15 U.S.C. § 78u-4 .................................................................................8, 14

Federal Rule of Civil Procedure 8 ..............................................................6

Federal Rule of Civil Procedure 11 .......................................................2, 15

Federal Rule of Civil Procedure 12 ............................................................2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 8, 2008 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Dean D. Pregerson, in Courtroom 3, located at U.S. District Court, 312 N. Spring Street, Los Angeles, California 90012, defendant KPMG LLP ("KPMG") will and hereby does move this Court for an order dismissing plaintiffs' Second Amended Consolidated Class Action Complaint without leave to amend as to KPMG pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a)(2) and 12(b)(6).

KPMG seeks dismissal of the entire complaint because plaintiffs did not comply with the Court's Order dated January 31, 2001 that they file a "clear and concise" complaint in accordance with FRCP 8(a) and that they "identify[] false statements and articulate[] the factual allegations supporting an inference that the statement is false or misleading." Count Three, which asserts a claim against KPMG under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and Count Seven, which asserts a claim against KPMG under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, also should be dismissed because it is apparent on the face of the complaint that KPMG did not cause plaintiffs to suffer any loss. Finally, Count Seven also should be dismissed because plaintiffs have not alleged particular facts giving rise to a strong inference of scienter, as required by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, *et seq.*

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice and related exhibits, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

1

1        This motion is made following the conference of counsel pursuant to C.D.

2  Local Rule 7-3, which took place on May 27, 2008.

2

1
2

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

3       This case arises out of the sudden failure of New Century Financial Corporation
4   ("New Century" or "the Company"), which was one of the nation's largest mortgage
5   finance companies. The first complaint in this action, which did not assert any claims
6   against defendant KPMG LLP ("KPMG"), was filed immediately following New
7   Century's initial disclosure of bad news in early February 2007. That disclosure was
8   quickly followed by a cascade of other adverse disclosures about New Century's
9   deteriorating prospects in February and March 2007, all of which occurred against the
10  backdrop of the developing collapse of the entire subprime mortgage industry. New
11  Century filed for bankruptcy in April 2007.

12      The current complaint asserts two claims against KPMG: a claim for violation
13  of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k (Count Three); and a
14  claim for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.
15  § 78j(b), and Rule 10b-5 promulgated thereunder (Count Seven). The claim under
16  Section 11 is a reprise of a claim the Court dismissed once before. The claim against
17  KPMG under Section 10(b) is entirely new and, as developed below, is improperly
18  based upon plaintiffs' selective reliance upon passages in a bankruptcy examiner's
19  report that was unsealed in the New Century bankruptcy on March 27, 2008. Both
20  claims should be dismissed for the following reasons.

21      First, plaintiffs have failed to comply with this Court's January 31, 2008 Order
22  dismissing plaintiffs' Consolidated Class Action Complaint. The complaint is neither
23  clear nor concise and does not articulate in an orderly way the basis for the claims
24  asserted.

25      Second, despite its length, the complaint still includes no facts sufficient to
26  show loss causation with respect to any alleged misrepresentation by KPMG. The
27  only statements at issue here are KPMG's audit opinion on New Century's 2005

28

1

1    financial statements and its related opinion on New Century's 2005 internal controls.

2    None of the disclosures made in February and March 2007 that plaintiffs rely upon

3    corrected any alleged error in the Company's 2005 financial statements or alleged

4    deficiencies in its 2005 internal controls.  And none of the disclosures addressed

5    KPMG's 2005 work or its 2005 opinions.  Under these circumstances, plaintiffs have

6    not, and cannot, adequately allege loss causation as to KPMG.  To the contrary, the

7    complaint demonstrates on its face the absence of loss causation.

8         Finally, plaintiffs' Section 10(b) claim should be dismissed for the independent

9    reason that plaintiffs have failed to allege adequately facts that support a strong

10   inference of scienter.  Plaintiffs' selective incorporation of assertions of a non-party

11   examiner—who was appointed to identify potential claims for the benefit of New

12   Century's creditors—do not suffice to create a strong inference of scienter,

13   particularly where, as here, the examiner has found no fraud, recklessness, or even

14   grossly negligent conduct.[1]

15                            **BACKGROUND**

16        Plaintiffs' claims against KPMG arise out of two audit opinions by KPMG

17   included in New Century's 2005 fiscal year-end Form 10-K.  (Compl. ¶ 258.)

18   KPMG's 2005 audit opinion stated that KPMG had audited the "consolidated balance

19   sheets of New Century Financial Corporation and subsidiaries as of December 31,

20   2005 and 2004, and the related consolidated statements of income, comprehensive

21   income, changes in stockholders' equity, and cash flows for each of the years in the

22   three-year period ended December 31, 2005."  New Century Fin. Corp. FYE 2005

23

24   ───────────────

25   [1] Moreover, plaintiffs' selective reliance on the examiner's assertions without
     performing any independent investigation is improper under Federal Rules of Civil
26   Procedure 11 and 12(f).  KPMG has filed a separate motion to strike plaintiffs'
     allegations that merely recite the examiner's assertions.  If that motion is granted, the
27   Section 10(b) claim should be dismissed without the need for any additional analysis.

28

1   Form 10-K (Mar. 16, 2006), Ex. C at 167.)[2]  KPMG's opinion stressed that the

2   "consolidated financial statements are the responsibility of the Company's

3   management," and that KPMG's responsibility as an auditor was "to express an

4   opinion on [the] consolidated financial statements based on [its] audits."  (*Id.*)  Based

5   on its audit, KPMG opined that, "[i]n our opinion, the consolidated financial

6   statements referred to above present fairly, in all material respects, the financial

7   position of New Century Financial Corporation and subsidiaries as of December 31,

8   2005 and 2004, and the results of their operations and their cash flows for each of the

9   years in the three-year period ended December 31, 2005, in conformity with U.S.

10  generally accepted accounting principles."  (*Id.*)

11        KPMG also issued a companion internal controls opinion stating that: (i)

12  KPMG had audited management's assessment "that New Century Financial

13  Corporation and subsidiaries maintained effective internal control over financial

14  reporting as of December 31, 2005 . . ."; (ii) "[t]he Company's management is

15  responsible for maintaining effective internal control over financial reporting . . .";

16  and (iii) in KPMG's opinion, "management's assessment that New Century Financial

17  Corporation and subsidiaries maintained effective internal control over financial

18  reporting as of December 31, 2005, is fairly stated, in all material respects . . . ."  (*Id.*

19  at 165.)  KPMG's 2005 opinion also stated that "projections of any evaluation of

20  effectiveness to future periods are subject to the risk that controls may become

21  inadequate because of changes in conditions, or that the degree of compliance with the

22  policies or procedures may deteriorate."  (*Id.*)[3]

23  ────────────────────

24  [2] Exhibits relied upon by KPMG in this motion are included with the Request for
    Judicial Notice filed concurrently herewith and are cited as "Ex. __."

25  [3] Although plaintiffs' complaint also includes a number of allegations regarding New

26  Century's quarterly Form 10-Q filings in 2006, those quarterly financial statements
    were not audited by KPMG, KPMG did not issue any opinions regarding those

27  quarterly statements, and plaintiffs do not seek to hold KPMG liable for any alleged
    misstatements contained in those quarterly statements.

28

1    Plaintiffs' Section 11 claim (Count Three) is brought on behalf of purchasers of

2    Series B Preferred Stock that was sold pursuant to a Registration Statement that

3    incorporated New Century's 2005 Form 10-K and, thus, KPMG's two 2005 audit

4    opinions.  (Compl. ¶ 258.)  Plaintiffs' Section 10(b) claim (Count Seven) is brought

5    on behalf of all purchasers of New Century stock between March 16, 2006, the date of

6    the filing of New Century's 2005 Form 10-K, and March 13, 2007.  Plaintiffs allege

7    that purchasers of New Century's securities suffered losses when the price of New

8    Century's securities declined as a result of a series of disclosures in early 2007.  (*Id.*

9    ¶ 9.)  These disclosures began on February 7, 2007, with an announcement that New

10    Century would have to restate its previously reported *unaudited* financial statements

11    for the first three quarters of *2006*, and ended on March 13, 2007, with an

12    announcement that the New York Stock Exchange had determined that the

13    Company's securities were "no longer suitable for continued listing on the NYSE and

14    will be suspended immediately."  (*Id.* ¶¶ 474, 476.)  The numerous disclosures

15    between February 7 and March 13, which are detailed at length in the complaint,

16    constitute a series of increasingly dire announcements of a financial and business

17    crisis at New Century that affected its ability to operate, including that the Company's

18    lenders were discontinuing all financing and that the Company, whose business was

19    mortgage lending, had decided to cease accepting mortgage loan applications.  (*See id.*

20    ¶¶ 457–82.)  As a result of these developments, New Century filed for bankruptcy in

21    April 2007.  (*Id.* ¶ 2.)

22    For purposes of their claims against KPMG, plaintiffs focus on two disclosures:

23    the first adverse disclosure on February 7, and a disclosure on March 2.  On February

24    7, New Century admitted the need to restate its previously reported *unaudited*

25    financial statements for the first three quarters of *2006*.[4]  (*Id.* ¶ 457.)  The Company

26 

27    [4] In particular, the Company stated that, "[d]uring the second and third quarters of

28    2006," the Company failed to record the expected discount upon disposition of loans

*(Footnote continued)*

4

1    further announced that, "[i]n light of the pending restatements, the Company's

2    previously filed condensed, consolidated financial statements for the quarters ended

3    March 31, June 30 and September 30, 2006 and all earnings-related press releases for

4    those periods should no longer be relied upon," and also that it "expect[ed] the

5    combined impact of the foregoing to result in a net loss" for the fourth quarter of

6    2006.  (*Id.*)  Plaintiffs do not allege that KPMG made any statement at all about New

7    Century's 2006 unaudited reported financial results that are the subject of the

8    February 7 disclosure.

9        On March 2, 2007, New Century filed a notification that it had "determined that

10   it is unable to file its Annual Report on Form 10-K for the year ended December 31,

11   2006" in a timely fashion.  (New Century Fin. Corp. Form 12b-25 (Mar. 2, 2007), Ex.

12   D at 320.)  It reiterated that New Century would be restating its *unaudited 2006*

13   interim financial statements.  It also announced that, in connection with the

14   restatement process, the Audit Committee of the Company's Board of Directors had

15   "initiated its own independent investigation into the issues giving rise to the

16   Company's need to restate its 2006 interim financial statements, as well as issues

17   pertaining to the Company's valuation of residual interests in securitizations in 2006

18   and prior periods."  (*Id.*)  The Company further announced that it "currently expects

19   that the modifications to the allowance for loan repurchase losses will result in

20   restated net income for the first three quarters of 2006 that is significantly lower than

21   previously reported in the Company's 2006 interim financial statements."  (Compl.

22   ¶ 464.)  The Company also announced that, "[a]lthough the Company's mortgage loan

23   _____

24   when estimating its allowance for loan repurchase losses.  (Compl. ¶ 72.)  The
     Company also disclosed that its "methodology for estimating the volume of

25   repurchase claims to be included in the repurchase reserve calculation did not properly

26   consider, in each of the first three quarters of 2006, the growing volume of repurchase
     claims outstanding that resulted from the increased pace of repurchase requests that

27   occurred in 2006, compounded by the increasing length of time between the whole
     loan sales and receipt and processing of the repurchase request."  (*Id.*)

28

5

origination volume increased in 2006 when compared to 2005, the Company's results of operations for the quarter and year ended December 31, 2006 will reflect declines in earnings and profitability when compared to the same periods in 2005," and that "[t]he Company currently expects that it will report a pretax loss for both the fourth quarter and the full year ended December 31, 2006." (*Id.*)  The Company outlined five reasons for the "negative trends in results compared to 2005." (*Id.*)  The Company also announced, among other things, various problems with its credit facilities, including that it had violated or anticipated violating certain loan covenants and that it was seeking waivers from its lenders. (*Id.*)

Neither the February 7 nor March 2 announcement discussed KPMG.  New Century did not disclose, and in fact never has disclosed, any errors in KPMG's 2005 audit work.

## **ARGUMENT**

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO COMPLY WITH THE COURT'S JANUARY 31, 2008 ORDER AND FRCP 8(A)

Plaintiffs originally filed a 189-page, 403-paragraph Consolidated Class Action Complaint in this matter.  The Court dismissed that complaint under Federal Rule of Civil Procedure ("FRCP") 8(a) because its "long and at times, meandering set of allegations" failed to provide facts "to support that the statements are false or misleading," and because the disorganization of the complaint made it impossible for the Court to determine whether plaintiffs had stated a claim.  (Order Granting Mot. to Dismiss 6–7, Doc. # 245 (Jan. 31, 2008).)  The Court permitted plaintiffs to replead but admonished that "[f]or each allegedly false or misleading statement, the Complaint should identify some facts suggesting that the statement is false or misleading, and preferably in the same or a paragraph following the statement." (*Id*.) The Court also instructed plaintiffs to attach a chart as an exhibit to their amended complaint, setting forth for each claim "(i) the alleged false or misleading statements,

1    including the source of the statement in a registration statement where a required

2    element of the claim; (ii) the supporting factual allegations; and (iii) the ultimate

3    conclusion." (*Id.*)

4         Plaintiffs have not complied with the Court's Order.  There is nothing clear or

5    concise about plaintiffs' 569-page, 572-paragraph complaint.  It is three times longer

6    than the original, with allegations against KPMG scattered throughout multiple

7    sections and without any clear or plain statement of why those allegations state a

8    claim against KPMG.  Plaintiffs' charts, attached to the complaint as Exhibits D and

9    E, provide no additional clarity.  The charts were supposed to enumerate separately

10   each allegedly false statement and the facts indicating why each statement was false,

11   but they instead group multiple statements under one heading and obscure rather than

12   explicate which party actually *made* the allegedly false statement.  In fact, with

13   respect to KPMG, the charts assert without support or explanation that KPMG is

14   "responsible" for a multitude of statements that KPMG did not actually make.[5]  This

15   ─────────────────────

16   [5] Specifically, regarding Exhibit D, which purports to summarize misstatements
     supporting plaintiffs' Section 11 claim, plaintiffs contend KPMG is a "Responsible

17   Defendant" for Statements 1, 4, 5, and 6.  Statement 1 actually consists of four
     separate statements, none of which was made by KPMG.  (Compl. Ex. D at 410–14.)

18   Statement 4 consists of six different statements, only two of which even refer to the

19   2005 financial statements audited by KPMG, and the "fact" that allegedly
     demonstrates that KPMG's 2005 audit opinion was false when made was New

20   Century's statement that it was "more likely than not" that the 2005 financial
     statements were materially overstated.  (*Id.* at 419–28.)  This vague and equivocal

21   disclosure is not a "fact" at all.  Plaintiffs otherwise indiscriminately incorporate more

22   than 130 numbered "paragraphs" of the complaint as purported "facts" showing that
     one or more (without clearly identifying which ones) of the multiple different

23   statements that plaintiffs lump together were false.  Statement 5 consists of six

24   separate statements, again, none of which was made by KPMG.  (*Id.*)  Statement 6

25   contains excerpts of KPMG's 2005 audit opinions (*id.* at 431–35), but the only
     supporting "factual support" is a cross-reference to paragraphs 204–35 of the

26   complaint, 42 pages of disjointed allegations with no detail as to *how* those allegations

27   show that KPMG's audit opinions are actionable under Section 11.  Regarding Exhibit

28   E, which purports to summarize misstatements as to the Section 10(b) claims,

                                                         *(Footnote continued)*

                                    7

─────────────────────
DEFENDANT KPMG LLP's NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - CASE NO. 2:07-cv-00931-DDP (FMOx)

1    non-compliance justifies dismissal.  *See In re Splash Tech. Holdings Sec. Litig.*, 160

2    F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (dismissing under Rule 8(a) a securities

3    complaint that "tips the scales at 124 pages" and has a structure that "renders it

4    exceedingly difficult to discern precisely which statements are alleged to be

5    misleading"); *see also United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 378–79

6    (7th Cir. 2003) (affirming dismissal of 155-page, 400-paragraph complaint and noting

7    that "Rule 8(a) requires parties to make their pleadings straightforward, so that judges

8    and adverse parties need not try to fish a gold coin from a bucket of mud . . . .").

9    **II.    COUNTS THREE (SECTION 11) AND SEVEN (SECTION 10(B))**
     **SHOULD BE DISMISSED AS TO KPMG BECAUSE PLAINTIFFS'**

10   **COMPLAINT MAKES CLEAR THAT KPMG DID NOT CAUSE**

11   **PLAINTIFFS TO SUFFER ANY LOSS**

12   Counts Three and Seven allege that KPMG is liable under Section 11 and

13   Section 10(b), respectively, for damages caused by KPMG's alleged "untrue

14   statements of material fact."  (Compl. ¶¶ 320–31, 566–71.)  Plaintiffs' allegations are

15   plainly insufficient to state a claim, because it is apparent on the face of the complaint

16   that the alleged drop in stock price from the date of New Century's first negative

17   disclosure on February 7, 2007, through the end of the class period on March 13,

18   2007, was not caused by any of KPMG's alleged misrepresentations.

19   Loss causation is an essential element of a Section 10(b) claim.  *See* 15 U.S.C.

20   § 78u-4(b)(4); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344, 125 S. Ct. 1627, 161

21   L. Ed. 2d 577 (2005).  The Supreme Court has made clear that the only loss

22   recoverable under the securities laws is one that follows in the wake of, and thus can

23   be fairly said to have been caused by, a disclosure of the alleged fraud.  *Id.*  Thus, to

24   _____

25   plaintiffs attributed Statements 28, 29, and 30 to KPMG even though, once again,
     KPMG did not actually make any of the statements.  (Compl. Ex. E at 505–10.)

26   Statement 31, which excerpts KPMG's 2005 audit opinions, suffers from the same

27   factual deficiency as Statement 6 in Exhibit D, specifically that plaintiffs offer no facts
     as to *how* KPMG's audit opinions are actionable under Section 10(b).  (*Id.* at 511–20.)

28

8

1   establish loss causation, plaintiffs must allege: (i) the existence of a corrective

2   disclosure, *i.e.*, an announcement containing factual information that discloses

3   wrongdoing or corrects a misstatement *made by KPMG*; and (ii) a drop in stock price

4   following this corrective disclosure. *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006,

5   1025 (9th Cir. 2005); *see Dura*, 544 U.S. at 344; *In re Hansen Corp. Sec. Litig.*, 527

6   F. Supp. 2d 1142, 1162 (C.D. Cal. 2007); *In re Leapfrog Enters., Inc. Sec. Litig.*, 527

7   F. Supp. 2d 1033, 1041 (N.D. Cal. 2007).

8        Loss causation also is required under Section 11.  Section 11 expressly provides

9   a defense—the so-called "negative causation defense"—when the specific alleged

10  misrepresentation or omission upon which the defendant is sued did not cause the

11  plaintiffs' claimed damages; in other words, when there is an absence of loss

12  causation.  *See* 15 U.S.C. § 77k(e).  When it is apparent on the face of the complaint

13  that there is no loss causation, a Section 11 claim should be dismissed.  *Cats v.*

14  *Protection One, Inc.*, 2001 U.S. Dist. LEXIS 25725, at *37–38 (C.D. Cal. June 5,

15  2001) (dismissing Section 11 claim when the complaint showed on its face that there

16  was no causal link between plaintiff's damages and defendant's alleged

17  misrepresentations); *In re DNAP Sec. Litig.*, 2000 U.S. Dist. LEXIS 13482, at *8–11

18  (N.D. Cal. Sept. 14, 2000) (same); *see In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F.

19  Supp. 2d 832, 865 (N.D. Tex. 2005) (dismissing Section 11 claim for absence of loss

20  causation); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp.

21  2d 243, 254 (S.D.N.Y. 2003) (same); *see also McCalden v. Cal. Library Ass'n*, 955

22  F.2d 1214, 1219 (9th Cir. 1990) (dismissal proper where defense appears "on the face

23  of the pleading").

24       Plaintiffs allege that they sustained losses when New Century's stock declined

25  after a series of corrective disclosures in February and March 2007.  (Compl. ¶¶ 538-

26  40.)  However, the only alleged misrepresentations by KPMG are alleged

27  misrepresentations attributed to KPMG's 2005 audit opinions.  (*Id.* ¶¶ 538-40; Compl.

28

9

1  Ex. D at 410–14, 419–35; Compl. Ex. E at 508–20.)  Thus, to state a claim against

2  KPMG, the stock drops from February 7 through March 13, 2007, must have been in

3  response to a disclosure that corrected the alleged misrepresentations in KPMG's

4  2005 audit reports.  But, the disclosures cited by plaintiffs either: (i) corrected

5  problems with New Century's *unaudited 2006* financial statements (about which

6  KPMG made no representations whatsoever); or (ii) addressed even more recent 2007

7  developments impacting New Century's current operations – again, matters about

8  which KPMG made no representations.  (*Id.*)  In short, not a single disclosure between

9  February 7 and March 13, 2007, included any information about KPMG's 2005 audit

10 work.  Nor did any disclosure correct any purported misstatements in New Century's

11 2005 financial statements or any opinion issued by KPMG.[6]

12     Plaintiffs specifically point to two disclosures as the basis for alleging loss

13 causation with respect to KPMG:  the disclosures on February 7 and March 2, 2007.

14 (*Id.*)  According to plaintiffs, the February 7 disclosure "specifically concerned

15 accounting and internal control issues with which KPMG was extensively involved in

16 its 2005 audits and areas in which KPMG specifically violated GAAS and the

17 standards of the PCAOB in connection with its 2005 audits."  (*Id.* at ¶ 539.)  But the

18 February 7 announcement said nothing about New Century's 2005 financial

19 statements and did not disclose any wrongdoing by KPMG, or correct any of KPMG's

---

21 [6] The first disclosure regarding errors in New Century's 2005 financial statements
22 generally was not until May 24, 2007, well after the close of the class period and well
   after plaintiffs, by their own admission (*see* Compl. ¶ 9), suffered their losses.  *See In*
23 *re Leapfrog*, 527 F. Supp. 2d at 1041 (events and disclosures after the end of the class
   period cannot supply the missing loss causation link).  This disclosure cannot form the
24 basis for any claim against KPMG.  *In re Daou*, 411 F.3d at 1026–27 (decline in stock
25 price cannot be causally related to fraudulent accounting practices where price
   dropped before alleged revelation of fraud); *In re Hansen*, 527 F. Supp. 2d at 1162
26 (explaining that if the improper accounting did not lead to the decrease in stock price,
27 plaintiffs' reliance on the improper accounting in acquiring the stock would not be
   sufficiently linked to their damages).

28

1   2005 audit work.  *See In re Hansen*, 527 F. Supp. 2d at 1162 (dismissing securities

2   claim because alleged corrective disclosures did not disclose wrongdoing).

3        In particular, the Company stated on February 7 that: (a) "[d]uring the second

4   and third quarters of 2006 . . . the Company did not include the expected discount

5   upon disposition of loans when estimating its allowance for loan repurchase losses";

6   and (b) its "methodology for estimating the volume of repurchase claims to be

7   included in the repurchase reserve calculation did not properly consider, in each of the

8   first three quarters of 2006, the growing volume of repurchase claims outstanding that

9   resulted from the increased pace of repurchase requests that occurred in 2006 . . . ."

10  (Compl. ¶ 72.)  As a result, the Company predicted a fourth quarter loss and instructed

11  that its financial statements for the first three quarters of 2006 should no longer be

12  relied upon.  (*Id.*)  None of these admissions said anything about New Century's *2005*

13  financial statements or internal controls, let alone disclosed any wrongdoing by

14  KPMG.  Plaintiffs' attempt to connect the February 7 disclosure with KPMG's 2005

15  audit work (*id.* ¶ 539) is simply untenable and plainly inadequate.[7]

16       The March 2 disclosure suffers from similar deficiencies.  New Century

17  announced that it would not be able to file its *2006* Form 10-K on a timely basis and

18  reiterated that New Century would be restating its *unaudited 2006* interim financial

19  statements.  (*Id.* ¶ 464.)  Because those disclosures did not discuss KPMG or its 2005

20  audit work, they cannot be the cause of plaintiffs' alleged losses.  *See, e.g.*, *Weiss v.*

21  *Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 946 (D. Ariz. 2007) (dismissing claims on

22  loss causation grounds where complaint alleged stock price fell in response to a press

23  release that was not a "disclosure correcting the Company's prior statements"); *In re*

24  *Alamosa*, 382 F. Supp. 2d at 866 (dismissing claim where complaint alleged that stock

25  ─────────────

26  [7] By plaintiffs' logic, if a company announces a need to restate its financials with

27  respect to one year, its announcement would operate as a corrective disclosure for
     each prior year in which the same accounting issue was addressed.  There is no
     support for this position.

28

1    price declined in response to press release that did not disclose errors in challenged

2    registration statement).

3         Plaintiffs' remaining loss causation allegation focuses on two words in a single

4    sentence in New Century's March 2 announcement.  (Compl. ¶ 540.)  Plaintiffs allege

5    that New Century announced that, in connection with the restatement process, the

6    Audit Committee of the Company's Board of Directors had "*initiated its own*

7    *independent investigation into the issues giving rise to the Company's need to restate*

8    *its 2006 interim financial statements, as well as issues pertaining to the Company's*

9    *valuation of residual interests in securitizations in 2006 and prior periods*."  (*Id.*

10   ¶ 464 (emphasis in original).)  Plaintiffs seemingly assert that this passing reference to

11   "prior periods" constituted a corrective disclosure relating to KPMG's 2005 audit

12   work.  (*Id.* ¶ 540.)  Plaintiffs are wrong.

13        To constitute a corrective disclosure, a company's announcement must contain

14   factual information that corrects a prior misstatement.  *E.g.*, *In re Daou*, 411 F.3d at

15   1026–27 (the plaintiffs' economic loss occurred only after "defendants began to reveal

16   figures showing the company's true financial condition" and that any loss suffered

17   before such revelation "cannot be considered causally related to Daou's allegedly

18   fraudulent accounting methods"); *Weiss*, 527 F. Supp. 2d at 945–48; *In re Hansen*,

19   527 F. Supp. 2d at 1162.  The March 2 announcement's oblique reference to 2006

20   "and prior periods" does not meet this standard.  That the Company announced merely

21   that it was investigating "issues" pertaining to accounting for residual interests in

22   2006 and in other undefined prior periods—an announcement that did not reveal any

23   wrongdoing or disclose any financial reporting error—does not, as a matter of law,

24   constitute a corrective disclosure sufficient to support a finding of loss causation.  *In*

25   *re Hansen*, 527 F. Supp. 2d at 1162 (announcement that company had formed special

26   committee to conduct investigation and would not file Form 10-Q on time was not

27   corrective disclosure triggering loss causation); *Weiss*, 527 F. Supp. 2d at 945–48

28

1  (announcement of investigation into stock option practices was not corrective

2  disclosure even though stock price declined 17% the next day; corrective disclosure

3  occurred a month later when company disclosed it would make material adjustments

4  to financial statements); *In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214, 1220–21

5  (E.D. Wash. 2005) (announcement of government investigation was not corrective

6  disclosure even though stock price dropped because announcement did "not

7  communicate any factual information about Avista Energy to the market").

8        Ultimately, plaintiffs' complaint makes clear that New Century's stock price

9  did not decline between February 7 and March 13, 2007 because of any disclosure of a

10  misstatement in the Company's 2005 financial statements or any alleged

11  misrepresentations by KPMG regarding those financial statements. Rather, the stock

12  declined because New Century disclosed in 2007 that its *2006* unaudited financial

13  statements for the first three quarters would be restated, it would report a loss for the

14  entire year of 2006, and, most significantly, that it was then facing a current financial

15  crisis that threatened its very existence. For example, on March 2, the Company

16  disclosed that it would report a loss for 2006 and that it was in violation of, or

17  anticipated violating, certain loan covenants related to the credit facilities it relied

18  upon to fund loans; and on March 8, the Company announced, among other things,

19  that it had approximately $70 million in outstanding margin calls, that it might not be

20  successful in obtaining additional liquidity, and that it had elected to cease accepting

21  loan applications. In other words, the Company announced that it was ceasing its

22  principal business activity. (Compl. ¶ 464, 468–70.)

23        Then, on March 12, the Company announced that, as of March 9, all the

24  Company's lenders under its short term repurchase agreements and aggregation credit

25  facilities had discontinued financing the Company or had notified the Company of

26  their intent to do so. (*Id.* ¶ 472.) None of these disclosures had anything to do with

27  any alleged misstatement in New Century's 2005 financial statements (issued a year

28

13

1  earlier) or the correction of any alleged misrepresentation by KPMG in connection

2  with those financial statements.

3       Because it is thus apparent on the face of the complaint that plaintiffs' losses

4  from February 7 to March 13, 2007, were not caused by any misstatements by KPMG,

5  Counts Three and Seven should be dismissed as to KPMG.

6  **III.    COUNT SEVEN SHOULD BE DISMISSED BECAUSE IT DOES NOT**

7  **PLEAD FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER**

8       Count Seven also should be dismissed for failure to allege sufficiently the

9  essential element of scienter.  Under the Private Securities Litigation Reform Act

10  ("PSLRA"), plaintiffs suing under Section 10(b) must "state with particularity facts

11  giving rise to a strong inference that the defendant acted with the required state of

12  mind."  15 U.S.C. § 78u-4(b)(2).  In the Ninth Circuit, the PSLRA requires that a

13  plaintiff "plead, in great detail, facts that constitute strong circumstantial evidence of

14  *deliberately reckless or conscious misconduct.*"  *In re Silicon Graphics Inc. Sec.*

15  *Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (emphasis added).  In particular for Section

16  10(b) claims against auditors, plaintiffs must prove:

17      that the accounting practices were so deficient that the audit

18      amounted to no audit at all, or an egregious refusal to see the

19      obvious, or to investigate the doubtful, or that the accounting

20      judgments which were made were such that no reasonable

21      accountant would have made the same decisions if

    confronted with the same facts.

22  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002);

23  *see also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994).

24       In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, – U.S. –, 127 S. Ct. 2499, 168

25  L. Ed. 2d 179 (2007), the U.S. Supreme Court adopted a demanding standard for

26  establishing what constitutes a "strong" inference of scienter, holding that "[t]o

27  qualify as 'strong' . . . an inference of scienter must be more than merely plausible or

28  reasonable – it must be *cogent and at least as compelling* as any opposing inference of

DEFENDANT KPMG LLP's NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - CASE NO. 2:07-cv-00931-DDP (FMOx)

1   nonfraudulent intent."  127 S. Ct. at 2504-05 (emphasis added).  The Supreme Court

2   emphasized that a court "must consider the complaint in its entirety," and must take

3   into account not only inferences argued by the plaintiff but also "plausible opposing

4   inferences."  *Id.* at 2509–10.  Thus, an inference of scienter "must be more than

5   merely 'reasonable' or 'permissible' – it must be . . . strong in light of other

6   explanations."  *Id.* at 2510.

7       Plaintiffs' scienter allegations fail to meet these exacting requirements.

8   Plaintiffs' entire theory rests on three unsupported and insufficient allegations.  (*See*

9   Compl. ¶ 529.)  For reasons described more fully below, none of plaintiffs'

10  allegations, even if assumed true, gives rise to a strong inference that KPMG's 2005

11  audit opinions were issued as a result of deliberate recklessness or conscious

12  misconduct.

13      **A.    The Scienter Allegations in the Second Amended Complaint Are
              Taken Entirely from the Examiner's Report and Should Not Be**
14            **Considered by This Court**

15      As a threshold matter, plaintiffs' scienter allegations are not based on any

16  investigation by plaintiffs.  Instead, the only new allegations in the complaint on

17  which plaintiffs base their new Section 10(b) claim are allegations about what the

18  New Century bankruptcy examiner has asserted.  Further, plaintiffs have selectively

19  quoted the examiner's assertions in a misleading manner, as described more fully

20  below.  This use of non-party assertions without any independent investigation is

21  improper under FRCP 11.  *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 2008 U.S. Dist.

22  LEXIS 9634, at *19–23 (N.D. Cal. Jan. 29, 2008) (striking allegations drawn from an

23  SEC complaint that were not verified by an independent investigation for failure to

24  satisfy FRCP 11); *Geinko v. Padda*, 2002 U.S. Dist. LEXIS 3316, at *18–22 (N.D. Ill.

25  Feb. 26, 2002) (dismissing complaint where allegations were taken from an SEC

26  complaint and other complaints).  Moreover, these allegations are not subjected to

27  adversarial testing and thus are immaterial as a matter of law.  *See In re Merrill Lynch*

28

15

1   *& Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003).

2       KPMG has filed a separate motion to strike plaintiffs' allegations that merely

3 recite selected assertions of the examiner and wholly ignore the most fundamental of

4 the examiner's observations – that KPMG's conduct may support a claim only for

5 *negligence*, or *negligent* misrepresentation. (*See* New Century TRS Holdings, Inc.

6 Report of Bankruptcy Examiner (Feb. 29, 2008), Ex. A at 23.) Because the highly

7 selective assertions quoted by plaintiffs—which are the sole source of the only new

8 allegations in the complaint and comprise the basis for plaintiffs' scienter allegations

9 (*see* Compl. ¶¶ 516-29)—are subject to being stricken and should not be considered,

10 plaintiffs' Section 10(b) claim against KPMG should be dismissed without the need

11 for any further analysis.

12      **B.**    **Plaintiffs Do Not Plead with Particularity Facts Giving Rise to a**
13             **Strong Inference that KPMG Acted with Deliberate Recklessness or Conscious Misconduct**

14       The allegations based on the examiner's report are improper, but even if they

15 are considered, they plainly do not give rise to a strong inference of scienter. Most

16 fundamentally, the examiner found only that KPMG may have acted *negligently*, and

17 never suggests that KPMG consciously or with deliberate recklessness defrauded New

18 Century's investors. The examiner's report itself thus fatally undermines any

19 inference of fraudulent intent that could be drawn, demonstrating the absence of any

20 theory of fraud that is "cogent and at least as compelling as any opposing inference of

21 nonfraudulent intent." *See Tellabs*, 127 S. Ct. at 2404–05. And even beyond this

22 overarching defect, plaintiffs' allegations, whether considered singly or collectively,

23 fail to give rise to a strong inference of scienter.

24      **1.**    **Plaintiffs' allegations that KPMG was "unduly willing to**
25             **acquiesce" in New Century's violations of GAAP do not raise a**
26             **strong inference of scienter**

      Plaintiffs allege that KPMG's desire to preserve its relationship with New

27 Century led it to be "unduly willing to acquiesce" in New Century's violations of

28

16

1   GAAP. (Compl. ¶ 516.) However, courts have consistently rejected the argument

2   that scienter can be inferred based on allegations that an accounting firm sought to

3   preserve its client relationship. In fact, courts will generally infer the opposite: that

4   an accounting firm would *not* willingly acquiesce in its client's accounting violations,

5   as an accounting firm "will rarely, if ever, have any rational economic incentive to

6   participate in its client's fraud." *Reiger v. Price Waterhouse Coopers, LLP*, 117 F.

7   Supp. 2d 1003, 1007 (S.D. Cal. 2000); *see also In re SmarTalk Teleservices, Inc. Sec.*

8   *Litig.*, 124 F. Supp. 2d 505, 518 (S.D. Ohio 2000) ("The majority of authority have

9   held that a desire to maintain the fees flowing from a client relationship is not a

10  sufficient basis on which to infer scienter.").

11          Plaintiffs' most belabored example of KPMG's alleged "acquiescence" and

12  "disregard" concerns a hedge accounting issue in 2005, as to which the examiner

13  referenced certain exchanges between KPMG's audit team and an internal KPMG

14  specialist. (Compl. ¶ 517.) Plaintiffs allege that these exchanges are "particularly

15  revealing" (*id.* ¶ 225), yet these exchanges fail to give rise to any inference (let alone a

16  strong inference) that KPMG acted with scienter. To the contrary, plaintiffs'

17  allegations make clear that a high level of attention was paid to the accounting issue

18  under discussion. According to the examiner (as quoted by plaintiffs in the

19  complaint), "in mid to late February, [the engagement partner] brought in KPMG's

20  Department of Professional Practice ('DPP') to attempt to resolve the disagreement."

21  (*Id.* ¶ 225.) He informed New Century's Audit Committee of the disagreement. (*Id.*)

22  Thereafter, DPP gave "verbal approval" of the Company's hedge accounting. (*Id.*)

23  When the specialist later re-raised the issue, the three most senior members of the

24  engagement team (the engagement partner, concurring review partner, and manager)

25  and the specialist had a "lengthy" conference call with "various members of DPP,"

26  after which a "high-ranking member of DPP" authorized issuance of KPMG's audit

27  report. (*Id.*) It is also alleged that the disagreement was "not resolved completely"

28

17

1    until the following month, when the specialist was provided additional documentation,

2    and he then concluded there was a "misstatement of several million dollars." (*Id.* ¶¶

3    225–26 (emphasis eliminated).)  That this misstatement was identified after KPMG

4    issued its audit report—and after KPMG had given careful attention to the issue—

5    does not give rise to a strong inference that KPMG acted fraudulently. *See Worlds of*

6    *Wonder*, 35 F.3d at 1426.  In fact it demonstrates the opposite.

7         Moreover, there are two additional reasons there can be no inference of fraud

8    here, both of which derive from findings of the examiner that plaintiffs misleadingly

9    omit from their complaint.  First, in the sentence of the examiner's report that

10   immediately follows the excerpt quoted in the complaint, the report states that the

11   hedging error misstatement "ultimately was deemed *immaterial*." (Ex. A at 18 n.681.)

12   Second, as the examiner reported (but plaintiffs' allegations omit), if the hedge

13   accounting error was corrected in 2005, it "would have resulted in *additional pre-tax*

14   *earnings for that year*." (Ex. A at 15 n.540, 18 n.681 (emphasis added).)  The

15   decision not to make the hedge accounting adjustment thus *lowered* the Company's

16   2005 earnings, hardly demonstrating KPMG's intent to participate in a fraud to

17   *increase* the 2005 earnings. *See Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D.

18   Ill. 2005) ("It is difficult to understand how [an allegation that revenue was

19   understated] supports plaintiff's contention that [defendants] misstated the company's

20   financials in order to inflate the price of its stock.  Understating its revenue certainly

21   does not serve that purpose.").

22        Plaintiffs' only other scienter allegation purportedly showing "acquiescence"

23   and "disregard" by KPMG's 2005 audit team involves New Century's residual

24   interests valuations.  Plaintiffs allege that the audit team "repeatedly disregarded

25   concerns" from KPMG's internal SFG specialist regarding the discount rates used by

26   the Company. (*See* Compl. ¶ 518.)  But plaintiffs' own allegations make clear that the

27   specialist regarded New Century's discount rate as "at the low end *of the range*" – not

28

18

1   outside the range.  (*Id.* ¶ 232 (emphasis added).)[8]  Moreover, KPMG obtained

2   "supporting documentation" from New Century before determining that the discount

3   rates were reasonable.  (*Id.*)  Although plaintiffs also allege that KPMG knew the

4   Company used models to calculate the residual interests that were "flawed and

5   generated errors" (Compl. ¶ 525), the examiner indicated – and plaintiffs do not

6   contend otherwise – that there was nothing fraudulent about the continued used of the

7   allegedly flawed models (*see* Ex. A at 10 ("Whether because of inattention, cost

8   concerns, inertia, or other reasons, the Company continued to use" the models.).)  In

9   any event, plaintiffs' allegation that KPMG knew of the allegedly "flawed" models

10  does not suggest that it acquiesced in the Company's accounting violations, nor does

11  it raise an inference of scienter.  *See In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F.

12  Supp. 2d 1173, 1186 (C.D. Cal. 2004) (an accountant's access to documents

13  containing accounting errors "does not strongly compel an inference of intentional or

14  deliberately reckless conduct"); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148,

15  1175 (C.D. Cal. 2007) ("mere access to contradictory information . . . is not enough to

16  show deliberate recklessness").

17       The alleged facts thus clearly demonstrate that KPMG's 2005 audit team

18  deliberated with and considered the judgments of KPMG's internal specialists, which

19  precludes any inference of scienter.[9]  (*See* Compl. ¶ 529); *see also Worlds of Wonder*,

20  _____

21  [8] Plaintiffs omit that the specialist considered the discount rate to be "at the low end of

22  the *acceptable* range," and misleadingly ignore that the specialist told the examiner
    that he "*never* 'recommended' that New Century increase its residual interest discount

23  rates." (Ex. A at 11 (emphases added).)  They also omit to mention that the specialist
    did not become increasingly concerned about the discount rates until 2006, after the

24  2005 audit.  (*Id.*)

25  [9] In addition, plaintiffs' allegations ignore the detailed disclosure regarding the
    Company's residual interests valuation including precise disclosure of the discount

26  rates New Century used in its valuation estimate, in its 2005 Form 10-K.  (*See*, *e.g.*,

27  Ex. C at 123, 192.)  The Company's disclosure undermines plaintiffs' claim that
    KPMG participated in a fraud on New Century's investors, and negates an inference

28                                                                    *(Footnote continued)*

1    35 F.3d at 1426 (claim that accountant's "ultimate resolution of the accounting

2    issues . . . was incorrect" was not sufficient to establish scienter); *SEC v. Price*

3    *Waterhouse*, 797 F. Supp. 1217, 1241 (S.D.N.Y. 1992) (where accounting items

4    "involved complex issues of accounting as to which reasonable accountants could

5    reach different conclusions," "[i]t follows that no finding of fraud or recklessness can

6    rationally be made").[10]

7                    2.    **Plaintiffs' allegation that KPMG failed to staff its 2005 audits**
                          **with auditors of sufficient experience does not raise a strong**
8                          **inference of scienter**

9          Plaintiffs next allege that a strong inference of scienter can be drawn from

10   KPMG's audit staffing; they incorporate in their allegations the examiner's conclusory

11   assertion that the 2005 audit team did not have "sufficient experience in the industry

12   and the particular tasks to which they were assigned."  (Compl. ¶ 520.)

13         Notwithstanding the examiner's opinion, his report demonstrates that the audit

14   team's engagement partner had decades of experience in public accounting; the

15   concurring partner had experience with financial institutions and leasing companies;

16   the manager had audit experience and had worked three years as assistant controller

17   for a mortgage lending company; and the internal SFG specialist had been the KPMG

18   _____

19   of scienter.  *See Worlds of Wonder*, 35 F.3d at 1425 ("The detailed risk disclosure in
     the Debenture Prospectus negates an inference of scienter."); *In re Remec Inc. Sec.*
20   *Litig.*, 415 F. Supp. 2d 1106, 1116 (S.D. Cal. 2006) (rejecting securities fraud
     allegations that the defendant misstated declining gross profit margins where the
21   defendant "made full disclosure of its declining gross profit margins . . . in its SEC
22   filings and public statements").

23   [10] That residual interest valuations involved complex judgments is reflected in New
     Century's own 2005 Form 10-K, wherein the Company identified residual interest
24   valuations among its "critical" accounting policies which required "management to
     make particularly subjective or complex judgments about matters that are inherently
25   uncertain and because the likelihood that materially different amounts would be
     recorded under different conditions or using different assumptions."  (Ex. C at 76.)
26   As plaintiffs acknowledge in their complaint, KPMG identified the Company's
27   residual interest valuations as a critical accounting policy.  (Compl. ¶ 231.)

28

                                              20

1  engagement partner on the New Century account.  (*See* Ex. A at 16–17.)  Quibbling

2  about these staffing decisions does not come close to establishing that the audit was

3  "so deficient that the audit amounted to no audit at all."  *Worlds of Wonder*, 35 F.3d at

4  1426.  Also, that junior auditors performed some of the audit work, as is the case in all

5  audits, likewise does not give rise to a strong inference that KPMG engaged in

6  deliberate recklessness or intentional misconduct.  *See*, *e.g.*, *Scottish Re Group Sec.*

7  *Litig.*, 524 F. Supp. 2d 370, 397 (S.D.N.Y. 2007) (rejecting allegation that scienter

8  could be inferred from the fact that auditors on the engagement were "very junior

9  people . . . who were unable to perform effectively").

      **3.    KPMG's alleged failures to conduct its 2005 audits in**
10          **compliance with GAAS do not raise a strong inference of**
11          **scienter**

12         Plaintiffs' remaining scienter allegations cite the examiner's "identification" of

13  a series of alleged GAAS violations, several of which concern minor issues.  (*See*

14  Compl. ¶¶ 523-527.)  Federal courts have repeatedly held that allegations that an

15  auditor violated GAAS are not sufficient to establish an inference of scienter under the

16  PSLRA.  *E.g.*, *DSAM Global*, 288 F.3d at 380; *Worlds of Wonder*, 35 F.3d at 1426;

17  *Reiger*, 117 F. Supp. 2d at 1010 ("violations of GAAP or GAAS, without more, may

18  establish negligence but *can never establish scienter* under Rule 10b-5 and the

19  [PSLRA]" (emphasis added)).  Two of these alleged GAAS violations, concerning

20  New Century's hedge accounting and residual interests, are discussed *supra*, at 17–20;

21  plaintiffs have alleged no facts sufficient to give rise to a strong inference of scienter

22  regarding KPMG's work in those areas.  The remaining alleged violations identified

23  by the examiner likewise in no way suggest that KPMG was deliberately reckless or

24  engaged in intentional misconduct, and do not present a cogent theory that KPMG

25  committed fraud.

26

27

28

### a.    Allowance for repurchase losses reserve

Plaintiffs allege, based on the examiner's assertions, that the Company's allowance for repurchase losses reserve was materially misstated in 2005. (Compl. ¶ 71.) Plaintiffs admit, however, that the allowance for repurchase losses reserve was identified by KPMG during its 2005 audit as a "critical accounting policy." (See id. ¶ 227.) In addition, the examiner acknowledged the extensive work performed by KPMG in this area. The examiner asserts that KPMG performed quarterly reviews; tested internal controls and concluded that a control deficiency identified in 2005 was "inconsequential"; and tested the Company's assumptions, including its 90-day look-back assumption. (Ex. A at 19, 21.) Rather than showing that KPMG's audit work "amounted to no audit at all," *Worlds of Wonder*, 35 F.3d at 1426, these assertions negate any inference of scienter.

Most directly opposing an inference of scienter, the examiner himself concluded that after "investigat[ing] to determine how these material errors came about . . . and whether there was any purposeful failure to calculate the repurchase reserve . . . correctly," "[t]he Examiner *found no persuasive evidence of such a motivation*." (Ex. A at 7 (emphasis added).) Plaintiffs do not challenge the examiner's conclusion, and the only facts they otherwise assert in support of their allegations are claims by two anonymous witnesses that KPMG failed to raise an issue about the Company's repurchase claims backlog (Compl. ¶ 213), and that KPMG would have uncovered the errors "had KPMG complied with GAAS" (*id.* at ¶ 214). These types of conclusory allegations are so vague that they should be disregarded completely, but in any event do not imply that KPMG's work was deliberately reckless. The mere assertion that KPMG could have done more work in certain areas of the audit is insufficient to demonstrate scienter. *See In re FARO Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1266 (M.D. Fla. 2007) (dismissing Section 10(b) claim against auditor where "[t]o the extent Plaintiff contends this audit was not sufficient and

22

1    should have been a complete physical inventory (which apparently would have

2    revealed the inventory issues), such is, at best, an allegation of negligence").

3          Despite the examiner's conclusion that there was no purposeful failure to

4    calculate the repurchase reserve correctly, plaintiffs allege that a junior auditor learned

5    information concerning New Century's backlog of repurchase claims during 2005 but

6    "did nothing with it." (Compl. ¶¶ 227, 523). However, the examiner, who reviewed

7    all of KPMG's work in this area, concluded that there was a "lack of due professional

8    care" and also found that, although the repurchase claims backlog began to increase

9    during 2005, its "explosive growth" occurred *after* 2005, "between year-end 2005 and

10   September 30, 2006." (*See* Ex. A at 8.) Moreover, the examiner estimated that the

11   backlog may have warranted an additional $8.3 million in the reserve at December 31,

12   2005. (*Id.* at 222.) This is an amount that clearly would have been immaterial at year-

13   end 2005 in light of New Century's reported net earnings of $416 million (*see* Ex. C

14   at 169), especially given that, as the examiner concedes, the company had

15   appropriately determined not to correct an unrelated $9.6 million error, due to hedge

16   accounting, that would have increased earnings for the 2005 year. (Ex. A at 15

17   n.540.) In the end, plaintiffs' suggestion that KPMG in 2005 ignored critical

18   information about a backlog that did not face "explosive growth" until 2006 is the

19   type of "fraud by hindsight" allegation not permitted under the PSLRA. *See In re*

20   *Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084–85 (9th Cir. 2002) ("The purpose of

21   [the PSLRA's] heightened pleading requirement [for scienter] was . . . to put an end to

22   the practice of pleading 'fraud by hindsight.'").

      **b.    Allowance for loan losses**

24         Plaintiffs excerpt significant portions of the examiner's discussion of KPMG's

25   alleged violations of GAAS concerning New Century's 2005 allowance for loan

26   losses ("ALL") (Compl. ¶ 526), but plaintiffs omit the examiner's conclusion: that the

27   accounting error by New Century was that the Company *overreserved* for loan losses

28

23

1    in 2005, lowering the Company's earnings for that year.  (Ex. A at 12.)[11]  That the

2    accounting allegedly violated GAAP in a way that *lowered* the Company's earnings

3    does not raise an inference that KPMG intended fraudulently to *inflate* the Company's

4    earnings.  *See In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *8 (N.D. Ill.

5    July 12, 2006) (where "the revenue for some quarters was at times understated and

6    losses for some quarters were at times overstated" the court will not infer scienter); *In*

7    *re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *18 (D.N.J. Aug. 17, 2005)

8    (restatement that resulted in decreases in income in some years "tends to negate an

9    inference that Defendants acted with intent to perpetrate a fraud on investors").

10            c.      **Mortgage servicing rights**

11           Plaintiffs allege that KPMG violated GAAS in its audit of New Century's

12    valuation of its mortgage servicing rights ("MSRs").  (Compl. ¶ 526.)  Plaintiffs,

13    however, do not contest that, as reported by the examiner, KPMG properly concluded

14    that the potential audit difference "for the valuation of New Century's MSRs for the

15    year-ended 2005 was only $698,217, which was below the income statement posting

16    threshold."  (*See* Ex. A at 13.)  In other words, the adjustment was so small and so

17    plainly immaterial that it required no further examination.  Adjustments with this

18    small of an impact on the financial statements do not create an inference of scienter.

19    *PR Diamonds, Inc. v. Chandler*, 364 F.3d. 671, 686 (6th Cir. 2004) (allegations of

20    small adjustments are not "in your face facts" that "cry out" scienter); *In re Hypercom*

21    *Corp. Sec. Litig.*, 2006 WL 726791, at *4 (D. Ariz. Mar. 9, 2006) (fact that financial

22

23

24

25

26   [11] The examiner's conclusion evidently caused plaintiffs to abandon their position in
     their previous complaints, where they alleged that the allowance for loan losses
27   reserve was materially *understated*.  (*See* Consolidated Class Action Complaint ¶ 105;
     Amended Consolidated Class Action Complaint ¶ 102.)
28

1    adjustments were small "detract[s] from any inference that [the defendant] acted with

2    scienter").[12]

3              **d.    Goodwill impairment**

4              Plaintiffs also allege that KPMG violated GAAS in its review of New Century's

5    goodwill impairment testing, but this allegation does not give rise to a strong

6    inference of scienter.  Plaintiffs omit the fact that the examiner did not even find a

7    misstatement in his review of goodwill.  The examiner concluded only that the

8    Company's year-ended 2005 assessment "relied upon unsupported cash flow

9    projections and a questionable discount rate."  (Ex. A at 14.)  Although the examiner

10   questioned whether KPMG adequately tested these calculations (*id.* at 22), he did not

11   find, nor do plaintiffs allege, that goodwill was materially misstated in 2005.  Thus,

12   plaintiffs' allegation that calculations were not carefully tested, which is based only on

13   the examiner's assertion, does not present any evidence of scienter.  *See DSAM*

14   *Global*, 288 F.3d at 390 (9th Cir. 2002) ("mere allegations that an accountant . . .

15   failed to closely review files or follow GAAP cannot raise a strong inference of

16   scienter"); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1289 (N.D. Okla. 2007)

17   (rejecting plaintiffs' argument that "because only two sentences in the 17,000 pages of

18   work pages mention the FAS 121 impairment analysis, E&Y's year-end 200 [*sic*]

19   audit amounted to 'no audit at all'").  Likewise, the fact that neither plaintiffs nor the

20

21

_____

22   [12] Plaintiffs also highlight KPMG's review of the Company's amortization calculation
     for its MSRs, alleging that KPMG was "aware" of the Company's departure from
23   GAAP and "never calculated the impact of that GAAP violation."  (Compl. ¶ 526.)
     Plaintiffs repeat the examiner's finding that KPMG's "failure to quantify their impact,
24   reflect[ed] a lack of due professional care" (*id.* ¶ 233), but the examiner did not find—
     and plaintiffs do not allege—that any potential error in the calculation of amortization
25   of the Company's MSRs was material or that KPMG failed to consider whether any
26   error could be material.  *See Reiger*, 117 F. Supp. 2d at 1010 (GAAS violations on
     their own cannot establish scienter).

27

28

1    examiner contend that there was an error related to goodwill defeats any claim of

2    misrepresentation with respect to this issue.

3                              e.    **Internal controls**

4            Plaintiffs finally allege that KPMG in 2005 "engaged in an inappropriately less

5    rigorous internal control audit given the limited experience of the senior associate

6    primarily responsible for the review."  (Compl. ¶ 527.)  They also allege that some of

7    the deficiencies that KPMG found in 2006 existed at the time of the 2005 audit.  (*Id.*)

8    Even if true, plaintiffs' allegations are plainly insufficient to raise an inference of

9    deliberately reckless or conscious misconduct.  Plaintiffs do not even attempt to tie

10   their internal control allegations into their theory of scienter, nor could they.

11   Although plaintiffs allege that KPMG's 2005 audit team identified a number of

12   control deficiencies (*id.*), they make no attempt to explain why KPMG in furtherance

13   of a fraud would report deficiencies in some years but not others.  *See Reiger*, 117 F.

14   Supp. 2d at 1013 (rejecting inference of scienter where "Plaintiffs make no attempt to

15   explain why [the auditor] would deliberately ignore improperly recognized revenues,

16   and then, several months later, recommend a restatement of those revenues").

17           Clearly, none of these alleged GAAS violations satisfies the Ninth Circuit's

18   requirement that plaintiffs demonstrate strong circumstantial evidence of KPMG's

19   deliberately reckless or conscious misconduct.  *See Silicon Graphics*, 183 F.3d at 974.

20   This is especially so considering that scienter in a case against an auditor requires a

21   strong inference that the auditor's work amounted to "*no audit* at all" or an "*egregious*

22   *refusal* to see the obvious, or to investigate the doubtful."  *DSAM Global*, 288 F.3d

23   385 (emphases added).  Because plaintiffs have failed to allege particularized facts

24   that raise any inference of scienter—let alone a strong inference supported by a cogent

25   and compelling theory of fraud—Count Seven should be dismissed.

26

27

28

                                              26

1

## <u>CONCLUSION</u>

2     For the foregoing reasons, KPMG respectfully requests that the Court dismiss

3  the complaint as to KPMG, without leave to amend.

4

5  Dated:  June 2, 2008                    Respectfully submitted,

6                                          KPMG LLP

7

8                                          By: /s/ Michael C. Kelley
                                               Michael C. Kelley
9                                              Attorneys For Defendant KPMG LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28