1  **Michael C. Kelley (SBN 090062)**
   **mkelley@sidley.com**
2  **Jose F. Sanchez (SBN 161362)**
   **jose.sanchez@sidley.com**
3  **SIDLEY AUSTIN LLP**
   **555 West Fifth Street, 40th Floor**
4  **Los Angeles, California 90013**
   **Telephone:    (213) 896-6000**
5  **Facsimile:    (213) 896-6600**

6  **Geoffrey M. Ezgar (SBN 184243)**
   **gezgar@sidley.com**
7  **Robert B. Martin III (SBN 235489)**
   **rbmartin@sidley.com**
8  **SIDLEY AUSTIN LLP**
   **555 California Street, Suite 2000**
9  **San Francisco, California 94104**
   **Telephone:    (415) 772-1200**
10 **Facsimile:    (415) 772-7400**

11 **Attorneys For Defendant KPMG LLP**

12                 UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14

15 IN RE NEW CENTURY              )  Consolid. Case No. 2:07-CV-00931-DDP
                                  )  (FMOx)
16                                )
                                  )  CLASS ACTION
17                                )
                                  )  **DEFENDANT KPMG LLP'S NOTICE**
18                                )  **OF MOTION AND MOTION TO**
                                  )  **STRIKE PORTIONS OF PLAINTIFFS'**
19                                )  **SECOND AMENDED CONSOLIDATED**
20                                )  **CLASS ACTION COMPLAINT;**
                                  )  **MEMORANDUM OF POINTS AND**
21                                )  **AUTHORITIES IN SUPPORT**
                                  )  **THEREOF**
22                                )
                                  )  [Request for Judicial Notice and Declaration
23                                )  of Robert B. Martin III Filed Concurrently
24                                )  Herewith]
25                                )
                                  )  Date:  September 8, 2008, 10:00 a.m.
26                                )  Before:  Honorable Dean D. Pregerson
27 _____  )

28

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 3

I. EXCERPTS FROM THE NEW CENTURY BANKRUPTCY
EXAMINER'S REPORT SHOULD BE STRICKEN............................... 3

    A.    Plaintiffs' Reliance on Uncorroborated Third-Party
Assertions Is Improper and Those Assertions Are Immaterial
as a Matter of Law. ........................................................................... 4

    B.    Plaintiffs' Selective Quotation and Misrepresentations of the
Examiner's Report Support Striking the Allegations Based
on the Report.................................................................................... 7

        1.    Allowance for loan losses..................................................... 8

        2.    Hedge accounting ................................................................. 9

        3.    Residual interest valuations ................................................ 10

        4.    Repurchase reserves accounting......................................... 10

        5.    Mortgage servicing rights................................................... 11

        6.    Deferred fees and costs....................................................... 12

II. THE COURT SHOULD STRIKE EXHIBITS D AND E BECAUSE
THEY DO NOT COMPLY WITH THE COURT'S JANUARY
31, 2008 ORDER ................................................................................. 13

CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Bally Total Fitness Sec. Litig.*,
  2006 WL 3714708 (N.D. Ill. July 12, 2006) ........................................................8

*Business Guides v. Chromatic Comm's Enter.*,
  892 F.2d 802 (9th Cir. 1989) ................................................................6

*Central Bank of Denver v. First Interstate Bank of Denver*,
  511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ................................13

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ................................................................4

*In re Connetics Corp. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 9634 (N.D. Cal. Jan. 29, 2008)..................................4, 5

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005)..........................................................8, 9

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ................................................................8

*Fantasy Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993) ................................................................3

*In re Fibermark, Inc.*,
  339 B.R. 321 (Bankr. D. Vt. 2006) ..........................................................7

*Geinko v. Padda*,
  2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002)..................................4, 5

*In re Hypercom Corp. Sec. Litig.*,
  2006 WL 726791 (D. Ariz. Mar. 9, 2006)................................................11

*Interpool, Inc. Sec. Litig.*,
  2005 WL 2000237 (D.N.J. Aug. 17, 2005) ..............................................8

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007) ................................................................13

*Ledford v. Rapid-American Corp.*,
   1988 U.S. Dist. LEXIS 79 (S.D.N.Y. Jan. 8, 1988) ...........................................4, 7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ...................................................................................6

*Migliaccio v. Midland Nat'l Life Ins. Co.*,
   436 F. Supp. 2d 1095 (C.D. Cal. 2006) .....................................................................3

*Newby v. Enron Corp.*,
   2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005) ........................................5

*Pavelic & LeFlore v. Marvel Entm't Group*,
   493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989) .........................................4

*PR Diamonds, Inc. v. Chandler*,
   364 F.3d 671 (6th Cir. 2004) ...................................................................................11

*Reiger v. Price Waterhouse Coopers LLP*,
   117 F. Supp. 2d 1003 (S.D. Cal. 2000) ...................................................................12

*Rickel & Assocs. v. Smith*,
   272 B.R. 74 (Bankr. S.D.N.Y. 2002) .........................................................................7

*SEC v. Price Waterhouse*,
   797 F. Supp. 1217 (S.D.N.Y. 1992) .........................................................................10

*In re Spiegel, Inc. Sec. Litig.*,
   382 F. Supp. 2d 989 (N.D. Ill. 2004).........................................................................5

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   – U.S. –, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008) ...............................................13

*In re Tableware Antitrust Litig.*,
   363 F. Supp. 2d 1203 (N.D. Cal. 2005)......................................................................5

*Truesdell v. S. Cal. Permanente Med. Group*,
   293 F.3d 1146 (9th Cir. 2002) ...................................................................................6

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   185 F. Supp. 2d 102 (D.N.H. 2002) ........................................................................8, 9

*United States v. Moore*,
   27 F.3d 969 (4th Cir. 1994) .......................................................................................7

-iii-

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ............................................................... 10

**STATUTES & RULES**

15 U.S.C. § 77k ............................................................................................... 1

15 U.S.C. § 78j ................................................................................................ 1

15 U.S.C. § 78u-4 ............................................................................................ 6

Federal Rule of Civil Procedure 8 ........................................................... 3, 15

Federal Rule of Civil Procedure 11 ................................................... 2, 4, 5, 6

Federal Rule of Civil Procedure 12 ................................................... 1, 2, 3

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 8, 2008, at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Dean D. Pregerson, in Courtroom 3, located at U.S. District Court, 312 N. Spring Street, Los Angeles, California 90012, defendant KPMG LLP ("KPMG") will and hereby does move this Court for an order striking plaintiffs' references to the New Century bankruptcy examiner's report in the Second Amended Class Action Complaint ("complaint"), as well as Exhibits D and E attached thereto.

Federal Rule of Civil Procedure ("FRCP") 12(f) permits a court to strike inappropriate material from a complaint. Moreover, FRCP 11 imposes an obligation on counsel independently to investigate alleged facts before filing a complaint. KPMG asks the Court to strike all references to the bankruptcy examiner's report (Compl. ¶¶ 91–100, 104, 106–07, 116–19, 173–80, 182–90, 194–96, 201–03, 221–34, 243, 251–53, 263, 282–84, 301, 327, 352, 354–56, 367, 369–71, 381, 383–85, 396–97, 399–401, 413–16, 418–19, 430–33, 435–36, 448–54, 485, 487, 496, 498, 500–01, 509, 516–29, 535, 541–42) because (1) it is improper for plaintiffs to include the assertions of a non-party in their complaint without any corroboration or independent investigation or even adopting them as their own; and (2) plaintiffs selectively quote passages of the examiner's report that are out of context and that omit material facts that would otherwise explain or qualify plaintiffs' chosen excerpts from the examiner's report. Plaintiffs' repeated mischaracterization of the examiner's conclusions renders their use of the report misleading.

KPMG also asks the Court to strike Exhibits D and E to the complaint as to KPMG because they do not comply with this Court's January 31, 2008 Order or FRCP 8(a), and because they misattribute to KPMG statements made by other parties. According to this Court's order, Exhibits D and E should list, in a clear and concise manner, defendants' allegedly false statements and the facts that demonstrate why

1

1    those statements were false when made.  But plaintiffs' chart is anything but clear and

2    concise.  Plaintiffs have cobbled together multiple statements made throughout

3    various documents and have labeled them as one statement.  They also accuse KPMG

4    of making numerous statements that it did not make, which their own complaint

5    makes clear.  As a result, Exhibits D and E not only contravene this Court's explicit

6    directions, they are misleading and erroneous.

7         The motion is based on this Notice of Motion and Motion, the accompanying

8    Memorandum of Points and Authorities in support thereof, the accompanying Request

9    for Judicial Notice and related exhibits, the pleadings and correspondence on file with

10   the Court, and such arguments and authorities as may be presented at or before the

11   hearing.

12        This motion is made following the conference of counsel pursuant to C.D.

13   Local Rule 7-3, which took place on May 27, 2008.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT KPMG LLP's NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFFS'
SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT - CASE NO. 2:07-cv-00931-DDP (JTLx)

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This action arises out of the sudden failure of New Century Financial Corporation ("New Century" or the "Company") amid an unanticipated financial crisis that has affected the entire sub-prime mortgage lending industry. Plaintiffs have filed two previous consolidated class action complaints, and in each plaintiffs asserted only a single claim against defendant KPMG LLP ("KPMG") for an alleged violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.

In each of these prior complaints, plaintiffs asserted a negligence-based claim and specifically disavowed any intent to assert a claim against KPMG based on fraud. (Consolidated Class Action Complaint ¶ 243; Amended Consolidated Class Action Complaint ¶ 239.) On April 30, 2008, plaintiffs filed yet a third complaint, their Second Amended Consolidated Complaint (the "complaint"), in which plaintiffs for the first time purported to assert a Section 10(b) claim against KPMG, 15 U.S.C. § 78j(b). Such claims unquestionably sound in fraud and are subject to stringent pleading requirements, but the complaint does not contain a single new allegation regarding KPMG based upon any independent investigation by plaintiffs.

The only new allegations of any kind, and the only allegations that plaintiffs assert establish the essential element of KPMG's scienter (Compl. ¶¶ 516–29), consist entirely of excerpts from a New Century bankruptcy examiner report that was made public on March 27, 2008. Plaintiffs have done nothing more than copy and paste into the complaint highly selective assertions of the examiner, who was appointed to identify potential claims for the benefit of New Century's creditors. And they have done so without any independent corroboration and without actually adopting the examiner's assertions as their own allegations of fact. This effort to cobble together the basis for a serious claim of fraud is improper. Plaintiffs' allegations that merely recite assertions of the examiner should be stricken pursuant to Federal Rule of Civil Procedure ("FRCP") 12(f) for two reasons.

First, as discussed in Section I.A below, courts have repeatedly and for good reason rejected complaints relying upon untested third-party allegations unconfirmed by the plaintiff's own independent investigation.  Pursuant to FRCP 11, an attorney is required to make allegations based upon his or her own investigation and inquiry, and numerous courts have recognized that it is inconsistent with this duty to rely, without independent corroboration, on the allegations or findings in someone else's complaint or investigative report.  Courts have further recognized that allegations based solely on such non-party allegations or assertions are immaterial, as a matter of law, and are properly stricken pursuant to FRCP 12(f).

Second, and more fundamentally, as discussed in Section I.B below, plaintiffs have mischaracterized the examiner's report in important respects by selective quotation and by omitting important findings of the examiner that rebut the inference of scienter that plaintiffs invite this Court to draw.  As an overarching matter, plaintiffs have failed to disclose that the examiner's ultimate conclusion was that KPMG *may* have been negligent in performing its 2005 audit and 2006 quarterly reviews for New Century.[1]  (New Century TRS Holdings, Inc. Report of Bankruptcy Examiner (Feb. 29, 2008), Ex. B at 37–38.)[2]  The examiner did not find or report any basis to accuse KPMG of acting recklessly, intentionally, or even in a grossly negligent manner.

Plaintiffs attempt to evade this fact by selectively quoting out of context incomplete assertions from the examiner's report regarding specific audit and accounting issues and omitting important facts set forth by the examiner regarding those same issues that strongly rebut any inference of fraudulent conduct by KPMG.

---

[1] Thus the examiner's report does not even support a conclusion that KPMG's 2005 audit work, standing alone, *was* negligent.  Plaintiffs do not allege a claim against KPMG based on its 2006 quarterly review work.

[2] Exhibits relied upon by KPMG in this motion are included with the Request for Judicial Notice filed concurrently herewith and are cited as "Ex. __."

2

For these reasons, plaintiffs' attempt to rely on the examiner to plead a claim against KPMG that plaintiffs themselves were repeatedly unable to plead is improper and misleading, and the paragraphs of the complaint that merely excerpt assertions of the examiner favorable to plaintiffs' new claim should be stricken. [3]

In addition, references to KPMG in the charts attached to the complaint as Exhibits D and E also should be stricken. In its January 31, 2008 Order dismissing plaintiffs' original Consolidated Complaint for failure to comply with FRCP 8(a), the Court ordered that plaintiffs in any amended complaint set forth in a chart for each claim a clear identification of "(i) the alleged false or misleading statements, including the source of the statement in a registration statement where a required element of the claim; (ii) the supporting factual allegations; and (iii) the ultimate conclusion." (Order Granting Mot. to Dismiss 7, Doc. # 245 (Jan. 31, 2008).) As described in Section II below, plaintiffs have plainly failed to comply with this directive. Plaintiffs' charts lump a variety of disparate statements together as a single statement and repeatedly identify KPMG as a party responsible for statements it indisputably did not make. Accordingly, the charts should be stricken as to KPMG.

## ARGUMENT

## I.    EXCERPTS FROM THE NEW CENTURY BANKRUPTCY EXAMINER'S REPORT SHOULD BE STRICKEN

Under FRCP 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994). The function of a FRCP 12(f) motion is to "test[] whether a pleading contains inappropriate material." *Migliaccio v. Midland Nat'l Life Ins. Co.*,

---

[3] Those paragraphs include: Compl. ¶¶ 91–100, 104, 106–07, 116–19, 173–80, 182–90, 194–96, 201–03, 221–34, 243, 251–53, 263, 282–84, 301, 327, 352, 354–56, 367, 369–71, 381, 383–85, 396–97, 399–401, 413–16, 418–19, 430–33, 435–36, 448–54, 485, 487, 496, 498, 500–01, 509, 516–29, 535, 541–42.

436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006).  As demonstrated below, the complaint in this case contains extensive passages constituting such inappropriate material.

### A. Plaintiffs' Reliance on Uncorroborated Third-Party Assertions Is Improper and Those Assertions Are Immaterial as a Matter of Law

Numerous courts have rejected complaints relying upon third-party allegations or findings of state or federal agencies unconfirmed by plaintiffs' own independent investigation.  *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 9634, at *19–23 (N.D. Cal. Jan. 29, 2008) (striking allegations drawn from an SEC complaint); *Geinko v. Padda*, 2002 U.S. Dist. LEXIS 3316, at *18–22 (N.D. Ill. Feb. 26, 2002) (dismissing complaint containing allegations drawn from an SEC complaint and other civil complaints); *Ledford v. Rapid-American Corp.*, 1988 U.S. Dist. LEXIS 79, at *3 (S.D.N.Y. Jan. 8, 1988) (striking allegations relying on a report of a state administrative body).  Reliance on the examiner's report, like reliance on the reports or allegations of federal or state agencies that have been rejected by the courts, is not a substitute for an independent investigation.  Plaintiffs' use of the examiner's report is therefore inappropriate.

As a threshold matter, reliance upon the examiner's report without an independent investigation is in dereliction of plaintiffs' attorneys' obligation under FRCP 11 to conduct his or her own "reasonable and competent inquiry" into the facts of the case before signing and filing the complaint.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).  An attorney's FRCP 11 responsibility to conduct an independent investigation is "non-delegable"; the attorney must "personally . . . validate the truth and legal reasonableness of the papers filed."  *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989).  Here, plaintiffs' attorneys have failed to conduct an independent investigation of the selected allegations copied from the examiner's report; rather, they have done nothing more than lift favorable portions of the examiner's report and paste them into the complaint, without independently verifying them.  Such use of non-party allegations is

4

1    improper without independent corroboration. *See, e.g., Connetics*, 2008 U.S. Dist.

2    LEXIS 9634, at *19–23 (striking allegations drawn from an SEC complaint that were

3    not verified by an independent investigation by plaintiffs on grounds that such

4    allegations did not satisfy the requirements of FRCP 11); *In re Tableware Antitrust*

5    *Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005) ("A plaintiff may surely rely on

6    governmental investigations, but must also, under FRCP 11, undertake his own

7    reasonable inquiry and frame his complaint with allegations of his own design.

8    Simply saying 'me too' after a governmental investigation does not state a claim."

9    (citation omitted)); *Geinko*, 2002 U.S. Dist. LEXIS 3316, at *18–22 (dismissing

10   complaint and refusing to consider containing allegations drawn from an SEC

11   complaint and other civil complaints because the allegations were "hearsay,"

12   "improper," and "superfluous").[4]

13        Not only do plaintiffs' attorneys impermissibly rely on non-party assertions

14   copied from the examiner's report, they fail to make all such allegations directly, also

15   in violation of their FRCP 11 duties. *See Geinko*, 2002 U.S. Dist. LEXIS 3316, at

16

17   ───────────────

     [4] In *Newby v. Enron Corp.*, 2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005),
18   the court permitted the plaintiffs to cite to a bankruptcy examiner's report in their
     complaint, but there the examiner's report was attached as an exhibit to the complaint,
19   thus mitigating any concerns about selective citation from or misleading use of the
     report. *Id.* at *39 n.20.  The court also recognized that the defendants had acted
20   knowingly by aiding and abetting the misconduct of others, a conclusion consistent
     with the inferences of scienter the plaintiffs asked the court to draw from the
21   examiner's report. *See id.* at *20 & n.12.  In contrast here, the inferences of fraud that
     plaintiffs ask this Court to draw are directly contrary to the conclusions of the
22   examiner's report, as addressed in Section I.B.  And in *In re Spiegel, Inc. Sec. Litig.*,
     382 F. Supp. 2d 989 (N.D. Ill. 2004), the court granted in part the defendant's motion
23   to strike the plaintiff's complaint because the complaint was ambiguous as to whether
     the allegations were based on plaintiff's own investigation or an independent
24   examiner's report.  The examiner in question was not a bankruptcy examiner but an
     independent examiner appointed in a related action with the consent of Spiegel, Inc.,
25   and his report was adopted by the company in its public filings with the SEC.  *Id.* at
     1013–14.
26

27

28
───────────────
5

1    *20–21 & n.8 ("The pervasive defect in the Amended Complaint in this case,

2    however, is that it does not make clear what plaintiffs directly allege as fact, and what

3    plaintiffs merely are asserting that someone else has alleged.  In other words,

4    plaintiffs' attorneys cannot shirk their Rule 11 obligation to conduct an appropriate

5    investigation into the facts that is reasonable under the circumstances by merely

6    stating that 'the SEC alleges' certain additional facts.").  Rather than adopting the

7    assertions in the examiner's report as their own, plaintiffs repeatedly and

8    impermissibly state merely that "the Examiner found" or "the Examiner reports"

9    certain purported facts.

10        Even aside from FRCP 11 concerns,[5] references to the examiner's report, which

11   is an inadmissible hearsay document not subjected to adversarial testing, are

12   immaterial as a matter of law.  "[R]eferences to preliminary steps in litigation and

13   administrative proceedings that did not result in an adjudication on the merits or legal

14   or permissible findings of fact are, as a matter of law, immaterial under Rule

15   12(f) . . . ."  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78

16   (S.D.N.Y. 2003).  Courts have applied this rule to strike documents with greater

17   indicia of reliability than the examiner's report, such as the results of a state agency's

18   _____

19   [5] In the event the complaint against KPMG is dismissed with prejudice, under the
     Private Securities Litigation Reform Act ("PSLRA") the Court will be required to
20   make findings whether the complaint was filed in compliance with FRCP 11.  *See* 15
     U.S.C. § 78u-4(c)(1).  It is premature to burden the Court with a detailed discussion of
21   the reasons that KPMG believes FRCP 11 was violated in connection with the filing
     of this complaint.  Suffice it to say that there is ample authority for a court to conclude
22   that the filing of a complaint alleging fraud against KPMG in these circumstances,
     based upon the selective and misleading incorporation of excerpts from the
23   examiner's report, violates the rule.  *See Truesdell v. S. Cal. Permanente Med. Group*,
     293 F.3d 1146, 1153 (9th Cir. 2002) (a complaint violates Rule 11 where it is
24   "factually misleading"); *Business Guides v. Chromatic Comm's Enter.*, 892 F.2d 802,
     812 (9th Cir. 1989) (affirming district court's imposition of sanctions against the
25   plaintiff for false allegations where a reasonable investigation into information
     available to the plaintiff would have verified the falsity of the allegations).
26

27

28

6

1  probable cause determination.  *See Ledford*, 1988 U.S. Dist. LEXIS 79, at *3 (striking

2  a report of the New York State Division of Human Rights as immaterial).[6]  Consistent

3  with these authorities, this Court should strike plaintiffs' allegations based upon the

4  examiner's report.

**B.    Plaintiffs' Selective Quotation and Misrepresentations of the Examiner's Report Support Striking the Allegations Based on the Report**

7          All references to the examiner's report also should be stricken because plaintiffs

8  have selectively quoted from the report and have omitted material facts, rendering the

9  use of the report misleading.  Perhaps most fundamentally, plaintiffs rely almost

10  exclusively on incomplete, selected assertions of the examiner to support their

11  allegations of scienter.  (*See* Compl. ¶¶ 516–29.)  The examiner, however, did not find

12  that KPMG acted with any fraudulent intent.  In fact, the examiner expressly

13  disavowed fraudulent motivation by KPMG.  (*See, e.g.*, Ex. B at 25 (the examiner

14  "investigated to determine . . . whether there was any purposeful failure to calculate

15  the repurchase reserve . . . correctly, such as to increase earnings.  The examiner found

16  no persuasive evidence of such a motivation . . . ." ).)  The examiner found that, at

17  most, the New Century estates "*may* be able to assert causes of action against KPMG

18  for *negligence and negligent misrepresentation*."  (*Id.* at 37 (emphases added).)

19  KPMG disputes these allegations of negligence.  But regardless and as relevant to this

20  motion, the examiner did *not* find that KPMG acted with deliberate recklessness or

21  even that KPMG was grossly negligent, and thus he did not find that the estates had

---

23  [6] Although the examiner "is employed to conduct an investigation, he is not charged –
nor could he be – with the duty to hear and determine any claims in a case."  *In re*
24  *Fibermark, Inc.*, 339 B.R. 321, 326 (Bankr. D. Vt. 2006) (quotation marks and
alterations omitted), *citing Rickel & Assocs. v. Smith*, 272 B.R. 74, 87–88 (Bankr.
25  S.D.N.Y. 2002).  A bankruptcy examiner's report is hearsay that is inadmissible to
26  prove the truth of the factual allegations contained within it.  *United States v. Moore*,
27 F.3d 969, 975 (4th Cir. 1994).  In no way can the examiner's report be
27  characterized as an adjudication on the merits or as legal findings of fact.

1    any potential cause of action against KPMG for intentional or fraudulent conduct.  *See*

2    *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002)

3    ("Negligence, even gross negligence, does not rise to the level of the nefarious mental

4    state necessary to constitute securities fraud under the PSLRA . . . .").  Plaintiffs'

5    implied suggestion to the contrary is unfounded.

6        In addition, with respect to the specific alleged accounting errors based on the

7    examiner's report, plaintiffs omit critical details from the report that, when considered,

8    rebut any inference of scienter.  Plaintiffs' repeated mischaracterization of the report

9    regarding the accounting issues on which their Section 10(b) claim is based is readily

10   demonstrated by the following examples:

11                    **1.    Allowance for loan losses**

12       Plaintiffs allege that the examiner concluded that KPMG's review of New

13   Century's allowance for loan losses ("ALL") "did not comport with applicable

14   professional standards."  (Compl. ¶ 233.)  Plaintiffs previously alleged that New

15   Century materially *underreserved* its ALL and thus materially *overstated* income.

16   (Consolidated Class Action Complaint ¶ 105; Amended Consolidated Class Action

17   Complaint ¶ 102.)  Plaintiffs have now abandoned this allegation.  But plaintiffs have

18   omitted from their complaint that the examiner reached a directly contrary conclusion:

19   that "New Century *overreserved* for loan losses throughout the relevant period."  (Ex.

20   B at 27 (emphasis added).)  *Overreserving* for loan losses would have the effect of

21   *understating* New Century's income in the same period.  The examiner's conclusion

22   regarding the effect of any misstatement of ALL thus is directly contrary to any

23   inference of fraudulent intent to inflate New Century's reported financial results.  *See,*

24   *e.g.*, *In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *8 (N.D. Ill. July 12,

25   2006); *Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *17 (D.N.J. Aug. 17, 2005);

26   *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D. Ill. 2005); *In re Tyco Int'l, Ltd.*

27   *Sec. Litig.*, 185 F. Supp. 2d 102, 112 (D.N.H. 2002).

28

8

### 2.    Hedge accounting

Plaintiffs allege that KPMG violated Generally Accepted Auditing Standards ("GAAS") by not properly addressing a number of identified deficiencies in New Century's hedging practices. (Compl. ¶¶ 225–26, 517.) Quoting the examiner, plaintiffs emphasize an alleged difference over New Century's hedge accounting between the KPMG engagement partner on the New Century audit, and a KPMG specialist. (*Id*.) Plaintiffs then point to the examiner's observation that KPMG ultimately determined that some of New Century's hedge accounting was improper and that there was "a misstatement of several million dollars" as evidence of KPMG's scienter. (*Id*. at 517 (quoting Ex. B at 33 n.681).)

What plaintiffs omit from their quotation is the immediately following sentence of the report, which states that "[t]he misstatement ultimately was deemed *immaterial*." (Ex. B at 33 n.681 (emphasis added).) And, significantly, plaintiffs also omit that the examiner agreed that "the evidence strongly suggests that most of the [hedging] deficiencies were not material to New Century's financial statements . . . ." (*Id*. at 31.) Not only do plaintiffs omit mention of the minimal impact of the hedge accounting errors, but more egregiously, plaintiffs also omit the probative fact that the examiner concluded that any correction of the 2005 financial statements due to hedge accounting would actually *increase* pre-tax earnings and thus *increase* income. (*Id*. ("to the extent there were errors requiring adjustment, the impact would have been the release of additional income to New Century."); *id*. at 32 n.540 (adjustments would have increased pre-tax earnings).) A fraudulent intent to inflate earnings may not be inferred from an immaterial accounting error that actually decreased a company's reported earnings. *See, e.g.*, *Davis*, 385 F. Supp. 2d at 709; *Tyco*, 185 F. Supp. 2d at 112.

### 3.    Residual interest valuations

Plaintiffs also allege, based on the examiner's report, that KPMG's audit of the residual interest valuations did not comply with GAAS because KPMG "repeatedly disregarded concerns" of KPMG's internal specialist regarding the discount rate used to value such interests.  (Compl. ¶ 518.)  Plaintiffs omit that the examiner reported that the KPMG specialist found that the discount rules "were at the low end of the acceptable range"; that the specialist told the examiner that he "never 'recommended' that New Century increase its residual interest discount rates"; and that the specialist did not become increasingly concerned about the discount rates until after the 2005 audit was completed.  (Ex. B at 26.)  Thus, contrary to the conclusion plaintiffs invite the Court to draw from their selective quotations from the examiner's report, the report, in context, shows that KPMG involved a firm specialist in evaluating a complex issue of professional judgment and that the specialist concurred that New Century's discount rates were within the range of acceptable rates.  (*Id.*)  That plaintiffs or the examiner would now substitute a different judgment for the judgment KPMG made does not create a strong inference of scienter.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1241 (S.D.N.Y. 1992).

### 4.    Repurchase reserves accounting

Plaintiffs allege that KPMG's audit of New Century's repurchase reserves violated GAAS, and that KPMG should have uncovered alleged material errors in New Century's allowance for repurchase losses reserve.  They assert that KPMG's alleged failure properly to perform audit procedures related to New Century's repurchase reserves creates a strong inference of scienter.  (Compl. ¶¶ 523, 529.)  But, again, plaintiffs omit the remaining critical portions of the examiner's report, which create an inference opposing scienter.  Plaintiffs conspicuously omit that the examiner "investigated to determine . . . whether there was any purposeful failure to calculate

10

1   the repurchase reserve . . . correctly, such as to increase earnings." (Ex. B at 25.)

2   And, "[t]he Examiner found *no persuasive evidence of such a motivation . . . ."* (*Id.*

3   (emphasis added).) In addition, the complaint selectively omits other key passages in

4   the report that are inconsistent with the inference of scienter. (*See, e.g.,* Ex. B at 34

5   (KPMG considered a control deficiency related to the reserve to be "inconsequential";

6   KPMG relied upon "management's representations, estimations and assumptions"),

7   36 (KPMG told the examiner how it tested the Company's 90-day assumption for the

8   reserve).)

9              **5.    Mortgage servicing rights**

10          Plaintiffs also allege that a strong inference of scienter is further evidenced by

11  KPMG's alleged GAAS violations in testing New Century's valuation of its mortgage

12  servicing rights ("MSRs"). (Compl. ¶¶ 233, 526.) What plaintiffs omit in this regard

13  is that the examiner reported that the potential error on this issue (which KPMG

14  identified) amounted to no more than $698,217, an amount that was not only

15  immaterial, but that was below even KPMG's income statement posting threshold.

16  (Ex. B at 28.) In other words, any adjustment of New Century's MSRs would have

17  had such a minimal impact on New Century's financial statements that, as a matter of

18  course, it was not necessary even to post the difference to a list of potential

19  adjustments for further evaluation.[7] Such an inconsequential error cannot, and does

20  not, suggest any inference of fraudulent intent on behalf of KPMG. *PR Diamonds,*

21  *Inc. v. Chandler*, 364 F.3d 671, 686 (6th Cir. 2004) (allegations of small adjustments

22  are not "in your face facts" that "cry out" scienter); *In re Hypercom Corp. Sec. Litig.*,

23  2006 WL 726791, at *4 (D. Ariz. Mar. 9, 2006) ("Restatements are less probative of

24  deliberate wrongdoing or recklessness when the issuer's financial adjustments are

25  small in size.").

26  _____

27  [7]  In 2005, New Century reported net earnings of $416 million. (*See* New Century
    Fin. Corp. FYE 2005 Form 10-K (Mar. 16, 2006), Ex. C at 169.)

28

---

11

### 6.    Deferred fees and costs

Finally, plaintiffs allege that New Century improperly excluded costs from its deferral and amortization methodology.  (Compl. ¶ 119.)  They allege that KPMG discovered the error in the second quarter of 2006 (*id.*), which cannot support an inference of scienter in connection with the 2005 audit, for which this allegation is cited.  Moreover, plaintiffs fail to disclose that, as the examiner reported, the alternative to deferring and amortizing costs is to expense them immediately.  (Ex. B at 29.)  Thus, if New Century improperly excluded costs from deferral in 2005, as alleged, this error would have the effect of *overstating expenses* in 2005, and thus *understating income*.  As discussed above, an understatement of income contradicts any inference of scienter.

Plaintiffs further quote from the examiner's report to allege that KPMG determined, during work on its 2006 audit that was never completed (and for which KPMG never issued a report), that New Century improperly amortized its deferred loan origination fees and that KPMG failed in 2006 to "address[] the likely impact of this error on New Century's earlier financial statements."[8]  (Compl. ¶ 119.)  But plaintiffs do not disclose that the examiner noted that the 2006 error amounted to only $261,060, a plainly immaterial error that the examiner acknowledged was below the posting threshold for adjustments, and that the examiner, not surprisingly, did not assert that this matter was material in 2006 or any prior year.  (Ex. B at 30.)

---

[8] What KPMG allegedly did or did not do in connection with the never completed 2006 audit cannot suffice to show scienter with respect to KPMG's 2005 audit.  To the contrary, KPMG's willingness to identify and address an error in one period rebuts an inference that it was deliberately reckless in failing to do so in another period.  *See Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000) (rejecting an inference of scienter where "Plaintiffs make no attempt to explain why Price Waterhouse would deliberately ignore improperly recognized revenues, and then, several months later, recommend a restatement of those revenues").

1   In view of such distortions of the examiner's report, and the fact that the report

2   in its overall finding and in its particular assertions actually rebuts the inference of

3   scienter, it is appropriate to strike from the complaint all allegations excerpted from

4   the report.

5   **II.   THE COURT SHOULD STRIKE EXHIBITS D AND E BECAUSE THEY**
        **DO NOT COMPLY WITH THE COURT'S JANUARY 31, 2008 ORDER**

6   Plaintiffs' Exhibits D and E to the complaint, charts which purportedly

7   enumerate the allegedly false statements at issue, also should be stricken because

8   plaintiffs (1) selectively quote various portions of New Century's 2005 Form 10-K,

9   taking sentences out of context and stringing them together to create a purported

10  single statement; and (2) assert that KPMG is a party responsible for a multitude of

11  statements that it did not make.  Plaintiffs have constructed the charts in such a

12  confusing manner that it is all but impossible to determine the core of the Section

13  10(b) and Section 11 inquiry: what are the alleged false statements and who made

14  them.

15  Plaintiffs' charts contravene more than just the pleading rigor required by the

16  Court in its Dismissal Order.  They assert incorrectly that KPMG is responsible for

17  statements that it did not make.  *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d

18  147, 154 (2d Cir. 2007) (holding that an auditor (Deloitte) was not liable for

19  statements by a company that "did not purport to be audited by Deloitte, did not

20  contain an audit opinion by Deloitte, and were not attributed to Deloitte when they

21  were disseminated"); s*ee also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*

22  *Inc.*, – U.S. –, 128 S. Ct. 761, 769, 169 L. Ed. 2d 627 128 S. Ct. 761 (2008) (a

23  defendant cannot be liable for securities fraud where no deceptive acts or statements

24  by the defendant were disclosed to the public); *Central Bank of Denver v. First*

25  *Interstate Bank of Denver*, 511 U.S. 164, 177, 114 S. Ct. 1439, 128 L. Ed. 2d 119

26  (1994) (limiting Section 10(b) liability only to those actually making a "material

27  misstatement (or omission) or the commission of a manipulative act").

28

1    For example, regarding Exhibit D, which purports to summarize misstatements

2    supporting plaintiffs' Section 11 claim, plaintiffs contend that KPMG is a

3    "Responsible Defendant" for Statements 1, 4, and 5.  But taken together, these three

4    statements actually comprise sixteen different statements.  (Compl. Ex. D at 410–14,

5    419–28.)  And, of these sixteen statements, only two refer to the 2005 financial

6    statements audited by KPMG.  Not a single one of the other fourteen statements was

7    made by KPMG.  As to those two statements that refer to KPMG's 2005 audit

8    opinion, plaintiffs assert that the "fact" showing that KPMG's opinion was false when

9    made is New Century's May 2007 statement that it was "more likely than not" that the

10    2005 financial statements were materially overstated.  (Compl. Ex. D. at 419–28.)

11    This vague and equivocal disclosure is not a "fact" at all.  Plaintiffs otherwise

12    indiscriminately incorporate more than 130 numbered "paragraphs" of the complaint

13    as purported "facts" showing that one or more (without clearly identifying which

14    ones) of the multiple different statements that plaintiffs lump together were false.

15    For Statement 6 in Exhibit D, plaintiffs do excerpt KPMG's 2005 audit

16    opinions, but the only "factual support" is a cross-reference to paragraphs 204–35 of

17    the complaint, forty-two pages of disjointed allegations with no detail as to how those

18    allegations show that KPMG's audit opinions are actionable under Section 11.  This

19    hardly constitutes the plain and concise factual support requested by the Court.

20    Regarding Exhibit E, which purports to summarize misstatements as to the

21    Section 10(b) claims, plaintiffs attribute Statements 28, 29, and 30 to KPMG even

22    though, once again, only two of the thirteen separate statements contained in those

23    "Statements" were part of the financial statements audited by KPMG (and the

24    purported support for the alleged falsity of the statements suffers from the same

25    failings identified above for Statements 1, 4, and 5).  (Compl. Ex. E at 505–10.)

26    Statement 31, which excerpts KPMG's 2005 audit opinions, suffers from the same

27    factual deficiency as Statement 6 in Exhibit D, specifically that plaintiffs offer no

28

14

1    discernible facts as to how KPMG's audit opinions are actionable under Section 10(b).

2    (*Id.* at 511–20.)

3        Not only do plaintiffs accuse KPMG of being responsible for statements it did

4    not make, but plaintiffs also parse and cobble together selective words and sentences

5    from various parts of New Century's 2005 Form 10-K to create an allegedly false

6    statement without providing any of the surrounding context.  For example, in

7    Statement 28 of Exhibit E, not only do plaintiffs list four different statements as one

8    statement, but they then fail to cite the document in which the statements were made.

9    (Compl. Ex. E at 505–08.)  A comparison of plaintiffs' Statement 28 with New

10   Century's 2005 Form 10-K reveals that the passages are drawn from disparate places

11   on pages 54, 67, 104, and 105 of the exhibit of the SEC filing.  (*Compare* Ex. C *with*

12   Compl. Ex. E at 505–08.)  Similarly, Statement 29 of Exhibit E (*see* Compl. Ex. E at

13   508–09) consists of five different statements from three different parts of the 2005 10-

14   K (*see* Ex. C at 110, 111, 177).  These compilations of different statements found

15   dozens of pages apart cannot be the concise, plain statement mandated by FRCP 8(a)

16   and this Court's Order.  It is not possible to determine whether there was a false or

17   misleading statement and whether that statement was made with scienter when

18   plaintiffs omit sentences, and even entire paragraphs, that otherwise qualify, limit, or

19   explain the words plaintiffs contend are false.  Plaintiffs' Exhibits D and E should be

20   stricken.

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, KPMG respectfully requests that the Court strike from the complaint paragraphs 91–100, 104, 106–07, 116–19, 173–80, 182–90, 194–96, 201–03, 221–34, 243, 251–53, 263, 282–84, 301, 327, 352, 354–56, 367, 369–71, 381, 383–85, 396–97, 399–401, 413–16, 418–19, 430–33, 435–36, 448–54, 485, 487, 496, 498, 500–01, 509, 516–29, 535, and 541–42, and Exhibits D & E.

Dated: June 2, 2008                                      Respectfully submitted,

                                                         KPMG LLP


                                                         By: /s/ Michael C. Kelley
                                                             Michael C. Kelley
                                                             Attorneys For Defendant KPMG LLP