1

**Michael C. Kelley (SBN 090062)**
**mkelley@sidley.com**

2

**Jose F. Sanchez (SBN 161362)**
**jose.sanchez@sidley.com**

3

**SIDLEY AUSTIN LLP**

4

**555 West Fifth Street, 40th Floor**
**Los Angeles, California 90013**

5

**Telephone:      (213) 896-6000**

6

**Facsimile:       (213) 896-6600**

7

**Geoffrey M. Ezgar (SBN 184243)**
**gezgar@sidley.com**

8

**Robert B. Martin III (SBN 235489)**
**rbmartin@sidley.com**

9

**Sidley Austin LLP**

10

**555 California Street, Suite 2000**
**San Francisco, California  94104**

11

**Telephone:      (415) 772-1200**

12

**Facsimile:       (415) 772-7400**

13

**Attorneys For Defendant KPMG LLP**

14

UNITED STATES DISTRICT COURT

15

CENTRAL DISTRICT OF CALIFORNIA

16

| IN RE NEW CENTURY | ) | Consolid. Case No. 2:07-CV-00931-DDP |
|---|---|---|

17

|  | ) | (FMOx) |
|  | ) |  |

18

|  | ) | CLASS ACTION |

19

|  | ) |  |

20

|  | ) | **DEFENDANT KPMG LLP'S REPLY** |
|  | ) | **MEMORANDUM IN SUPPORT OF** |

21

|  | ) | **ITS MOTION TO DISMISS** |
|  | ) | **PLAINTIFFS' SECOND AMENDED** |

22

|  | ) | **CONSOLIDATED CLASS ACTION** |
|  | ) | **COMPLAINT** |

23

|  | ) |  |

24

|  | ) | Date:     September 8, 2008 |

25

|  | ) | Time:    10:00 a.m. |

26

|  | ) | Before:  Honorable Dean D. Pregerson |

27

28

---

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE
      PLAINTIFFS HAVE FAILED TO COMPLY WITH THE
      COURT'S JANUARY 31, 2008 ORDER AND FRCP 8(A) ................... 2

II.   COUNTS THREE (SECTION 11) AND SEVEN (SECTION
      10(B)) SHOULD BE DISMISSED AS TO KPMG BECAUSE
      PLAINTIFFS' COMPLAINT MAKES CLEAR THAT KPMG
      DID NOT CAUSE PLAINTIFFS TO SUFFER ANY LOSSES .............. 3

      A.    The Reference to an Investigation into Residual Interest
            Valuations in 2006 and "Prior Periods" Cannot Save
            Plaintiffs' Complaint .......................................................................... 4

      B.    Plaintiffs' "Materialization of the Risk" Argument Is
            Without Merit ...................................................................................... 5

      C.    Plaintiffs' Arguments Concerning the "Negative Causation"
            Defense Are Without Merit ................................................................. 8

III.  COUNT SEVEN ALSO SHOULD BE DISMISSED BECAUSE
      THERE IS NO STRONG INFERENCE OF SCIENTER ....................... 9

      A.    The Examiner's Report Does Not Support an Inference that
            KPMG Acted with Scienter ............................................................. 10

      B.    Plaintiffs' Allegations Do Not Create a Strong Inference that
            KPMG Acted with Scienter ............................................................. 12

            1.    Plaintiffs' allegations that KPMG was "unduly willing
                  to acquiesce" do not raise a strong inference of scienter .... 12

            2.    Plaintiffs' allegation that KPMG failed to staff its 2005
                  audits with auditors of sufficient experience does not
                  raise a strong inference of scienter ...................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.   Plaintiffs' argument that KPMG ignored "red flags" does not give rise to a strong inference of scienter .............16

4.   Plaintiffs' allegations concerning the Company's alleged internal controls deficiencies do not raise a strong inference of scienter as to KPMG ...........................18

CONCLUSION ........................................................................................................20

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOx)

1

# TABLE OF AUTHORITIES

2

3

## CASES

4

*Batwin v. Occam Networks*,
    2008 WL. 2676364 (C.D. Cal. July 1, 2008) ................................................20

5

6

*Central Laborers' Pension Fund v. SIRVA, Inc.*,
    2006 WL. 2787520 (N.D. Ill. Sept. 22, 2006)................................................14

7

8

*Davidco Investors, LLC v. Anchor Glass Container Corp.*,
    2006 WL 547989 (M.D. Fla. Mar. 6, 2006)......................................................9

9

10

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ............................................................9, 13, 20

11

12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) .................5, 6, 8, 9

13

14

*In re Daou Sys., Inc., Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005) .........................................................................5

15

16

*In re DDi Sec. Litig.*,
    2005 WL. 3090882 (C.D. Cal. July 21, 2005) ................................................9

17

18

*In re DNAP Sec. Litig.*,
    2000 WL. 1358619 (N.D. Cal. Sept. 14, 2000)................................................9

19

20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    411 F. Supp. 2d 377 (S.D.N.Y. 2006)..............................................................9

21

*In re Homestore.com, Inc. Sec. Litig.*,
    252 F. Supp. 2d 1018 (C.D. Cal. 2003).........................................................16

22

23

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007)...........................................................14, 18

24

25

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007) ...........................................................................5

26

27

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ...........................................................................6

28

iii

*Levine v. Atricure, Inc.*,
    508 F. Supp. 2d 268 (S.D.N.Y. 2007) ............................................................. 8

*McGonigle v. Combs*,
    968 F.2d 810 (9th Cir. 1992) ........................................................................ 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    2008 WL. 2853402 (9th Cir. July 25, 2008) ......................................... *passim*

*Monroe v. Hughes*,
    31 F.3d 772 (9th Cir. 1994) ....................................................................... 19

*In re Philip Servs. Corp. Sec. Litig.*,
    383 F. Supp. 2d 463 (S.D.N.Y. 2004) ....................................................... 16

*Ponce v. SEC*,
    345 F.3d 722 (9th Cir. 2003) ...................................................................... 16

*Reiger v. Price Waterhouse Coopers, LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000) .................................................. 13, 17

*Scottish Re Group Sec. Litig.*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007) ....................................................... 15

*Tellabs, Inc. v. Makor Issue & Rights, Ltd.,*
    - U.S. -, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) .......................... 10, 11, 12

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ...................................................................... 7, 8

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ................................................................... 17

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ...................................................................... 16

## STATUTES, RULES, AND OTHER AUTHORITIES

11 U.S.C. § 1106(a)(4)(A) .......................................................................... 11

Fed. R. Civ. Proc. 8 ................................................................................. 1, 2

-iv-

Final Rule: Management's Reports on Internal Control Over Financial
Reporting and Certification of Disclosure in Exchange Act Periodic Reports,
        SEC Release No. 33-8238, 68 Fed. Reg. 36636 (June 5, 2003) ...................19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **INTRODUCTION**

Plaintiffs' opposition memorandum ("opposition" or "Opp'n") provides no persuasive rationale for denying KPMG's motion to dismiss.  Indeed, it confirms in several respects why the distinct claims against KPMG in the Second Amended Consolidated Complaint ("the complaint") should be dismissed.

First, plaintiffs *admit* that, as relevant to KPMG, the charts attached to the complaint improperly attribute statements to KPMG that it did not make and for which it cannot be liable.  The consequence of this failure to comply faithfully with the Court's January 31, 2008 directive is that both the Court and KPMG must sift through a morass of allegations and cross references, many of which have no relevance to KPMG's 2005 audit opinions, in order to test the sufficiency of plaintiffs' claims.  The impact is compounded by the pervasive use of selective and misleading excerpts from the New Century bankruptcy examiner's report in the complaint.  This tactic is independently improper, as demonstrated in KPMG's concurrently filed motion to strike, but it also exacerbates a more fundamental problem: non-compliance with Federal Rule of Civil Procedure ("FRCP") 8 and disregard for the Court's prior Order.

Second, and more fundamentally, both of plaintiffs' claims against KPMG should be dismissed because KPMG's alleged misstatements—its 2005 audit opinions—did not cause plaintiffs to suffer any loss.  Plaintiffs allege that they suffered their losses in February and March 2007 when the stock price dropped in response to announcements by the Company that said nothing about any errors in New Century Financial Corp.'s ("New Century" or "Company") 2005 audited financial statements and nothing about KPMG's 2005 audit.  These disclosures revealed a need to restate some 2006 *unaudited* results, and more importantly disclosed increasingly dire future prospects for New Century in light of the anticipated report of a fourth quarter 2006 loss and deteriorating market conditions.  Thus, plaintiffs' complaint

1

itself makes clear that there is no loss causation as to KPMG, which is in a unique position in this action because it is not charged with any misrepresentations as to New Century's 2006 financial results or its future prospects, and thus is the only defendant who can demonstrate, at this point in the proceedings, that there is no loss causation as to all of the claims asserted against it.

Plaintiffs' claim under Section 10(b) also should be dismissed because plaintiffs' allegations do not give rise to a strong inference that KPMG acted with scienter. At most, the allegations suggest that KPMG may have been negligent, which is a contention KPMG vigorously contests, but one that is far more plausible than the contention that it committed securities fraud. As such, the Section 10(b) claim must be dismissed.

<u>**ARGUMENT**</u>

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO COMPLY WITH THE COURT'S JANUARY 31, 2008 ORDER AND FRCP 8(A)

Plaintiffs' 569-page, 572-paragraph complaint is nearly three times longer and no more organized than the complaint this Court previously dismissed. (Order Granting Mot. to Dismiss 7, Doc. # 245 (Jan. 31, 2008).) The assertion that the current allegations against KPMG are well organized because they are grouped together and identified in the Table of Contents (Opp'n 19) is belied by the next sentence of plaintiffs' memorandum, which acknowledges that allegations against KPMG also appear in numerous other sections of the complaint. Taken together, the nearly 80 pages of allegations against KPMG are sprinkled across hundreds of pages of the complaint. Plaintiffs also concede that the charts the Court required to facilitate the judicial scrutiny required for securities fraud complaints are inaccurate with respect to KPMG, and ask this Court to disregard the charts in favor of the complaint. (Opp'n 19 n.10, 20.) This, combined with the improper manner in which plaintiffs

2

1  have incorporated selected passages from the examiner's report, makes scrutiny of this

2  complaint, if anything, more difficult than the last one.  The Court should dismiss the

3  complaint without further analysis for the same reason it dismissed the last complaint.

4  **II.  COUNTS THREE (SECTION 11) AND SEVEN (SECTION 10(B))**
   **SHOULD BE DISMISSED AS TO KPMG BECAUSE PLAINTIFFS'**
5  **COMPLAINT MAKES CLEAR THAT KPMG DID NOT CAUSE**
   **PLAINTIFFS TO SUFFER ANY LOSSES**
6

7      KPMG's motion established that both claims against it should be dismissed

8  because plaintiffs' alleged losses were not caused by KPMG.  The complaint itself

9  makes clear that plaintiffs' losses were suffered in response to increasingly dire

10  announcements concerning New Century's financial condition that were made in

11  February and March 2007.  Those announcements reflected dramatic changes

12  occurring in the sub-prime lending business in 2006 and 2007 and disclosed, among

13  other things, that:  (i) New Century would restate its 2006 *unaudited* quarterly

14  financial statements because the pace of repurchase requests had increased during

15  2006 and it had violated GAAP during the second and third quarters of 2006; (ii) New

16  Century expected to experience a loss in the fourth quarter of 2006 and for the year;

17  (iii) it was not in compliance with its loan covenants; (iv) it was seeking alternative

18  sources of financing; and (v) if it did not obtain sufficient alternative sources of

19  financing, its Form 10-K would indicate substantial doubt as to its ability to continue

20  as a going concern.  (Compl. ¶¶ 457, 464.)  The announcements, however, were silent

21  about KPMG's 2005 audit opinions or any errors in New Century's 2005 financial

22  statements.

23      In their opposition, plaintiffs concede that their lawsuit against KPMG is based

24  solely on KPMG's 2005 audit opinions (Opp'n 19 n.10, 65) and that their losses were

25  suffered in response to the February and March 2007 announcements.  Plaintiffs

26  nevertheless make three arguments for why their claims against KPMG survive.  First,

27  plaintiffs point to the March 2 disclosure that the Audit Committee had "initiated its

28                                          3

1  own investigation into the issues giving rise to the Company's need to restate its 2006

2  interim financial statements, as well as issues pertaining to the Company's valuation

3  of residual interests in securitizations in 2006 and *prior periods*," and suggest that it

4  might be read as a corrective disclosure concerning KPMG's 2005 audit opinions.

5  (Opp'n 111 (emphasis added).)  Second, plaintiffs argue that loss causation is

6  established because the February and March 2007 announcements—even if not

7  disclosing anything about KPMG's 2005 audit opinions—were the "materialization of

8  the risks concealed" by those opinions.  Finally, plaintiffs argue that they were not

9  required to plead loss causation for their claim under Section 11, which precludes its

10  dismissal.  None of plaintiffs' arguments has any merit.

### A.   The Reference to an Investigation into Residual Interest Valuations in 2006 and "Prior Periods" Cannot Save Plaintiffs' Complaint

13       Plaintiffs mention several times that, on March 2, 2007, the Company

14  announced an Audit Committee investigation into "2006 and *prior periods*."  (Opp'n

15  14, 104, 111 (emphasis in Opp'n.)  This formulation, suggesting a broad investigation

16  was underway of financial reporting in 2006 and earlier periods, is misleading because

17  the announcement narrowly referred to a discrete question, unrelated to any disclosed

18  accounting error: the "valuation of residual interests in securitizations in 2006 and

19  prior periods."  (Compl. ¶ 464.)  Additionally, in pointing to this disclosure as

20  evidence of loss causation, plaintiffs also ignore the caselaw that KPMG cited that the

21  mere announcement of an investigation does not establish loss causation.  (KPMG

22  Mem. at 12–13 (citing cases).)  Indeed, since KPMG filed its opening memorandum,

23  the Ninth Circuit has held that a disclosure—there, an announcement of an

24  investigation—that reveals only "a 'risk' or 'potential'" for fraud is insufficient.

25  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 2008 WL 2853402, at *9 (9th Cir.

26  July 25, 2008) (affirming dismissal of Section 10(b) claim).  Thus, under now well-

27  settled authority in this circuit, these two words—which do not even mention

28                                                                 4

1    KPMG—did not put the market on notice that KPMG's audit opinions were false

2    when made and thus cannot establish loss causation against KPMG.[1]

3        **B.    Plaintiffs' "Materialization of the Risk" Argument Is Without Merit**

4            Plaintiffs primarily argue that the announcements made in February and March

5    2007 were the "materialization of the risks concealed" by KPMG's 2005 audit work,

6    and that the Court should find loss causation on that basis.  (Opp'n 105, 109, 110–11.)

7    According to plaintiffs, *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.

8    Ct. 1627, 161 L. Ed. 2d 577 (2005), did not require that there be a corrective

9    disclosure as a prerequisite to loss causation.  (Opp'n 114.)  Rather, plaintiffs contend,

10   *Dura* permits a plaintiff to establish loss causation by showing that the "defendants

11   concealed or misrepresented a risk that later foreseeably materialized."  (Opp'n 109.)

12   Thus, in plaintiffs' view, in this case it is enough that (according to them) the issues

13   that were addressed in the February and March 2007 announcements "date back" to

14   2005, even if the market had no awareness of that fact at the time of the

15   announcements.  (Opp'n 104.)  This argument is a serious misreading of *Dura* that is

16   not only unsupported by any authority but is also contrary to controlling authority.[2]

---

18   [1] Plaintiffs also do not acknowledge the other, devastating information that New
19   Century simultaneously disclosed to which the stock price declines are attributable,
     and they neither allege nor argue that the reference to an investigation into residual
20   interests in 2006 and "prior periods" was a "substantial cause" of the losses that
     occurred, as required under the Ninth Circuit's caselaw.  *E.g.*, *Corinthian*, 2008 WL
21   2853402, at *10 (rejecting loss causation and noting that the announcement
22   "contained a far more plausible reason for the resulting drop in stock price – the
     company failed to hit prior earnings estimates"); *In re Daou Sys., Inc., Sec. Litig.*, 411
23   F.3d 1006, 1025 (9th Cir. 2005); *see also Lattanzio v. Deloitte & Touche LLP*, 476
24   F.3d 147, 158 (2d Cir. 2007) ("Plaintiffs have not alleged facts to show that
     [auditor's]  misstatements, among others (made by [the Company]) that were much
25   more consequential and numerous, were the proximate cause of plaintiffs' loss. . . .").
26   [2] Plaintiffs' focus on the "foreseeability" of the 2006 problems as of 2005 is a
     distraction.  Plaintiffs appear to borrow the "foreseeability" language from the Second
27   Circuit's decision in *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

28                                         5

---

1    Contrary to plaintiffs' argument, *Dura* requires that the market become aware

2    that a defendant's earlier statement was false, and that the stock price drop in response

3    to that awareness.  *See Dura*, 544 U.S. at 344 ("a person who 'misrepresents the

4    financial condition of a corporation . . .' becomes liable to a relying purchaser 'for the

5    loss' the purchaser sustains 'when the facts . . . become generally known' and 'as a

6    result' share value 'depreciate[s]'") (quoting Restatement 2d Torts § 548A, cmt. b).

7    Indeed, plaintiffs themselves acknowledge that *Dura* requires that the "*relevant truth*"

8    of a defendant's alleged misrepresentations must be revealed to the public in order for

9    the plaintiffs to incur any losses.  (Opp'n 114 (emphasis added)); *see also Dura*, 544

10    U.S. at 347 (where plaintiff sells "before the *relevant truth* begins to leak out, the

11    misrepresentation will not have led to any loss" (emphasis added)).

12    The Ninth Circuit recently rejected plaintiffs' argument that loss causation can

13    be pleaded "without any disclosure of fraud" (*see* Opp'n 115–16), holding the exact

14    opposite – that "the complaint must allege that the practices that the plaintiff contends

15    are fraudulent were revealed to the market and caused the resulting losses."

16    *Corinthian*, 2008 WL 2853402, at *9.  Merely alleging that the disclosure of 2006

17    issues was related to or "touched upon" accounting and internal control issues that

18    plaintiffs contend existed in 2005 is not enough to plead loss causation.  *See Dura*,

19    544 U.S. at 343 ("To 'touch upon' a loss is not to *cause* a loss, and it is the latter that

20    the law requires.").

21    In this case, plaintiffs specifically allege that the market responded to

22    disclosures in February and March 2007, and that as a result the price of New

23    ---
However, *Lentell* holds that foreseeability must be pleaded *in addition to*, not in place

24    of, causation.  *Id.* at 173 (loss causation "require[s] both that the loss be foreseeable

25    *and* that the loss be caused by the materialization of the concealed risk" (emphasis in

26    original)); *see also McGonigle v. Combs*, 968 F.2d 810, 821 n.12 (9th Cir. 1992) ("the

27    element of foreseeability does not detract from the requirement that the loss be the

28    'result' of the misrepresentation").  Moreover, plaintiffs' suggestion that negative

disclosures in 2007 were foreseeable in 2005 is improperly based on hindsight.

6

Century's securities "declined precipitously." (Compl. ¶ 9.) None of those disclosures revealed the "relevant truth" concerning KPMG's 2005 audit opinions. To the contrary, those disclosures were expressly limited to post-2005 events and plainly did not suggest, let alone reveal, that there were problems with KPMG's 2005 audit opinions. Because plaintiffs thus suffered their losses before the market became aware of any *relevant truth* concerning KPMG, they cannot establish loss causation against it. *See Corinthian*, 2008 WL 2853402, at \*10 (loss causation may not be established "through 'euphemism'" or by contending "that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud").

It is also telling that not one of the cases plaintiffs rely upon for their "materialization of the risk" argument involved allegations of fraud against an auditor. (Opp'n 110–11.) However, the Seventh Circuit, in a case that the Ninth Circuit has cited favorably, rejected plaintiffs' precise argument in *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007) (cited in *Corinthian*, 2008 WL 2853402, at \*9). In *Tricontinental*, the plaintiffs sued an auditor for securities fraud with regard to its audit opinion on its client's *1997* financial statements. *Id.* at 842. The client's stock price, however, had dropped following the public revelation of misstatements in its *1998*, *1999*, and *2000* financial statements; there was no public revelation of any alleged problems with the *1997* financial statements until after the stock had already lost all of its value. *Id.* The plaintiffs argued that "the 1997 fraud was part of an on-going scheme to overrepresent revenue and that the 1998 audit relied in part on historic information," and that, "[c]onsequently, . . . the public revelation of the 1998 fraud which caused the reduction in stock price suffices to allege loss causation." *Id.* The plaintiffs also argued that *Dura* did not require "that the precise fraud that resulted in the underlying transaction be the subject of a later corrective disclosure in order to satisfy loss causation." *Id.* at 843.

The Seventh Circuit rejected the plaintiffs' argument:  "We do not believe that [plaintiffs'] complaint can be reconciled with [*Dura*]."  *Id.*  The court explained:

> *Dura* stresses that the complaint must "'specify' each misleading statement," *Dura*, 544 U.S. at 345, and that there must be "a causal connection between the material misrepresentation and the loss," *id.* at 342, not simply that the "misrepresentation 'touches upon' a later economic loss," *id* at 343.

*Tricontinental*, 475 F.3d at 843.  The Seventh Circuit therefore held that the plaintiffs "had to allege that [the defendant auditor's] 1997 audit contained a material misrepresentation which caused [the plaintiffs] to suffer a loss when that material misrepresentation 'became generally known.'"  *Id.*  Because the plaintiffs had not identified "any statements . . . that made 'generally known' any problems or irregularities in the 1997 audited financial statement," loss causation was not established.  *Id.* at 843–44 (affirming dismissal).

Because it is apparent on the face of the complaint that plaintiffs' alleged losses in February and March 2007 were not caused by the disclosure of any information concerning KPMG's 2005 opinions, Counts Three and Seven should be dismissed.

## C.    Plaintiffs' Arguments Concerning the "Negative Causation" Defense Are Without Merit

Plaintiffs attempt to salvage their Section 11 claim by arguing that *Dura* and its progeny "do[] not control with respect to Section 11" because those cases "deal with claims under Section 10(b)."  (Opp'n 106–07.)  Plaintiffs' argument misses the point.  Although the party bearing the burden of proof is different for claims under Section 10(b) and Section 11, what they must prove is exactly the same.  *E.g.*, *Levine v. Atricure, Inc.*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007) (cited in Opp'n 104, 108) (negative causation is simply "the absence of loss causation"); *Davidco Investors, LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *8–10, 24–25 (M.D. Fla. Mar. 6, 2006) (applying *Dura* to Section 11 claim).  Here, moreover, plaintiffs

8

affirmatively point to the February and March 2007 announcements as the cause of their losses.  (Opp'n 14–15.)  But those announcements said nothing about KPMG's 2005 audit opinions, and instead disclosed other problems that triggered a decline in New Century's stock price.  Because KPMG has shown an absence of loss causation, plaintiffs' Section 11 claim should be dismissed.[3]

## III.    COUNT SEVEN ALSO SHOULD BE DISMISSED BECAUSE THERE IS NO STRONG INFERENCE OF SCIENTER

In the Ninth Circuit, it is quite difficult to allege a strong inference that an auditor has committed fraud.  *See, e.g.*, *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 387 (9th Cir. 2002) (affirming dismissal of Section 10(b) claim: even "seriously botched audit" did not give rise to a strong inference against auditor, but only suggested "gross negligence").

Plaintiffs' opposition confirms that their allegations are insufficient: they do not suggest that KPMG acted intentionally, and their allegations do not come close to

---

[3] Plaintiffs also attempt to discredit the cases cited by KPMG by asserting without analysis that they "are erroneous and should not be followed."  (Opp'n. at 108.)  They then cite four cases that rejected the negative causation defense.  (*Id.* at 105–06.)  Plaintiffs concede, however, that in their four cases, the courts rejected the negative causation defense because either (1) "the complaint on its face [did] not affirmatively establish such a defense (*id.* at 105 (citing *In re DDi Sec. Litig.*, 2005 WL 3090882, at *15 (C.D. Cal. July 21, 2005); *In re Portal Software, Inc. Sec. Litig.*, 2006 WL 2385250 at *3–4 (N.D. Cal. Aug. 17, 2006); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 383 (S.D.N.Y. 2006)), or (2) the defendant "cite[d] nothing in the pleadings establishing some reason other than the alleged misstatements . . . for the [stock] drop" (*id.* at 106 (citing *In re WRT Energy*, 2005 WL 2088406, at *2 (S.D.N.Y. Feb. 9, 2005))).  Neither problem exists here.  Finally, plaintiffs also argue that KPMG's citation to *In re DNAP Sec. Litig.*, 2000 WL 1358619 (N.D. Cal. Sept. 14, 2000), is unpersuasive because, according to plaintiffs, the case "was not a Section 11 case and was dismissed purely on materiality grounds."  (Opp'n 107.)  But *DNAP* was a Section 11 case, and the court explicitly accepted the negative causation defense.  *DNAP*, 2000 WL 1358619, at *3 ("Although loss causation is an affirmative defense, in this case it is evident on the face of the complaint and thus may be raised on a motion to dismiss.").

9

"approximat[ing] an actual intent [by KPMG] to aid in the fraud being perpetrated by [New Century]," as required for deliberate recklessness. (Opp'n 72 n.58 (quotation omitted)); *see also Corinthian*, 2008 WL 3853402, at \*11 (requiring "degree of recklessness that strongly suggests actual intent") (quotation omitted). That the examiner, after spending $15 million and six months to investigate New Century, found only that KPMG may have been negligent,[4] undermines any possible finding that plaintiffs' scienter theory (based entirely on the examiner's report) is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issue & Rights, Ltd.*, – U.S. –, 127 S. Ct. 2499, 2504–05, 168 L. Ed. 2d 179 (2007). This compels dismissal of the claim.

### A.    The Examiner's Report Does Not Support an Inference that KPMG Acted with Scienter

Plaintiffs ignore the examiner's conclusion that KPMG's conduct may support only a claim for negligence, a conclusion that rebuts any inference of scienter. (*See* Examiner's Report 179.)[5] Plaintiffs' opposition not only continues to mischaracterize the examiner's report, but now also the examiner's appointment order. Plaintiffs assert that the examiner reported no fraud or recklessness by KPMG because he was limited to investigating "accounting malpractice." (Opp'n 67.) This is false. The examiner was charged with "identify[ing] and evaluat[ing] *any claims or rights of actions* that the estates might have arising from or relating to [the accounting] irregularities, errors or misstatements." Order Appointing Examiner, *In re New Century TRS Holdings, Inc.*, No. 07-10416, Doc. # 1023, at 2 (Bankr. D. Del. June 1,

---

[4] It is also significant that the examiner's conclusion regarding negligence is based on *all* of KPMG's work, including work in 2006 and 2007 that is beyond the scope of plaintiffs' claim here, which is limited to the allegedly false 2005 audit opinions.

[5] The examiner's report is attached as Exhibit 1 to the Supplemental Request for Judicial Notice in Support of Motion to Dismiss the Second Amended Consolidated Class Action Complaint filed by Defendants Brad A. Morrice, Edward F Gotschall, and Patti M. Dodge, Doc. # 280 (June 2, 2008).

10

1   2007).  Moreover, the bankruptcy code under which the examiner operated, requires

2   reporting of any facts pertaining to "fraud," "dishonesty," or "misconduct."  *See* 11

3   U.S.C. § 1106(a)(4)(A).

4           Plaintiffs also seek to avoid the fact that the examiner's findings are

5   inconsistent with KPMG's scienter by contending that the complaint does not rely "in

6   any way" on the examiner's *conclusions*.  (Opp'n 67.)  But that is not true: plaintiffs

7   repeatedly rely on the examiner's conclusions (e.g., the alleged violations of GAAP

8   and GAAS).  Plaintiffs ignore only conclusions (and facts) that negate the inference of

9   scienter they must establish to avoid dismissal.  Because plaintiffs' scienter allegations

10  rely exclusively on the examiner's report, which does not give rise to an inference that

11  KPMG acted intentionally or "deliberately recklessly" with respect to its 2005

12  opinions, Count Seven should be dismissed.

13          Indeed, Count Seven also should be dismissed because the complaint is replete

14  with "omissions and ambiguities," which the Supreme Court in *Tellabs* held "count

15  against inferring scienter."  127 S. Ct. at 2510.  In light of plaintiffs' tactic of

16  incorporating only selected portions of the examiner's report that are supportive of a

17  finding of scienter, and omitting the rest,[6] the Court should, consistent with *Tellabs*,

18  hold that these omissions and ambiguities are so pervasive as to completely

19  undermine any inference of scienter.

20

21  _____

22  [6] For example, in addition to omitting the examiner's conclusion that KPMG's
    conduct may support only a claim for negligence, and not fraud, plaintiffs also omit

23  his conclusions that some of the alleged accounting errors were immaterial or caused
    New Century to *understate*, not overstate, its 2005 income.  (*See* KPMG Mem. 18,

24  22–25.)  Plaintiffs also create certain ambiguities, such as by not clearly identifying
    that certain of their allegations involve events that occurred well *after* KPMG issued

25  its 2005 audit opinions.  (*See, e.g.*, Compl. ¶ 529 (alleging that the new CFO

26  "immediately" discovered the allegedly deficient repurchase reserve but omitting that
    this discovery was in late *2006*, and the new CFO found no material errors in the 2005

27  reserve); *see also id.* at ¶¶ 90, 94.)

28                                            11

1
2

**B.    Plaintiffs' Allegations Do Not Create a Strong Inference that KPMG Acted with Scienter**

3    Even taken at face value, plaintiffs' scienter allegations do not give rise to a

4  strong inference that KPMG committed fraud.  To the contrary, they show KPMG's

5  engagement team repeatedly consulted with firm specialists rather than ignore difficult

6  issues; KPMG resisted its client's attempt to influence who the engagement partner

7  should be; and the audit team comprised competent auditors.  Moreover, the alleged

8  accounting errors plaintiffs allege in 2005 were highly judgmental and far from

9  obvious.  Indeed, the new CFO who joined New Century in late 2006 and whom

10  plaintiffs tout as having "rapidly discover[ed]" the problems with New Century's

11  accounting (Opp'n 82), did not make any finding of material errors in New Century's

12  *2005* financial statements.  Finally, that many of plaintiffs' allegations concerning

13  alleged GAAP and GAAS violations involve *immaterial* adjustments, or resulted in an

14  *understatement* of the Company's 2005 earnings, renders plaintiffs' scienter theory

15  with respect to such alleged errors not "cogent" and eliminates any possible finding

16  that an inference of scienter is "at least as compelling" as the inference that KPMG

17  did not act fraudulently.  *See Tellabs*, 127 S. Ct. at 2504–05.

18
19

**1.    Plaintiffs' allegations that KPMG was "unduly willing to acquiesce" do not raise a strong inference of scienter**

20    Plaintiffs' scienter theory centers on their assertion that KPMG was "unduly

21  willing to acquiesce" in the Company's decisions, and that KPMG's alleged

22  acquiescence led to alleged GAAP violations.  (Compl. ¶ 516; Opp'n 5, 12, 73–74,

23  77–78.)  Plaintiffs advance this theory notwithstanding the well-established authority

24  holding that an accounting firm "will rarely, if ever, have any rational economic

25  incentive to participate in its client's fraud."  *Reiger v. Price Waterhouse Coopers,*

26  *LLP*, 117 F. Supp. 2d 1003, 1007 (S.D. Cal. 2000),  *aff'd sub nom. DSAM Global*

27  *Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).

28

12

Plaintiffs' allegation of "acquiescence" is that the engagement team allegedly did not follow the advice of KPMG specialists with regard to two areas, hedge accounting and residual interest discount rates. This argument is faulty because the fact that the engagement team repeatedly consulted specialists is inconsistent with an inference of scienter and with the conclusion that plaintiffs ask the Court to draw. The far more plausible inference based on all the facts[7] is that the use of specialists (who raised issues that were resolved) is evidence of due care, not intentional misconduct or deliberate recklessness.

Plaintiffs state that KPMG argued that the alleged hedge accounting error "was too small" to support a scienter inference. (Opp'n 78.) Actually, KPMG demonstrated that the circumstances related to this accounting error were given careful attention by the audit team as well as by KPMG's internal specialists and the Firm's Department of Professional Practice and the error identified was ultimately deemed immaterial, a conclusion not disputed by the examiner. (*See* KPMG Mem. 17–18.) KPMG also demonstrated that the error actually *lowered* the Company's 2005 earnings, and if corrected in 2005 would have increased earnings by millions of dollars.[8] (*Id.*) Ignoring this irrefutable fact negating scienter, plaintiffs nevertheless

---

[7] As the Ninth Circuit noted in *Corinthian*, the requirement of reading a complaint in its entirety "cuts both ways," which means that a "plaintiff cannot avoid dismissal by reliance on an isolated statement that stands in contrast to a host of other insufficient allegations." 2008 WL 2853402, at *14.

[8] Plaintiffs also do not dispute that if there was any error in the Company's Allowance for Loan Losses (ALL), it was *also overstated* in 2005 and thus cannot be reconciled with their theory that earnings were fraudulently overstated in 2005. (KPMG Mem. 23–24.) Their new argument—not supported by any allegation in the complaint—that the excess reserve could be used as a "cookie jar" to smooth earnings (*see* Opp'n 79) manufactures a hypothetical "problem" that never occurred. More fundamentally, plaintiffs' argument is specious: having alleged that it was wrong not to adjust the ALL (Compl. ¶ 523), plaintiffs now suggest that it may have been improper to adjust the ALL.

13

1  argue that the incident is "highly probative" of KPMG's undue willingness to

2  acquiesce in the Company's accounting.[9]  (Opp'n 79.)  However, plaintiffs fail to

3  reconcile their new argument that KPMG acquiesced in allowing the Company to

4  *lower* its earnings with their overall theory that KPMG's scienter turns on its having

5  allegedly acquiesced in allowing the Company to fraudulently *inflate* its earnings.  *See*

6  *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 372 (D.N.J. 2007) (no inference of

7  scienter "in view of the fact that these GAAP violations resulted in more-often-than-

8  not understatements of [the company's earnings].").

9        Plaintiffs also argue that KPMG "repeatedly disregarded" the concerns of its

10  internal specialist regarding the discount rates used by the Company to value its

11  residual interests.  (Compl. ¶ 518.)  In their complaint and in their response, however,

12  plaintiffs completely ignore the examiner's assertion that KPMG's internal specialist

13  regarded the Company's discount rate as "at the low end of the range" – not outside

14  the range.  (*Id.* at ¶ 232.)[10]  The examiner's report thus refutes plaintiffs' allegation.

15        **2.    Plaintiffs' allegation that KPMG failed to staff its 2005 audits**
16        **with auditors of sufficient experience does not raise a strong**
              **inference of scienter**
17

18        Plaintiffs repeat the examiner's assertions regarding KPMG's audit staffing

19  (Compl. ¶¶ 520–22; Opp'n 5, 12, 81–92) despite the absence of any authority that an

20

21  [9] Plaintiffs misleadingly cite *Central Laborers' Pension Fund v. SIRVA, Inc.*, 2006
    WL 2787520, at *8–9 (N.D. Ill. Sept. 22, 2006), to suggest that scienter may be
22  inferred from understated income.  (*See* Opp'n 79.)  However, plaintiffs' citation
    discusses *materiality* under Section 11 and has nothing to do with scienter.
23
    [10] This is another instance where plaintiffs' purposeful ambiguity should weigh
24  against scienter.  The specialists' involvement in assisting the audit team to review the
    residual interests in the 2005 audit is, by definition, a single consultation.  Plaintiffs
25  can only create an argument about purported "repeated" instances of disregarding the
    specialists by lumping into the mix later consultations that occurred in unaudited
26  quarterly reviews in 2006 which have no relevance to KPMG's scienter at the time of
    the 2005 audit.
27

28                                             14

1   auditor's staffing decisions can raise a strong inference of scienter.[11]  Plaintiffs'

2   argument that KPMG's refusal to replace its assigned 2005 engagement partner—who

3   took over the audit when the prior engagement partner rotated off the engagement

4   after five years to comply with the Sarbanes-Oxley law (Examiner's Report 396)—is

5   evidence of scienter, is misplaced.  To the contrary, this is strong evidence that KPMG

6   did *not* acquiesce to client demands and that it was skeptical of (and resistant to) client

7   attempts to influence engagement staffing.[12]  Moreover, the senior auditors on the

8   2005 audit team had decades of experience with financial institutions and years of

9   experience with mortgage lending companies.  (*See* KPMG Mem. 20–21.)

10        Plaintiffs also suggest that the audit team's work on "critical issues . . . was

11  done by first-year auditors" (*see* Opp'n 82), but this overlooks the fact that audit work

12  (like legal brief writing) involves several tiers of work and review by more

13  experienced professionals, and also that the audit team consulted extensively with

14  internal specialists in critical audit areas.  (*See* Examiner's Report 193, 461, 475–76.)

15  Finally, plaintiffs' repeated insinuations about an auditor who worked on the review

16  of the Company's internal controls—"a U.K. auditor completely unfamiliar with U.S.

17  GAAP and Sarbanes-Oxley ["SOX] requirements" (*see* Opp'n 5, 7, 82)—are

18  misleading.  SOX became effective only a year earlier (effective for fiscal years

19  ending after November 15, 2004), leaving every U.S. auditor in roughly the same

20  position and, in any event, plaintiffs' allegations ignore the important role played by

21  other more senior auditors and specialists in this work.  In sum, plaintiffs' allegations

22  _____

23  [11] Plaintiffs attempt to distinguish *Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370,
    397 (S.D.N.Y. 2007), by arguing that their allegations are less "conclusory and

24  implausible" than those in *Scottish Re*.  (Opp'n 82.)  But the scienter allegations in
    *Scottish Re* were insufficient because they provided no indication that the "junior"

25  auditors "were improperly trained or that they performed inadequately."  *See Scottish*

26  *Re*, 524 F. Supp. 2d at 397.  Plaintiffs' allegations are deficient for the same reasons.
    [12] Had KPMG replaced its chosen audit partner at New Century's request, plaintiffs no

27  doubt would be arguing that doing so was evidence of scienter.

28                                        15

---

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-cv-00931-DDP (FMOx)

1  regarding KPMG's audit staffing are misleading, unsupported by law, and do not

2  come close to establishing that the 2005 audit was "so deficient that the audit

3  amounted to no audit at all."  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407,

4  1426 (9th Cir. 1994).

### 3.    Plaintiffs' argument that KPMG ignored "red flags" does not give rise to a strong inference of scienter

7  Plaintiffs assert that KPMG intentionally or with deliberate recklessness

8  ignored "red flags."  Plaintiffs' own authority requires that for "red flags" to be

9  relevant to scienter, they must show that the auditor "was aware of, yet chose to

10  disregard, the impropriety of [accounting decisions]."  *Ponce v. SEC*, 345 F.3d 722,

11  732–33 (9th Cir. 2003).[13]  None of plaintiffs' alleged "red flags," even if true, shows

12  that KPMG knew of and disregarded accounting improprieties, let alone demonstrates

13  an "egregious refusal to see the obvious or investigate the doubtful," and none shows

14  that KPMG acted deliberately recklessly or intended to commit fraud.

15  Plaintiffs repeatedly reference the Company's alleged $188 million repurchase

16  claims backlog (*see* Opp'n 6, 70, 73), but the amount of claims cannot be translated

17  directly into a reserve and plaintiffs do not dispute that the examiner proposed only an

18  $8.3 million adjustment to the 2005 financial statements for the entire backlog (*see*

19  Examiner's Report 222).  This amount would have been *immaterial* to the Company's

20  2005 financial statements given the Company's reported net earnings and cannot be a

---

[13] In each of plaintiffs' other cited cases the court also concluded that the auditor had *actual knowledge* of material accounting errors in the client's financial statements. *See In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d 1018, 1044 (C.D. Cal. 2003) (auditor "knew that the transactions and the accounting of them were improper"); *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 475 (S.D.N.Y. 2004) (auditor "not only had knowledge of, but actively facilitated, [the] accounting fraud").

16

1   "red flag."[14]  (*See* Ex. C at 169 (net earnings were $416 million, thus the backlog

2   "error" was less than 2% of earnings).)[15]  Because this alleged error was immaterial, it

3   is not a "red flag," let alone something that could give rise to an inference that KPMG

4   was deliberately reckless or engaged in intentional misconduct.  *See Reiger*, 117 F.

5   Supp. 2d at 1009 (failure to investigate transactions amounting to less than 3% of

6   revenues did "not raise even a weak inference of scienter").  Plaintiffs also cannot

7   dispute that the repurchase backlog became material *only in 2006*.  (*See* Examiner's

8   Report 213 ("explosive growth" in the backlog occurred in 2006); New Century Press

9   Release (Feb. 7, 2007)[16] (the Company's methodology did not consider "the

10  increasing pace of repurchase requests that occurred in 2006").)  Such an attempt to

11  plead "fraud by hindsight" is not permitted.  *See In re Vantive Corp. Sec. Litig.*, 283

12  F.3d 1079, 1084–85 (9th Cir. 2002).[17]

13

14  [14] Plaintiffs respond to the fact that the backlog had an immaterial impact on the year-
    end 2005 financial statements by noting that the examiner determined that the
15  cumulative impact of the alleged GAAP violations due to the backlog and *other issues*
    was $21,320,000.  (Opp'n 70.)  This argument cannot save plaintiffs' scienter theory,
16  however, because the examiner acknowledges that he arrived at this amount by relying
    on a different set of assumptions that he applied retroactively to the 2005
17  reserves, and, as discussed below, his report makes no explanation for the largest
18  component of his adjustment (*i.e.*, LOCOM).  (Examiner's Report 221–22.)
    [15] Exhibit C is included with the Request for Judicial Notice filed by KPMG
19  concurrently with its motion to dismiss.
20  [16] The February 7 press release is attached as Exhibit F to the Request for Judicial
    Notice in Support of Motion to Dismiss Plaintiffs' Second Amended Consolidated
21  Class Action Complaint by the Underwriter Defendants, Doc. # 289 (June 2, 2008).
22  [17] Similarly, plaintiffs do not dispute that any 2005 audit adjustment to the Company's
23  mortgage servicing rights ("MSRs") would have been immaterial, and although they
    persist in arguing that there was an alleged "red flag" in the Company's goodwill (*see*
24  Opp'n 80), they do not dispute that the examiner never even found an error in
25  goodwill accounting (KPMG Mem. 25–26).  Plaintiffs fail to explain how nonexistent
26  and immaterial errors can support their theory that KPMG "acquiesced" in fraud.  *See*
27  *Intelligroup*, 527 F. Supp. 2d at 349 (no inference of scienter where plaintiffs'
    allegations of GAAP violations "present a sporadic see-saw of arguments").

28                                    17

1    Plaintiffs' attempt to argue that KPMG failed to find errors in 2005 "relating to

2  the interest recapture and Lower of Cost or Market [LOCOM] components of the

3  reserve calculation" (Opp'n 70) is also fraud by hindsight.  The omitted interest

4  recapture component was *de minimis* at 2005 (Examiner's Report 222) and neither the

5  plaintiffs nor the examiner explain what the error was in the 2005 LOCOM valuation.

6  Such equivocal allegations cannot support a strong inference of scienter, especially

7  where the examiner's report states that there was "no persuasive evidence" of "any

8  purposeful failure to calculate the repurchase reserve and LOCOM correctly."  (*See*

9  Examiner's Report 179.)

10    With respect to residual interests, Plaintiffs' allegations that KPMG "knew" that

11  the Company's valuation models and documentation were unreliable (Opp'n 77–79)

12  overlook the examiner's finding that there was nothing fraudulent about the continued

13  use of those models.  (*See* Examiner's Report 273.)  Moreover, plaintiffs' argument

14  that the Company's models used discount rate assumptions that the examiner believes

15  were too low completely ignores the Company's detailed disclosures in its financial

16  statements regarding the residual interests valuation—which disclosed the precise

17  discount rates used and also showed how use of higher rates would reduce the values

18  (*see* Ex. C at 123, 192)—and completely ignores the caselaw holding that such

19  disclosures negate any inference of scienter.  (*See* KPMG Mem. 19 n.9.)

>    **4.**    **Plaintiffs' allegations concerning the Company's alleged**
>              **internal controls deficiencies do not raise a strong inference of**
>              **scienter as to KPMG**

23    Plaintiffs also argue that a strong inference of scienter should be found because

24  "KPMG's unqualified audit opinion regarding New Century's internal controls was

25  contrary to KPMG's own contemporaneous knowledge of serious deficiencies in those

26  controls."  (Opp'n 81.)  Plaintiffs' argument is highly misleading.  Although they refer

18

1   to "serious deficiencies"—which characterization is itself highly questionable[18]—they

2   do not allege or argue that KPMG identified "material weaknesses" in New Century's

3   internal controls during its 2005 audit.  "Deficiencies," even if "serious," are not

4   required to be reported to the public as part of an internal controls audit under SOX

5   § 404, which is what KPMG performed here.  Only a "material weakness" must be

6   disclosed.  *See* Final Rule: Management's Reports on Internal Control Over Financial

7   Reporting and Certification of Disclosure in Exchange Act Periodic Reports, SEC

8   Release No. 33-8238, 68 Fed. Reg. 36636 (June 5, 2003) (threshold for reporting that

9   internal control over financing reporting is effective is the absence of any material

10  weakness); *Monroe v. Hughes*, 31 F.3d 772, 775 (9th Cir. 1994) (pre-SOX, holding

11  that not even "material weaknesses" that had to be reported to the company, was

12  required to be reported to the public by an auditor).  Thus, "serious deficiencies," even

13  if they existed, are irrelevant.  They cannot establish that KPMG's internal controls

14  opinion was false, and necessarily cannot give rise to a strong inference that KPMG

15  acted with scienter in issuing that opinion.[19]

16

17  _____

    [18] In fact, a careful reading of the examiner's report demonstrates that many of

18  plaintiffs' alleged deficiencies were remediated, or were not deficiencies at all.  For

19  example, plaintiffs allege deficient internal controls because the Company's
    Secondary Marketing Department allegedly did not communicate with its Accounting

20  Department regarding the repurchase backlog (Compl. ¶ 230), but inconsistently also
    allege that the Company's Accounting Department and CFO were fully aware of the

21  repurchase backlog (*id.* at ¶¶ 76, 92–93).  Moreover, contrary to their allegations, the
    Company did have a repurchase reserve accounting policy memo, albeit in draft form,

22  that led KPMG initially to identify an inconsequential deficiency that later was

23  determined to be remediated.  (*See* Examiner's Report 194, 401–402.)  In addition,
    New Century had a detailed policy manual relating to its receipt and processing of

24  repurchase requests.  (*Id.* at 404.)

25  [19] Plaintiffs acknowledge that KPMG itself identified some of these deficiencies

26  (related to the Allowance for Loan Repurchase Losses and the valuation of Residual
    Interests) in 2004, 2005, and 2006 and alerted management to their existence.  (Opp'n

27  81; *see also* Compl. ¶ 231).)  This refutes, rather than supports, any inference of

28  _____
                                    19

At most, plaintiffs have alleged that, in their view, KPMG *should* have detected a material weakness in New Century's internal controls, but did not. This, however, is simply an allegation that KPMG failed to act with due care, which is not actionable under Section 10(b). *See DSAM*, 288 F.3d at 390 (disregard of documents showing improper revenue recognition was "ordinary carelessness" that did not give rise to a strong inference of scienter).

## CONCLUSION

For the reasons set forth above and in KPMG's opening memorandum, KPMG respectfully requests that the Court dismiss the Complaint as to KPMG. Plaintiffs have had multiple opportunities to amend their deficient complaint and have not met the standard required as against KPMG. Particularly as it relates to loss causation, no pleading amendment could change the fundamental fact that the public disclosures in February and March 2007 that caused plaintiff's losses disclose nothing about KPMG's allegedly deficient 2005 audit. As in *Corinthian*, 2008 WL 2853402, at *16, the complaint should be dismissed with prejudice.

Dated: July 28, 2008                    Respectfully submitted,

                                        KPMG LLP


                                        By: /s/ _____
                                              Michael C. Kelley
                                              Attorneys For Defendant KPMG LLP

---

scienter. *See Batwin v. Occam Networks*, 2008 WL 2676364, at *18 (C.D. Cal. July 1, 2008) (dismissing Section 10(b) claim against auditors: allegations "that the Auditor defendants 'turned a blind eye' to the accounting problems" are "belied by allegations in the complaint that [the Auditor defendants] identified and informed management of internal control deficiencies").

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-cv-00931-DDP (FMOx)