Michael C. Kelley (SBN 090062)
mkelley@sidley.com
Jose F. Sanchez (SBN 161362)
jose.sanchez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, 40th Floor
Los Angeles, California 90013
Telephone:    (213) 896-6000
Facsimile:    (213) 896-6600

Geoffrey M. Ezgar (SBN 184243)
gezgar@sidley.com
Robert B. Martin III (SBN 235489)
rbmartin@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone:    (415) 772-1200
Facsimile:    (415) 772-7400

Attorneys For Defendant KPMG LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NEW CENTURY | ) Consolid. Case No. 2:07-CV-00931-DDP<br>) (FMOx)<br>)<br>) CLASS ACTION<br>)<br>) **DEFENDANT KPMG LLP'S REPLY**<br>) **MEMORANDUM IN SUPPORT OF ITS**<br>) **MOTION TO STRIKE PORTIONS OF**<br>) **PLAINTIFFS' SECOND AMENDED**<br>) **CONSOLIDATED CLASS ACTION**<br>) **COMPLAINT**<br>)<br>)<br>) Date:   September 8, 2008<br>) Time:   10:00 a.m.<br>) Before: Honorable Dean D. Pregerson |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

    I.    EXCERPTS FROM THE NEW CENTURY BANKRUPTCY EXAMINER'S REPORT SHOULD BE STRICKEN..........................2

        A.    Plaintiffs' Reliance on Uncorroborated Third-Party Assertions, Which They Do Not Adopt as Their Own, Is Improper and Those Assertions Are Immaterial as a Matter of Law. ..................................................................................2

        B.    The Court Should Strike References to the Examiner's Report Because They Are Incomplete and Misleading.............10

    II.    THE COURT SHOULD STRIKE EXHIBITS D AND E BECAUSE PLAINTIFFS CONCEDE THAT THEY DO NOT COMPLY WITH THE COURT'S JANUARY 31, 2008 ORDER ....14

CONCLUSION....................................................................................................15

i

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOX)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Bally Total Fitness Sec. Litig.*,
  2006 WL 3714708 (N.D. Ill. July 12, 2006) ....................................................... 12

*Citizens Legal Enforcement & Restoration v. Kempthorne*,
  2007 U.S. Dist. LEXIS 70454 (S.D. Cal. Sept. 24, 2007) ................................... 2

*In re Connetics Corp. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 9634 (N.D. Cal. Jan. 29, 2008) ............................... 4, 5, 7

*In re Daou Sys., Inc. Sec Litig.*,
  411 F.3d 1006, 1015 (9th Cir. 2005) .................................................................. 4

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) ................................................................ 12

*De La Fuente v. DCI Telecomms., Inc.*,
  259 F. Supp. 2d 250 (S.D.N.Y. 2003) ................................................................ 6

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) .................................. 1

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993) ............................................................................ 2

*Fleet Nat'l Bank v. Boyle*,
  2005 WL 2455673 (E.D. Pa. Sept. 12, 2005) ..................................................... 9

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994) ............................................................................... 8

*Geinko v. Padda*,
  2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002) ................................... 4, 6

*Interpool, Inc. Sec. Litig.*,
  2005 WL 2000237 (D.N.J. Aug. 17, 2005) ....................................................... 13

*Kamerman v. Steinberg*,
  113 F.R.D. 511 (S.D.N.Y. 1986) ........................................................................ 8

1 | *Ledford v. Rapid-American Corp.*,
2 |    1988 U.S. Dist. LEXIS 79 (S.D.N.Y. Jan. 8, 1988) ............................................... 5

3 | *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
4 |    513 F.3d 702 (7th Cir. 2008) ........................................................................... 1, 4

5 | *In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................. 7
6

7 | *In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ............................................................................ 5
8

9 | *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   2008 WL 2853402 (9th Cir. July 25, 2008) ........................................................... 1

10 | *Morse v. Abbott Labs.*,
11 |    1991 WL 83148 (N.D. Ill. May 7, 1991) ............................................................... 8

12 | *Newby v. Enron Corp.*,
13 |    2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005) ........................... 8, 9, 10

14 | *In re Ramada Inn Sec. Litig.*,
15 |    550 F. Supp. 1127 (D. Del. 1982) ......................................................................... 8

16 | *In re Spiegel, Inc. Sec. Litig.*,
   382 F. Supp. 2d 989 (N.D. Ill. 2004) ..................................................................... 7
17

18 | *In re Spiegel, Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 15776 (July 29, 2005) ....................................................... 7
19

20 | *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007) ................................................. 1

21 | *Tracinda Corp. v. DaimlerChrysler AG*,
22 |    197 F. Supp. 2d 42 (D. Del. 2002) ........................................................................ 7

23 | *In re Tyco Int'l, Ltd. Sec. Litig.*,
24 |    185 F. Supp. 3d 102 (D.N.H. 2002). .................................................................... 12

25 | *In re WRT Energy Sec. Litig.*,
26 |    1999 WL 178749 (S.D.N.Y. Mar. 29, 1999) ......................................................... 9

27 | *Wu Group v. Synopsys, Inc.*,
28 |    2005 U.S. Dist. LEXIS 42351 (N.D. Cal. Aug. 10, 2005) ................................... 13

iii

## STATUTES AND REGULATIONS

11 U.S.C. § 1106(a)(4)(A) ................................................................................................11

Fed. R. Civ. P. 11 ....................................................................................................*passim*

Fed. R. Civ. P. 12(f) ........................................................................................................2

iv

DEFENDANT KPMG LLP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOX)

# INTRODUCTION

On two occasions in the last four years, the Supreme Court has construed provisions in the Private Securities Litigation Reform Act (the "PSLRA" or "Reform Act") in a manner intended to give effect to the congressional intent of curbing abuses in private securities fraud actions. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* – U.S. –, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007) (establishing standard for pleading "strong inference" of scienter and noting that the Reform Act implemented substantive and procedural controls "to curb perceived abuses of the 10(b) private action"); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (tightening standard for showing loss causation in 10(b) private action and noting that a less rigorous rule would bring about the very harm the PSLRA seeks to avoid). Among the abuses addressed by Congress and noted by the Court is the practice of "targeting of deep-pocket defendants" (such as accounting firms). *Tellabs*, 127 S. Ct. at 2508. The Reform Act not only imposed heightened pleading requirements to address such abuses, but also required more vigorous enforcement of Federal Rule of Civil Procedure ("FRCP") 11. *Id.*

Enforcement of these statutory provisions by trial courts consistent with the Supreme Court's construction of them constitutes an important "gate-keeping" function that the Supreme Court recognized as necessary to implement congressional policy, *id.* at 2512 and n.8, and that the Ninth Circuit also recently emphasized. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 2008 WL 2853402, at *8 (9th Cir. July 25, 2008) ("By requiring specificity, [the PSLRA] prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations . . . .")

KPMG's Motion to Strike seeks to assist this Court in performing its

1

important gate-keeping function in this case. It is a motion that is well supported by caselaw, including from courts within the Ninth Circuit, and should be granted.

## ARGUMENT

### I. EXCERPTS FROM THE NEW CENTURY BANKRUPTCY EXAMINER'S REPORT SHOULD BE STRICKEN[1]

#### A. Plaintiffs' Reliance on Uncorroborated Third-Party Assertions, Which They Do Not Adopt as Their Own, Is Improper, and Those Assertions Are Immaterial as a Matter of Law

In its opening memorandum, KPMG demonstrated that plaintiffs have improperly copied from the examiner's report without performing their own independent investigation to validate the examiner's assertions as required by FRCP 11. (KPMG Strike Mem. 4–5 (citing cases).) Indeed, plaintiffs do not even adopt the examiner's assertions as their own factual allegations (nor do they address this deficiency in their opposition). Repeatedly, plaintiffs begin lengthy allegations in the complaint that span several pages by stating, "the Examiner reports," "the Examiner reported," or "the Examiner noted." (*See, e.g.*, Compl. ¶¶ 221, 224, 225, 228, 232.) Plaintiffs thus merely copy some of the examiner's assertions into the complaint without adopting them as plaintiffs' own allegations based upon plaintiffs' own investigation.

In their opposition memorandum ("opposition" or "Opp'n"), plaintiffs do not contend that they independently verified the assertions they have copied from the examiner's report or even that they have adopted them as their own. They also do

---

[1] Plaintiffs incorrectly suggest that KPMG's motion to strike was not brought pursuant to FRCP 12(f). (Opp'n 119 ("[r]ather than moving pursuant to Rule 12(f) . . ."), 125 (discussing "KPMG's Rule 11 motion").) Plaintiffs are wrong. (*See* KPMG's Mot. to Strike at 1, 3.) Whether to grant a motion to strike is "within the sound discretion of the trial court." *Citizens Legal Enforcement & Restoration v. Kempthorne*, 2007 U.S. Dist. LEXIS 70454, at *6–7 (S.D. Cal. Sept. 24, 2007); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

2

DEFENDANT KPMG LLP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE
PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOx)

not dispute that their claim against KPMG under Section 10(b) depends entirely on the examiner's assertions selectively incorporated into the complaint, and that the investigation completed before the release of the examiner's report did not support an assertion of a fraud claim against KPMG.[2]  They argue, however, that the examiner was "a reliable source" on whom they should be entitled to rely for purposes of their complaint.  They also argue that they performed an investigation—albeit not one that supported suing KPMG for fraud under Section 10(b)—and essentially argue that because they did some of their own investigation, that should be enough to save the rest of their complaint.  Finally, plaintiffs attempt to distinguish KPMG's authority and to argue that the use of a bankruptcy examiner's report in a securities fraud complaint is "well accepted."  None of these arguments has merit.

    Plaintiffs primarily defend their use of the examiner's report by contending that the examiner is a sufficiently "reliable source" for their allegations.  (Opp'n 118, 119.)  Plaintiffs' position, in other words, is that merely *reading* the examiner's report satisfies their FRCP 11 obligation to conduct an appropriate investigation to support making allegations based solely on that report.  Plaintiffs are wrong.[3]

---

[2] Plaintiffs previously filed two consolidated complaints, the latter of which was filed on March 24, 2008.  Neither prior complaint included claims of fraud against KPMG under Section 10(b) or offered any allegations of KPMG's scienter.  In fact, plaintiffs argued strenuously that the earlier claims against KPMG sounded only in negligence.  (Pls.' Opp'n to Mots. to Dismiss Consolid. Class Action Compl. 78–79, Doc. # 218 (Dec. 14, 2007).)  The examiner's report was released on March 26, 2008, and shortly thereafter, plaintiffs filed a third complaint on April 30, 2008, which for the first time included a claim against KPMG under Section 10(b).

[3] KPMG vigorously contests the conclusions and assertions in the examiner's report, but must accept them at face value for this motion.  Moreover, plaintiffs' suggestion that the report is reliable because KPMG did not "make any objections

3

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE
PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOX)

1  Plaintiffs cite no authority to support their "reading someone else's report"
2  theory of investigation. They primarily rely on cases that involve confidential
3  informants, which cases hold that allegations based on interviews with informants
4  may support a claim if the complaint's allegations establish that the informant
5  likely possessed the information alleged. (Opp'n 119, *citing In re Daou Sys., Inc.*
6  *Sec Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005) and *Makor Issues & Rights, Ltd. v.*
7  *Tellabs, Inc.*, 513 F.3d 702, 711–12 (7th Cir. 2008)). These cases—which presume
8  that the attorney or his agent has actually interviewed the informant—do not
9  suggest that the informant can be someone without personal knowledge of his own,
10 but only someone who spoke with people who did have personal knowledge. They
11 certainly do not hold that merely reading about someone else's investigation is
12 sufficient under FRCP 11 to make allegations based on that other investigation.

13  Indeed, as KPMG established in its opening memorandum, an attorney may
14 not piggy-back on someone else's investigation *even if* there are reasons to believe
15 that the investigator did a good job. For example, courts do not allow plaintiffs to
16 state securities fraud claims merely by copying allegations that the SEC has made
17 – even though such allegations are presumably being made based on an adequate
18 investigation. See *In re Connetics Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 9634,
19 *22–23 (N.D. Cal. Jan. 29, 2008) (striking allegations that were based solely on
20 SEC complaint and not otherwise independently investigated, and in turn
21 dismissing claim under Section 10(b) that was based on those allegations) (citing
22 *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989)); *see also*
23 *Geinko v. Padda*, 2002 U.S. Dist. LEXIS 3316, at *18–22 (N.D. Ill. Feb. 26, 2002)
24 (dismissing complaint where allegations were copied from SEC complaint and not

---

to the Examiner's Report in the Bankruptcy Court" (Opp'n 126 n.91) is a red
herring because KPMG was not (and is not) a party in the bankruptcy, and had no
standing to take any position on the report in that proceeding.

4

1  verified by the plaintiffs' independent investigation); *Ledford v. Rapid-American*
2  *Corp.*, 1988 U.S. Dist. LEXIS 79, at *3 (S.D.N.Y. Jan. 8, 1988) (striking portion of
3  complaint referencing the results of a probable-cause determination by a state
4  agency); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76,
5  78 (S.D.N.Y. 2003) (holding that "references to preliminary steps in litigation and
6  administrative proceedings that did not result in an adjudication on the merits or
7  legal or permissible findings of fact are, as a matter of law, immaterial under Rule
8  12(f)").

9  Plaintiffs attempt to distinguish *Connetics* by asserting that "the allegations
10 were not verified by any independent investigation" whereas "[h]ere, Plaintiffs
11 have conducted an independent and diligent investigation and cited passages from
12 the examiner's report which are consistent with Plaintiffs' investigation." (Opp'n
13 124 n.89.)  This argument must fail.  In fact, plaintiffs in this case are in precisely
14 the same position as the *Connetics* plaintiffs.[4]  The complaint was brought against
15 the company and six individual defendants.  *Connetics*, 2008 U.S. Dist. LEXIS
16 9634, at *7.  The plaintiffs contended "that the SEC complaint is one of many
17 bases for plaintiffs' complaint." *Id.* at 21.  They did not, however, contend "that
18 they conducted independent investigation into the facts alleged in the SEC
19 complaint." *Id.*  Because it was on *those* facts that their Section 10(b) claim
20 against two defendants was based, Judge Illston dismissed their complaint against
21 those two defendants after striking their allegations based on the SEC complaint.
22 *Id.* at *22–23.

23 As in *Connetics*, plaintiffs here claim to have conducted an investigation.
24 But they do *not* claim to have independently corroborated the assertions they have

---

[4] In *Connetics*, the lead plaintiff was also represented by lead plaintiffs' counsel here, Bernstein Litowitz Berger & Grossman LLP.  See *Connetics*, 2008 U.S. Dist. LEXIS 9634, at *1.

5

copied from the examiner's report to allege KPMG's scienter. And, just as the *Connetics* plaintiffs' claims against two defendants were based solely on allegations copied from the SEC complaint, here plaintiffs' Section 10(b) claim against KPMG is based solely on allegations copied from the examiner's report.[5] The allegations against KPMG that are merely copied from the examiner's report should be stricken for the same reasons.

Plaintiffs likewise attempt to distinguish *Geinko*, which also held that copying allegations from an SEC complaint did not satisfy FRCP 11 and could not support a claim under Section 10(b), 2002 U.S. Dist. LEXIS 3316, at *18–22, on the ground that there "plaintiffs merely recited allegations from SEC and other complaints and did not conduct an independent investigation" (Opp'n 124 n.89). But the *Geinko* plaintiffs had conducted an investigation, albeit not one that independently corroborated the allegations they had copied from the SEC complaint. 2002 U.S. Dist. LEXIS 3316, at *7 ("in addition to their own investigation, plaintiffs' allegations are based upon facts alleged by other public and private litigants"). That is no different from what plaintiffs did here. *De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003), upon which plaintiffs rely (Opp'n 120 n.86), is distinguishable because in that case,

---

[5] The only allegation of scienter that does not come directly and exclusively from the examiner's report is an allegation from a confidential source (34) that KPMG declined to discuss its audit work with the Audit Committee in 2007 and eventually resigned. (Compl. ¶ 530.) Whatever investigation plaintiffs performed to support this allegation, it has nothing to do with the portions of the examiner's report copied into the complaint and does not even remotely suggest that plaintiffs have independently investigated and corroborated the assertions they have copied from the report. This allegation also is insufficient to support any inference of scienter, as plaintiffs themselves recognize (as they did not allege a Section 10(b) claim against KPMG when they added this allegation in ¶ 180 of the amended consolidated complaint filed on March 24, 2008).

unlike here, "every allegation in the complaint was verified by plaintiff's counsel through independent investigation". *De La Fuente*, 259 F. Supp. 2d at 260.[6]

The closest plaintiffs come even to hinting at having independently investigated the findings in the report is the assertion that counsel met with the examiner before his report was released and had an opportunity to observe "the thoroughness of his investigation." (Opp'n 125, n.90.) But this assertion is carefully crafted to avoid implying that any of the examiner's findings were discussed, no doubt because plaintiffs' counsel are aware that the examiner was under a court order that barred him from discussing his findings before the unsealing of this report.[7]

---

[6] Plaintiffs' reliance on the opinion in *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989 (N.D. Ill. 2004), is also unavailing. First, the opinion does not indicate whether the allegations of scienter there were based entirely on the examiner's report (as they are in this case as against KPMG). In such a circumstance, KPMG submits that the approach taken by Judge Illston in *Connetics* is more in line with policies underlying the "formidable" pleading burden plaintiff bear in a case under Section 10(b). *Cf. Corinthian*, 2008 WL 2853402, at *8. Second, the court in *Spiegel* recognized that it was inconsistent with the PSLRA for a securities plaintiff to simply incorporate assertions from an examiner's report without complying with the obligation under the PSLRA to be clear about the basis for a plaintiff's allegations. *Spiegel*, 382 F. Supp. 2d at 1013-14 ("More problematic is the fact that Plaintiffs claim to be relying on the [examiner's] Report as the basis for allegations made on 'information and belief' in accordance with the PSLRA."). The court directed the plaintiffs to file an amended complaint that specified which allegations were made on information and belief and to clarify if the basis for such belief was the Spiegel examiner's report. *Id.* Interestingly, after the plaintiffs filed the amended complaint mandated by the court, KPMG (which was also a defendant in that case) renewed the motion to dismiss the court had previously denied, and the court changed its assessment and dismissed the case against KPMG. *See In re Spiegel, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 15776 (July 29, 2005).

[7] Plaintiffs' counsel are also publicly on record in the bankruptcy as late as March 20, 2008, as protesting the continued sealing of the examiner's report because without access to it they were disadvantaged vis-à-vis the New Century creditors

7

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE
PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOX)

Just as counsel did in *Connetics*, plaintiffs here also argue that they were entitled to rely on hearsay assertions, and they cite several cases concerning the permissibility of referencing media reports in a complaint. (Opp'n 122.) The Court should follow the *Connetics* court here, too, in holding that these cases are inapposite because the plaintiffs in those cases conducted full investigations. *See Connetics*, 2008 U.S. Dist. LEXIS 9634, at *21 (rejecting plaintiffs' reliance on *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000), and explaining that *McKesson* "actually supports defendants' arguments [in support of motion to strike");[8] *see also Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 80–81 (D. Del. 2002) (cited in Opp'n 123) (noting that the newspaper articles cited in the complaint were corroborated by plaintiffs' investigation).[9]

---

committee. *See* Objection of N.Y. State Teacher's Retirement Sys. to the Mot. of the Official Comm. of Unsecured Creditors for an Order Directing the Clerk of the Court to Maintain the Final Report of Michael J. Missal, Examiner, Under Seal, *In re New Century TRS Holdings, Inc.*, No. 07-10416, Doc. # 5438 (Bankr. D. Del. Mar. 20, 2008).

[8] In *McKesson*, the court's acceptance of the use of allegations drawn from newspaper articles to plead scienter was conditioned on the fact that the plaintiffs had conducted an independent investigation corroborating the newspaper reports. 126 F. Supp. 2d at 1272 (cited in Opp'n 122).

[9] The other cases plaintiffs cite concerning media reports (*see* Opp'n 124) involve reliance upon news articles to plead the existence of a material misstatement, not to plead facts raising an inference of scienter. *See Morse v. Abbott Labs.*, 1991 WL 83148, at *2 (N.D. Ill. May 7, 1991) (plaintiffs relied on newspaper articles and their own independent investigation to plead that defendants' failure to disclose FDA reports was material); *Kamerman v. Steinberg*, 113 F.R.D. 511, 514–15 (S.D.N.Y. 1986) (plaintiffs relied on newspaper articles as evidence of material misrepresentations but alleged independent bases for their allegations of scienter); *In re Ramada Inn Sec. Litig.*, 550 F. Supp. 1127, 1134–35 (D. Del. 1982) (holding that reliance on newspaper articles was insufficient to raise an inference of scienter where there was no independent evidence that defendants profited from the alleged fraud; allowing reliance on newspaper articles to show a material misstatement). These cases are irrelevant to the issues here.

In contrast to plaintiffs' cited cases, the Third Circuit affirmed the imposition of FRCP 11 sanctions on attorneys whose complaint relied solely on a Wall Street Journal article and another attorney's complaint. *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1280–81 (3d Cir. 1994). Here, just as in *Garr*, plaintiffs have not demonstrated that they have conducted an independent investigation, as FRCP 11 requires, to corroborate and validate the hearsay assertions of the examiner.

Plaintiffs also argue that, even if they have done nothing independently to investigate and verify the assertions copied from the examiner's report, courts have permitted reliance on bankruptcy examiner's reports. Plaintiffs cite three cases in which the pleadings incorporated allegations drawn from a bankruptcy examiner's report. (Opp'n 120.) In only one of those cases, however, did the court actually consider the issue of whether use of a bankruptcy examiner's report is permissible. *See Newby v. Enron Corp.*, 2005 U.S. Dist. LEXIS 41240 (S.D. Tex. Dec. 22, 2005).[10] In *Newby*, the plaintiffs attached a copy of the examiner's report as an exhibit to the complaint, mitigating concerns about any misleading use of the report. *See id.* at *39 n.20 ("Because Plaintiff has submitted the entire portion of Goldin's report related to RBC Defendants, the Court can view any statement selectively quoted or referenced in the context from which it was drawn to protect against any misrepresentation or misinterpretation."). Here, plaintiffs did not provide the Court with a copy of the examiner's report but did selectively quote from the report in a manner that rendered the use of the report misleading. That defendants have provided the Court with copies of the examiner's report to

---

[10] In the other two cases plaintiffs cite, neither party contested the use of the examiner's report. *See Fleet Nat'l Bank v. Boyle*, 2005 WL 2455673, at *2 (E.D. Pa. Sept. 12, 2005); *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at *13 (S.D.N.Y. Mar. 29, 1999).

9

demonstrate that plaintiffs misuse the report by selective quotation and omissions that mischaracterize the examiner's assertions does not render the plaintiffs' use of the report appropriate.

Plaintiffs further contend that the *Newby* court rejected the argument that an examiner's report cannot be used to support inferences of scienter contrary to the conclusion of the report. (Opp'n 121 n.87.) This argument is based on a misreading of the *Newby* court's holding. In *Newby*, the report concluded that evidence supported an inference that the defendants aided and abetted Enron's officers in breaching their fiduciary duty to shareholders. 2005 U.S. Dist. LEXIS 41240, at *20 n.12. Because aiding and abetting claims require knowing assistance, the examiner's findings were consistent with the inferences of scienter that the plaintiffs asked the court to draw from the report.[11] Here, that is not the case as plaintiffs' allegations are fundamentally inconsistent with the examiner's conclusions. KPMG's motion to strike should be granted.

### B. The Court Should Strike References to the Examiner's Report Because They Are Incomplete and Misleading

KPMG's motion to strike the excerpts from the examiner's report also should be granted because, as KPMG demonstrated in its opening memorandum, with respect to each accounting issue addressed in the complaint, plaintiffs have omitted material assertions of the examiner that rebut the inference of scienter that

---

[11] *Newby* rejected the argument that the bankruptcy examiner's conclusion that the defendants may have knowingly aided and abetted a breach of fiduciary duty foreclosed a federal claim against the same defendants for a primary violation of the securities laws. 2005 U.S. Dist. LEXIS 41240, at *24 n.12. The plaintiffs were not seeking to use the report to support an inference of scienter that the report itself refuted, as plaintiffs here are attempting to do. To the contrary, as KPMG has pointed out, the examiner's report in *Newby*, finding intentional misconduct, was consistent with the purpose for which the plaintiffs sought to use the report. That, decidedly, is not true in this case.

DEFENDANT KPMG LLP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE
PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOX)

plaintiffs invite the Court to draw. (KPMG Strike Mem. 7–13.) KPMG also demonstrated that plaintiffs further omit the fundamental fact that the examiner found no basis to accuse KPMG of any intentional or reckless misconduct. (*Id.* at 7–8.) Plaintiffs concede that the selective incorporation of excerpts from the examiner's report was intentional but offer three wholly unsatisfactory arguments to support it. First, plaintiffs assert that care was taken to include only factual allegations that were consistent with plaintiffs' own investigation. (Opp'n 121 n.87.) Second, plaintiffs assert that excerpts were selected to avoid making the complaint too lengthy. (*Id.*) Third, plaintiffs argue that because they had conducted their own investigation, selection of excerpts from the examiner's report that confirmed their investigation is appropriate. (*Id.* at 118.) None of these arguments has merit.

### 1. Plaintiffs misrepresent the examiner's mandate and his work

In its opening memorandum, KPMG pointed out that, as an overarching matter, plaintiffs' claim that the allegations drawn from the examiner's report supports an inference of scienter is broadly refuted by the fact that the examiner found no basis to assert that KPMG had engaged in any intentional or reckless misconduct. (KPMG Strike Mem. 7–8.) Moreover, with respect to the centerpiece of plaintiffs' fraud claim—New Century's repurchase reserve—the examiner found "no persuasive evidence" of any purposeful failure to calculate the reserve correctly. (Examiner's Report 179.)[12] Plaintiffs respond that it was beyond the mandate of the examiner to investigate such matters because the examiner was

---

[12] The examiner's report is attached as Exhibit 1 to the Supplemental Request for Judicial Notice in Support of Motion to Dismiss the Second Amended Consolidated Class Action Complaint filed by Defendants Brad A. Morrice, Edward F Gotschall, and Patti M. Dodge, Doc. # 280 (June 2, 2008).

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOx)

authorized "to investigate claims that New Century's bankruptcy estate might have against KPMG for accounting malpractice, which is a state law claim for professional negligence and negligent misrepresentation." (Opp'n 67.) That is patently untrue. The order appointing the examiner required him to identify *any* potential claims that the Debtor's estate may have arising out of *any* improper conduct." (Examiner's Report 2 (emphasis added).) This broad mandate is repeated in the section of the report discussing potential causes of action. (Examiner's Report 517.)[13] The pages of the report cited by plaintiffs to suggest the examiner's scope was limited (*see* Examiner's Report 520, 522–30) merely set forth the examiner's finding that there may exist negligence-based causes of action against KPMG and say nothing at all about the examiner's mandate.

### 2. Plaintiffs' use of the examiner's report is highly misleading and improper

In a footnote in their opposition, plaintiffs assert that "Plaintiffs were careful to cite the examiner's factual statements in the context in which they were made." (Opp'n 122 n.87.) That assertion cannot stand in the face of KPMG's demonstration of plaintiffs' repeated omissions of factual assertions by the examiner that are directly relevant to rebut the inference of scienter that plaintiffs invite based on the selective and, at times, incomplete quotations copied into the complaint. (*See* KPMG Strike Mem. 8–13.)

For example, in their discussion of alleged deficiencies in New Century's hedge accounting, plaintiffs quote the examiner's assertion that there was a difference of opinion over hedge accounting between the KPMG engagement

---

[13] The breadth of the mandate in the bankruptcy court's order is also consistent with the statutory provision governing the examiner. 11 U.S.C. § 1106(a)(4)(A) specifies facts pertaining to "fraud" and "dishonesty" as among the topics to be covered in any report.

12

1  partner and a KPMG specialist, and that there was "a misstatement of several
2  million dollars" as evidence of KPMG's scienter. (Compl. ¶ 517 (quoting
3  Examiner's Report 476 n.681).) However, plaintiffs omit the immediately
4  following sentence of the report, which states that "[t]he misstatement ultimately
5  was deemed immaterial." (Examiner's Report 476 n.681.) Plaintiffs also omit that
6  the examiner concluded that any correction of the alleged errors in hedge
7  accounting would have had the effect of *increasing* income. (*Id.* 360.) Thus, the
8  alleged errors would have had the effect of *understating* earnings, an effect that is
9  contrary to the inference of fraudulent intent plaintiffs invite the Court to draw.
10 *See, e.g., In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *8 (N.D. Ill.
11 July 12, 2006); *Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *17 (D.N.J. Aug.
12 17, 2005); *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 709 (N.D. Ill. 2005); *In re
13 Tyco Int'l, Ltd. Sec. Litig.*, 185 F. Supp. 3d 102, 112 (D.N.H. 2002).
14         Plaintiffs make a similar omission in their discussion of deferred fees and
15 costs and allowance for loan losses. In both instances, plaintiffs allege that the
16 examiner stated that New Century made errors in its accounting methods that
17 KPMG failed to discover. (Compl. ¶¶ 119 (deferred fees and costs); 233
18 (allowance for loan losses).) However, plaintiffs omit that the examiner concluded
19 that, with respect to the allowance for loan losses, "New Century *overreserved* for
20 loan losses throughout the relevant period" (Examiner's Report 226), and with
21 respect to deferred fees and costs, New Century allegedly improperly excluded
22 costs from deferral (*id.* 353). Both such alleged errors would have the effect of
23 *understating* income, which, as noted above, contradicts any inference of
24 fraudulent intent to *inflate* income.
25         Plaintiffs do not, and cannot, answer the facts cited by KPMG demonstrating
26 plaintiffs' misuse of the examiner's report with respect to the alleged accounting

13

1  and auditing errors.  Due to the misleading nature of the plaintiffs' use of the
2  examiner's report, all quotations from and references to that report should be
3  stricken.  *See Wu Group v. Synopsys, Inc.*, 2005 U.S. Dist. LEXIS 42351, at *39
4  (N.D. Cal. Aug. 10, 2005) ("Rule 11 requires, *inter alia*, that counsel not
5  misrepresent to the court the results of the investigation into plaintiff's factual
6  allegations.")

## II. THE COURT SHOULD STRIKE EXHIBITS D AND E BECAUSE PLAINTIFFS CONCEDE THAT THEY DO NOT COMPLY WITH THE COURT'S JANUARY 31, 2008 ORDER

In its January 31 Order, the Court instructed plaintiffs to set forth in a chart for each claim against each defendant a clear identification of "(i) the alleged false and misleading statements, including the source of the statement in a registration statement where a required element of the claim; (ii) the supporting factual allegations; and (iii) the ultimate conclusion." (Order Granting Mot. to Dismiss 7, Doc. # 245 (Jan. 31, 2008).  As KPMG demonstrated in detail in its opening memorandum, plaintiffs failed completely to comply with this Order.  (*See* KPMG. Strike Mem. 13–15.)  Plaintiffs' charts (i) attribute to KPMG a multitude of statements that KPMG did not make; (ii) cite myriad "supporting allegations" having nothing to do with KPMG; and thus (iii) fail to set forth clearly and concisely any well-founded conclusions.  (*Id.*)  As a result of this disregard of the Court's Order, plaintiffs have failed to provide a cogent, concise, or orderly articulation of any claim against KPMG.

In response, plaintiffs concede the errors in the charts and urge that, as regards KPMG, the charts should be ignored.  (Opp'n 19 n.10.)  Plaintiffs further argue that where there are contradictions between the charts and the complaint, "the text of the Complaint should control and not the exhibits." (Opp'n 20.)  These arguments should be rejected.  Plaintiffs were ordered to prepare charts to organize

14

and coherently identify and articulate the precise nature and basis of their claims. They have utterly failed to do so.

In short, plaintiffs were ordered to set forth the basis of their claims in charts, but they admittedly failed to do so. As a result, the current complaint has merely magnified the defects of plaintiffs' original consolidated complaint which the Court properly dismissed. Because plaintiffs have admitted the errors of the charts attached as Exhibits D and E to the complaint and effectively ask that they be ignored as regards KPMG, they should be stricken.

## CONCLUSION

For all these reasons, KPMG's Motion to Strike should be granted.

Dated: July 28, 2008                    Respectfully submitted,

                                                     KPMG LLP

By: /s/
      Michael C. Kelley
      Attorneys For Defendant KPMG LLP

DEFENDANT KPMG LLP's REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 2:07-CV-00931-DDP (FMOx)
SF1 1506561v.2