# Exhibit H

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • NEW JERSEY • LOUISIANA

ELIZABETH P. LIN
elizabethl@blbglaw.com
(858) 720-3184

August 13, 2009

**VIA E-MAIL, FACSIMILE & U.S. MAIL**

Jodi E. Lopez
Sidley Austin LLP
555 West Fifth Street
Los Angeles, CA 90013

      Re:    *In re New Century*, Civil Case No. 07-00931-DDP (FMOx)

Dear Jodi:

      I write in regards to our discussions on July 23 and July 24, 2009 and in response to your letter of August 5, 2009 relating to Plaintiffs' Responses and Objections to KPMG LLP's First Set of Requests for Production of Documents ("Requests").

      With respect to your question regarding whether the "confirmations and agreements discussed" in your letter of August 5, 2009 also apply to Messrs. Larson and Hooten, your letter itself acknowledges that our discussions on those dates related to NYSTRS only. Indeed, much of our discussions would be nonsensical when applied to Larson and Hooten. For example, our discussions regarding KPMG's requests relating to NYSTRS' board minutes, NYSTRS' investments pursuant to the Leeway Clause, and NYSTRS' Real Estate Advisory Committee and other committees, clearly do not apply to Messrs. Larson and Hooten. In response to your question, I refer you to my letter of July 8, 2009, wherein I pointed out that some of your Requests on their face appear to relate to Plaintiff NYSTRS only and stated that "to the extent that NYSTRS has agreed to produce documents responsive to Request Nos. 1-5, 9-10, and 15-19 for the period January 1, 2005 to April 27, 2007, and has agreed to produce documents responsive to Request Nos. 6-8 for the period January 1, 2005 to the present, Plaintiffs Larson and Hooten will agree to do the same. NYSTRS' response to Request Nos. 15-19, 33-69 similarly apply to Larson and Hooten."

12481 HIGH BLUFF DRIVE • SUITE 300 • SAN DIEGO • CA 92130-3582
TELEPHONE: 858-793-0070 • www.blbglaw.com • FACSIMILE: 858-793-0323

H- 151

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 2

---

The following addresses the other issues raised in your August 5, 2009 letter. I note that the issues that primarily remain in dispute in connection with KPMG's requests to Plaintiffs relate to your requests for documents that (1) we have already explained are not relevant and are unlikely to lead to admissible evidence, (2) are protected by the attorney-client privilege, or (3) are protected by the work-product doctrine. KPMG's requests for wide-ranging documents that are irrelevant and/or protected betrays its true intent in this case – to dissuade NYSTRS, a public pension fund that invests in over $32 billion in equities, and one of the 10-largest public retirement systems in the nation serving hundreds of thousands of retirees and beneficiaries, from continuing to serve as Lead Plaintiff and becoming the certified class representative in this case. The purpose of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), however, was precisely to encourage institutional investors like NYSTRS to participate in securities class actions. *See, e.g., In re SiRF Tech. Holdings, Inc., Sec. Litig.*, 2008 U.S. Dist. LEXIS 43617, at *10 (N.D. Cal. May 27, 2008) (noting that, in enacting the PSLRA, Congress sought to encourage institutional investors to take a more active role in securities class actions and ultimately benefit shareholders). Taking this role in accordance with Congressional intent should not expose NYSTRS to overbroad fishing expedition discovery requests that have nothing to do with their investments in New Century. Such document requests have no purpose but to harass and burden NYSTRS and to discourage institutions like NYSTRS from serving as lead plaintiffs or class representatives.

Request No. 1

With respect to Request No. 1 seeking "all records, confirmations, orders, account statements, and instructions to or from brokers, agents, advisors or managers, from January 1, 2005 to April 27, 2007 that refer or relate to Your investment in New Security," we have already informed you in our letter of June 11, 2009 that NYSTRS would produce documents sufficient to evidence its transactions in New Security during that period, and that NYSTRS was not presently aware of documents concerning instructions to or from brokers, agents, advisors or managers that specifically refer or relate to its investment in New Security, but will produce them if they exist. In our discussions on July 23 and July 24, 2009, and in prior discussions, you continued to demand that we tell you what "is being withheld" (not just with respect to this Request, but it seemed as to virtually every one of the Requests we discussed). As we explained, NYSTRS acquired New Century securities pursuant to an indexing approach rather than pursuant to instructions or advice from brokers, agents, advisors or managers. We have already produced some of NYSTRS' electronic data memorializing its transactions in New Century and, to the extent other such data exists in the possession of NYSTRS' outside advisors, they will be produced.

Request No. 11

Request No. 11 seeks the minutes of NYSTRS' Board of Trustee meetings, including documents "that were provided to NYSTRS' Board of Trustees in connection with such

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 3

---

meetings and/or memorialize all or part of a Board of Trustees meeting" for the time period January 1, 2005 to the present. As set forth in my July 8, 2009 letter, "NYSTRS has agreed to produce minutes and other documents provided to NYSTRS' Board of Trustees to the extent they concern New Century or this litigation and are not privileged." Nevertheless, you continue to demand that *all* documents sought by this Request for this extensive time period be produced *regardless of any relevance to this litigation*. NYSTRS' Board of Trustee documents and minutes that have nothing to do with New Century or this litigation are not relevant. You have cited no authority in which an institutional lead plaintiff in a securities class action has been required to produce all of its board minutes to defendants. Indeed, the single case you cited, *Fabich v. Mont. Rail Link, Inc.*, 2003 Mont. Dist. LEXIS 1833, at *20-22 (Mont. Oct. 27, 2003), involved *plaintiff*'s request for defendant's board minutes where these board minutes discussed safety issues and were relevant to plaintiff's physical injury.

Additionally, any claimed relevance by KPMG is tenuous at best. We have already agreed to provide KPMG with NYSTRS' Board of Trustee minutes and documents provided in connection with its Board of Trustee meetings to the extent they concern New Century or this litigation and are not privileged. KPMG is not entitled to more, especially since NYSTRS' investment in New Century is only one of among its hundreds of investments for retirees and beneficiaries. Although you argue that NYSTRS' Board of Trustee minutes and documents - even if they do not relate to New Century or this litigation - may be relevant to show NYSTRS' understanding of market conditions, investment risks, warnings, understanding of the sources of its losses in investments, or investment strategy, this argument is meritless and amounts to nothing more than a completely overbroad fishing expedition. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506 (9th Cir. 1992) ("Differences in sophistication, etc., among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each purchaser identically"; proof of subjective reliance on particular misrepresentations is unnecessary to establish a 10b-5 claim for deception inflating the price of stock traded in the open market); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (same). At bottom, NYSTRS' Board of Trustee minutes and documents in connection with its Board of Trustee meetings unrelated to New Century or this litigation would not lead to the discovery of admissible evidence.

Request No. 16

With respect to Request No. 16 seeking all documents relating to any dividend received from New Century, my June 11, 2009 letter stated that NYSTRS would produce documents "sufficient to show the dollar amount of any dividend and/or dividends it received." As we informed you on July 23, 2009, transaction reports of the dividends either already have been, or will be, produced. We do not believe there are documents discussing the New Century dividends NYSTRS received. If any such documents exist, they will also be produced.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 4

---

Request No. 20

With respect to Request No. 20 seeking investment guidelines, as we informed you on July 23, 2009, NYSTRS has already produced its 2005, 2006 and 2007 investment guidelines. You also requested the production of NYSTRS' 2008 investment guidelines, and, although we doubt its relevance, we agree to produce it. We do not believe there are additional documents responsive to this Request, but if there are, we will produce them.

Request Nos. 21-23 and 26-32

As we have already explained, NYSTRS' investments in New Century were made pursuant to an indexing approach. We have also explained that NYSTRS' investments in New Century were not made pursuant to the Leeway Clause, and that its investments in New Century did not involve its Investment Advisory Committee, Real Estate Advisory Committee, or REIT Real Estate Advisors. For your further information, none of NYSTRS' investments under the Leeway Clause involved any residential mortgage backed securities. New Century's status as a REIT was also not the reason for NYSTRS' investment in the Company.

Notwithstanding these facts, you state that KPMG is entitled to NYSTRS' documents responsive to these Requests because they may "provide an understanding of NYSTRS' overall practice and/or strategy for investing in mortgage-related vehicles like New Century." The law does not extend the concept of relevance that far, particularly where, as here, NYSTRS did not invest in New Century because it was a "mortgage-related vehicle," its New Century investment was one of among the hundreds of investments it made pursuant to an index investing approach, and its investment philosophy regarding real estate is not at issue in this case. *See, e.g., In re Assisted Living Concepts, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 12864 (denying KPMG's motion to compel production of all documents relating to plaintiffs' personal investment experience, history, objectives, and strategy as overbroad, far-reaching and burdensome); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 308 (D. Mass. 1987) (investment strategy is "of little importance to . . . suitability as a class representative."); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 11618, at *15 (D. Colo. June 7, 2005) (finding auditor failed to show why information relating to trading activities, strategies and sophistication of plaintiff is necessary to trial of issues affecting the class). Further, any possible relevance of these overly broad Requests is outweighed by the burden of production and the inappropriate invasion into the investment practices of NYSTRS that are wholly unrelated to its investment in New Century.

Request Nos. 33 and 34

Request Nos. 33 and 34 seek all documents relating to communications with, and all documents obtained from, any officer, director, employee and/or agent of New Century. Although we agreed to produce copies of any New Century documents Lead Plaintiff's counsel received from any current and/or former officer, director and/or agent of New Century without

H- 154

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 5

---

waiver of counsel's work-product, your August 5, 2009 letter indicates that KPMG's position is that "the work-product privilege is waived once the document is produced." If that is your position, then we will not produce these documents. These documents were obtained during counsel's investigation, were made in anticipation of litigation, and are protected work-product. *See Strougo v. The Brailian Equity Fund, Inc.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (documents should be deemed prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared ***or obtained*** because of the prospect of litigation"). Please let us know whether you will agree that the production of these documents does not constitute waiver of work-product. If so, we will produce them.

With respect to Lead Plaintiff's counsel's communications with New Century personnel in the course of its investigation into the allegations and claims in this case, they will not be produced. Contrary to your assertion, *Hickman v. Taylor*, 329 U.S. 495 (1947), does not require otherwise. Indeed, you mischaracterized the quote in *Hickman*, which was referring to the inapplicability of the **attorney-client** privilege to information an attorney secures from a witness. In fact, *Hickman* explicitly recognized that the **work-product** doctrine is broader than the attorney-client privilege, and has noted that "not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Id.* at 510. In *Upjohn v. United States*, 499 U.S. 383 (1981), the U.S. Supreme Court further held that the identity of witnesses interviewed by opposing counsel involve protected work-product. *Id.* at 399. *See also, California Practice Guide: Federal Civil Procedure Before Trial* (The Rutter Group 2008), at 11:877 ("seeking the identity of witnesses who have been interviewed by opposing counsel or attempting to obtain the attorney's note of such interviews would involve protected work product"); *Seven Hanover Assocs., LLC v. Jones Lang LaSalle Americas, Inc.*, 2005 U.S. Dist. LEXIS 32016 (S.D.N.Y. Dec. 7, 2005) (defendant is not entitled to the identification of who among knowledgeable individuals have been interviewed by plaintiff's attorney). Lead Plaintiffs' counsel's communications with New Century personnel were made in anticipation of litigation, were made as part of its investigation, and would reveal the identity of witnesses contacted in the course of its investigation. As such, they are protected by the work-product doctrine. *See, e.g., In re MTI Tech. Corp. Sec. Litig.*, 2002 U.S. Dist. LEXIS 13015, at *8 (C.D. Cal. June 14, 2002) (The identity of witnesses interviewed by opposing counsel is protected under the work-product doctrine because "if the identity of the interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy. Such evaluations, impressions, and strategy are at the heart of the work product rule."); *Tierno v. Rite Aid Corp.*, 2008 WL 270589 (N.D. Cal. July 8, 2008) (identity of witnesses is protected attorney-work product); *In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 587-389 (S.D. Cal. 2002) (names of witnesses who provided information supporting the complaint were protected as attorney work-product). In addition, Lead Plaintiff's counsel's communications with witnesses are protected because they reflect counsel's methods and processes for conducting investigations, which are proprietary and confidential.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 6

---

      Further, producing documents related to Lead Plaintiffs' counsel's contact with witnesses would be counter to public policy, since private actions like this one supplement public enforcement of securities laws, plaintiffs' counsel are performing an important role, and the production of information regarding plaintiffs' counsel's contact with witnesses would have a chilling effect on the way investigations are done in securities fraud actions and in bringing lawsuits necessary to compensate defrauded investors. *See Tierno*, 2008 WL 2705089, at *3 n.2 (recognizing that forcing disclosure of persons who have cooperated with plaintiffs' counsel could have a chilling effect on their communications with counsel); *In re Warner Communc'ns Sec. Litig.*, 618 F. Supp. 735, 750 (S.D.N.Y. 1985) (recognizing that federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged). Moreover, "there are important public policy concerns implicated by disclosure of former employees acting as informants," and courts should consider the practical result and significant consequences of an order requiring such disclosures. *In re MTI Tech. Corp. Sec. Litig.*, 2002 U.S. Dist. LEXIS 13015, at *17 (C.D. Cal. June 14, 2002). Accordingly, we will not produce documents relating to our communications with any current and/or former officer, director, employee and/or agent of New Century.

      This does not mean that KPMG cannot discover the identity of relevant witnesses in this case. All relevant witnesses known to Lead Plaintiff were identified in Lead Plaintiff's initial disclosures provided to KPMG on February 25, 2009.

Request Nos. 35 and 36

      With respect to Request No. 35, requesting all communications with any New Century shareholder, I refer you to my letter of June 11, 2009. There, I stated, with respect to No. 35, that "NYSTRS is presently not aware of any communications from January 1, 2005 to the present with any current and/or former New Shareholder concerning New. Communications between NYSTRS' counsel and any current and/or former New shareholder concerning New is protected by the attorney-client privilege and will not be produced."

      In that letter, I also stated with respect to Request No. 36, seeking all documents from any New Century shareholder, that "NYSTRS is presently not aware of any documents in its files from January 1, 2005 to the present from any current and/or former New shareholder concerning New. Documents NYSTRS' counsel received from any current and/or former New shareholder concerning New is protected by the attorney-client privilege and will not be produced."

      We had agreed to determine if Lead Plaintiff's counsel have had communications with putative class members. Our records indicate that there have been some such communications. Such communications will not be produced because they are privileged, as discussed more fully below relating to Request nos. 37 and 38, and will not be produced.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 7

---

Request Nos. 37 and 38

With respect to Request No. 37, which seeks all communications between or among Plaintiffs and any other Plaintiff and/or putative class member in this Action, the only communications between or among Plaintiffs and any other Plaintiff and/or putative class member were between Plaintiffs NYSTRS, Larson and Hooten through counsel.

With respect Request No. 38, requesting documents created by or received from any other Plaintiff and/or putative class member in this Action, my letter of June 11, 2009 informed you that NYSTRS is presently not aware of any non-privileged documents in its files responsive to this Request. If any such non-privileged documents are in NYSTRS' files, we will produce them.

With respect to Request Nos. 37 and 38, we also informed you that, as to Lead Plaintiff's counsel, all communications between or among Lead Plaintiff's counsel and any other Plaintiff and/or putative class member in this Action that refer or relate to New Century or to this Action are subject to the attorney-client privilege and will not be produced. Your argument that these communications must be produced because putative class members are not clients of Lead Plaintiff's counsel until the class is certified is untenable. "In general, confidential communications between individuals and attorneys for the purpose of obtaining or rendering legal advice are privileged," and "the attorney-client privilege attaches to preliminary discussions about representation between a lawyer and a prospective client, even if the client decides not to employ the lawyer. Without this protection, individuals' ability to seek legal advice would be constrained, as they would not feel safe approaching an attorney about a possible case." *Sandoval v. Am. Bldg. Maintenance Indus., Inc.*, 2007 U.S. Dist. LEXIS 97773, at *44 (D. Minn. Oct. 23, 2007). In *Barton v. U.S.D.C.*, 410 F.3d 1104 (9th Cir. 2005), in concluding that the district court had committed reversible error, the Ninth Circuit held that prospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege, regardless of whether they had retained the lawyer, and regardless of whether they ever retain the lawyer. *Id.* at 1111. As noted in *Barton,* if such privilege is not applied, people could not safely bring their problems to lawyers unless the lawyers had already been retained. *Id.*

In *Tierno v. Rite Aid Corp.*, 2008 WL 2705089, at *3-4 (N.D. Cal. July 8, 2008), the court similarly rejected defendants' argument that there was no attorney-client privilege because there was no attorney-client relationship between class members and class counsel before the class was certified. *Tierno* found that the identities of these class members were either privileged or protected work-product, and that forcing disclosure would have a chilling effect on class members' communications with counsel. *See also Castaneda v. Burger King Corp.*, 2009 WL 2382688, at *6 (N.D. Cal. July 31, 2009) ("The fact that the putative class members in this case contacted Plaintiffs' counsel may create a privilege for their communications with class counsel. . . . Defense counsel are admonished not to inquire into the substance of any communications between Plaintiffs' counsel and putative plaintiffs"). Indeed, Lead Plaintiff's counsel have a

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 8

---

fiduciary duty to class members both prior to and after certification, and its communications with putative class members must be afforded protection. Even assuming, *arguendo*, that communications between putative class members and counsel prior to certification of the class are not protected by the attorney-client privilege or the work-product doctrine, it does not mean that defendants are entitled to this discovery. KPMG has no legitimate reason for seeking these communications. Putative class members do not represent the class and are not active participants in the litigation. As such, the communications between NYSTRS' counsel and putative class members are not relevant. *See, e.g., Epstein v. Am. Reserve Corp.*, 1985 U.S. Dist. LEXIS 15842 (N.D. Ill. Sept. 18, 1985) (finding that any communications plaintiffs or their attorneys had with any potential class member was irrelevant and plaintiffs need not disclose this information). Indeed, discovery relating to absent class members is inappropriate because they are not parties for discovery purposes, and courts have required a party seeking discovery from unnamed class members to obtain a court order before propounding discovery. *See, e.g., Guenther v. Sedco, Inc.*, 1998 WL 898349, at *7 (S.D.N.Y. Dec. 22, 1998) (observing that absent class members are not parties for discovery purposes); *Kline v. First Western Gov't Sec.*, 1996 WL 122717, at *1 (E.D. Pa. Mar. 11, 1996) (determining, after "surveying" cases, that "it is safe to state that discovery of absent class members is disfavored."); *Kops v. Lockheed Martin Corp.*, 2003 U.S. Dist. LEXIS 8568, at *4 (C.D. Cal. May 12, 2003) (party seeking discovery from unnamed class members must obtain a court order before propounding discovery). For these reasons, Lead Plaintiff's counsel's communications with putative class members will not be produced.

With respect to Request No. 38, your August 5, 2009 letter also appears to ask whether NYSTRS' communications with plaintiffs' attorneys when seeking to become lead plaintiff for this class action will be produced. They will not, as they are not responsive to Request No. 38. Moreover, any such communications were made in the course of NYSTRS' privileged communications relating to the selection and retention of Lead Counsel.

Request Nos. 50-57

With respect to Request Nos. 50-57 relating to allegations in the Complaint, to the extent that any non-public documents are referred to in the Complaint, they will be produced. We initially proposed to provide you with all documents Lead Plaintiff's counsel obtained from confidential witnesses without waiver of privilege. However, in light of your apparent position that such a production constitutes a waiver of attorney work-product (*see* your August 5, 2009 letter regarding Request No. 34, above), we will not produce them absent your agreement that such production will not constitute a waiver of privilege, as documents obtained by counsel from witnesses in the course of investigating the allegations and claims of the lawsuit were made in anticipation of litigation and are protected work-product.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 9

Request No. 59

With respect to Request No. 59, requesting all documents referred to in the Complaint, we will produce all documents responsive to this Request, other than publicly available documents. As to documents we received from confidential witnesses, as stated above, we will only produce them without waiver of work-product. If it is your position that such production constitutes a waiver of work-product, we will not produce the documents we received from confidential witnesses.

Request Nos. 60 and 61

With respect to Request Nos. 60 and 61, we previously informed you that NYSTRS had only been involved in two federal securities class actions in the past ten years, and we agreed to produce the requested documents relating to those two lawsuits. During our discussions, you asked if NYSTRS would agree to produce documents relating to civil lawsuits concerning other class actions, state securities cases and cases involving fraud or professional malpractice claims to which NYSTRS was a party within the last ten years. Aside from Fremont and New Century, there have been no other state or federal securities cases in the past ten years in which NYSTRS served as a plaintiff. Other litigation is not relevant.

Request No. 65

With respect to Request No. 65, relating to "any relationship [Plaintiffs] have had with [Plaintiffs'] counsel unrelated to this Action," your description of "relationship" continues to be vague and ambiguous, the Request continues to be overbroad, and your letter mischaracterizes our discussions. Nonetheless, for your information, NYSTRS was represented by Bernstein Litowitz in the Columbia/HCA derivative litigation, filed in 1997, twelve years ago. NYSTRS, as an institutional investor with involvement in the securities industry, also knew attorneys from many securities law firms, including Bernstein Litowitz. However, your letter correctly states that Bernstein Litowitz was selected as Lead Counsel in this case through an interview process conducted by NYSTRS in which a number of other firms participated.

Request Nos. 67 and 69

With respect to (1) documents from confidential witnesses (Request No. 67) and (2) communications between Plaintiffs and any confidential witness identified in the Complaint (Request No. 69), NYSTRS will produce all documents from and communications with confidential witness in its files, if any exist. With respect to NYSTRS' counsel's communications with confidential witnesses, as in the above response to Request No. 33, such communications constitute protected attorney work-product and will not be produced. With respect to documents that NYSTRS' counsel received from confidential witnesses, as stated above, we will produce them if you agree that such production does not constitute a waiver of

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Jodi E. Lopez
August 13, 2009
Page 10

---

attorney work-product. You have previously stated that you are not seeking our notes or memos relating to our discussions with confidential witnesses.

### KPMG's Document Production and Privilege Log to Plaintiffs

With respect to KPMG's document production to Plaintiffs, the July 29, 2009 letter we received from Robert Martin indicated that KPMG had withheld 204,743 pages as "confidential." The Court has since ordered KPMG to produce these documents to us by August 17, 2009. During your telephone call to me yesterday, you indicated that, besides these documents, other documents responsive to Plaintiffs' requests are being reviewed and will be produced. Please let me know what documents have not yet been produced and when can expect them. We would like to avoid having to bring another motion to compel to require KPMG's expeditious production of the remaining documents, as it has been over six months since KPMG was first served with Plaintiffs' document requests. Further, please confirm that KPMG has conducted a thorough and diligent search for documents. Please also confirm that all of KPMG's documents that were produced to the Examiner, the SEC and the DOJ, will be produced to Plaintiffs in accordance with the Court's July 8, 2009 order.

Very truly yours,

Elizabeth P. Lin

EPL/aa

cc:   Salvatore J. Graziano