BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS   (Bar No. 178428)
(blairn@blbglaw.com)
ELIZABETH LIN   (Bar No. 174663)
(elizabethl@blbglaw.com)
BENJAMIN GALDSTON   (Bar No. 211114)
(beng@blbglaw.com)
MATTHEW P. JUBENVILLE   (Bar No. 228464)
(matthewj@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323
   -and-
SALVATORE J. GRAZIANO
(sgraziano@blbglaw.com)
HANNAH E. GREENWALD ROSS
(hannah@blbglaw.com)
LAUREN A. MCMILLEN
(laurenm@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

Lead Counsel for Lead Plaintiff New
York State Teachers' Retirement System

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NEW CENTURY | Case No. 2:07-cv-00931-DDP (FMOx) |
| | **DISCOVERY MATTER** |
| | DECLARATION OF LEAD PLAINTIFF NEW YORK STATE TEACHERS' RETIREMENT SYSTEM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT KPMG LLP'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS |
| | Date:   October 14, 2009<br>Time:   10:00 A.M.<br>Dept.:   F<br>Judge: Hon. Fernando M. Olguin<br>Discovery Cut-off:   None set<br>Pretrial Conference:   None set<br>Trial:   None set |

I, Wayne Schneider, hereby state as follows:

1. I make this declaration in support of Plaintiffs' Opposition to Defendant KPMG LLP's Motion to Compel the Production of Documents from Lead Plaintiff New York State Teachers' Retirement System and Plaintiffs Carl Larson and Charles Hooten.

2. I am General Counsel for Lead Plaintiff New York State Teachers' Retirement System ("NYSTRS" or the "System") and have served in that capacity since September 1, 1991. As General Counsel, I am responsible for all legal matters affecting NYSTRS.

3. NYSTRS was established in 1921 by an act of the New York State Legislature. NYSTRS is the second largest public retirement system in the state of New York and one of the 10 largest systems in the nation. NYSTRS administers retirement, disability and death benefits for more than 400,000 current and retired New York State public school teachers and administrators and their beneficiaries. NYSTRS is responsible for the collection of employer and employee contributions to NYSTRS, the investment of those contributions in a broad spectrum of capital assets, and the timely and accurate payment and administration of the benefits promised under law to the teachers and administrators which it serves. As of June 30, 2009, NYSTRS had assets of approximately $72 billion (unaudited). During the plan year just ended, July 1, 2008 through June 30, 2009, NYSTRS collected over $1.2 billion in employer and employee contributions and paid out over $5 billion in monthly pensions and lump sum benefits.

4. NYSTRS was appointed Lead Plaintiff in this action by Order dated June 26, 2007. Since its appointment, NYSTRS has fulfilled the obligations of Lead Plaintiff to monitor Lead Counsel and supervise the litigation.

5. As Lead Plaintiff, NYSTRS is committed to prosecuting this litigation and ensuring that the recovery achieved on behalf of the Class is maximized to the greatest extent possible in light of the risks and circumstances of the case.

6. In the course of supervising Lead Counsel and the prosecution of this litigation, I, along with my staff, have reviewed discovery and have assisted in responding to discovery, including the requests for production of documents served by Defendant KPMG LLP ("KPMG") on NYSTRS.

7. At the direction of Lead Counsel, NYSTRS has collected and produced a substantial quantity of documents for production in response to KPMG's discovery requests in this litigation. NYSTRS has produced, among other things, its business records evidencing transactions in New Century common stock during the Class Period, its investment policy manuals, its annual reports, its domestic equity holdings reports, and other similar documents.

8. NYSTRS's purchases of New Century common stock were made pursuant to indexing approaches. New Century stock was among hundreds of other stocks purchased together to mimic the performance of a broader index. NYSTRS's transactions in New Century securities did not involve NYSTRS's Investment Advisory Committee or the NYSTRS's Real Estate Department, Real Estate Advisory Committee, or REIT Real Estate Advisors, and were not made pursuant to the "Leeway Clause" referenced in NYSTRS's annual financial reports for the years ended June 30, 2006 and June 30, 2007.

9. I understand that KPMG seeks production of all of the minutes and associated documents for every NYSTRS's Board of Trustees meeting for at least the past 5 years. This is clearly a "fishing expedition."

10. NYSTRS's Board of Trustees is charged under section 504(1) of the New York Education Law with the "general administration and responsibility for the proper operation of the [System]"; it is not responsible for the day to day functioning of the System. Certain members of the NYSTRS's staff, not the Board of Trustees, were responsible for the implementation of the various index approaches and the purchases and sales of the numerous publicly-traded securities, including New Century common stock, pursuant to those approaches. The Board

of Trustees had no involvement in the individual investments made under these approaches. At their meetings, the Board of Trustees did review the overall performance of the various index approaches, but they did not review individual New Century stock positions or purchases or sales. On the other hand, during the time period at issue, the Board of Trustees dealt with numerous items which did not relate or involve the System's investment in New Century common stock. If compelled to comply with this request, NYSTRS will incur significant burden in attempting identify and pull together all the documents which may have been provided to the Board of Trustees during the period at issue, whether from NYSTRS's actuarial, legal, investment, benefits, finance or other areas.

11. My legal staff consists of only seven persons, who are responsible for all legal matters affecting the System, including not only investment transactions but, for example, legislation, benefits issues, purchasing questions and human resource issues. Requiring my staff to search for documents responsive to KPMG's overly broad request would require diverting valuable time from all of the important matters requiring attention. Similarly, the NYSTRS investment staff managing the billions of dollars invested by NYSTRS across the broad spectrum of investable capital assets is extremely lean, including only nine persons responsible for external investment managers, corporate governance and private equity, four persons responsible for NYSTRS's internally managed fixed income portfolio, six persons responsible for quantitative strategies and risk management, and eighteen persons responsible for NYSTRS's real estate investments. Requiring them to search for and collect documents in their areas which might be potentially responsive to KPMG's broad request would likewise cause a substantial diversion of time away from important matters requiring attention. Overall, NYSTRS would have to devote hundreds of person-hours to search various files and records for documents, including determining whether documents are retained on site or have been put in off-site storage. Presumably, these documents, once collected would

run on for many thousands of pages and would involve countless hours of staff time to organize and copy. For example, so-called "flip books" provided by private equity fund sponsors, outside investment managers and investment consultants would have to be pulled apart to be copied.

12. I also understand that KPMG seeks production of documents regarding "NYSTRS's investment committees, advisors and investment vehicles described in NSYTRS's annual reports" from January 1, 2005 to the present. If compelled to comply with this request, NYSTRS will incur significant burden and expense. NYSTRS has many thousands of pages of documents potentially responsive to KPMG's overly broad request though, again, none of these documents are relevant to its investment in New Century stock or this case.

13. For example, NYSTRS's Investment Advisory Committee had no involvement in the investment in New Century stock. The Investment Advisory Committee would hear presentations from NYSTRS's external investment managers and discuss general investment topics. The Investment Advisory Committee would not have discussed the individual holdings of the various internally managed index funds or how NYSTRS came to purchase or sell stocks of individual companies under these approaches. After April of 2005, NYSTRS had only one external manager and one external fund of funds manager involved in investing in domestic equities. Most of the external investment mangers which made presentations to the Investment Advisory Committee were involved in investing in non-US equities. None of these non-US equity managers invested in New Century stock or would have even done so as New Century was a domestic company and not within the scope of their non-US assignments. The presentations by the NYSTRS's investment consultant, whether to the Board of Trustees or the Investment Advisory Committee related to the performance of the financial markets generally and the overall performance of the NYSTRS external investment

managers and did not discuss transactions in individual securities, let alone, New Century stock.

14. NYSTRS's New Century stock transactions were, as discussed above, carried out by staff in what was then NYSTRS's Securities Investment Department pursuant to various index approaches. These transactions occurred because New Century was a publicly listed domestic security like the numerous other domestic publicly listed securities available for investment.

15. NYSTRS's Real Estate Department which manages the NYSTRS's mortgage and equity real estate investments had no involvement in NYSTRS's domestic equity investments and no involvement in the New Century stock transactions.

16. The NYSTRS Real Estate Department has more than $7 billion in real estate investments, alone. It has always been separate and distinct from the NYSTRS's Securities Investment Department. It has been headed by a chief real estate officer who reports directly to the System's Executive Director. Its mission has always been separate and distinct from the mission of the Securities Investment Department. Its staff is physically located separate and apart from the staff of the Securities Investment Department and its successor departments.

17. NYSTRS has a Real Estate Advisory Committee but that Committee is separate and distinct from the Investment Advisory Committee and works exclusively with the NYSTRS Real Estate Department. It is consulted by the staff of the NYSTRS's Real Estate Department regarding transactions being considered by that department. It had no involvement with the Securities Investment Department or successor departments and did not have any involvement with the various indexed strategies discussed above. Thus, it had no involvement in NYSTRS's transactions in New Century stock.

18. NYSTRS's external REIT Real Estate Advisors have been assigned to invest a portion of NYSTRS's assets in publicly traded REITs and real estate

operating companies. None of them invested in New Century stock. These managers were engaged by NYSTRS as part of its real estate investment strategies, specifically to obtain exposure to real estate investments held by publicly traded REITS. These advisors dealt solely with the staff of the Real Estate Department and had no involvement in NYSTRS's indexed investment strategies discussed above under which New Century stock was purchased and sold.

19. NYSTRS has invested in numerous private equity partnerships through the NYSTRS's Securities Investment Department and its successor and numerous private real estate investment partnerships and funds through the NYSTRS's Real Estate Department. To my knowledge, none of these involved investing in New Century stock, a domestic publicly listed company.

20. To search for and collect the documents from the various sources relating to the Investment Advisory Committee, the NYSTRS's Real Estate Department, the Real Estate Advisory Committee, the numerous private equity and real estate partnerships and funds in which NYSTRS has invested, and NYSTRS's investment consultants, NYSTRS would have to devote hundreds of person-hours to search various filing systems and facilities. Because NYSTRS's investment staffs are very lean, these searches would require NYSTRS to take staff away from their important responsibilities to manage NYSTRS's investment portfolios.

21. I understand KPMG continues to insist on documentation relative to NYSTRS investments under the so-called "Leeway Clause," section 177(9) of the New York Retirement and Social Security Law. By way of background, New York is a so-called "legal list state" in that it permits investments by a public employee retirement system in New York only to the extent they fit within one or more of the permitted categories of investments. While the current permitted categories are quite broad and accommodate most investments considered by NYSTRS, certain investments do not fit within other permitted categories and must be made pursuant to the authorization under the "Leeway Clause" which is

intended to give additional investment authority when a desirable investment may not fit within any other category. Such investments have included investments in foreign equities not otherwise authorized, investments in private equity funds, and certain other investments. The "Leeway Clause" has no bearing whatsoever upon NYSTRS's investment in New Century stock because the investment in New Century, like NYSTRS's investment in hundreds of other domestic publicly listed securities, was made under the authorization of section 177(2) of the New York Retirement and Social Security Law allowing for the investment of up to 70% of NYSTRS's assets in domestic publicly listed securities.

22. NYSTRS's overall investment objectives and philosophies can be found in NYSTRS's Comprehensive Annual Financial Reports and Investment Policy Manuals for 2005, 2006 and 2007, all of which have already been produced to KPMG. I understand that KPMG recently requested the production of NYSTRS's Investment Policy Manual for 2008 from Plaintiffs' Lead Counsel, who agreed to produce this document even though is it dated October 2008 – long after the Class Period.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this  /8th day of September, 2009, in Albany, New York.

_____
Wayne Schneider