**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| In Re NEW CENTURY | ) NO. CV 07-0931 DDP (FMOx) <br> ) <br> ) <br> ) **ORDER Re: DISCOVERY MOTION** <br> ) <br> ) <br> ) |

The court has reviewed all the briefing filed with respect to defendant KPMG LLP's Motion to Compel the Production of Documents from Lead Plaintiff New York State Teachers' Retirement System ("Motion" or "Joint Stip.") and concludes that oral argument is not necessary to resolve this matter. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001, as amended Mar. 27, 2001).

**BACKGROUND**

The court hereby incorporates the Background section set forth in the Court's Order of December 3, 2008, as well as the description of the various claims set forth in the Order.

**DISCUSSION**

The Joint Stip. concerns Document Request Nos. 11, 21-23, 26-32, 36, 38 and 50-57, which seek documents from the New York State Teachers' Retirement System ("NYSTRS" or "plaintiff"), the lead plaintiff in this action. (Joint Stip. at 1, 7, 15-24, 36-43 & 52-53).

I.   STANDARD OF REVIEW.

A party can discover any nonprivileged information which is relevant to the claims or defenses of any other party. Fed. R. Civ. P. 26(b)(1). Relevant information does not have to be admissible so long as it appears calculated to lead to the discovery of admissible evidence. Id. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." McCormick v. City of Lawrence, 2005 WL 1606595, at *5 (D. Kan. 2005) (citations omitted); see also Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005) ("Litigants may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence.") (internal quotation marks and citations omitted). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Keith H. v. Long Beach Unified Sch. Dist., 228 F.R.D. 652, 655-56 (C.D. Cal. 2005) (citation omitted); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

II.   RELEVANCY AND BURDEN.

Plaintiff objects to Document Request Nos. 11, 21-23 and 26-32 on the grounds that they: (1) seek documents not relevant to the claims or defenses in this action; (2) are unduly burdensome and oppressive; and (3) violate its privacy rights.[1] (See Joint Stip. at 5, 11-15 & 29-36). Request No. 11 seeks all NYSTRS Board of Trustee ("Board") meeting minutes from January 1, 2005, to the present, including all documents provided to the Board in connection with such meetings. (See id. at 7). Request Nos. 21-23 and 26-32 seek documents related to NYSTRS's: (i) investments in mortgage pass-through certificates and collateralized mortgage obligations; (ii)

---

[1]   Under the circumstances, it is not necessary to address plaintiff's privacy objection.

2

investment strategy and/or policy relating to investments made pursuant to the "Leeway Clause"; (iii) Investment Advisory Committee; (iv) Real Estate Advisory Committee; and (v) REIT Real Estate Advisors. (See id. at 29; see also id. at 15-24). In response to Request Nos. 11, 21-23 and 26-32, plaintiff has agreed to produce nonprivileged documents to the extent that they concern defendant New Century Financial Corporation ("New Century") or this litigation. (See id. at 8 & 17-25). Defendant KPMG LLP ("KPMG" or "defendant") contends that plaintiff's responses impermissibly narrow the scope of the subject Requests. (See id. at 8-9 & 25).

A.   Document Request No. 11.

With regard to Request No. 11, KPMG asserts that the "NYSTRS's Board of Trustee meeting minutes and documents provided to the Board at or in advance of the meetings may be directly relevant to Plaintiff['s] claims that KPMG's audit opinions regarding New Century contributed to the alleged losses they suffered in connection with their investments in New Century. Specifically, those documents – regardless of whether they relate to New Century – could demonstrate NYSTRS's understanding of the overall market conditions, investment risks, or market warnings of which NYSTRS was aware, or the sources or causes to which NYSTRS attributed its losses in certain investments, including in New Century securities or other mortgage-related investments." (Joint Stip. at 9).

Under the circumstances, the court is persuaded that plaintiff has met its burden of showing why the discovery is not relevant to any claim or defense in this action. See Fed. R. Civ. P. 26(b)(1); (Joint Stip. at 11-15; Plaintiffs' Supplemental Memorandum of Law Pursuant to L.R. 37-2.3 in Opposition to Defendant KPMG LLP's Motion to Compel Production of Documents ("Plaintiff's Supp. Mem.") at 1-4); see also Keith H., 228 F.R.D. at 655-56 ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."); Blankenship, 519 F.2d at 429 ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied."). First, NYSTRS's Board of Trustees plays no role in stock transactions or other individual investment decisions. (See Joint Stip. at 14; Declaration of NYSTRS in Support of Plaintiffs' Opposition to Motion ("NYSTRS Decl.") at ¶ 10). Second,

KPMG's claim that all board meeting minutes and documents could help demonstrate NYSTRS's understanding of overall market conditions, investment risks and/or market warnings, (see Joint Stip. at 9), is too tenuous and speculative, and there is no adequate explanation as to how such documents relate to any particular claim or defense in the operative complaint. (See, generally, id. at 8-11); see Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses.").

Finally, the cases KPMG cites to support its claim that a blanket production of all board meeting minutes is necessary, (see Joint Stip. at 9-10), are distinguishable. For example, in Dowling v. Am. Hawaii Cruises, Inc., 971 F.2d 423 (9th Cir. 1992), the issue was whether otherwise relevant notes of a ship's safety committee were shielded from discovery by the self-critical analysis privilege. Id. at 424. The Ninth Circuit held that "no privilege of 'self-critical analysis' protects routine internal corporate reviews of matters related to safety concerns." Id. at 426. Similarly, in Flomo v. Bridgestone Americas Holding, Inc., 2009 WL 1456736 (S.D. Ind. 2009), plaintiffs alleged that defendants' Liberian affiliate was engaged in illegal child labor. Id. at *1. Defendants agreed that the board meeting minutes discussing matters relevant to a lawsuit were discoverable but restricted their search to minutes that explicitly discussed child labor. Id. at *11. The court ruled that limitation was improper and ordered defendants to search for additional responsive minutes on such issues as "agreements or other interactions with the Liberian government," "discussions on the hazards of [plaintiffs'] jobs . . . [a]nd discussions about [plaintiffs'] expected workload[,]" all of which the court found relevant to plaintiffs' claims. Id. Finally, in Nelson v. Prod. Credit Ass'n of the Midlands, 1989 U.S. Dist. LEXIS 16915 (D. Neb. 1989), the court ordered production of a nonparty's board meeting minutes because the nonparty did not properly object to a Rule 45 subpoena. Id. at *10-12. Here, as discussed above, plaintiff has met its burden of demonstrating why the meeting minutes are not relevant. In addition, plaintiff timely objected to Request No. 11. (See Joint Stip. at 8).

///

B. Document Request Nos. 21-23 and 26-32.

With regard to Request Nos. 21-23 and 26-32, KPMG asserts that "the investment vehicles, committees, and advisors employed by NYSTRS may have provided information by which NYSTRS invested in real estate and mortgage-related securities. Documents responsive to those Requests may thus provide insight into NYSTRS's general investment philosophy or strategy concerning such securities." (Joint Stip. at 25). Again, the court is persuaded that plaintiff has met its burden of showing why the discovery is not relevant to any claim or defense in this action. See Fed. R. Civ. P. 26(b)(1); (Joint Stip. at 29-36; Plaintiff's Supp. Mem. at 1-4); see also Keith H., 228 F.R.D. at 655-56; Blankenship, 519 F.2d at 429.

As an initial matter, NYSTRS has already produced general documents relating to its investment policies, including its investment manuals, annual financial reports, its equity holdings reports and other business records which are arguably sufficient to address any relevant inquiry related to the claims and defenses in this action. (See Joint Stip. at 29; NYSTRS Decl. at ¶ 7; Plaintiff's Supp. Mem. at 2-3). Thus, the need for the subject documents is questionable.

In any event, KPMG has not provided an adequate explanation as to how such documents relate to any particular claim or defense in the operative complaint. (See, generally, Joint Stip. at 25-29); see Collens, 222 F.R.D. at 253. First, the operative complaint alleges misrepresentations based on transactions in New Century common stock, (see Second Amended Consolidated Class Action Complaint at ¶ 19; Court's Order of December 3, 2008, at 1-4), not investments in mortgage-based securities (Request No. 21). NYSTRS made its investment decisions in New Century common stock pursuant to an indexing approach, not as part of some mortgage-related investment strategy. (See Joint Stip. at 31; NYSTRS Decl. at ¶ 8, 13-19 & 21;  Declaration of Elizabeth Lin in Opposition to Motion ("Lin Decl.") at ¶ 11); see also Hanon v. Dataproducts Corp., 976 F.2d 497, 506 (9th Cir. 1992) ("Differences in sophistication, etc., among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each purchaser identically.") (internal quotation marks and citation omitted). Second, NYSTRS did not invest in New Century pursuant to the "Leeway Clause" (Request Nos. 22, 23 & 26); did not base its

1  investment decision on New Century's status as a REIT (Request Nos. 31 & 32); and did not
2  involve its Investment Advisory Committee, Real Estate Advisory Committee or REIT Real Estate
3  Advisors in its investment process (Request Nos. 27 through 32).  (See Joint Stip. at 30; Lin Decl.
4  at ¶ 11; NYSTRS Decl. at ¶¶ 8, 13-19 & 21).

5       Finally, in securities class actions, courts routinely deny general discovery into a plaintiff's
6  trading and investment strategy in other securities.  See, e.g., In re Assisted Living Concepts, Inc.
7  Sec. Litig., 2001 U.S. Dist. LEXIS 12864, at *4-5 (D. Or. 2001) (in a similar case, where "KPMG
8  has requested and apparently received documents relating to plaintiffs' purchases of [Assisted
9  Living Concepts] securities, and KPMG has had the opportunity to depose plaintiffs regarding
10 those purchases[,]" the court denied KPMG's motion to compel "production of all documents
11 relating to plaintiffs' personal investment experience, history, objectives, and strategy[]" because
12 KPMG failed to make a "particularized showing of relevance"); Malanka v. Data Gen. Corp., 1986
13 WL 541, at *2 (D. Mass. 1986) (where "plaintiff has agreed to produce documents relevant to his
14 investment services specifically related to the case *sub judice*[,] . . . the Court conclude[d] that
15 documents of plaintiff's investment services and sophistication unrelated to this claim are not
16 relevant and are, therefore, not discoverable[]") (italics in original); In re Motel 6 Sec. Litig., 1996
17 WL 474175, at *1 (S.D.N.Y. 1996) (rejecting defendant's attempt to "obtain[] a detailed history of
18 plaintiffs' trading history in all stocks, either to demonstrate plaintiffs' sophistication or to obtain
19 clues to their trading strategies[ because] . . . sophistication is generally not a matter of
20 consequence . . . [in cases where] liability is premised on the non-disclosure of material facts" and
21 concluding that "a blunderbuss request for plaintiffs' prior trading in other, unrelated securities
22 promises to be both extremely burdensome and of only marginal value in assessing what trading
23 strategy they utilized in connection with their purchase and sale of Motel 6 shares[]"); Epstein v.
24 MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995) (per curiam) (observing that "the right of a party to
25 obtain discovery is not unlimited[]" and concluding that while discovery of "whether plaintiffs owned
26 MCA stock[] is without doubt relevant to the subject matter of this litigation[, t]he other information
27 [defendant] sought to discover, however, is not[, because a]ny information [defendant] may have
28 gleaned from these discovery requests would have no bearing on either the merits of the case or

on the motion for class certification[]"); Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., 2005 WL 3801463, at *4 (N.D. Ill. 2005) ("discovery of [plaintiff's] investment history is irrelevant to any class-wide liability issues"); see also Kolin v. Am. Plan Corp., 1986 WL 36311, at *10 (E.D.N.Y. 1986) ("investment strategy . . . is of little importance to [plaintiff's] suitability as a class representative[]"); Burstein v. Applied Extrusion Technologies, Inc., 153 F.R.D. 488, 491 (D. Mass. 1994) (denying motion to compel broad discovery of plaintiff's trading records at the class certification stage without more than a "mere possibility" that such documents would rebut the "fraud on the market" presumption).[2]

Under the circumstances, the court is convinced that requiring plaintiff to produce documents that do not concern defendant New Century or this litigation "can have no possible bearing on the claim or defense of a party." McCormick, 2005 WL 1606595, at *5. Accordingly, in responding to Document Request Nos. 11, 21-23 and 26-32, plaintiff need only produce nonprivileged documents to the extent that they concern the claims and defenses in this action.[3]

///

---

[2] The cases cited by defendant, (see Joint Stip. at 26), are in the minority and unpersuasive. For example, in In re Acceptance Ins. Co. Sec. Litig., 2002 U.S. Dist. LEXIS 27681 (D. Neb. 2002), the court ordered the plaintiffs to produce "all documents related to each class representative's financial condition as it relates to investing and securities[, including] . . . 'financial statements, bank statements, tax returns, and brokerage statements[.]'" Id. at *12. However, the lead plaintiffs were individual trusts, see id. at *12-13, not institutional investors trading pursuant to a passive indexing approach. In In re Grand Casinos, Inc. Sec. Litig., 181 F.R.D. 615 (D. Minn. 1998), the court permitted limited discovery into a Lead Plaintiff's trading history and strategy where defendants provided ample support that "one or more of the Lead Plaintiffs traded in Grand and Stratosphere securities, while knowing that the alleged misrepresentations were false, in order to advance personal purposes which were unrelated to any claimed deception on the Defendants' part." Id. at 619-20 & n. 4. Finally, in In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F.Supp. 109 (S.D.N.Y. 1993), the court permitted discovery of the trading history of certain lead plaintiffs, who were individual investors, where plaintiffs alleged both fraud on the market and direct reliance on defendant's misrepresentations and omissions. See id. at 112-14.

[3] This Order does not preclude KPMG from inquiring through depositions into "NYSTRS's purported use and/or reliance upon the indexing processing and how that process affected NYSTRS's investments." (Joint Stip. at 9); see In re Motel 6 Sec. Litig., 1996 WL 474175, at *1 (observing that defendants can make a sufficient analysis of plaintiffs' trades to address reliance and damages through documents related to the shares at issue along with deposition of the plaintiffs).

### C. Burden

Even assuming the subject documents were relevant to the claims or defenses in this action, the relevance is minimal at best and the court is convinced that producing the documents "outweighs [the] likely benefit" defendant would obtain from such documents. See Fed. R. Civ. P. 26(b)(2)(C)(iii). The subject Requests require plaintiff to produce documents that do not concern defendant New Century or this litigation. Therefore, as noted by the unchallenged declaration of plaintiff's general counsel, NYSTRS would incur significant burden by its small staff to identify and collect all responsive documents. (See NYSTRS Decl. at ¶¶ 10-12 & 20). Requiring NYSTRS to search for all responsive documents would divert valuable staff time from other important matters, including investment transactions, legislative initiatives, benefits questions and human resources issues. (See id. at ¶ 11). Further, NYSTRS would need to devote hundreds of person-hours to search various files and records for documents, including determining whether the documents are on- or off-site and pulling apart some documents so that they can be copied. (See id. at ¶¶ 11-12). Under these circumstances, the court is persuaded that plaintiff has established that producing the subject documents would be unduly burdensome and that the burden outweighs the need for the information. See Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296 (E.D. Pa. 1980) (party objecting on burdensome grounds "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is . . . overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden[]"); Ricotta v. Allstate Ins. Co., 211 F.R.D. 622, 624 (S.D. Cal. 2002) (plaintiff's request for "every report" that defendant's expert had ever prepared for defendant was overly broad because it would have required defendant to manually review the approximately 50,000 claim files in its possession since 1987, when expert began working for defendant, and the burden and expense of producing the documents far outweighed the likely benefit).

### III. WORK-PRODUCT PROTECTION.

Plaintiff objects to Document Request Nos. 50-57 to the extent that they request documents collected and reviewed by plaintiff's counsel as part of its investigation into this matter. (See Joint Stip. at 46-47; see also id. at 36-44). According to plaintiff, it has "produced all public and

nonpublic documents in Plaintiff['s] files, all documents collected from confidential witnesses during the course of Plaintiff's Lead Counsel's investigation, and all documents obtained from nonparties through formal discovery." (Plaintiff's Supp. Mem. at 4). Defendant contends that "[w]ork product protection does not extend to documents located and assembled in the course of factual investigations." (Joint Stip. at 45) (internal quotation marks and citation omitted); (see also KPMG's Supplemental Memorandum in Support of Motion ("KPMG Supp. Mem.") at 4) ("KPMG seeks – and is entitled to – the documents plaintiffs and their counsel collected during the course of their investigation."). Defendant asserts that because it "is seeking documents collected during the course of Plaintiff['s] counsel's investigation[,] such documents do not reveal counsel's mental impressions and litigation strategy and are therefore not protected work product."[4] (KPMG Supp. Mem. at 5).

Because the work-product doctrine and attorney-client privilege impede full and free discovery, the doctrines must be narrowly construed. See People v. Sinohui, 28 Cal.4th 205, 212 (2002) ("Because privileges prevent the admission of relevant and otherwise admissible evidence, they should be narrowly construed.") (internal quotation marks and citation omitted); Weil v. Investment/Indicators, Research and Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981) ("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."); Roberts v. Heim, 123 F.R.D. 614, 635 (N.D. Cal. 1988) ("The work product doctrine . . . is, like other privilege rules, to be narrowly construed because its application can derogate from the search for the truth.") (citation omitted). Documents assembled or collected in anticipation of litigation do not enjoy work-product protection. On the contrary, "[a] party may compel production of whatever documents or other evidence the opposing party (or counsel) has collected or assembled relating to a particular issue. There is no work product protection because the collection or assembly of documents, as opposed to their production, does not necessarily reveal counsel's mental impressions and litigation strategy." Schwarzer, Tashima & Wagstaffe, Cal.

---

[4] While plaintiff argues that KPMG also seeks plaintiff's counsel's communications with confidential witnesses, (see Joint Stip. at 50), defendant concedes that it "does not seek such communications[.]" (KPMG Supp. Mem. at 4).

1  Practice Guide: Fed. Civ. Pro. Before Trial ¶ 11:846 (The Rutter Group 2009). "Merely gathering
2  documents from third parties does not gloss the documents with an attorney's mental impressions
3  any more that simply sharing documents with an attorney stamps the documents with the
4  imprimatur of attorney-client privilege." Kartman v. State Farm Mut. Auto. Ins. Co., 247 F.R.D.
5  561, 564 (S.D. Ind. 2007); see Zucker v. Sable, 72 F.R.D. 1, 3 (S.D.N.Y. 1975) ("It is also clear
6  that materials assembled during routine investigations by counsel do not receive the qualified
7  immunity afforded an attorney's 'work product[.]'"). While a narrow exception exists for documents
8  chosen by counsel to show a witness in preparation for a deposition, see Sporck v. Peil, 759 F.2d
9  312, 315-16 (3d Cir.), cert. denied, 474 U.S. 903, 106 S.Ct. 232 (1985) ("the selection and
10 compilation of documents by counsel in this case in preparation for [plaintiff's deposition] falls
11 within the highly-protected category of opinion work product[]"); accord Cent. Valley Chrysler-Jeep
12 v. Witherspoon, 2006 WL 2600149, at *3 (E.D. Cal. 2006), such an exception does not apply
13 where, as here, the subject document requests seek all documents collected by lead counsel, and
14 not a subset of documents the attorney chose to review with a witness in preparation for a
15 deposition.  (See Joint Stip. at 36-44).

16        Attorneys generally review all documents – as part of their investigation and representation
17 of a client – gathered and/or produced prior to and during a case and make assessments as to
18 the purpose, if any, of each document in the litigation.  However, under plaintiff's view, protecting
19 documents "reviewed by Plaintiff's Lead Counsel as part of its investigation" could result in virtually
20 all documents being withheld on work-product grounds.  Such an approach is untenable and would
21 "derogate from the search for the truth."  Roberts, 123 F.R.D. at 635.

22        Under the circumstances, the court will order plaintiff to provide responsive documents, if
23 it has not already done so, to the subject Document Requests.  However, plaintiff's counsel may
24 withhold all documents counsel "selected" and "compiled" in preparing to file the initial and
25 operative complaints.  In addition, plaintiff may withhold documents concerning counsel's
26 communications with confidential witnesses and witnesses interviewed by counsel.  In addition,
27 counsel may redact information in documents that would reveal the identities of witnesses
28 contacted or interviewed by counsel.  See In re MTI Tech. Corp. Sec. Litig., 2002 WL 32344347,

at *3 (C.D. Cal. 2002) ("[T]he identity of witnesses interviewed by opposing counsel is protected [under the work-product doctrine because] . . . if the identify of the interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy. Such evaluations, impressions, and strategy are at the heart of the work product rule.") (internal citations omitted).

IV.    ATTORNEY-CLIENT PRIVILEGE.

Plaintiff objects to Document Request Nos. 36 and 38 to the extent that they request documents received from any current or former New Century shareholders or any other plaintiff or putative class member. (See Joint Stip. at 54 & 55-56). Plaintiff contends that KPMG's attempt "to compel production of (i) documents that NYSTRS's counsel received from New Century shareholders and (ii) communications between NYSTRS's counsel and New Century shareholders in connection with this action[]" are protected from disclosure as "privileged attorney-client communications." (Id. at 56) (bold and italics omitted); (but see id.) ("this discovery dispute concerns KPMG's efforts to obtain discovery communications between Plaintiffs' Lead Counsel and putative class members[]") (emphasis added). Defendant concedes that it is not seeking NYSTRS's counsel's communications with any current or former New Century shareholders, or any other plaintiff or putative class members in this litigation. (KPMG Supp. Mem. at 5). Instead, defendant "seeks only the *documents* that plaintiffs and their counsel received from the listed individuals." (Id.) (italics in original).

Assuming that an attorney-client relationship exists between counsel for Lead Plaintiff and the putative class members, pre-existing documents that the putative class members provided to counsel are not protected by the attorney-client privilege.[5] See Fisher v. United States, 425 U.S. 391, 403-04, 96 S.Ct. 1569, 1577 (1976) ("This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following

---

[5] The cases plaintiff cites in support of its claim that discovery from absent class members is not appropriate at this time, (see Joint Stip. at 58), are inapplicable. Under the circumstances here, defendant is not seeking discovery from absent class members.

11

1  transfer by the client in order to obtain more informed legal advice."); Upjohn Co. v. United States,
2  449 U.S. 383, 395, 101 S.Ct. 677, 685 (1981) ("The [attorney-client] privilege only protects
3  disclosure of communications; it does not protect disclosure of the underlying facts by those who
4  communicated with the attorney[.]"); In re LTV Sec. Litig., 89 F.R.D. 595, 608 (N.D. Tex. 1981) (in
5  a class action, attorney-client privilege does not extend to disclosure of underlying facts by those
6  who communicated with counsel); 1st Technology, LLC v. Rational Enterprises Ltd., 2008 WL
7  4571258, at *6 (D. Nev. 2008) ("the attorney-client privilege is not undermined if an attorney is
8  required to produce documents that could have been legally obtained from the client through court
9  process[]").  Accordingly, the attorney-client privilege does not apply to documents plaintiff
10 received from any current or former New Century shareholders or any other plaintiff or putative
11 class members and any such documents must be produced.  However, in producing responsive
12 documents to the subject Requests, plaintiff may redact all putative class member identifying
13 information.

**This Order is not intended for publication.  Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1.   KPMG LLP's Motion to Compel the Production of Documents from Lead Plaintiff New York State Teachers' Retirement System **(Document No. 422)** is **granted in part and denied in part** as set forth above.

2.   If plaintiff has not already done so, it shall provide responsive documents (and, if appropriate, provide supplemental written responses under oath) to Document Request Nos. 11, 21-23 and 26-32 no later than **December 28, 2009**.  To the extent plaintiff claims that all responsive information has been provided in response to any discovery request, plaintiff shall set forth in detail, under oath: (i) the efforts made to obtain the requested information; and (ii) indicate whether or not further responsive information exists or is available.

3.   If plaintiff has not already done so, it shall provide responsive documents (and, if appropriate, provide supplemental written responses under oath) to Document Request Nos. 36 and 38 no later than **December 28, 2009**.  In producing the documents, counsel may withhold

1  documents that refer, relate or reflect communications between counsel and any of the putative
2  class members as well as any current or former New Century shareholders. To the extent plaintiff
3  claims that all responsive information has been provided in response to any discovery request,
4  plaintiff shall set forth in detail, under oath: (i) the efforts made to obtain the requested information;
5  and (ii) indicate whether or not further responsive information exists or is available.

6      4.    If plaintiff has not already done so, it shall provide responsive documents (and, if
7  appropriate, provide supplemental written responses under oath) to Document Request Nos. 50-
8  57 no later than **December 28, 2009**. In responding to Document Request Nos. 50-57, plaintiff's
9  counsel may withhold documents counsel "selected" and "compiled" in preparing to file the initial
10 and operative complaints. In addition, counsel may withhold documents concerning counsel's
11 communications with confidential witnesses and witnesses interviewed by counsel. In addition,
12 counsel may redact information in documents that would reveal the identities of witnesses
13 contacted or interviewed by counsel. To the extent plaintiff claims that all responsive information
14 has been provided in response to any discovery request, plaintiff shall set forth in detail, under
15 oath: (i) the efforts made to obtain the requested information; and (ii) indicate whether or not
16 further responsive information exists or is available.

17     5.    The parties to this action are hereby put on notice that any privilege objections to
18 discovery requests served after the filing date of this Order that do not include "sufficient
19 information to enable the court to determine whether *each element* of the asserted objection is
20 satisfied[,]" will be overruled. Fears v. Wal-Mart Stores, Inc., 2000 WL 1679418, at *4 (D. Kan.
21 2000) (italics in original); see also Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th
22 Cir. 1984) (per curiam), cert. dismissed, 469 U.S. 1199, 105 S.Ct. 983 (1985) (a party's failure to
23 satisfy burden when trial court is asked to rule upon existence of a privilege is not excused even
24 when the document is later shown to be one that would have been privileged had a timely showing
25 been made). In addition, for any document that is withheld and/or redacted on the basis of the
26 attorney-client privilege and/or work-product protection, the party producing the document shall
27 provide a privilege log at the time the document(s) is(are) produced. The privilege log shall
28 comply with Form No. 11:A as set forth in the California Practice Guide: Federal Civil Procedure

Before Trial (The Rutter Group 2009). Any document that contains both protected and responsive information shall be redacted to eliminate any reference to attorney-client matters and/or the work-product protection.

6. The parties are hereby ordered to comply strictly with Local Rule 37 in the event any party believes that it may be necessary to file a discovery motion. The moving party's counsel shall initiate the meet and confer process required by Local Rule 37 by preparing and serving the letter required by Local Rule 37-1. The opposing party's counsel or, for that matter, any party that receives a letter pursuant to Local Rule 37-1, must make himself or herself available for a meet and confer (as specified in Local Rule 37) within ten (10) calendar (not business) days of the date of the letter.[6] All meet and confer letters must be served by fax and U.S. mail on the day the letter is dated. The Joint Stipulation must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed discovery request).

7. The parties are hereby advised that, absent a stay of this Order by this court or the District Judge, it must comply with all of its provisions, i.e., the filing of a motion for review of this court's decision is not sufficient to suspend defendant's obligations to comply with the court's order. See Local Rule 72-2.2 ("Regardless of whether a motion for review has been filed, the Magistrate Judge's ruling remains in effect unless the ruling is stayed or modified by the Magistrate Judge or the District Judge."); Tinsley v. Kemp, 750 F.Supp. 1001, 1013 (W.D. Mo. 1990) ("[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay – even before the court has ruled. Such a phenomenon would reduce a court's orders to useless and senseless formalities."). A magistrate judge's decisions "should not be considered ineffective, advisory, or nonfinal simply because they may be reviewed by the district court." Kimbrell v. ADIA, S.A., 834 F.Supp. 1313, 1317 (D. Kan.

---

[6] Counsel should note that the court will have out-of-town counsel participate in person for all meet and confers if the court determines that telephonic meet and confers are unproductive.

1993).  "Decisions by a magistrate judge on nondispositive motions are intended to be effective unless overturned by the district judge, just as decisions of a district judge are intended to be effective unless overturned by a circuit court."  Id.  In addition, the fact that a protective order has not been entered in this case does not excuse the parties from fully complying with all discovery requests.  See, e.g., Garcia v. Almieda, 2006 WL 3001171, at *4 (E.D. Cal. 2006) ("[F]iling a motion for a protective order does not work to immediately shield the moving party from the [duty to appear at a] deposition."); Cima v. WellPoint Health Networks, Inc., 2008 WL 746916, at *4 (S.D. Ill. 2008) (the duty to timely respond to interrogatories or requests for production is not altered by a pending protective order); see also Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide: Fed. Civ. Pro. Before Trial ¶ 11:1166 (The Rutter Group 2009) ("The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery[.]").

Dated this 7th day of December, 2009.

                                                /s/
                                     Fernando M. Olguin
                                 United States Magistrate Judge