1  Michael C. Kelley (SBN 090062)
   mkelley@sidley.com
2  Bradley H. Ellis (SBN 110467)
   bellis@sidley.com
3  Jose F. Sanchez (SBN 161362)
   jose.sanchez@sidley.com
4  Jodi E. Lopez (SBN 231117)
   jlopez@sidley.com
5  SIDLEY AUSTIN LLP
   555 West Fifth Street, 40th Floor
6  Los Angeles, California 90013
   Telephone:   (213) 896-6000
7  Facsimile:    (213) 896-6600

8  Michael L. Rugen (SBN 85578)
   mrugen@sidley.com
9  Robert B. Martin III (SBN 235489)
   rbmartin@sidley.com
10 SIDLEY AUSTIN LLP
   555 California Street, Suite 2000
11 San Francisco, California 94104
   Telephone:   (415) 772-1200
12 Facsimile:    (415) 772-7400

13 Attorneys For Defendant KPMG LLP

14                   UNITED STATES DISTRICT COURT

15                CENTRAL DISTRICT OF CALIFORNIA

16 IN RE NEW CENTURY                    ) Consolid. Case. No. 2:07-cv-00931-DDP
                                        ) (FMOx)
17                                      ) Assigned to:  Hon. Dean. D. Pregerson
                                        )
18                                      ) **[PROPOSED] STATEMENT OF**
                                        ) **UNCONTROVERTED FACTS AND**
19                                      ) **CONCLUSIONS OF LAW IN**
                                        ) **SUPPORT OF DEFENDANT KPMG**
20                                      ) **LLP'S MOTION FOR SUMMARY**
                                        ) **JUDGMENT**
21                                      )
                                        ) [Filed concurrently with Notice Of Motion
22                                      ) And Motion For Summary Judgment Or, In
                                        ) The Alternative, Summary Adjudication;
23                                      ) Memorandum Of Points And Authorities;
                                        ) Declaration Of Allan W. Kleidon;
24                                      ) Declaration of Jodi E. Lopez; [Proposed]
                                        ) Order; [Proposed] Judgment]
25                                      )
                                        ) Date:   March 29, 2010
26                                      ) Time:   10:00 a.m.
                                        ) Place:  Courtroom 3
27                                      )
                                        )
28 ─────────────────────────────────── )

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)

## A.  New Century Financial Corporation ("New Century" or "the Company")

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 1.  New Century was one of the country's largest mortgage finance companies.  It was founded in 1995 and was headquartered in Irvine, California.  Starting in 2004, New Century operated as a publicly-traded real estate investment trust, and through its subsidiaries, it acquired and originated primarily subprime mortgage loans.  On April 2, 2007, New Century filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, District of Delaware. | Second Amended Complaint ("Compl.") ¶¶ 2, 55-56. |

## B.  KPMG LLP ("KPMG")

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 2.  KPMG served as New Century's outside auditor from 1995 until KPMG resigned on April 27, 2007. | Compl. ¶ 39. |
| 3.  KPMG provided audit, audit-related, tax, and other services to New Century.  With respect to its audit services, KPMG issued an audit report on New Century's year-end financial statements and management's assessment of internal controls. | Compl. ¶¶ 4, 39. |
| 4.  The last audit report KPMG completed was for the year ended December 31, 2005.  KPMG did not issue any audit report during 2006 or for the year ended December 31, 2006. | Compl. ¶¶ 39, 206, 258. |
| 5.  KPMG's 2005 audit report stated, among other things, that KPMG had audited the "consolidated balance sheets of New Century Financial Corporation and subsidiaries as of December 31, 2005 and 2004, and the related consolidated statements of income, comprehensive income, changes in stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2005." KPMG's opinion stressed that the "consolidated financial statements are the responsibility of the Company's management," and that KPMG's responsibility as an auditor was "to express an opinion on [the] consolidated financial statements based on [its] | New Century FYE 2005 Form 10-K (Mar. 16, 2006) at 167. |

1

| | |
|---|---|
| audits."  Based on its audit, KPMG opined that, "[i]n our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of New Century Financial Corporation and subsidiaries as of December 31, 2005 and 2004, and the results of their operations and their cash flows for each of the years in the three-year period ended December 31, 2005, in conformity with U.S. generally accepted accounting principles." | |

## C. Plaintiffs' Allegations

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 6.  Plaintiffs purport to represent a class of former New Century shareholders who purchased or acquired New Century common stock, New Century 9.125% Series A Cumulative Redeemable Preferred Stock, New Century 9.75% Series B Cumulative Redeemable Preferred Stock, and/or New Century call options, and/or who sold New Century put options between May 5, 2005 and March 13, 2007. | Compl. ¶ 1. |
| 7.  Plaintiffs seek to hold KPMG liable for violating Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k (Count III), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (Count VII). | Compl. ¶¶ 315, 568-69; Court's 12/3/08 Order at 58-59. |
| 8.  Plaintiffs allege that KPMG violated Section 11 and Section 10(b) by making material misrepresentations in the 2005 audit report.  These are the only alleged misstatements made by KPMG. | Compl. ¶¶ 320, 328, 568-70; Court's 12/3/08 Order at 58-59. |
| 9.  Plaintiffs allege that they suffered losses when New Century's stock price dropped following a series of announcements by New Century between February 7, 2007 and March 13, 2007, which, according to Plaintiffs, revealed the truth about KPMG's alleged misrepresentations. | Compl. ¶ 540; Court's 12/3/08 Order at 58-59. |

**D. Relevant Announcements By New Century During The Class Period (February 7, 2007 – March 13, 2007)**

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 10. On February 7, 2007, New Century issued a press release announcing, among other things, that:<br><br>(a) It would be restating its unaudited financial statements for the first three quarters of 2006;<br><br>(b) In light of the pending restatements, the Company's previously filed condensed consolidated financial statements for the quarters ended March 31, June 30, and September 30, 2006 and all earnings-related press releases for those periods should no longer be relied upon;<br><br>(c) It expected to report a net loss for the fourth quarter of 2006;<br><br>(d) There was an increasing industry trend of early payment defaults and, consequently, loan repurchases that intensified in the fourth quarter of 2006. The Company continued to observe this increased trend in its early payment default experience in the fourth quarter, and the volume of repurchased loans and repurchase claims remained high; and<br><br>(e) It expected to record a fair value adjustment to its residual interests for the fourth quarter of 2006 to reflect the downturn in market conditions.<br><br>On the next trading day, February 8, the price of New Century shares declined from $30.16 to $19.24. | Compl. ¶¶ 457-59. |
| 11. On March 1, 2007, New Century issued a press release, which announced that the Company expected to file a Form 12b-25 Notification of Late Filing with the Securities and Exchange Commission ("SEC") with respect to its Form 10-K for the year-ended December 31, 2006. | Compl. ¶ 463. |
| 12. On March 2, 2007, New Century filed a Form 12b-25 | Compl. ¶¶ 464- |

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)

with the SEC announcing, among other things, that:

67.

(a) It would be unable to file its 2006 10-K in a timely fashion;

(b) Its restated net income for the first three quarters of 2006 would be significantly lower than previously reported;

(c) The Company's results of operations for the quarter and year ended December 31, 2006 would reflect declines in earnings and profitability when compared to the same periods in 2005;

(d) The Company expected to report a pretax loss for both the fourth quarter and full year ended December 31, 2006;

(e) The Company expected that, for the two-quarter period ended December 31, 2006, it would violate the loan covenants in 11 of its 16 financing arrangements, which required that it report at least $1 of net income for any rolling two-quarter period;

(f) KPMG had informed the Company that a failure to obtain written waivers from its lenders would cause KPMG to note in its 2006 audit report that "substantial doubt exists as to the Company's ability to continue as a going concern";

(g) New Century's Audit Committee had "initiated its own independent investigation into the issues giving rise to the Company's need to restate its 2006 interim financial statements, as well as issues pertaining to the Company's valuation of residual interests in securitizations in 2006 and prior periods";

(h) New Century's declining 2006 results were attributable to lower gains on sales of mortgage loans, reductions in the carrying values of its residual interests and loans held for sale, and an increase in its allowance for losses on loans held for investment;

(i) The SEC staff had requested a meeting to discuss the Company's announcement that it would restate its 2006

4

| | |
|---|---|
| quarterly financial statements; and | |
| (j) The New York Stock Exchange and the U.S. Attorney's Office had each informed the Company that they were investigating possible insider trading in New Century securities.<br><br>On the next trading day, March 5, the price of New Century shares declined from $14.65 to $4.56. | |
| 13. On March 8, 2007, New Century filed a Form SC 13D/A with the SEC announcing that David Einhorn had resigned from New Century's Board of Directors. On that same day, New Century also issued a press release and filed a Form 8-K with the SEC announcing that, as a result of "its current constrained funding capacity," New Century had elected to cease accepting loan applications from prospective borrowers "effective immediately."<br><br>On the next trading day, March 9, the Company's stock price fell from $3.87 to $3.21. | Compl. ¶¶ 468, 470-71. |
| 14. On March 12, 2007, New Century filed a Form 8-K with the SEC announcing that:<br><br>(a) Its lenders had ceased lending funds to the Company;<br><br>(b) Certain of its lenders had accelerated New Century's repurchase obligation to repurchase all outstanding mortgage loans that had been financed under the relevant agreements; and<br><br>(c) New Century did not have sufficient funds to repurchase the loans that its lenders had demanded it to repurchase.<br><br>On that day, New Century's stock declined from $3.21 to $1.66. | Compl. ¶¶ 472-73. |
| 15. On March 13, 2007, New Century filed a Form 8-K with the SEC disclosing that additional lenders had advised the Company that it was in default and/or accelerated the Company's obligation to repurchase outstanding mortgage loans. The Company further announced that it had received a grand jury subpoena | Compl. ¶¶ 474, 476. |

5

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)

| | |
|---|---|
| from the United States Attorney's Office for the Central District of California requesting the production of documents, and that it had received a letter from the staff of the Pacific Regional Office of the Securities and Exchange Commission indicating that it was conducting a preliminary investigation regarding the Company and requesting the production of certain documents.  After the close of trading that day, New Century also issued a pres release announcing that the New York Stock Exchange had determined that New Century's stock was no longer suitable for listing on the NYSE and would be suspended immediately. | |

## E.  New Century's Announcements After The Class Period

| | |
|---|---|
| 16. On April 2, 2007, New Century announced that it filed for Chapter 11 bankruptcy. | Compl. ¶¶ 2, 479. |
| 17. In light of the bankruptcy filing and the fact that New Century no longer needed audited financial statements, KPMG resigned as New Century's auditor on April 27, 2007. | Compl. ¶ 39. |
| 18. On May 24, 2007, following New Century's filing for bankruptcy and KPMG's resignation, New Century announced that the Audit Committee had determined that "there were errors in the Company's previously filed annual financial statements for its fiscal year ended December 31, 2005 with respect to both the accounting and reporting of loan repurchase losses and the Company's valuation of certain residual interests in securitizations."  New Century explained that the Audit Committee had begun an investigation into these errors, but due to the pending bankruptcy, "the Company's ability to further investigate these matters is constrained."  New Century announced that based upon the investigation performed to-date, "the Audit Committee and management believe that it is more likely than not that these errors in the aggregate resulted in a material overstatement of pretax earnings in the 2005 Financial Statements."  The Company's Board of Directors thus concluded, based upon the recommendation of the Audit Committee, that the 2005 | Compl. ¶ 482. |

6

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)

| | |
|---|---|
| Financials "should no longer be relied upon." | |

## F.  The Complaint Filed By The U.S. Securities And Exchange Commission

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 19. On December 7, 2009, the SEC filed a complaint in the United States District Court, Central District of California, against three former officers of New Century: Brad Morrice (founder and CEO), Patti Dodge (CFO), and David Kenneally (Controller).  Mr. Morrice and Ms. Dodge are also defendants in the above-captioned action brought by plaintiffs. | SEC Complaint, (Ex. J to Declaration of Jodi E. Lopez) ("SEC Compl."); *see also* Compl. ¶¶ 24, 26. |
| 20. The SEC charged Messrs. Morrice and Kenneally and Ms. Dodge with eight counts of securities fraud and related offenses, including one claim for making materially false statements to KPMG.  The SEC has concluded that they intentionally altered New Century's accounting practices in both the second and third quarters of 2006, in order to hide the effects that the weakening subprime markets were having on New Century's financial performance. | SEC Compl. at 43-49. |
| 21. The SEC Complaint does not allege any material misstatements or omissions in New Century's 2005 financial statements or in KPMG's 2005 audit report. | *See* SEC Compl. |
| 22. On December 7, 2009, the SEC issued a press release in connection with its complaint, which noted, among other things, that the complaint charged "three former top officers of New Century Financial Corporation with securities fraud for misleading investors as New Century's subprime mortgage business was collapsing in 2006." | December 7, 2009 SEC Press Release (Ex. K to Declaration of Jodi E. Lopez). |

## G.  Loss Causation

| UNCONTROVERTED FACT | EVIDENCE |
|---|---|
| 23. To determine how the market interprets particular pieces of information announced concurrently with other information, economists often study reports authored by informed market participants, including stock analysts' reports.  Commentary found in analyst | Kleidon Report ¶¶ 6, 20. |

7

| | |
|---|---|
| reports and public press is generally considered to reflect the value-relevant information known to the market upon some public disclosure regarding a security. | |
| 24. Dr. Allan Kleidon reviewed all available analyst reports and public press from Factiva regarding New Century following the Company's February 7, 2007 announcement and throughout the disclosure period. Dr. Kleidon also reviewed all available public press regarding New Century for the week following the May 24, 2007 announcement. | Kleidon Report ¶¶ 6, 22. |
| 25. The analyst reports and public press revealed no evidence that the market understood the reference to "and prior periods," any other aspect of the March 2, 2007 announcement, or any aspect of any other Company announcement, to mean that errors existed in New Century's 2005 financial statements or in the KPMG 2005 audit report. Not a single analyst or press report commented on or hinted at errors in New Century's 2005 financials or KPMG's 2005 audit report. Their discussion focused instead on the other highly negative and more current news announced by the Company. | Kleidon Report ¶¶ 6, 23. |
| 26. One analyst report explicitly stated that the 2005 financials could be relied on, even after the March 2, 2007 announcement. JPMorgan analysts in their report dated March 5, 2007, stated that "the last financials that we can rely on were filed in the company's 2005 10K." | Kleidon Report ¶¶ 6, 24. |
| 27. Following New Century's announcement on May 24, 2007 (after the end of the Class Period) that the 2005 financial statements should no longer be relied upon, there was no commentary suggesting that this was old news. Public reports stated that this disclosure was new information that had not been disclosed previously.

For example, analysts stated:

New Century Financial Corp. (NEWC) said Thursday that an internal investigation indicates | Kleidon Report ¶¶ 6, 25. |

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)

that the subprime lender may have overstated its pretax earnings in 2005, *implying that accounting improprieties may have begun earlier than was previously disclosed.* In a filing with the Securities and Exchange Commission, New Century said its annual financial statement for 2005 "should no longer be relied upon" *because of newly discovered accounting errors* involving loan-repurchase losses.

New Century 2005 Financial Info 'Likely' Overstated, *Dow Jones Corporate Filings Alert*, May 24, 2007 (emphasis supplied).

The *problems surfaced 3-1/2 months after* New Century said it planned to restate results for the first nine months of 2006, citing increases in loan losses.

UPDATE 1-New Century Says Probably Overstated 2005 Earnings, *Reuters News*, May 24, 2007 (emphasis supplied).

The Irvine, Calif., subprime lender New Century Financial Corp. said that *it has found more accounting errors* but will not bother to correct them or the errors it discovered previously.

In Brief: New Century: New Errors, No Correction, *American Banker*, May 25, 2007 (emphasis supplied)

| | |
|---|---|
| 28. There also is no market commentary that suggested that any of the price declines during the alleged disclosure period were attributable to errors in the Company's 2005 financial statements or the KPMG 2005 audit report. This is to be expected for two reasons. First, there is no evidence that the market understood that there were any errors in New Century's 2005 financial statements or the KPMG 2005 audit report. Second, by early 2007, the 2005 financial information was stale when compared to the more current 2006 financials, particularly given the very different industry | Kleidon Report ¶¶ 6, 29-41. |

9

| | |
|---|---|
| environment in early 2007 versus 2005 (*e.g.* slowing or falling home prices, slowing home sales, and increasing foreclosures).  The 2005 financials thus did not provide any relevant basis for valuing the Company in early 2007. | |
| 29. It is Dr. Kleidon's expert opinion that no declines in New Century's stock price during the Class Period are attributable to perceived errors in New Century's 2005 financial statements or the KPMG 2005 audit report.  No contemporaneous, informed market commentary during the Class Period suggested that there were any issues with the 2005 financials; there was contemporaneous analyst commentary that the 2005 financials were reliable; information disclosed after the end of the Class Period about the 2005 financials was characterized as new information; no analyst or press commentary attributed any price decline during the Class Period to errors in the 2005 financials or audit report; and contemporaneous analyst commentary confirms that, by early 2007, the 2005 financials were stale and inadequate to provide any basis for valuing New Century, consistent with academic research. | Kleidon Report ¶¶ 6, 45. |

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)

1

**CONCLUSIONS OF LAW**

2 **KPMG Is Entitled To Summary Judgment On Plaintiffs' Section 11 and Section**

3 **10(b) Claims (Counts III and VII) Because The Evidence Shows That KPMG Did**

4 **Not Cause Any Of Plaintiffs' Losses.**

5           1.     Loss causation is an essential element of a Section 10(b) claim.

6 *See* 15 U.S.C. § 78u-4(b)(4); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344 (2005).

7 To recover under Section 10(b) from KPMG, Plaintiffs must prove that their losses

8 were caused when the market learned the "truth" about KPMG's alleged

9 misrepresentations.  Likewise, Section 11 expressly provides a defense – the so-called

10 "negative causation defense."  Under that defense, when the specific alleged

11 misrepresentations upon which KPMG was sued did not cause Plaintiffs' losses – in

12 other words, when there is an absence of loss causation – Plaintiffs may not recover

13 from KPMG.  *See* 15 U.S.C. § 77k(e).

14           2.     The only alleged misstatements by KPMG were contained in its

15 2005 audit report.  Thus, unless the evidence establishes both that the market

16 understood the class period announcements to be revealing errors in KPMG's 2005

17 audit report *and* that the market reacted negatively to that news, summary judgment

18 must be granted on both claims.  *See In re Williams Sec. Litig.*, 558 F.3d 1130 (10th

19 Cir. 2009); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. Jun. 19,

20 2009); *In re Retek Sec. Litig.*, 621 F. Supp. 2d 690 (D. Minn. 2009); *In re Omnicom*

21 *Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546 (S.D.N.Y. 2008).

22           3.     Summary judgment should be granted in favor of KPMG because

23 the evidence establishes that the market did not understand the reference to "and prior

24 periods," any other aspect of the March 2 announcement, or any aspect of the other

25 announcements between February 7 and March 13, 2007, to disclose any "truth" about

26 KPMG's 2005 audit report, let alone that the market reacted negatively to any such

27 disclosure, and thus there is no evidence to support a finding that any of Plaintiffs'

28

11

1  losses were caused by KPMG.

2

3  Dated:  January 13, 2010                    Respectfully submitted,

4                                              Michael C. Kelley (No. 090062)
5                                              Bradley H. Ellis (No. 110467)
                                               Jose F. Sanchez (No. 161362)
6                                              Jodi E. Lopez (No. 231117)
7                                              SIDLEY AUSTIN LLP
                                               555 West Fifth Street
8                                              Los Angeles, California 90013
9                                              (213) 896-6000

10                                             Michael L. Rugen (No. 85578)
11                                             Robert B. Martin III (No. 235489)
                                               SIDLEY AUSTIN LLP
12                                             555 California Street, Suite 2000
13                                             San Francisco, California 94104
                                               (415) 772-1200
14

15                                             By: /s/ Michael L. Rugen

16                                                  Attorneys For Defendant KPMG LLP
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT KPMG LLP'S [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSIONS OF LAW – Case No. 2:07-cv-00931-DDP (FMO)