# Exhibit I

8-K 1 htm_12740.htm LIVE FILING

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Date of Report (Date of Earliest Event Reported):　　　　　　　　　　May 9, 2006

# New Century Financial Corporation

(Exact name of registrant as specified in its charter)

| Maryland | 001-32314 | 56-2451736 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 18400 Von Karman Avenue, Suite 1000, Irvine, California | 92612 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code:　　　　　(949) 440-7030

Not Applicable

Former name or former address, if changed since last report

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Page 66
Exhibit I

**Top of the Form**

**Item 1.01 Entry into a Material Definitive Agreement.**

On May 10, 2006, in connection with the registrant's annual meeting of stockholders, the Board of Directors of the registrant (the "Board") granted 1,973 shares of restricted common stock of the registrant to each of the registrant's directors who was not also employed by the registrant and who continued in office after the meeting (Marilyn A. Alexander, Harold A. Black, David Einhorn, Fredric J. Forster, Donald E. Lange, William J. Popejoy, Michael M. Sachs and Richard A. Zona).

On May 10, 2006, in accordance with the registrant's stock ownership guidelines for its non-employee directors, the Board granted an additional 345 shares of restricted common stock of the registrant to each of Ms. Alexander and Messrs. Black and Einhorn in lieu of 50% of their annual retainer for service on the Board.

Each restricted stock award was granted under the registrant's 2004 Performance Incentive Plan. Each award of 1,973 shares of restricted common stock of the registrant vests in 1/3 installments on each of the first, second and third anniversaries of the date of grant. Each award of 345 shares of restricted common stock of the registrant vests on the first anniversary of the date of grant. The unvested restricted shares subject to a director's award are subject to forfeiture if the director's membership on the Board terminates other than due to the director's death, disability, or retirement. Dividends are paid on the directors' restricted shares at the same rate as on all other shares of the registrant's common stock.

The Compensation Committee of the Board also approved performance-based award grants to certain executives of the Company. Each performance award is denominated in "Performance Units" with each Performance Unit representing the right to receive, following vesting of the award, $100. The number of Performance Units awarded to each of the Company's named executive officers is as follows:

Robert K. Cole, Chairman and Chief Executive Officer, 0 units.
Brad A. Morrice, President and Chief Operating Officer, 5,625 units.
Edward F. Gotschall, Vice Chairman, 0 units.
Patrick J. Flanagan, Executive Vice President, 0 units.
Kevin M. Cloyd, Executive Vice President and President of NC Capital, 2,205 units.

The vesting of the Performance Units is conditioned on the holder's continued employment by the registrant through the end of a three-year performance period ending December 31, 2008 and the achievement of certain performance objectives during such period. The registrant performance measures on which the objectives are based include pre-tax income, pre-tax income growth, return on stockholders' equity, and total stockholder return. Of the Performance Units awarded to Mr. Morrice, vesting of 100% of the units is based on the total stockholder return measure, with no portion allocated to the other three measures. Of the Performance Units awarded to Mr. Cloyd, vesting of 50% of the units is based on the return on stockholders' equity measure and vesting of the remaining 50% is based on the total stockholder return measure, with no portion allocated to the other two measures. In general, the number of Performance Units that will vest with respect to a particular measure will be determined based on the registrant's actual performance against that measure over the three-year performance period. No Performance Units with respect to a particular measure will vest if certain minimum performance levels are not achieved. In general, no payment will be made with respect to the award if the holder's employment terminates before the date the award would otherwise be paid following the three-year performance period. On May 9, 2006, Messrs. Morrice and Cloyd entered into performance award agreements with the registrant governing these awards.

The foregoing summary of the terms of the Performance Units awarded to Mr. Morrice and Mr. Cloyd is qualified in its entirety by reference to the text of the form of performance award agreement used to evidence such award grants, which is filed as Exhibit 10.1 hereto and incorporated herein by reference.

**Item 9.01 Financial Statements and Exhibits.**

(d) Exhibits.

10.1 Form of Performance Award Agreement.

Page 67
Exhibit I

**Top of the Form**

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

|  | New Century Financial Corporation |
|---|---|
| *May 24, 2006* | By: /s/ Robert K. Cole |
|  | *Name: Robert K. Cole* |
|  | *Title: Chairman and Chief Executive Officer* |

**Top of the Form**

Exhibit Index

| Exhibit No. | Description |
| --- | --- |
| 10.1 | Form of Performance Award Agreement. |

EX-10.1 2 exhibit1.htm EX-10.1

**EXHIBIT 10.1**

___, 2006

    Re: **Performance Award Agreement**

Dear ___:

    In recognition of your continued commitment to the growth and success of New Century Financial Corporation ("New Century"), we are very pleased to announce that you have been granted an opportunity to earn a performance award of up to $220,500 (your "Performance Award"). This letter (this "Agreement") sets forth the terms and conditions of your Performance Award. If you have any questions after reading this Agreement, please contact Amanda Peterson at (949) 255-6890.

    Performance Award Opportunity. We will pay you a cash amount equal to your Performance Award, subject to tax withholding and other authorized deductions, if New Century meets its four (4) predetermined objectives, as set forth below, at target for the three-year period from January 1, 2006 to December 31, 2008 (the "Performance Period"). The four objectives have been established with respect to the following performance measures: Pre-Tax Income ("PTI"), Pre-Tax income Growth ("PTIG"), Return on Stockholders' Equity ("ROE"), and Total Shareholder Return ("TSR").

    If performance is less than or greater than the target level of performance for any one or more of the performance measures for the Performance Period, the amount of your Performance Award will be determined with reference to "Performance Units." You have been awarded ___ Performance Units for this purpose, with ___ units allocated to the PTI measure, ___ units allocated to the PTIG measure, ___ units allocated to the ROE measure, and ___ units allocated to the TSR measure. Each Performance Unit represents the right to receive $100 if the related measure is achieved at the target level of performance for the Performance Period. No amount will be payable with respect to a Performance Unit if minimum performance is not achieved with respect to that measure for the Performance Period.

    Following is more information on the Performance Measures:

    PTI: We will pay you $100 for each of your Performance Units allocated to the PTI measure if New Century's consolidated pre-tax net income (without the TRS portfolio) equals or exceeds $606 million for any fiscal year during the Performance Period. This portion of the Performance Award will be paid only with respect to the first year in which such earnings target is met, and will not be paid again even if the earnings target is met in a subsequent year. No payment will be made with respect to this portion of the Performance Award if New Century's consolidated pre-tax net income (without the TRS portfolio) does not equal or exceed $606 million for any fiscal year during the Performance Period.

    PTIG: We will pay you $100 for each of your Performance Units allocated to the PTIG measure if New Century's consolidated pre-tax net income for the three fiscal years in the Performance Period grows at an average annual rate of 20% (using New Century's consolidated pre-tax net income for 2005 as the base year to measure such growth). A payout schedule for results other than at target is set forth on the attached Exhibit A.

    ROE: We will pay you $100 for each of your Performance Units allocated to the ROE measure if New Century's average annual return on stockholders' equity for the three fiscal years in the

Page 71
Exhibit I

Performance Period falls within a range from 27.00% to 29.99%. A payout schedule for results other than at target is set forth on the attached Exhibit B.

TSR: We will pay you $100 for each of your Performance Units allocated to the TSR measure if New Century's total stockholders' return for the three fiscal years in the Performance Period falls within the range 65.00% to 84.99%. A payout schedule for results other than at target is set forth on the attached Exhibit C.

The determination of whether and the extent to which the objectives have been met with respect to the Performance Period will be based on New Century's audited financial statements and related notes and supporting schedules for each relevant year. To the extent any portion of your Performance Award is allocated to a particular performance measure and minimum performance is not achieved with respect to that measure for the Performance Period, no amount will be payable to you with respect to that portion of your award.

No portion of your Performance Award will be paid, and this Agreement will immediately terminate, if your employment by New Century or one of our subsidiaries terminates (for any reason, whether a termination with or without cause, due to your retirement, death, disability, layoff, or otherwise) prior to the date that your Performance Award is actually paid (regardless of whether any performance objective was theretofore satisfied).

Payment. New Century will determine the extent to which the performance objectives have been satisfied with respect to the Performance Period promptly after audited financial statements for New Century are received by us with respect to the last year in the Performance Period. If one or more of the performance objectives have been satisfied at or above the minimum level of performance, New Century will, subject to the employment requirement set forth above, pay you the applicable portion of your award promptly after making such determination. (Note that, even if the PTI measure is achieved before the end of the Performance Period, that determination and any related payments will not be made until after the last year in the Performance Period, and the employment requirement will remain in place as indicated above through the date that payments are actually made.)

Adjustments. New Century may, in our sole discretion, adjust performance measures, performance conditions, and performance goals applicable to your Performance Award if we determine that the adjustment is necessary or advisable to preserve the intended incentives and benefits to reflect any one or more of the following that may have occurred or may in the future occur: (1) any material change in the capitalization or organization of New Century or any of our subsidiaries, any material corporate transaction (such as a reorganization, combination, separation, merger, acquisition, or any combination of the foregoing) affecting New Century or any of our subsidiaries, or any complete or partial liquidation of New Century or any of our subsidiaries, (2) any change in accounting policies or practices, (3) the effects of any special charges to New Century or any of our subsidiaries, or (4) any other similar special circumstances.

Administration. New Century reserves the right, in our sole discretion, to determine performance, whether the applicable performance conditions have been timely satisfied, to make adjustments as contemplated above, and to construe and interpret this Agreement setting forth your Performance Award opportunity. Any interpretation or determination made by New Century with respect to such matters shall be final and binding and given the maximum deference permitted by law.

No Right to Continued Employment. Nothing contained in this Agreement constitutes an employment or service commitment by New Century (or any of our affiliates), affects your status as an

employee at will who is subject to termination without cause at any time, or interferes in any way with New Century's right (or the right of any of our affiliates) to change your compensation or other terms of employment at any time.

Entire Agreement. This Agreement contains all of the terms and conditions of your performance award opportunity and may be amended only by a written agreement, signed by an authorized officer, that expressly refers to this Agreement.

NEW CENTURY FINANCIAL CORPORATION
a Maryland corporation
By:___
Brad A. Morrice
Vice Chairman, President and Chief Operating Officer

## EXHIBIT A
## PERFORMANCE UNITS: PTIG PAYOUT SCHEDULE

| Average Annual Growth Rate | Per Unit Payout* |
|---|---|
| 25.00% or Greater | $150 |
| 20.01% - 24.99% | $102 - $148 |
| 20.0% (Target) | $100 |
| 15.00% - 19.99% | $75 |
| 10.00% - 14.99% | $50 |
| 5.00% - 9.99% (Minimum Performance) | $25 |
| Less Than 5.0% | $0 |

* For average annual growth rate of 20.01% or more but 24.99% or less, the Per Unit value will equal $102 at 20.01% and will increase by $2.00 per unit for each 0.2% by which the average annual growth rate exceeds 20.01% to a maximum of $148 per unit. Except as noted, the per unit payout will not be pro-rated for performance within, above, or below the specified ranges.

The average annual growth rate will be rounded to the nearest whole hundredth of a percent.

## EXHIBIT B
## PERFORMANCE UNITS: ROE PAYOUT SCHEDULE

| Average Annual Return on Equity | Per Unit Payout |
|---|---|
| 39.00% or Greater | $150 |
| 36.00% - 38.99% | $135 |
| 33.00% - 35.99% | $120 |
| 30.00% - 32.99% | $105 |
| 27.00% - 29.99% (Target) | $100 |
| 24.00% - 26.99% | $75 |
| 21.00% - 23.99% | $50 |
| 18.00% - 20.99% (Minimum Performance) | $25 |
| Below 18.0% | $0 |

The average annual return on equity will be rounded to the nearest whole hundredth of a percent. The per unit payout will not be pro-rated for performance within, above, or below the specified ranges.

Page 73
Exhibit I

# EXHIBIT C
## PERFORMANCE UNITS: TSR PAYOUT SCHEDULE

| Total Stockholder Return | Per Unit Payout |
|---|---|
| 135.00% or Greater | $150 |
| 115.00% - 134.99% | $135 |
| 100.00% - 114.99% | $120 |
| 85.00% - 99.99% | $105 |
| 65.00% - 84.99% (Target) | $100 |
| 45.00% - 64.99% | $75 |
| 30.00% - 44.99% | $50 |
| 15.00% - 29.99% (Minimum Performance) | $25 |
| Below 15.0% | $0 |

The total stockholder return will be rounded to the nearest whole hundredth of a percent. The per unit payout will not be pro-rated for performance within, above, or below the specified ranges.