Michael C. Kelley (SBN 090062)
mkelley@sidley.com
Bradley H. Ellis (SBN 110467)
bellis@sidley.com
Jose F. Sanchez (SBN 161362)
jose.sanchez@sidley.com
Jodi E. Lopez (SBN 231117)
jlopez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, 40th Floor
Los Angeles, California 90013
Telephone:   (213) 896-6000
Facsimile:    (213) 896-6600

Michael L. Rugen (SBN 85578)
mrugen@sidley.com
Robert B. Martin III (SBN 235489)
rbmartin@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone:   (415) 772-1200
Facsimile:    (415) 772-7400

Attorneys For Defendant KPMG LLP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| IN RE NEW CENTURY | ) Consolid. Case No. 2:07-cv-00931-DDP (FMOx) |
|---|---|
| | ) Assigned to:  Hon. Dean D. Pregerson |
| | ) **DEFENDANT KPMG LLP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| | ) Date:   May 24, 2010 |
| | ) Time:   10:00 a.m. |
| | ) Place:  Courtroom 3 |

1

# **TABLE OF CONTENTS**

2

3 INTRODUCTION ................................................................................... 1

4 LEGAL STANDARDS .......................................................................... 2

5 ARGUMENT .......................................................................................... 4

6 I.    KPMG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
PLAINTIFFS HAVE NOT ADDUCED ANY EVIDENCE THAT THE
7 MARKET BECAME AWARE OF "THE TRUTH" ABOUT KPMG'S
ALLEGED MISREPRESENTATIONS. ............................................... 4

8
A.    Plaintiffs Cannot Avoid Summary Judgment With Evidence
9 Concerning Market Understanding Of 2006 Or 2007 Events. ............. 5

10 1.    Disclosures About New Century's Unaudited Quarterly
Financials For 2006 Cannot Demonstrate That KPMG's
11 Alleged Misstatements In 2005 Caused Plaintiffs' Losses. ....... 6

12 2.    Plaintiffs Do Not Create An Issue Of Fact By Offering
Evidence About The Market's Reaction To The "True
13 Financial Condition" Of New Century In 2007 ...................... 11

14 B.    Plaintiffs' Evidence Concerning Market Understanding Of 2005
Problems Is Woefully Inadequate To Avoid Summary Judgment. ....15

15
1.    The Harden Declaration does not create a genuine issue of
16 material fact. .......................................................................... 17

17 2.    The Coffman Declaration does not create a genuine issue
of material fact. ...................................................................... 17

18
3.    The Seyhun Declaration does not create a genuine issue of
19 material fact. .......................................................................... 18

20 4.    Internal communications by or among New Century and
KPMG do not create a genuine issue of material fact. ........... 21

21
II.    KPMG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
22 PLAINTIFFS HAVE ADDUCED NO EVIDENCE THAT KPMG
CAUSED ANY PORTION OF THE STOCK PRICE DECLINES. ............ 22

23
III.    THE COURT SHOULD CONSIDER EACH ANNOUNCEMENT
24 SEPARATELY AND SUMMARILY ADJUDICATE THAT KPMG
DID NOT CAUSE THE RESULTING STOCK DROPS. ......................... 31

25
IV.    PLAINTIFFS CANNOT AVOID SUMMARY JUDGMENT WITH
26 THEIR BELATED REQUEST TO TAKE DISCOVERY. ......................... 32

27

28

i

## <u>TABLE OF AUTHORITIES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) .......................................................................... 15, 21

*Amorosa v. Ernst & Young LLP*,
    672 F. Supp. 2d 493 (S.D.N.Y. 2009) ...................................................... 9, 10, 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................ 3, 4, 21

*Archdiocese of Milwaukee Supporting Fund v. Halliburton Co.*,
    597 F.3d 330 (5th Cir. 2010) .................................................................................. 24

*Barnes v. Arden Mayfair, Inc.*,
    759 F.2d 676 (9th Cir. 1985) .................................................................................. 20

*Beneficial Standard Life Ins. Co. v. Madariaga*,
    851 F.2d 271 (9th Cir. 1988) .................................................................................. 33

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) .................................................................................. 14

*Brae Transp., Inc. v. Coopers & Lybrand*,
    790 F.2d 1439 (9th Cir. 1986) ................................................................................ 32

*Callahan v. A.E.V., Inc.*,
    182 F.3d 237 (3d Cir. 1999) ................................................................................... 30

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) .................................................................................................. 7

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ........................................................................................ *passim*

*Fazio v. City of San Francisco*,
    125 F.3d 1328 (9th Cir. 1997) .................................................................................. 4

*Fener v. Operating Engineers Constr. Indus. and Miscellaneous Pension Fund*
    *(Local 66)*,
    579 F.3d 401 (5th Cir. 2009) ........................................................................... 27, 28

*Gordon Partners v. Blumenthal*,
    2007 U.S. Dist. LEXIS 35895 (S.D.N.Y. May 16, 2007) ....................................... 3

ii

*Huberman v. Tag-It Pac. Inc.*,
   314 F. App'x 59 (9th Cir. 2009) .........................................................................14

*In re Apollo Group Inc. Sec. Litig.*,
   509 F. Supp. 2d 837 (D. Ariz. 2007) ..................................................................30

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ......................................................13, 14, 21, 29

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) .................................................................................27

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...........................................................................14

*In re HealthSouth Corp. Sec. Litig.*,
   257 F.R.D. 260 (N.D. Ala. 2009) ......................................................................30

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   131 F. Supp. 2d 680 (E.D. Pa. 2001).............................................................10, 11

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
   252 F. Supp. 2d 1005 (C.D. Cal. 2003) , *aff'd sub nom. Mortensen v.*
   *Snavely*, 145 F. App'x 218 (9th Cir. 2005) ........................................................24

*In re Motorola Sec. Litig.*,
   505 F. Supp. 2d 501 (N.D. Ill. 2007).............................................................29, 30

*In re Mut. Funds Inv. Litig.*,
   566 F.3d 111 (4th Cir. 2009) .............................................................................30

*In re Omnicom Group, Inc. Sec. Litig.*,
   541 F. Supp. 2d 546 (S.D.N.Y. 2008) *aff'd*, 597 F.3d 501
   (2d Cir. 2010)...........................................................................................15, 26, 27

*In re Omnicom Group, Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ......................................................................*passim*

*In re Openwave Sys. Sec. Litig.*,
   528 F. Supp. 2d 236 (S.D.N.Y. 2007) ...............................................................30

*In re Oracle Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009) ..................................................20

iii

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...........................................................14, 15

*In re Retek Inc. Sec. Litig.*,
   621 F. Supp. 2d 690 (D. Minn. 2009) ...................................................3, 5, 13, 17

*In re Williams Sec. Litig.*,
   496 F. Supp. 2d 1195 (N.D. Okla. 2007) ), *aff'd*, 558 F.3d 1130
   (10th Cir. 2009) ..........................................................................................15

*In re Williams Sec. Litig.*,
   558 F.3d 1130 (10th Cir. 2009) ...............................................................*passim*

*In re Winstar Commc'ns*,
   2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ...................................................7

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007) ......................................................................22, 26

*McAdams v. McCord*,
   584 F.3d 1111 (8th Cir. 2009) ........................................................................22

*McKowan Lowe & Co. v. Jasmine, Ltd.*,
   2005 WL 1541062 (D.N.J. June 30, 2005) *aff'd*, 231 F. App'x 216
   (3d Cir. 2007).............................................................................................11, 15

*Mesa Verde Constr. Co. v. N. Cal. Dist. Council of Laborers*,
   820 F.2d 1006 (9th Cir. 1987), *vacated on other grounds*, 861 F.2d 1124
   (9th Cir. 1988) (*en banc*) ................................................................................33

*Metzler Invest. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ..................................................................4, 5, 14

*Miller v. Thane Int'l, Inc.*,
   2005 WL 5957833 (C.D. Cal. Mar. 3, 2005) ..................................................24

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ......................................................................11

*SEC v. Tambone*,
   597 F.3d 436 (1st Cir. 2010) (*en banc*) ........................................................7, 8

*Teachers' Ret. Sys. of La. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ..........................................................................11

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007) .............................................................................8, 9

v

# INTRODUCTION

In their Opposition to KPMG's motion for summary judgment, Plaintiffs fail to satisfy the loss causation burden previously established for them by this Court: to prove that New Century's "stock price fell 'after the truth became known' regarding [KPMG's] material misrepresentations." (MTD Order at 57 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005)).) Plaintiffs repeatedly suggest that KPMG's motion should be denied because it is simply a replay of KPMG's motion to dismiss. But in denying KPMG's motion to dismiss, the Court noted the low standard applicable at the pleading stage: "The Complaint sufficiently provides KPMG with an 'indication of the loss and the causal connection that [Plaintiffs][have] in mind.'" (*Id.* at 61 (brackets in original) (quoting *Dura*, 544 U.S. at 347).) At summary judgment, Plaintiffs must come forward with evidence that the market became aware that KPMG's 2005 audit report was false, and that the stock price dropped as a result of that awareness and not because of the myriad other adverse facts simultaneously disclosed by the Company.

Plaintiffs first try, in several ways, to avoid the burden articulated by the Court. Invoking speculative expert testimony and unsupportable legal standards, they argue that disclosures having nothing to do with the 2005 financials audited by KPMG are enough to establish loss causation. Those arguments fail as a matter of law. Indeed, the primary theory upon which Plaintiffs' arguments rest – that KPMG is liable for disclosures regarding misstatements in New Century's 2006 unaudited quarterly financials because those misstatements were somehow "caused by" KPMG's 2005 audit work – is barred by Supreme Court precedent.

When they do address the correct evidentiary burden, Plaintiffs and their experts struggle mightily to identify even a few tidbits in New Century's 2007 announcements and the ensuing market commentary that purportedly disclosed "the truth" about accounting problems in 2005. But their arguments in this regard rest entirely on misleading characterizations, faulty logic, and inadmissible evidence.

1

1   Plaintiffs have failed to adduce evidence sufficient to support a finding that the

2   market actually learned "the truth" about KPMG's alleged misstatements.

3          Moreover, even accepting Plaintiffs' tortured interpretations of the evidence,

4   only a tiny fraction of the February and March 2007 disclosures arguably related to

5   KPMG or 2005.  The disclosures and market reaction focused almost exclusively on

6   the dramatic downturn in New Century's business in 2006 and 2007, and the

7   Company's failure to account properly for that downturn in its unaudited 2006

8   quarterly financials – developments having nothing to do with KPMG or the

9   Company's 2005 financials.  Yet Plaintiffs have provided no basis from which the

10  trier of fact could determine what part, if any, of the resulting stock drop was caused

11  by a disclosure arguably relating to 2005, as opposed to the far more voluminous and

12  more dire revelations having nothing to do with KPMG.  On the contrary, they offer

13  an expert report that purports to hold KPMG liable for *the entire Company-specific*

14  *stock price decline.*  As the Tenth Circuit recently held in a closely analogous case,

15  "[e]ven if the truth [about the defendant's alleged misstatements] has made its way

16  into the marketplace, *Dura* requires that [Plaintiffs] show that it was this revelation

17  that caused the loss and not one of the 'tangle of factors' that affect price."  *In re*

18  *Williams Sec. Litig.*, 558 F.3d 1130, 1137 (10th Cir. 2009) (quoting *Dura*, 544 U.S.

19  at 343).  Plaintiffs have utterly failed to carry that burden.

20         Finally, Plaintiffs cannot avoid summary judgment by invoking Rule 56(f).

21  Shortly after filing its motion, KPMG offered Plaintiffs the opportunity to conduct

22  any discovery they needed for their opposition, but they declined.  They cannot now

23  seek an eleventh-hour opportunity to reconsider, just in case their chosen strategy

24  fails.  Plaintiffs have not carried their burden established by the Court, and KPMG's

25  motion for summary judgment should be granted.

26                          **LEGAL STANDARDS**

27         This Court has correctly ruled that Plaintiffs bear the burden of proving that

28  New Century's "stock price fell 'after the truth became known' regarding [KPMG's]

material misrepresentations."  (MTD Order at 57 (quoting *Dura*, 544 U.S. at 344).)

Contrary to Plaintiffs' repeated assertions (Opp. at 2, 4, 15-16, 31 n.26), with respect

to Plaintiffs' Section 10(b) claim (Count VII), it is not KPMG's burden to prove that

none of the stock price decline resulted from KPMG's alleged fraud.  *See In re*

*Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 510 n.3 (2d Cir. 2010) (affirming

summary judgment:  plaintiffs bear burden of "show[ing] that at least some of the

price drop" was caused by the defendant); *Gordon Partners v. Blumenthal*, 2007

U.S. Dist. LEXIS 35895, at *7 (S.D.N.Y. May 16, 2007) (granting summary

judgment to defendants where plaintiffs failed to come forward with admissible

evidence demonstrating loss causation and holding that "defendants were not obliged

to 'prove the negative' to put plaintiffs to their proof").  As the Second Circuit

recently admonished the same plaintiffs' counsel in a Section 10(b) case, "[a]lthough

a party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying [the evidence]

which it believes demonstrate the absence of a genuine issue of material fact, this

does not relieve [the plaintiff] of its burden of making a showing sufficient to

establish the existence of an element essential to [plaintiff's] case, and on which

[plaintiff] will bear the burden of proof at trial."  *Omnicom*, 597 F.3d at 510 n.3

(internal quotations omitted).  Similarly, with respect to Plaintiffs' Section 11 claim

(Count III), because KPMG has offered evidence that KPMG did not cause any of

Plaintiffs' losses, Plaintiffs now bear the burden of offering probative evidence to the

contrary.  They have failed to carry that burden, so summary judgment is appropriate

on both claims.  *Id.*; *In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 703 (D. Minn.

2009).

Moreover, as the Supreme Court has made clear, "the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 247-48 (1986) (emphasis in original).  Plaintiffs must show that there is a

3

1   "*genuine* issue of *material* fact." *Id.* at 248 (emphases in original).  To do so,

2   Plaintiffs "must introduce significant probative evidence tending to support" their

3   claim that KPMG caused their losses.  *Fazio v. City of San Francisco*, 125 F.3d

4   1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).  A mere

5   "scintilla of evidence" is insufficient.  *Id.*

6       Finally, Plaintiffs also are wrong when they argue that "[w]here, as here,

7   expert declarations support Plaintiffs, summary judgment is generally not

8   appropriate."  (Opp. at 16.)  The mere existence of competing expert opinions is not,

9   in and of itself, a ground for denying summary judgment on loss causation grounds.

10  *Omnicom*, 597 F.3d at 512 (collecting cases).

11                          **ARGUMENT**

12  **I.   KPMG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
        PLAINTIFFS HAVE NOT ADDUCED ANY EVIDENCE THAT THE**
13      **MARKET BECAME AWARE OF "THE TRUTH" ABOUT KPMG'S
        ALLEGED MISREPRESENTATIONS.**
14

15      The Supreme Court emphasized in *Dura* that the securities laws allow

16  recovery only for losses that the defendant's misrepresentations "actually cause."

17  *Dura*, 544 U.S. at 345.  Plaintiffs allege only one set of misrepresentations by

18  KPMG – its 2005 audit report.  KPMG's opening brief therefore explained that, to

19  establish loss causation *as to KPMG*, Plaintiffs must prove that the stock price

20  declined when "the truth" about KPMG's 2005 audit report "ma[de] its way into the

21  marketplace."  *Id*. at 342; *see also Metzler Invest. GMBH v. Corinthian Colleges,*

22  *Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008).  This Court has agreed, holding that

23  KPMG did not cause Plaintiffs' losses unless 'the market became aware of

24  [KPMG's] misrepresentations."  (MTD Order at 58.)

25      Contrary to Plaintiffs' mischaracterization, KPMG has never argued that loss

26  causation can be shown only by means of a "fact-for-fact" disclosure about KPMG's

27  alleged fraud (Opp. at 17-21), or that an announcement must reveal "the details or

28  full scope of the earlier misstatements" (*id.* at 19).  KPMG recognizes that

                                    4

disclosures can reveal "the truth" about a defendant's alleged misstatements indirectly and without that level of detail or specificity.  (*See* KPMG SJ Br. at 14 (discussing *Retek*, 621 F. Supp. 2d at 699-708).)  But Plaintiffs go too far when they suggest that "the Company's adverse disclosures followed by (very significant) stock price declines are all that the law requires to establish law causation."  (Opp. at 3.)  As the Ninth Circuit has explained, "[s]o long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud. . . . Loss causation requires more."  *Metzler*, 540 F.3d at 1064.

KPMG's opening memorandum explained that the "more" that *Metzler* requires is evidence demonstrating that the market came to understand that KPMG's 2005 audit report was misstated, and that the price of New Century stock declined in response.  (KPMG SJ Br. at 13-17.)  Where, as here, the plaintiffs argue that "fraud is revealed through indirect disclosure, plaintiffs must provide *proof* that the market recognized a relationship between the event disclosed and the fraud in order to establish loss causation."  *Retek*, 621 F. Supp. 2d at 702 (emphasis added) (citations omitted).  This is not a mere technicality.  The securities laws are not meant to "provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause."  *Dura*, 544 U.S. at 345.  To subject a defendant to the kind of potentially ruinous damages that Plaintiffs seek here, Plaintiffs must have evidence that the market learned the truth about that defendant's alleged misstatements.  *Williams*, 558 F.3d at 1137. Plaintiffs' evidence falls far short.

### A.   Plaintiffs Cannot Avoid Summary Judgment With Evidence Concerning Market Understanding Of 2006 Or 2007 Events.

Plaintiffs first argue – despite this Court's ruling to the contrary – that they do not need to prove market understanding of "the truth" about KPMG's 2005 report. (Pl. Counterstatement of Facts and Law at 29 ("loss causation does not require

1    Plaintiffs to prove that their losses were caused when the market learned the 'truth'

2    of a particular defendant's involvement in the alleged misrepresentations"); *see also*

3    Opp. at 3, 18-23.)  They contend that market understanding of misstatements in the

4    Company's unaudited quarterly financial statements for 2006 and/or investor

5    awareness of New Century's deteriorating financial condition in 2007 is sufficient to

6    demonstrate loss causation because KPMG's 2005 misstatements were purportedly

7    the "but for" cause of both problems.  Indeed, according to Plaintiffs, KPMG was the

8    "but for" cause of all of New Century's problems revealed in February and March

9    2007, including not only New Century's restatement of its unaudited 2006 quarterly

10   financials, but also the collapse of New Century's core business, the violation of its

11   loan covenants, and even the resignation of one of the Company's directors.  (Opp. at

12   5-11, 22; Coffman Decl. ¶¶ 31-48.)  *Dura* and its progeny are not nearly so elastic.

13            1.     **Disclosures About New Century's Unaudited Quarterly Financials For 2006 Cannot Demonstrate That KPMG's Alleged Misstatements In 2005 Caused Plaintiffs' Losses.**

14

15           Plaintiffs seek to hold KPMG liable for stock drops caused by disclosures

16   regarding New Century's 2006 quarterly financial statements, which KPMG did not

17   audit.  Plaintiffs offer two theories in support of their argument.  Neither is viable.

18           *First*, Plaintiffs argue that KPMG caused the misstatements in New Century's

19   2006 financials and thus is liable for the stock price decline following the

20   Company's announcement that it was restating those 2006 financials.  According to

21   Plaintiffs, the misstatements in KPMG's 2005 audit report were inherently linked to

22   the misstatements in New Century's 2006 financials.  (*See* Opp. at 22; Coffman

23   Decl. ¶¶ 10, 79-81.)  Likewise, they argue:  "'But for' KPMG's seriously deficient

24   audits in 2005, the Company's material accounting violations and internal control

25   weaknesses could not have continued from year-end 2005 through the first three

26   quarters of 2006."  (Opp. at 22.)  Plaintiffs conclude that, because of this supposed

27   relationship between the two sets of financial statements, KPMG is liable for losses

28

6

DEFENDANT KPMG LLP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION – CASE NO. 2:07-CV-00931-DDP (FMO)

1  caused by disclosure of the 2006 misstatements.  But Plaintiffs' theory – for which

2  they cite no authority – is wrong as a matter of law.

3      Plaintiffs' argument is a blatant attempt to do an end-run around *Central Bank*

4  *of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).  In

5  *Central Bank*, the Supreme Court held that there is no secondary liability in private

6  securities actions.  Primary liability may be imposed only on defendants who

7  themselves make a material misstatement or omission, and only for the material

8  misstatement or omission that they made.  *Id.* at 177-78.  *Central Bank* further held

9  that there is no liability in private securities actions for aiding and abetting someone

10  else's misrepresentation.  *Id.*  As a result, KPMG may be liable only for its alleged

11  2005 misrepresentations; only New Century and the officer defendants who signed

12  the 2006 quarterly financials can be liable for the 2006 misrepresentations.  Any

13  effect that KPMG's alleged misstatements may have had on New Century's 2006

14  misstatements is a question of aiding and abetting, not primary liability, and

15  therefore is precluded by *Central Bank*.

16      Applying *Central Bank*, numerous cases – including Plaintiffs' own authority

17  – have squarely held that auditors cannot be liable under Section 10(b) for

18  misstatements in their client's unaudited quarterly financial statements.  *E.g.*, *In re*

19  *Winstar Commc'ns*, 2006 WL 473885, at *9 (S.D.N.Y. Feb. 27, 2006) (auditor not

20  liable for client's quarterly financial statements, even though auditor reviewed and

21  approved them prior to issuance) (cited in Opp. at 20 n.10).  This is true even when

22  the defendant audited the year-end financial statements preceding the quarterly

23  financial statements, and when the plaintiffs claim that errors in the audited financial

24  statements reoccurred in the later quarterly financials.  *Id.*

25      The *en banc* First Circuit recently considered the implications of *Central Bank*

26  and warned: "If *Central Bank*'s carefully drawn circumscription of the private right

27  of action is not to be hollowed – and we do not think that it should be – courts must

28  be vigilant to ensure that secondary violations are not shoehorned into the category

7

1   reserved for primary violations."  *SEC v. Tambone*, 597 F.3d 436, 446 (1st Cir.

2   2010) (*en banc*).  As in *Tambone*, the theory advanced by Plaintiffs here "poses a

3   threat to the integrity of [the] dichotomy [between primary and secondary liability]."

4   *Id.*

5          Because KPMG made no representations with regard to New Century's 2006

6   quarterly financials, it cannot be primarily liable for them.  Nevertheless, Plaintiffs

7   argue that KPMG is liable for losses caused by misstatements in the 2006 financials

8   because "it was entirely foreseeable that the financial misstatements would continue

9   into 2006, if not worsen, over time."  (Opp. at 22.)  Even accepting Plaintiffs'

10  contention that KPMG's 2005 audit work somehow contributed to misstatements in

11  New Century's later unaudited quarterly financials – for which they have no

12  evidence – that would support, at most, a claim for aiding and abetting the

13  Company's 2006 violations.  *Central Bank* made clear, however, that such claims are

14  prohibited.  This Court should not allow Plaintiffs to do indirectly – by means of an

15  overly expansive loss causation theory – what they cannot do directly.

16         *Second*, Plaintiffs argue that even if KPMG is not directly liable for New

17  Century's 2006 misstatements, when the market learned that KPMG had to restate its

18  2006 financials, the market "must have" inferred that KPMG's audit report on New

19  Century's 2005 financials was also misstated.  Again, Plaintiffs do not cite a single

20  case to support their theory.  To the contrary, Plaintiffs' argument that the supposed

21  relationship between the 2005 and 2006 financial statements is somehow sufficient

22  to establish loss causation has been rejected by numerous courts.

23         For example, in *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers,*

24  *LLP*, 475 F.3d 824 (7th Cir. 2007), the Seventh Circuit analyzed a loss causation

25  theory remarkably similar to the one advanced here.  As in this case, plaintiff

26  Tricontinental sued an auditor (there, PwC) for alleged misstatements in a particular

27  audit report (there, PwC's 1997 audit report), yet sought to recover investment losses

28  it suffered when PwC's audit client disclosed errors in financial statements issued in

8

later years (there, 1998 and 1999).  *Id.* at 843.  There, as here, the SEC had instituted an action against several of the audit client's officers and employees, alleging that they intentionally misstated the later years' financial statements and lied to the auditors about their scheme.  *Id.* at 829.  Tricontinental argued, as do Plaintiffs here, that the alleged errors in the 1997 financial statements were similar to, part of the same "ongoing scheme" as, and a "but for" cause of the disclosed errors in the 1998 and 1999 financial statements.  *Id.* at 842.  Tricontinental also contended, as do Plaintiffs here, that PwC's alleged misstatements in 1997 rendered it liable for virtually all of the stock price declines following the disclosures of the 1998 and 1999 errors, including declines caused by the company's eventual bankruptcy.  *Id.* at 843-44.

The Seventh Circuit soundly rejected Tricontinental's expansive view of loss causation.  The court affirmed the district court's dismissal of the complaint because the announcements did not inform the market of problems with the 1997 financial statements.  *Id.*  The court reasoned that *Dura* requires evidence specifically suggesting that the market understood the announcements as implicating the 1997 financial statements.  *Id.* at 843.  Merely to "touch upon" a later economic loss – as the 1997 audit report may have done with regard to losses caused by disclosure of the 1998 and 1999 misstatements – was not sufficient.  *Id.* (quoting *Dura*, 544 U.S. at 343).  The court concluded that the plaintiff

> ha[d] not identified any statements by [the company] or PwC that made 'generally known' any problems or irregularities in the 1997 audited financial statement.  The only statement identified by [the plaintiffs] was [the company's] statement in 2000 concerning its 1998 and 1999 financial statements.

*Id.*

In another notably similar case, *Amorosa v. Ernst & Young LLP*, 672 F. Supp. 2d 493 (S.D.N.Y. 2009), the Southern District of New York likewise rejected the ambitious loss causation theory advanced by Plaintiffs here.  In *Amorosa*, the plaintiff alleged that auditor Ernst & Young had made misstatements in its 1999

1   audit report on the financial statements of its client AOL, which later merged with

2   Time Warner to become AOLTW.  *Id.* at 496-97, 503-04, 507-09.  In 2002, a series

3   of articles and announcements disclosed that AOLTW was the subject of SEC and

4   DOJ investigations and that it would be restating its financial statements.  *Id.* at 498-

5   99.  In 2005 and 2006, AOLTW issued restated financials for 2000, 2001, and 2002.

6   *Id.*  The plaintiff alleged that the 2002 disclosures were sufficient to establish that

7   Ernst & Young's allegedly misstated 1999 audit report caused the resulting stock

8   price declines, because the 1999 AOL financials allegedly contained the same type

9   of accounting errors as the later restated financials.  *Id.* at 505-08.  The court

10  disagreed and granted the auditor's motion to dismiss, holding that none of the

11  disclosures during the stock price decline that caused the plaintiff's losses had

12  "called into question" AOL's 1999 financials or Ernst & Young's 1999 audit report.

13  *Id.*  Indeed, the court concluded that the plaintiff's "persistent failure to focus his

14  'corrective disclosure' analysis pleading on purported misstatements by *Ernst &*

15  *Young* – and . . . on misstatements that were contained in one specific audit opinion,

16  the June 1999 opinion – make it impossible to take that 'analysis' seriously."  *Id.* at

17  513 (emphasis in original).[1]  The same can be said of Plaintiffs' failure here to focus

18  on the precise misstatements attributed to KPMG.

19      *In re Ikon Office Solutions, Inc. Securities Litigation*, 131 F. Supp. 2d 680

20  (E.D. Pa. 2001), provides a third example.  In that case, the plaintiffs alleged that

21  auditor Ernst & Young made misstatements in its 1997 audit opinion.  The plaintiffs

22  argued that Ernst & Young was responsible for the stock price decline after its audit

23  client announced that it was suffering serious financial difficulties and would be

24  restating its financial statements for the second quarter of 1998.  According to the

25  plaintiffs, the misstatements in the 1997 audit opinion helped conceal the problems

---

[1] Plaintiffs mention *Tricontinental* and *Amorosa* only once, in a footnote.  They
argue that those cases are distinguishable because the auditor's opinion was "never
restated or ever called into question."  (Opp. at 21 n.12.)  That, however, is irrelevant
for determining what constitutes the relevant "truth" for purposes of loss causation.

that resulted in 1998. *Id.* at 684-90.  The court disagreed.  It held that loss causation required the plaintiffs to prove that the market recognized a problem with the auditor's 1997 audit opinion and that the stock price dropped in reaction to that information. *Id.* at 690-91 ("proof of the market's awareness and proof of loss caused by such awareness is . . . required").  Because the plaintiffs proffered no evidence that the market understood the announcement regarding the 1998 financials and the company's then-current business problems to reveal any errors in the 1997 audit opinion, the court granted summary judgment to the auditor. *Id.*[2]

Regardless of any alleged "interconnectedness" between New Century's 2005 year-end financial statements (which KPMG audited) and its 2006 quarterly financial statements (which KPMG did not audit), KPMG can be liable only for its own alleged misstatements.  Disclosure of New Century's misstatements in its 2006 unaudited financials is insufficient, as a matter of law, to demonstrate that KPMG caused Plaintiffs' losses.

### 2. Plaintiffs Do Not Create An Issue Of Fact By Offering Evidence About The Market's Reaction To The "True Financial Condition" Of New Century In 2007.

Plaintiffs also cannot demonstrate loss causation by arguing that the market learned about the "true financial condition" of New Century in 2007.  In an effort to hold KPMG liable for the entire Company-specific price decline following New Century's announcements in February and March 2007, Plaintiffs argue that the "relevant truth contemplated by *Dura* is the truth about the condition of the

---

[2] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (granting judgment to auditor on loss causation grounds because a 1990 announcement regarding a dividend cut did not reveal to the market the falsity of the auditor's clean audit reports on the company's 1988, 1989, and 1990 financials); *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 2005 WL 1541062, *10 (D.N.J. June 30, 2005) ("the plaintiffs have the burden of demonstrating that *the market recognized a relationship* between [the Company's] first quarter 1994 financial results and the . . . [m]isrepresentations") (emphasis added), *aff'd*, 231 F. App'x 216 (3d Cir. 2007); *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007) ("[t]o allege loss causation in this case, plaintiffs would have to allege that *the market reacted to new facts* disclosed in June 2003 that revealed [the] previous representations to have been fraudulent") (emphasis added).

11

1  company."  (Opp. at 18; *id.* at 22; *see also* Pl. Counterstatement of Facts and Law at

2  30 ("Where, as here, the disclosures revealed the relevant truth about the true

3  financial condition of New Century to the market, and New Century's stock price

4  dropped as a result, loss causation is satisfied.").  Plaintiffs' misreading of *Dura* has

5  been rejected by numerous courts.  The Court should reject it here.

6      Plaintiffs' purported expert Chad Coffman opines that, under the "true

7  financial condition" theory, KPMG caused the entire Company-specific stock price

8  decline that followed each of the disclosures between February 7 and March 13,

9  2007.  He goes so far as to lay at KPMG's feet the price declines caused by two

10  March 8, 2007 disclosures:  (1) that the Company had ceased accepting loan

11  applications, and (2) that Director David Einhorn had resigned.  (Coffman Decl.

12  ¶ 44.)  Undaunted by the absence of any apparent connection between KPMG's

13  alleged 2005 misstatements and those events, Mr. Coffman argues that, "but for"

14  KPMG's allegedly misstated 2005 audit report, the market would have known "the

15  truth about the company's operating performance," which he argues was eventually

16  disclosed when New Century proved unable to continue lending and when one of its

17  directors resigned.  (*Id.* ¶ 45.)  But this attenuated chain of alleged causation

18  demonstrates the absurdity of Plaintiffs' theory.  The connection between the

19  December 31, 2005 financial statements audited by KPMG and New Century's

20  inability to lend money in the face of the dramatically different industry environment

21  15 months later is "far too tenuous[] . . . – indeed, by a metaphoric thread – . . . to

22  support liability."  *Omnicom*, 597 F.3d at 514.

23      Plaintiffs begin their discussion of this "true financial condition" theory by

24  completely mischaracterizing *Dura*.  They cite *Dura* for the proposition that "loss

25  causation may be proven at trial by demonstrating that defendants concealed or

26  misrepresented a foreseeable risk that later materialized, causing plaintiffs' losses.

27  [544 U.S.] at 344, citing Restatement (Second) of Torts § 548A."  (Opp. at 17.)  But

28

the cited passage does not contain the term "foreseeable risk," and here is what the

Court had to say about the Restatement:

> The Restatement of Torts, in setting forth the judicial consensus, says that a person who "misrepresents the financial condition of a corporation in order to sell its stock" becomes liable to a relying purchaser *"for the loss" the purchaser sustains "when the facts . . . become generally known" and "as a result" share value depreciate[s].*

*Dura*, 544 U.S. at 344 (citing Restatement (Second) of Torts § 548A, Comment *b*, at

107) (emphasis added).  Thus, the cited passage of *Dura* – far from supporting

Plaintiffs' overreaching theory – reaffirms the need to demonstrate that New

Century's stock price declined when the market learned "the truth" about KPMG's

alleged misstatements.

Not surprisingly, numerous courts have rejected this overreaching "true

financial condition" theory at the summary judgment stage.  (*See* KPMG SJ Br. at

13-15.)  In *In re Retek, Inc. Securities Litigation* (cited in KPMG SJ Br. at 13-14),

the court surveyed the available law and found that, while the theory may sometimes

suffice at the pleading stage, "a plaintiff may not rely solely on a revelation of a

company's true financial condition when attempting to defeat summary judgment."

621 F. Supp. 2d at 702.  The court held:

> The true financial condition theory permits a complaint to survive a motion to dismiss when it places a defendant on notice of how a plaintiff intends to prove that its economic loss was caused by the defendant's material misrepresentation.  However, without producing specific evidence demonstrating that the public became aware of an alleged misrepresentation . . . a plaintiff cannot satisfy his evidentiary burden at summary judgment.

*Id.* at 703 (collecting cases).

Plaintiffs' citation to the Ninth's Circuit's decision in *In re Daou Systems,*

*Inc.*, 411 F.3d 1006 (9th Cir. 2005), provides no support for their theory.  (Opp. at

18.)  First, *Daou* arose on appeal from the district court's dismissal of the plaintiffs'

complaint.  As the *Retek* court made clear, plaintiffs have a far lower burden at the

pleading stage to demonstrate a causal link between an alleged misstatement and

subsequent losses than they do at the summary judgment stage.  621 F. Supp. 2d at

13

702.  Although the *Daou* court did use the phrase "true financial condition," even a cursory examination of the opinion demonstrates that the court had no intention of sanctioning the type of overreaching theory advanced by Plaintiffs here.[3]  In fact, in *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) – a case Plaintiffs relegate to a footnote in their Opposition (Opp. at 19 n.9) – the Ninth Circuit explicitly rejected Plaintiffs' interpretation of *Daou*:

> In *Daou* the plaintiffs' theory of fraud was that the defendant was systematically recognizing revenue on contracts that had not been completed.  Plaintiffs adequately pled loss causation in *Daou* because their complaint alleged that *the market learned of and reacted to this fraud, as opposed to merely reacting to reports of the defendant's poor financial health generally.*

*Metzler*, 540 F.3d at 1063 (emphasis added).  The *Metzler* court concluded that permitting securities fraud plaintiffs to proceed on the type of overly broad interpretation of *Daou* advanced here "would effectively resurrect what *Dura* discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price."  *Id*. at 1064.[4]

Plaintiffs' heavy reliance on *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) (cited in Opp. at 19-20), is equally misplaced.  That decision involved a motion to dismiss, not a summary judgment motion, and it says nothing about what evidence is required to avoid summary judgment.  Moreover, unlike here, the defendants' alleged misstatement in that case corresponded directly with the

---

[3] In that case, the plaintiffs alleged that they suffered losses when the market learned of and reacted to disclosures that "the Company's rapidly escalating work in progress account represented over $10 million in unbilled receivables – *the direct result of prematurely recognizing revenue*."  *Id*. at 1026 (emphasis in original).

[4] Plaintiffs also cite *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 989 (9th Cir. 2008), and *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1051-54 (9th Cir. 2008).  But those cases are decisions on a motion to dismiss and they pre-date *Metzler*.  In any event, they do not suggest that Plaintiffs here may avoid summary judgment without proffering evidence that the stock price dropped because the market understood KPMG's 2005 audit report to have been misstated.  Plaintiffs' citation to *Huberman v. Tag-It Pacific Inc.*, 314 F. App'x 59, 61-62 (9th Cir. 2009), an unpublished case with virtually no analysis, is equally unavailing.

---

14

disclosures that caused the plaintiffs' losses (that Parmalat was suffering a liquidity crisis and could not repay its massive debts).[5]  Thus, nothing in *Parmalat* suggests that Plaintiffs may avoid summary judgment without offering evidence that the stock price dropped because the market understood KPMG's prior representations to have been false.

Plaintiffs simply ignore numerous other decisions rejecting their "true financial condition" theory.  *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) (rejecting as "untenable" the plaintiff's contention that loss causation exists when the true financial condition of the company becomes known); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1265-66 (N.D. Okla. 2007) (rejecting true financial condition theory and granting summary judgment to defendants), *aff'd*, 558 F.3d 1130, 1137 (10th Cir. 2009); *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 553-54 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) (same); *McKowan Lowe & Co., Ltd.*, 2005 WL 1541062, at *3-4, 9, *aff'd* 231 F. App'x 216 (3d Cir. 2007) (same).

The law is clear.  As this Court has held, Plaintiffs can establish loss causation only by proving that the market understood that KPMG's 2005 audit report was misstated.  (MTD Order at 57-58.)  Evidence that the market learned the truth about New Century's 2007 financial condition or about New Century's 2006 quarterly financials is insufficient.

### B.   Plaintiffs' Evidence Concerning Market Understanding Of 2005 Problems Is Woefully Inadequate To Avoid Summary Judgment.

When they finally turn their attention to satisfying the evidentiary burden established by the case law and by this Court's prior ruling – to demonstrate that the

---

[5] In *Parmalat*, the plaintiffs alleged that the various defendants had participated in Parmalat's fraudulent failure to list massive amounts of debt on its balance sheet. They further alleged that they suffered losses when Parmalat disclosed that it was experiencing a liquidity crisis and could not repay its debts.  375 F. Supp. 2d at 307.

15

1    price of their New Century shares declined when the market learned "the truth"

2    about KPMG's alleged misstatements – Plaintiffs fall woefully short.

3           In support of its motion for summary judgment, KPMG submitted the expert

4    declaration of Dr. Allan Kleidon, who reviewed all of the relevant analyst reports

5    and news articles, and found no evidence that the market understood any of New

6    Century's disclosures to call into question KPMG's 2005 audit report or New

7    Century's 2005 financial statements.  (Kleidon Decl. ¶¶ 6, 43; Kleidon Supp. Decl.

8    ¶ 4.)  In fact, at least one analyst explicitly stated that the audited 2005 financials

9    could still be relied upon, even after the March 2 announcement about misstatements

10   in the Company's 2006 quarterly financials.  Moreover, following New Century's

11   announcement on May 24, 2007 that its 2005 financials should no longer be relied

12   upon, press reports stated that this disclosure was new information that had not been

13   disclosed previously.  (Kleidon Decl. ¶¶ 6, 25.)[6]

14          In their Opposition, Plaintiffs argue that KPMG's motion should be denied

15   because "the Company's February 7, 2007 and March 2, 2007 disclosures did raise

16   immediate questions about the accuracy and reliability of the Company's 2005

17   financial statements."  (Opp. at 23.)  To support this assertion, Plaintiffs point to four

18   things:  (1) the Declaration of Stuart Harden, (2) the Declaration of Chad Coffman;

19   (3) select comments from analyst reports and chatroom postings, as summarized in

20   the Declaration of H. Nejat Seyhun; and (4) internal communications between

21   KPMG and New Century.  KPMG has filed, simultaneously with this Reply, motions

22   to exclude the Declaration of each of Plaintiffs' experts.  But even if all three

23   Declarations were admitted, none of the evidence proffered by Plaintiffs would

24   suffice to demonstrate that the market understood the alleged "truth" about KPMG's

25   2005 audit report or the Company's 2005 financial statements.  Plaintiffs have

26   therefore failed to carry their evidentiary burden.

27   _____
     [6] Plaintiffs have moved to exclude Dr. Kleidon's report, but their motion is baseless.
28   (See KPMG's Opposition to Plaintiffs' Motion to Exclude the Declaration of Allan
     Kleidon.)

### 1.   The Harden Declaration does not create a genuine issue of material fact.

KPMG demonstrates in its motion to exclude Mr. Harden's Declaration that Mr. Harden is unqualified to opine on market understanding and that the Declaration is riddled with mischaracterizations of the record, as well as irrelevant, baseless, and prejudicial opinions.  Moreover, even if it were admissible, Mr. Harden's testimony would not suffice to support the requisite loss causation finding – that *the market actually understood* the alleged "truth" about KPMG's 2005 audit report.

Mr. Harden does not even purport to demonstrate what investors actually understood about the 2005 financials or KPMG's 2005 audit report.  Instead, he opines only "that users of New Century's financial information *had sufficient reason to conclude*" that New Century's 2005 financial statements and KPMG's 2005 audit report "may be" misstated.  (Harden Decl. ¶ 23 (emphasis added); *see also id.* ¶¶ 24, 25, 26.)  In fact, Mr. Harden explicitly disclaims any intention to testify about what investors actually did conclude:  "I understand that Plaintiffs have presented additional experts that opine that the price of New Century's securities did, in fact react to these concerns."  (*Id.* n.9.)  As discussed in detail in KPMG's motion to exclude his testimony (p. 2), Mr. Harden's musing about what the market "had reason to conclude" is not sufficient to demonstrate what the market actually thought.  *See Retek*, 621 F. Supp. 2d at 702-03 (holding that at summary judgment plaintiffs must produce specific evidence about what the market actually understood).

### 2.   The Coffman Declaration does not create a genuine issue of material fact.

The Declaration of Mr. Coffman likewise suffers from numerous analytical and legal flaws and should be excluded.  But, even if admitted, the Coffman Declaration fails to create a triable issue of fact.  Like Mr. Harden, Mr. Coffman does not even attempt to analyze the relevant loss causation issue – whether the

17

market understood in February and March of 2007 that KPMG's 2005 audit report was materially misstated. Ignoring the clear standard set by *Dura* and by this Court, he instead offers his own views of what the legal standard of loss causation *should be*, then opines that Plaintiffs have satisfied *those* standards. For example, Mr. Coffman states that the evidence shows that KPMG's 2005 audit report caused Plaintiffs' losses because investors learned: (1) that New Century's 2006 financials were misstated (Coffman Decl. ¶¶ 36, 42, 55, 68, 70, 73-88); and (2) that New Century's financial condition in 2007 was deteriorating (*id.* ¶¶ 43, 44, 45, 48).

As discussed above, courts have repeatedly rejected both of those causation theories. *See supra* at 4-14. Inadequate legal theories do not magically become viable simply because Plaintiffs have found an expert who believes the law should be different. Mr. Coffman's testimony provides absolutely no basis from which a reasonable trier of fact could conclude that the market learned, and reacted to, "the truth" about KPMG's 2005 audit report.

### 3. The Seyhun Declaration does not create a genuine issue of material fact.

As pointed out in KPMG's motion to exclude his Declaration, the report of Plaintiffs' third expert, Dr. Seyhun, should be excluded as methodologically flawed and patently unreliable. Moreover, like Plaintiffs' other expert reports, Dr. Seyhun's Declaration is insufficient – even if admitted into evidence – to create a genuine issue of material fact.

Unlike Messrs. Harden and Coffman, Dr. Seyhun at least purports to address the right question – whether investors learned and reacted to "the truth" about KPMG's 2005 audit report. Dr. Seyhun employed essentially the same methodology as Dr. Kleidon, identifying, collecting, and analyzing New Century's class period disclosures and the ensuing analyst and press commentary. Unlike Dr. Kleidon, however, Dr. Seyhun concludes that "reasonable investors would have and did question the integrity of New Century's 2005 audited financial statements upon the

1   Company's corrective disclosures on February 7, 2007 and on subsequent disclosure

2   dates." (Seyhun Decl. ¶ 15.) Dr. Seyhun offers no opinions concerning the market's

3   view of KPMG's 2005 audit report.

4        Dr. Seyhun's analysis cannot support his sweeping conclusion. His report

5   confirms that the overwhelming market commentary following New Century's

6   February 7 through March 13, 2007 announcements involved discussions of the 2006

7   and 2007 problems. Despite combing through all of the analyst and press reports –

8   nearly 600 of them – Dr. Seyhun did not find a single reference to KPMG's 2005

9   audit work. At most, he has identified some stray references to the calendar year

10  "2005" in New Century's disclosures and ensuing market commentary, taken those

11  references entirely out of context, and concluded that they reflect a market

12  understanding that there were errors in New Century's 2005 financials and KPMG's

13  2005 audit report. In particular, Dr. Seyhun has identified 13 analyst reports and one

14  press report that, he claims, reflect that the 2005 financials were misstated. We

15  discuss the shortcomings in Dr. Seyhun's interpretations of those reports at some

16  length in KPMG's motion to exclude his Declaration, and incorporate that discussion

17  herein by reference. His conclusions are based on a distorted reading of the reports

18  and are plainly belied when the comments are read in context. (*See* Motion to

19  Exclude Seyhun Declaration at 8-22.) For example, Dr. Seyhun relies on several

20  analyst references to the fact that some of the assets that New Century was writing

21  down in 2007 were *originated* in 2005. (Seyhun Decl. ¶¶ 55-58.) But that in no way

22  suggests that the assets were improperly *accounted for* in 2005, because market

23  conditions had changed dramatically in 2007. As another example, Dr. Seyhun

24  opines that a JP Morgan analyst "indirectly rais[ed] questions about the reliability of

25  the 2005 financials due to the mathematical relationship between the 2005 and 2006

26  balance sheets" (*id.* ¶¶ 44-45), but that very same analyst issued a later report that

27  expressly stated the opposite: "[T]he last financials we can rely on were filed in the

28  company's 2005 10K." (Kleidon Decl. ¶ 24.)

1   Plaintiffs cannot create a triable issue of fact with an expert who has distorted

2   the evidence and offered unsustainable opinions about it. *Barnes v. Arden Mayfair,*

3   *Inc.*, 759 F.2d 676, 680-681 (9th Cir. 1985) ("A party opposing summary judgment

4   is entitled to the benefit of only reasonable inferences that may be drawn from the

5   evidence put forth.").  Dr. Seyhun "do[es] not accurately describe the evidence [he]

6   cite[s] in support of [his] argument that the market recognized the []

7   announcement[s] as revealing problems" with KPMG's 2005 audit report. *In re*

8   *Oracle Sec. Litig.*, 2009 WL 1709050, at *14 (N.D. Cal. June 19, 2009) (rejecting

9   plaintiffs' reading of analyst reports and granting summary judgment to defendants).

10   Dr. Seyhun's strained interpretations of New Century's disclosures and the ensuing

11   analyst commentary are simply insufficient to create a triable issue of fact.

12   Additionally, Plaintiffs also point to a handful of comments from two Internet

13   chatrooms, including a chatroom for mortgage brokers.  Just as with the analyst and

14   press reports, none of those comments states that the 2005 financials were erroneous

15   or that KPMG's 2005 audit report was false.  These limited comments from a

16   handful of individuals reflect nothing more than wild speculation and do not

17   constitute evidence that the market understood that announcement to mean that there

18   were errors in the Company's 2005 financial statements or KPMG 2005 audit

19   report.  (*See* Kleidon Decl. ¶ 26; KPMG's Motion to Exclude Seyhun Decl. at 23-

20   25.)[7]

21   Finally, even accepting Plaintiffs' twisted interpretations of these stray

22   references to 2005, only a minute fraction of the market commentary during

23   February and March 2007 even arguably touched on possible errors in the 2005

24   financial statements.  Thus, even if the Court finds that Dr. Seyhun has identified a

25   stray comment or two indicating that an isolated market commentator suspected

26   there might be problems with the audited 2005 financial statements, that evidence is

27   _____

28   [7] Dr. Seyhun's opinions based on market understanding of problems regarding New Century's 2006 financials and its financial condition in 2007 fail for the reasons explained in Part I.A, *supra*.

20

1   insufficient to create a triable issue of fact.  These isolated references to 2005, none

2   of which states there were errors in the 2005 financial statements or KPMG's 2005

3   audit report, and which themselves are mere snippets in the reports in which they

4   appear, are plainly insufficient to allow a reasonable jury to conclude that *the market*

5   understood the 2005 audit report to be misstated.  Plaintiffs must submit evidence

6   from which a reasonable trier of fact could conclude that KPMG was a "*substantial*

7   *cause* of the investment's decline in value."  *Daou*, 411 F.3d at 1025 (emphasis

8   added).  Similarly, the Supreme Court made clear in *Anderson v. Liberty Lobby*  that

9   "the mere existence of *some* alleged factual dispute between the parties will not

10  defeat an otherwise properly supported motion for summary judgment; the

11  requirement is that there be no *genuine* issue of *material* fact."  477 U.S. 242, 247-48

12  (emphases in original).  A scintilla of evidence is insufficient.  *Id.* at 251.

13          **4.      Internal communications by or among New Century and
                       KPMG do not create a genuine issue of material fact.**
14

15          In a last-ditch attempt to adduce evidence of loss causation, Plaintiffs point to

16  internal communications at KPMG and New Century discussing the scope of New

17  Century's February 7 and March 2 announcements.  (*See* Opp. at 5, 6, 9.)  But

18  Plaintiffs offer no evidence even suggesting that the contents of these documents

19  were ever made known to the investing public.  Thus, even if they supported

20  Plaintiffs' musings about what the early 2007 disclosures really meant, such internal

21  documents are by definition wholly irrelevant to the critical question – *whether the*

22  *market learned* "the truth" about the alleged misstatements in KPMG's 2005 audit

23  report.  As the Fifth Circuit recently observed:

24          undisclosed information cannot drive down the market price of a stock.
            Only information known to the market can cause a loss.  For this reason,
25          only information known to the market is relevant under the fraud-on-
            the-market theory . . . .
26

27  *Alaska Elec. Pension Fund*, 572 F.3d at 230.

28                              *      *      *

1   This Court previously observed that the "connection" between New Century's

2   announcements and KPMG's alleged misstatements "may be found too attenuated,

3   or the existence of intervening causes may be too significant for Plaintiffs to

4   establish loss causation." (MTD Order at 60-61.)  It is now clear that the connection

5   is, in fact, non-existent.  The Court therefore should grant summary judgment to

6   KPMG.

7   **II.   KPMG IS ENTITLED TO SUMMARY JUDGMENT BECAUSE**
        **PLAINTIFFS HAVE ADDUCED NO EVIDENCE THAT KPMG**
8       **CAUSED ANY PORTION OF THE STOCK PRICE DECLINES.**

9   Even if Plaintiffs had adduced some evidence that the market learned "the

10   truth" about KPMG's 2005 audit report or New Century's 2005 financial statements

11   (which, as explained in Part I.B, they have not), that evidence would not be sufficient

12   to carry their loss causation burden.  To avoid summary judgment, Plaintiffs also

13   must prove that the price of their New Century stock *declined in reaction to that*

14   *information*, and not in reaction to other simultaneously-released adverse

15   information.  (KPMG SJ Br. at 17-21.)  "Even if the truth has made its way into the

16   marketplace, *Dura* requires that a plaintiff show that it was this revelation that

17   caused the loss and not one of the 'tangle of factors' that affect price." *Williams*, 558

18   F.3d at 1137.

19   Where the market learned the "truth" simultaneously with other more

20   significant adverse information, courts refuse to assume – even at the pleading

21   stage – that any of the stock price decline, let alone the entire decline as Plaintiffs

22   suggest here, was caused by the alleged misstatements of an auditor.  For example, in

23   *McAdams v. McCord*, 584 F.3d 1111, 1114-15 (8th Cir. 2009), the Eighth Circuit

24   affirmed the dismissal of securities fraud claims when the plaintiffs did "not specify

25   how two statements by [the outside auditor], as compared to the complaint's long list

26   of alleged misrepresentations and omissions by the [defendant] executives,

27   proximately caused the investors' losses."  Similarly in *Lattanzio v. Deloitte &*

28   *Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007), the Second Circuit affirmed the

1  dismissal of securities fraud claims because the "[p]laintiffs ha[d] not alleged facts to

2  show that [the auditor's] misstatements, among others (made by [the company]) that

3  were much more consequential and numerous, were the proximate cause of

4  plaintiffs' loss." *See also Amorosa*, 672 F. Supp. 2d at 505.

5      A review of the evidentiary record demonstrates eloquently why Plaintiffs

6  bear the burden of showing that KPMG's misrepresentations – and not one or more

7  of the other "tangle of factors" that clearly affected New Century's stock price here –

8  caused Plaintiffs' losses.  As the Court observed, only one small part of one New

9  Century announcement during the relevant period – the "and prior periods" language

10  in the March 2 announcement – even arguably made any disclosures concerning

11  2005.  (MTD Order at 59-60 & n.26.)  The overwhelming thrust of New Century's

12  announcements during February and March 2007 concerned the increasingly dire

13  effect that the deteriorating subprime mortgage market was having on New

14  Century's business in the fourth quarter of 2006 and the first quarter of 2007.  Most

15  significantly, New Century announced that it expected to report a net loss for 2006,

16  largely due to the intensification of the industry-wide trend of early-payment defaults

17  in 2006.  New Century also disclosed that it needed to restate its unaudited 2006

18  quarterly financial statements.  Those announcements were compounded by

19  subsequent announcements that the Company expected to breach covenants in 15

20  major lending agreements; was about to violate certain New York Stock Exchange

21  regulations, which could lead to delisting of its stock; was ceasing to accept new loan

22  applications; and therefore was shutting down its core business.  Analyst and press

23  reports following these announcements focused overwhelmingly on these new

24  business developments, including the threats to New Century's very survival.  Thus,

25  even if the snippets that Plaintiffs have so carefully culled from the mountain of

26  relevant analyst and press reports could somehow be read to raise implicit questions

27  about KPMG's 2005 audit report, any reasonable reading of the entire record

28

23

DEFENDANT KPMG LLP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, SUMMARY ADJUDICATION – CASE NO. 2:07-CV-00931-DDP (FMO)

1   compels the conclusion that the market focused all of its attention on the more recent

2   and more dire disclosures having nothing to do with KPMG or 2005.[8]

3        Plaintiffs simply ignore the fact that New Century made these other

4   disclosures.  They make absolutely no effort to demonstrate that any portion of the

5   stock drop between February 7 and March 13, 2007 was caused by investor reaction

6   to "the truth" about KPMG's alleged 2005 misstatements, as opposed to the host of

7   more current and more troubling information disclosed by New Century.  Rather,

8   Plaintiffs and their experts blithely assert that KPMG should be liable for *all of the*

9   *Company-specific stock price decline*.  The law of loss causation does not permit

10  such a counterintuitive and unjust result.  Plaintiffs may not point to a stock drop

11  following a series of negative announcements and ask the jury to *assume* that KPMG

12  caused the entire resulting loss.  "Th[e] showing of loss causation is a 'rigorous

13  process' and requires both expert testimony and analytical research or an event study

14  that demonstrates a linkage between the culpable disclosure and the stock price

15  movement."  *Archdiocese of Milwaukee Supporting Fund v. Halliburton Co.*, 597

16  F.3d 330, 341 (5th Cir. 2010); *see also In re Imperial Credit Indus., Inc. Sec. Litig.*,

17  252 F. Supp. 2d 1005, 1014-16 (C.D. Cal. 2003) (granting summary judgment where

18  "there is no legally sufficient evidentiary basis for a reasonable jury to find for

19  Plaintiffs as to the existence of loss causation and damages" because Plaintiffs failed

20  to distinguish between "that portion of the price decline or price difference which is

21  unrelated to the alleged wrong"), *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x

22  218 (9th Cir. 2005); *cf. Miller v. Thane Int'l, Inc.*, 2005 WL 5957833, at *2-4 (C.D.

23  Cal. Mar. 3, 2005) (noting the importance of "filter[ing] out price effects that cannot

24  be legally attributed to the defendant").

25

26

27  ─────────────

    [8] This conclusion is further compelled by the market commentary following the May

28  24, 2007 announcement that New Century's 2005 financial statements should no
    longer be relied upon – which stated that this was new information.  (*See* Kleidon
    Decl. ¶¶ 6, 25.)

1      To satisfy their burden, Plaintiffs needed to isolate the effect of KPMG's

2  alleged misstatement.  This requires disaggregating the effect not only of market

3  factors, but also of other non-fraud related, Company-specific information (*e.g*., the

4  disclosures about New Century's financial condition in 2007), as well as the effect of

5  other misstatements for which KPMG is not responsible (*e.g*., New Century's 2006

6  misstatements).  *Cf. Dura*, 544 U.S. at 343 (specifically noting that "firm-specific

7  facts" may be part of the "tangle of factors" that affect stock price and for which a

8  defendant may not be liable).  Plaintiffs concede that they have not even attempted to

9  perform any such disaggregation here.  In particular, they concede that they do not

10  demonstrate that the price decline was caused by any alleged disclosures regarding

11  New Century's 2005 financial statements.  (*E.g*., Opp. at 32-34; Coffman Decl. ¶ 33

12  & n.28; Seyhun Decl. ¶¶ 156-160.)  Instead, they submit an entirely irrelevant event

13  study by Dr. Seyhun.  KPMG has moved to strike that event study on several

14  grounds but, even if admitted, the event study does not enable Plaintiffs to avoid

15  summary judgment.

16      Dr. Seyhun examined the stock drops following the announcements between

17  February 7 and March 13, 2007, and concluded that "New Century's common stock

18  price abnormally declined substantially after taking into account general market and

19  industry effects." (Seyhun Decl. ¶ 29.)  In other words, he concluded that New

20  Century's shares declined more on the days at issue than the shares of comparable

21  companies and/or the stock market in general.  But that is irrelevant.  The only

22  relevant question for present purposes is:  *Did the stock decline, even in part,*

23  *because of alleged disclosure of "the truth" regarding KPMG's 2005 audit report or*

24  *the 2005 financial statements?*  Plaintiffs' event study makes *no attempt* to address

25  that fundamental question.  It demonstrates only that the entire bundle of

26  announcements made by New Century in February and March 2007 – which had

27  nothing to do with KPMG of 2005 – caused the Company's stock price to decline

28

1    more than other comparable companies.  For that reason, Plaintiffs' event study is

2    completely irrelevant and does nothing to assist Plaintiffs in carrying their burden.

3         Numerous recent cases demonstrate that Plaintiffs' event study does not

4    suffice to carry their burden.  In *Williams*, the Tenth Circuit affirmed the district

5    court's grant of summary judgment in favor of the defendants and the striking of the

6    plaintiffs' causation expert.  The court first emphasized that "[e]ven if the truth has

7    made its way into the marketplace, *Dura* requires that a plaintiff show that it was this

8    revelation that caused the loss and not one of the 'tangle of factors' that affect price."

9    *Williams*, 558 F.3d at 1137 (quoting *Dura*, 544 U.S. at 343).  The Tenth Circuit

10   upheld the district court's exclusion of the plaintiffs' causation expert report because,

11   although the expert (like Dr. Seyhun here) had disaggregated the Company's stock

12   price movement from price movements in the general market, he had not determined

13   which of the various company-specific disclosures – only some of which arguably

14   corrected the defendants' alleged misrepresentations – actually caused the stock

15   price to decline.  Because he failed to account for the effect that other company-

16   specific disclosures may have had on the stock price, the *Williams* expert did not

17   have a basis for opining that the disclosures about defendants' fraud  actually caused

18   any of the loss, so his testimony was excluded.  *Id.* at 1142.  For the same reason, the

19   court affirmed the grant of summary judgment:

20         The fatal flaw still remains, which is that Plaintiffs have failed to
          present evidence suggesting that the declines in price were the result of
21        the revelation of the truth and not some other factor.  Given the
          evidence that the parties have presented, there is simply no way for a
22        juror to determine whether the alleged fraud caused any portion of
          Plaintiffs' loss.
23

24   *Id.* at 1143 (internal quotation marks omitted).

25         The Second Circuit recently affirmed the grant of summary judgment on loss

26   causation grounds in a comparable case.  In *In re Omnicom Securities Litigation*, 597

27   F.3d 501 (2d Cir. 2010), *aff'g* 541 F. Supp. 2d 546 (S.D.N.Y. 2008), the plaintiffs

28   were represented by the same firm that represents Plaintiffs in this case.  The district

26

court granted summary judgment to the defendants, holding that "[w]hile plaintiffs need not quantify the fraud-related loss, they must 'ascribe some rough proportion of the whole loss to [the alleged] misstatements.'" *Omnicom*, 541 F. Supp. 2d at 553 (quoting *Lattanzio*, 476 F.3d at 158) (brackets in original). The court went on to find that the plaintiffs' expert report was inadequate because it failed to isolate the price effects of the defendants' alleged fraud from the other company-specific negative information released simultaneously, which "dwarfed" the alleged disclosure of fraud. *Id.* at 554. "Because the law requires the disaggregation of confounding factors, disaggregating only *some* of them cannot suffice to establish that the alleged misrepresentations actually caused Plaintiffs' loss." *Id.* (emphasis in original). The plaintiffs' expert offered no evidence that the market actually reacted to the disclosures about the defendants' alleged misrepresentations – as opposed to other confounding information – so there was "simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiffs loss." *Id.* The Second Circuit rejected plaintiffs' contention on appeal that their expert report created a triable issue of fact and affirmed the district court's decision. It held:

> [S]ummary judgment is not *per se* precluded because there are conflicting experts. . . . Summary judgment is appropriate here because [the expert's] testimony does not suffice to draw the requisite causal connection between the information in [the disclosure] and the fraud alleged in the complaint. His event study merely 'links the decline in the value of [the company's] stock to various events.'

*Omnicom*, 597 F.3d at 512 (second brackets in original).[9]

The Fifth Circuit reached the same conclusion in *Fener v. Operating Engineers Construction Industry and Miscellaneous Pension Fund (Local 66)*, 579 F.3d 401 (5th Cir. 2009). In that case, the plaintiff sought to recover investment

---

[9] *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) (excluding a set of plaintiffs from the certified class because, although their "event study links the decline in value of [the company's] common stock to various events, Plaintiffs have not presented sufficient evidence . . . that any of the events revealed the truth about the subject of any of Defendants' alleged misstatements").

losses it had suffered when the price of the defendant company's stock dropped in reaction to an announcement that disclosed three pieces of information, only one of which corrected the defendant's allegedly fraudulent statements concerning its newspaper circulation figures.  The plaintiff submitted an expert report of an event study that segregated the company-specific stock price movements from other market movements.  However, the expert failed to disaggregate that portion of the stock drop that was caused by disclosures about the defendant's alleged misstatements from the portion caused by the other company-specific disclosures made at the same time.  The Fifth Circuit affirmed the district court's refusal to certify a class[10] because the plaintiffs had failed to demonstrate loss causation:  "We reject any event study that shows only how a stock reacted to the *entire bundle* of negative information, rather than examining the evidence linking the *culpable* disclosure to the stock-price movement."  *Id.* at 410 (internal quotation marks omitted; emphases in original).  The court further explained that the disclosure of the defendant's fraud may have been significant, "but for long-term investors, news about the substantial and continuing decline in nationwide newspaper circulation could be much more disconcerting than were the fraudulent practices.  If investors sold [their] stock because of that long-term trend, and not because of the fraud, there is no loss causation."  *Id.*

As these cases make clear, Plaintiffs can survive summary judgment only by offering evidence that "the truth" regarding KPMG's allegedly misstated 2005 audit report – and not some other adverse information – was a substantial cause of Plaintiffs' losses.  Contrary to Plaintiffs' assertions (Opp. at 32), this means, as a practical matter, that Plaintiffs must provide some basis for the trier of fact to determine whether *any* portion of the investment losses they suffered in February

---

[10] The Fifth Circuit requires 10b-5 plaintiffs to demonstrate, at the class certification stage, that the defendant's alleged misstatements caused their losses.  Although the Ninth Circuit does not require such a showing at the class certification stage, the substantive standard that must be met by a plaintiff seeking to prove loss causation is no different in the two circuits.

1   and March 2007 was caused by the market learning about KPMG's alleged

2   misstatements, as opposed to learning about the Company's increasingly poor

3   financial performance and prospects, or misstatements in the unaudited 2006

4   quarterly financials.  Otherwise, Plaintiffs have not offered evidence from which a

5   reasonable juror could determine that KPMG's allegedly misstated audit report, and

6   not the other more current and more dire problems at New Century, was a substantial

7   cause of Plaintiffs' losses.

8        Plaintiffs argue that, even though they "can disaggregate the damages caused

9   by unrelated adverse disclosures"[11] from those caused by alleged disclosures about

10   KPMG and 2005, such disaggregation is "not necessary at this stage," and that

11   KPMG is trying to force them to "apportion damages," which "is a question for the

12   jury at trial, not summary judgment."  (Opp. at 33.)  But their argument misses the

13   mark.  KPMG is not arguing that Plaintiffs must apportion among multiple

14   defendants the damages they jointly caused, or that Plaintiffs must put an exact

15   dollar figure on their losses at this stage.  Rather, the cases discussed above –

16   *Williams, Omnicom*, and *Fener* – demonstrate that Plaintiffs must offer evidence that

17   disclosure of "the truth" regarding KPMG's 2005 audit report – and not a different

18   set of disclosures about a different "truth" – *actually caused* the losses they seek to

19   recover.[12]

20        Plaintiffs' cases do not hold otherwise.  Plaintiffs rely heavily on *In re*

21   *Motorola Securities Litigation*, 505 F. Supp. 2d 501 (N.D. Ill. 2007) (cited in Opp. at

22   32).  But there, the court *granted* summary judgment as to one of the announcements

---

[11] Dr. Seyhun identifies only one potentially unrelated adverse disclosure:  New Century's February 7, 2007 disclosure lowering its new loan production expectations for 2007 "from flat to down 20%."  (Seyhun Decl. ¶ 157.)

[12] Plaintiffs also argue that they are "not required to show "'that a misrepresentation was the sole reason for the investment's decline in value" in order to establish loss causation.'"  (Opp. at 33 n.27 (quoting *Daou*, 411 F.3d at 1025).)  But Plaintiffs miss the mark here too.  They need not prove that KPMG was the *sole cause* of the decline in value of their stock, but they must submit evidence from which a reasonable trier of fact could conclude that KPMG was a "*substantial cause* of the investment's decline in value."  *Daou*, 411 F.3d at 1025 (emphasis added).

29

1   at issue because there was not sufficient evidence for the jury to conclude that any

2   portion of the resulting stock price decline was caused by the defendants. *Id.* at 548.

3   Although the court denied summary judgment as to the other announcements, it did

4   so because the evidence showed that "the most reasonable inference [was] that the

5   price decline" was caused by the revelation of the defendants' misstatements and not

6   something else. *Id.* at 557. Here, in contrast, given the increasingly dire information

7   disclosed by New Century between February 7 and March 13, 2007, it is simply not

8   possible to find that "the most reasonable inference" is that the price declines were

9   driven by revelations that there were errors in KPMG's 2005 audit report. *Motorola*

10  does not allow Plaintiffs to avoid their burden to proffer evidence that some portion

11  of the price declines was due to market understanding of KPMG's alleged

12  misstatements.

13          Plaintiffs also cite *In re Apollo Group Inc. Securities Litigation*, 509 F. Supp.

14  2d 837 (D. Ariz. 2007) (Opp. at 33). But in that case, unlike here, the plaintiffs'

15  expert had "isolated and removed the non-fraud factors that contributed to the stock-

16  price decline." *Id.* at 846 n.7. Plaintiffs' citation to *Callahan v. A.E.V., Inc.*, 182

17  F.3d 237 (3d Cir. 1999) (Opp. at 33-34), is similarly misplaced. There, the Third

18  Circuit held that the antitrust plaintiffs need not precisely calculate the amount of

19  their damages at the summary judgment stage. *Id.* at 247. That case does not

20  remotely excuse Plaintiffs from having to provide evidence that some portion of the

21  decline in the value of their shares was caused by the market learning that the 2005

22  financial statements audited by KPMG were misstated.[13]

_____

23  [13] Plaintiffs' remaining cases do not involve summary judgment. Nor do they say
    anything about what evidence is required to survive summary judgment on loss

24  causation. *See In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129 (4th Cir. 2009) (on
    motion to dismiss: allegation that stock price dropped immediately upon corrective

25  disclosures concerning market timing practices sufficiently specific to allege that
    misleading statements concerning market timing practices were a substantial factor

26  in the decline in the stock price); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D.
    260, 283 (N.D. Ala. 2009) (at class certification stage: plaintiffs' evidence

27  demonstrated that defendants' fraud was a "substantial cause" of their losses); *In re
    Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 252-53 (S.D.N.Y. 2007) (on motion

28  to dismiss: plaintiffs adequately stated a claim when they alleged stock drops

New Century's disclosures between February 7 and March 13, 2007 flooded the market with new and dire information about 2006 and 2007 developments at the Company. Virtually all of those disclosures, and the subsequent market commentary, did not even arguably suggest that the 2005 financial statements audited by KPMG had been misstated, and Plaintiffs have not pointed to any commentary that stated that the 2005 financials or audit report were misstated. Yet Plaintiffs seek to put before the jury an expert report which purports to demonstrate that *the entire Company-specific decline* in the price of their New Century shares during that period was caused by KPMG. Neither Plaintiffs nor their expert offer any explanation for that counterintuitive proposition, nor does the law permit such an unjust result. Plaintiffs have failed to carry their burden to prove loss causation, and summary judgment should granted to KPMG.

**III.  THE COURT SHOULD CONSIDER EACH ANNOUNCEMENT SEPARATELY AND SUMMARILY ADJUDICATE THAT KPMG DID NOT CAUSE THE RESULTING STOCK DROPS.**

Plaintiffs' complaint and their opposition to KPMG's motion to dismiss primarily argued that KPMG was responsible for the stock price decline following the March 2 announcement. (*See* MTD Order at 59 & n.26 (noting that KPMG cannot be liable for stock drops occurring after the February 7 announcement because "Plaintiffs do not argue that the February 7, 2007 disclosures concerned KPMG's statements").) At that stage, Plaintiffs pointed to the "and prior periods" language in the March 2 announcement and argued that the market understood that term to disclose errors in KPMG's 2005 audit report. (MTD Order at 60 (describing Plaintiffs' argument).) In their Opposition to this summary judgment motion, however, Plaintiffs have adopted a more ambitious loss causation theory. They now seek to hold KPMG liable for all of the stock price declines that occurred after each of New Century's announcements between February 7 and March 13, 2007.

---

immediately following corrective disclosures concerning defendants' fraudulent options backdating practices).

DEFENDANT KPMG LLP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION – CASE NO. 2:07-CV-00931-DDP (FMO)

As discussed above, Plaintiffs have failed to adduce evidence sufficient to support their initial argument, that the March 2 "and prior periods" language caused some of their losses.  (*See supra* at Part 1.B.)  Their attempt to resurrect their claims for the losses they suffered on the other dates borders on the absurd.  Dr. Seyhun's opinions about losses caused by the February 7 disclosure rest entirely on mischaracterized evidence and faulty logic.  (*See supra* at 18-21; Motion to Exclude Seyhun Decl. at 14-22.)  And he offers no evidence at all to support his opinions regarding losses "caused by" the disclosures after March 2, relying instead on his own erroneous views of what the law should provide.  (*See supra* at 18-21; Motion to Exclude Seyhun Decl. at 11-14.)  At the very least, the Court should consider separately each of the disclosures in question, and grant summary adjudication on each one where Plaintiffs have failed to carry their burden to demonstrate loss causation.

## IV.   PLAINTIFFS CANNOT AVOID SUMMARY JUDGMENT WITH THEIR BELATED REQUEST TO TAKE DISCOVERY.

Finally, Plaintiffs request an opportunity to take discovery, in the event the Court is inclined to grant KPMG's motion for summary judgment.  (Opp. at 31.)  The Court should deny that request.  First, KPMG explicitly offered Plaintiffs the opportunity to conduct any discovery necessary to oppose this motion, and to extend the briefing schedule is necessary to do so, but they declined.[14]  Moreover, by failing to file a motion for additional discovery and/or for continuance of the summary judgment hearing, Plaintiffs have not complied with the requirements of Rule 56(f).  "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)."  *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986); *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir. 1988).

---

[14]*See* Declaration of Michael L. Rugen, submitted herewith, ¶¶ 2-3.

1    Having chosen to proceed without discovery, Plaintiffs cannot now avoid

2  summary judgment by means of an eleventh-hour change of heart.  *See Mesa Verde*

3  *Constr. Co. v. N. Cal. Dist. Council of Laborers*, 820 F.2d 1006, 1011 n.3 (9th Cir.

4  1987) (rejecting Rule 56(f) request:  non-moving party may not have "a second bite

5  at the apple to establish a genuine factual issue in the event the court finds no

6  genuine issue of fact to exist"), *vacated on other grounds*, 861 F.2d 1124 (9th Cir.

7  1988) (*en banc*).

8

9

                                        Respectfully submitted,
10
    Dated:  April 14, 2010            /s/ Michael L. Rugen
11
    Michael C. Kelley (No. 090062)    Michael L. Rugen (No. 85578)
12  Bradley H. Ellis (No. 110467)     Robert B. Martin III (No. 235489)
    Jose F. Sanchez (No. 161362)      SIDLEY AUSTIN LLP
13  Jodi E. Lopez (No. 231117)        555 California Street, Suite 2000
    SIDLEY AUSTIN LLP                 San Francisco, California 94104
14  555 West Fifth Street             (415) 772-1200
    Los Angeles, California 90013
15  (213) 896-6000                    *Attorneys For Defendant KPMG LLP*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT KPMG LLP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN
THE ALTERNATIVE, SUMMARY ADJUDICATION – CASE NO. 2:07-CV-00931-DDP (FMO)