BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
BLAIR A. NICHOLAS   (Bar No. 178428)
(blairn@blbglaw.com)
ELIZABETH LIN   (Bar No. 174663)
(elizabethl@blbglaw.com)
NIKI L. MENDOZA (Bar No. 214646)
(nikim@blbglaw.com)
BENJAMIN GALDSTON   (Bar No. 211114)
(beng@blbglaw.com)
TAKEO A. KELLAR  (Bar No. 234470)
(takeok@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323
        -and-
SALVATORE J. GRAZIANO
(sgraziano@blbglaw.com)
LAUREN A. MCMILLEN
(laurenm@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

Lead Counsel for Lead Plaintiff New
York State Teachers' Retirement System

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NEW CENTURY | Case No. 2:07-cv-00931-DDP (FMOx) (Lead Case) |
| | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS** |
| | Date:   August 30, 2010 Time:  10:00 a.m. Courtroom:  3 Judge:  Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.    PRELIMINARY STATEMENT ....................................................... 1

II.   OVERVIEW OF THE LITIGATION ................................................. 3

    A.    The Consolidated Complaints And Defendants' Motions To Dismiss ............................... 3

    B.    Discovery ........................................................................ 4

    C.    KPMG's Motion For Summary Judgment ............................. 4

    D.    The Extensive Negotiations Leading To The Settlements ........... 5

III.  THE SETTLEMENTS ................................................................ 6

    A.    Summary Of The Settlements ............................................. 6

    B.    Reasons For The Settlements ............................................. 8

IV.   THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL ...................................................... 9

    A.    Factors To Be Considered By The Court In The Preliminary Approval Of Class Action Settlements ...................................................... 9

        1.    The Settlements Were Vigorously Negotiated And Are Supported By Experienced Counsel ........................................... 11

        2.    The Substantial Benefits Obtained For The Class, Especially In Light Of Serious Risks Of Lesser Or No Recovery, Support Approval Of The Settlements ...................................................... 12

        3.    The Stage Of The Proceedings And Discovery Completed Support Approval Of The Settlements ......................................... 14

    B.    The Class Should Be Certified For Settlement Purposes ........................................................ 14

        1.    Numerosity ........................................................... 15

        2.    Commonality ......................................................... 16

        3.    Typicality ............................................................. 17

4.  Adequacy .................................................................... 18

5.  Common Questions Of Law
    Predominate And A Class Action Is
    The Superior Method Of Adjudication ..................................... 18

C.  The Proposed Plan Of Allocation Is Fair
    And Reasonable ............................................................... 19

D.  The Notice To The Class Is Adequate ..................................... 22

V.  CONCLUSION ................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                         **PAGE(S)**

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 14492 (S.D. Cal. July 10, 2003) ...............................18

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...............................................................15

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................9, 10, 20

*Conn. Ret. Plans and Trust Funds v. Amgen, Inc.*,
   2009 U.S. Dist. LEXIS 71653 (C.D. Cal. Aug. 12, 2009) .................................16

*In re Consol. Pinnacle W. Sec. Litig.*,
   51 F.3d 194 (9th Cir. 1995) ...............................................................11

*In re Cooper Cos., Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009)...........................................................19

*Crossen v. CV Therapeutics*,
   2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ....................................................17

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) ...............................................................18

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002).............................................................20

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)...............................12

*Fulford v. Logitech, Inc.*,
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) .................................11

*Glass v. UBS Fin. Servs. Inc.*,
   331 Fed. Appx. 452 (9th Cir. 2009) (unpubl.)............................................20, 22

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ...............................................................15

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................................12

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................24

*In re Juniper Networks Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009)...........................................15, 16, 17

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .................................................12

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009)..................................................17, 18, 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................20, 22

*Mendoza v. United States*,
  623 F.2d 1338 (9th Cir. 1980) ...............................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .................................................................10

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................20, 22

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. June 18, 1994).........................................22

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .......................................24

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................24

*Schaefer v. Overland Express Family of Funds*,
  169 F.R.D. 124 (S.D. Cal. 1996) ...........................................................18

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ...........................................................16

*Siemer v. Assocs. First Capital Corp.*,
  2000 U.S. Dist. LEXIS 21244 (D. Ariz. Dec. 13, 2000) .......................16

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) .................................................................25

*In re THQ Inc. Sec. Litig.*,
  2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002)........................17

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................10

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ...................................................................9

*In re VeriSign Inc. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005).......................16

*In re Veritas Software Corp. Sec. Litig.*,
  496 F.3d 962 (9th Cir. 2007) .................................................................22

*In re Wireless Facilities, Inc. Sec. Litig.*,
  253 F.R.D. 630 (S.D. Cal. 2008) ......................................................17, 22

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................20

PRELIMINARY APPROVAL MOTION
Case No. 2:07-cv-00931-DDP (FMOx)

**STATUTES AND RULES**

15 U.S.C.A. §78u-4(a)(7)(A)-(F)..............................................................................23

Fed. R. Civ. P. 23 .....................................................................................passim

# I.   **PRELIMINARY STATEMENT**

Lead Plaintiff, the New York State Teachers' Retirement System ("NYSTRS"), and plaintiffs Carl Larson and Charles Hooton (collectively, "Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their unopposed motion for the entry of an order (i) granting preliminary approval to the proposed Settlements set forth in the Settlement Stipulations filed concurrently herewith[1]; (ii) certifying the proposed Class for settlement purposes; (iii) approving the form and manner of giving notice of the proposed Settlements to the Class; and (iv) setting a hearing date for final approval of the Settlements (the "Final Settlement Hearing").  The parties have agreed upon a form of [Proposed] Order Preliminarily Approving Settlements And Providing For Notice ("Preliminary Approval Order") and exhibits thereto, which is submitted herewith.

As set forth in the Settlement Stipulations, the Settlements provide for the collective payment of approximately $125 million in cash (the "Settlement Amount") plus any and all interest earned thereon (the "Settlement Fund") for the benefit of the Class, in exchange for dismissal of claims against all Defendants.[2]

---

[1] The three Settlement Stipulations are as follows:  (a) Stipulation Of Global Settlement With New Century Officers And Directors ("Global Settlement Stipulation," attached as Exhibit 2 hereto), which provides a sum to the Class of $65,077,088 to settle the claims against the New Century director and officer Defendants; (b) Stipulation Of Settlement Between Plaintiffs And KPMG (attached as Exhibit 3 hereto), which provides a sum of $44,750,000 to settle the claims against auditor Defendant KPMG; and (c) Stipulation Of Settlement Between Plaintiffs And The Underwriter Defendants (attached as Exhibit 4 hereto), which provides a sum of $15,000,000 to settle the claims against the Underwriter Defendants.  The three Settlement Stipulations provide for a total recovery for the Class of approximately $125,000,000 in cash before deduction of Court-approved fees, expenses, and costs.

[2] The Defendants include the following:  (i) "Individual Defendants" who are former officers and directors of New Century, including Robert K. Cole, Brad A. Morrice, Estate of Edward Gotschall, Patti M. Dodge, Fredric J. Forster, Michael M. Sachs, Harold A. Black, Donald E. Lange, Terrence P. Sandvik, Richard A.

The proposed Settlements were reached only after extensive litigation and negotiations – including more than eleven in-person mediation sessions and numerous negotiations over the course of more than one year – overseen by an experienced mediator, the Honorable Daniel Weinstein (Ret.) (the "Mediator"), and with the active participation of the Court-appointed Lead Plaintiff NYSTRS, whose General Counsel or Associate General Counsel personally attended each of the mediation sessions.  The proposed Settlements represent an outstanding result for Plaintiffs and the Class, particularly in light New Century's bankruptcy and the risks to the Class if the action continued, including the risks of establishing Defendants' liability and the Class's full amount of damages trial and the risks that there would be significantly less funds available to satisfy any judgment or post-trial settlement.

By this Motion, Lead Plaintiff respectfully requests that the Court preliminarily approve the Settlements, based on Lead Plaintiff's evaluation of the facts and applicable law, and its recognition of the substantial risks and expense of continued litigation.  At the Final Settlement Hearing, the Court will have before it more extensive motion papers submitted in support of the proposed Settlements, and will then make an ultimate determination of whether the Settlements are fair, reasonable, and adequate under all of the circumstances surrounding the action.  At this juncture, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlements so that Notice of the Settlements may be sent to the Class and the Final Settlement Hearing may be scheduled.

---

Zona, Marilyn A. Alexander, David Einhorn, and William J. Popejoy; (ii) "Underwriter Defendants," including Bear, Stearns & Co. Inc., Deutsche Bank Securities Inc., Piper Jaffray & Co., Stifel, Nicolaus & Co., Inc., JMP Securities LLC, Roth Capital Partners, Morgan Stanley & Co., Inc., and Jeffries & Co., Inc.; and (iii) KPMG LLP ("KPMG").  New Century was not named as a defendant due to its filing of bankruptcy.

## II.   OVERVIEW OF THE LITIGATION

### A.   The Consolidated Complaints And Defendants' Motions To Dismiss

Beginning on February 8, 2007, numerous related class action complaints were filed in the Central District of California alleging that the Defendants violated the federal securities laws by misrepresenting and failing to disclose adverse facts concerning New Century's business condition and financial results.   On June 26, 2007, the Court entered an Order consolidating all the related actions, and appointed NYSTRS as Lead Plaintiff and Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel.   On September 14, 2007, after extensive research and investigation, Plaintiffs filed a consolidated class action complaint.   On November 2 and 20, 2007, Defendants filed five separate motions to dismiss. Plaintiffs opposed the motions.   Thereafter, on January 31, 2008, the Court dismissed the consolidated complaint with leave to amend.

On March 24, 2008, Plaintiffs filed an amended complaint, and two days later the Bankruptcy Examiner published his Final Report concerning his investigation of the facts leading to New Century's bankruptcy.  In the interests of judicial economy, the parties agreed to a schedule for filing Plaintiffs' Second Amended Complaint.  On April 30, 2008, Plaintiffs filed the Second Amended Complaint, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act").

On June 2, 2008, Defendants filed six separate motions to dismiss the Second Amended Complaint.   Among other things, the Defendants argued that Plaintiffs did not adequately plead the strong inference of scienter required for the Exchange Act claims and that Plaintiffs failed to adequately plead there was loss causation.  Plaintiffs opposed these motions on July 7, 2008, and Defendants filed their reply memoranda on July 28, 2008.  On September 22, 2008, the Court heard

oral arguments on the Defendants' motions to dismiss.  On December 3, 2008, the Court issued an order denying Defendants' motions to dismiss.

**B.    Discovery**

Following the Court's December 3, 2008 denial of the Defendants' motions to dismiss, the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was automatically lifted.  Plaintiffs served dozens of requests for production of documents and subpoenas.  Following numerous meet and confers over discovery disputes, including the filing of several discovery motions, Plaintiffs ultimately obtained over 38 million pages of documents from the parties and non-parties in this action.

Among other things, Plaintiffs received over 35 million pages of documents from the New Century Liquidating Trust, over 2.8 million pages from Defendant KPMG, over 600,000 pages from the Underwriter Defendants, and approximately half a million pages of documents from various third parties.  Plaintiffs also produced documents to Defendants, including trade confirmations, brokerage statements, investment manuals, and other materials in their possession concerning New Century.  Through their review of these documents, the parties were well informed of the strengths and weaknesses of their positions, their ability to prove their claims and defenses, and they entered into the Settlements having taken these factors into consideration.

**C.    KPMG's Motion For Summary Judgment**

On January 13, 2010, Defendant KPMG filed a motion for summary judgment, arguing that Plaintiffs could not establish loss causation in this case for any misstatements concerning the Company's 2005 financial results.  On March 15, 2010, Plaintiffs filed their opposition to KPMG's motion and a related motion to exclude KPMG's expert on loss causation.  On April 14, 2010, KPMG filed its reply brief as well as three motions to exclude Plaintiffs' experts on loss

1   causation.   KPMG's motion for summary judgment was pending at the time it

2   reached an agreement in principle to settle with Lead Plaintiff.

3   **D.      The Extensive Negotiations Leading To The Settlements**

4         The Settlements are the result of intensive, arm's-length negotiations

5   between all parties, involving eleven in-person mediation sessions over more than

6   a one-year time period, as well as extensive direct and indirect negotiations

7   between counsel for the parties that occurred before and after those mediations.

8   Settlement negotiations occurred while litigation was ongoing, including the

9   briefing and discovery related to KPMG's summary judgment motion, and

10  Plaintiffs' review of over 38 million pages of documents.   The negotiations were

11  particularly complex due to the parties' disputes over the claims and defenses in

12  the action, New Century's bankruptcy, the number of defendants in this case, and

13  the existence of claims that were made against certain of the Defendants by the

14  New Century Liquidating Trustee (the "Trustee"), plaintiffs in the related action

15  *Kodiak Warehouse LLC, et al. v. Brad A. Morrice, et al.,* Case No. 08-1265-DDP-

16  FMO ("Kodiak"), and the Securities & Exchange Commission ("SEC").   In the

17  end, the parties were able to reach global settlements on all claims, including not

18  only those claims alleged in the instant class action, but also the claims brought by

19  the Trustee, Kodiak, and the SEC which was necessary to achieve a settlement

20  here.

21        The negotiations commenced on March 11, 2009, when Plaintiffs and

22  certain of the Defendants participated in in-person mediation sessions before the

23  Honorable Daniel Weinstein.   The mediations took place over three separate days,

24  on March 11, 12, and 24, 2009, followed by additional negotiations facilitated by

25  the Mediator on March 31, 2009, and May 8, 2009.   A second in-person mediation

26  session took place over two days on June 25 and 26, 2009, followed by calls with

27  the Mediator on July 29, 2009, and August 18, 2009.   A third in-person mediation

28  session took place on September 14, 2009, followed by a conference call on

1  October 1, 2009.  A fourth in-person mediation session took place on October 26,

2  2009, followed by conference calls and meetings with the Mediator on December

3  29, 2009, and January 13, 2010.  A fifth in-person mediation session took place

4  over two days on January 18 and 19, 2010, followed by conference calls on

5  January 19, 2010, January 20, 2010, and February 11, 2010.  The parties continued

6  to participate in conference calls with the Mediator thereafter and held final in-

7  person mediation sessions on April 28 and 29, 2010.  Although the parties did not

8  fully resolve these matters by April 29, 2010, all parties were close to reaching

9  agreements in principle to settle all of the claims.  At that time, Lead Counsel

10  drafted the comprehensive settlement documents.  Over May, June, and July 2010,

11  the parties extensively negotiated the specific terms of the settlement documents,

12  including the three Settlement Stipulations, the proposed Preliminary Approval

13  Order, the Class Notice, the Proof of Claim form, the Summary Notice, and the

14  three proposed Judgments.

15  ### III.   THE SETTLEMENTS

16  ###   A.   Summary Of The Settlements

17  The parties entered into the Settlement Stipulations to completely resolve the

18  above-captioned action against Defendants.  Defendants collectively agreed to pay

19  approximately $125 million in cash to the Class.  If the Settlements are approved

20  by the Court, this action will be dismissed with prejudice and Defendants and their

21  related parties will receive the release of claims in the Settlement Stipulations.

22  As part of the Settlements, the parties agreed to the certification of a Class

23  defined as:

24  All persons and entities who purchased or otherwise acquired New

25  Century common stock, New Century Series A Preferred Stock, New

26  Century Series B Preferred Stock, and/or New Century call options

27  and/or who sold New Century put options, during the time period

28  from May 5, 2005, through and including March 13, 2007, either in

---

the Offerings, pursuant to a registration statement, or in the market, and who, upon disclosure of certain facts alleged in the Complaint, were injured thereby.[3]

The approximately $125 million of settlement proceeds, after payment of taxes, costs (including costs of providing notice and claims administration), expenses and attorneys' fees, will be distributed to Class Members pursuant to a Plan of Allocation to fairly allocate the net proceeds of the Settlements to members of the Class who submit acceptable Proof of Claim forms. The proposed Plan of Allocation is set forth in paragraphs 32 through 85 of the proposed Notice to the Class, attached as Exhibit A-1 to the proposed Preliminary Approval Order.

The Settlements are documented in three separate Settlement Stipulations entered into by Plaintiffs, on behalf of themselves and the Class, subject to Court approval.[4]   First, Plaintiffs have entered into a Settlement Stipulation with Defendant KPMG providing for payment to the Class of $44,750,000.   Second, Plaintiffs have entered into a Settlement Stipulation with the Underwriter Defendants for payment to the Class of $15,000,000.   Third, Plaintiffs have entered into a Global Settlement Stipulation with the New Century officer and director Defendants providing for payment to the Class of $65,077,088 in cash (as well as

---

[3] Excluded from the Class are (a) Defendants; (b) members of the immediate families of the Individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person or entity who was a partner, executive officer, director or controlling person of New Century (including any of its subsidiaries or affiliates) or of any Defendant; (e) any entity in which any Defendant has a controlling interest; and (f) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

[4] Pursuant to the Settlement Stipulations and as explained in the Notice, the three settlement agreements are closely related and, if one of the three settlements should not become final for any reason, it could affect the finality and enforceability of the other settlements.

1    other payments to resolve the other claims brought against these Defendants by the

2    SEC, the Trustee, and Kodiak).[5]

3    **B.    Reasons For The Settlements**

4         Plaintiffs entered into the Settlements with a thorough understanding of the

5    strengths and weaknesses of the claims asserted in this action.  This understanding

6    is based on Lead Counsel's prosecution of the action, which included, among other

7    things:  (a) drafting of detailed complaints after review and analysis of the SEC

8    filings, press releases and other public statements relating to New Century, media

9    and news reports about New Century, publicly available trading data relating to the

10   price and volume of New Century securities, the Examiner's Report, and other

11   information; (b) interviews with numerous former employees of New Century; (c)

12   extensive briefing on Defendants' various motions to dismiss and KPMG's motion

13   for summary judgment; (d) review and analysis of over 38 million pages of

14   documents produced by Defendants and third parties; (e) consultation with loan

15   underwriting, accounting and damages experts; and (f) the drafting of mediation

16   statements and numerous mediation letters and preparing for and participating in

17   numerous mediation sessions and extensive negotiations.  Based on the foregoing,

18   Lead Plaintiff has entered into the Settlements with an in-depth understanding of

19   the strengths and weaknesses of Lead Plaintiff's claims and damages.

20        Although Lead Plaintiff and Lead Counsel believe that the claims asserted

21   against Defendants have merit, they also recognize that there are serious risks as to

---

23-28   [5]  The Global Settlement Stipulation provides for a total of $91,102,331.51 in cash and $944,029.49 in other consideration to be paid to resolve all of the claims against the New Century officers and directors by the Class, the SEC, the Trustee and Kodiak.  The Global Settlement Stipulation further provides an agreed-to allocation of these payments to the Class and the plaintiffs in the other pending actions.  The Class is receiving over 70% of the amount paid by the New Century officer and director Defendants in the Global Settlement Stipulation, or $65,077,088 in cash.

1    whether Plaintiffs would ultimately prevail on the merits, including specifically

2    with regard to proving loss causation.  Additionally, there was a very substantial

3    risk that, even if Plaintiffs were to prevail on the merits, the Class might not

4    recover as much as the total Settlement Amount on a judgment.  Indeed, because

5    New Century had filed for bankruptcy, the available funds to satisfy any judgment

6    against the New Century officer and director Defendants were diminishing over

7    time. The Settlements represent a substantial all-cash fund for the Class and will

8    eliminate the significant risk that continued litigation might result in a smaller

9    recovery or possibly no recovery at all.  As set forth below, the Settlements include

10   payment of the vast amount of the Director and Officer insurance available to

11   satisfy a judgment in this action along with personal contributions from certain of

12   the New Century officer Defendants.

13        For these reasons, Lead Plaintiff and Lead Counsel submit that the

14   Settlements are fair, adequate and reasonable, and warrant preliminary approval.

15   **IV.   THE PROPOSED SETTLEMENTS**
         **WARRANT PRELIMINARY APPROVAL**

16

17        **A.   Factors To Be Considered By The Court In The**
              **Preliminary Approval Of Class Action Settlements**

18        Federal Rule of Civil Procedure 23(e) requires judicial approval for any

19   compromise of claims brought on a class basis.  Whether to approve a proposed

20   settlement is within the sound discretion of the district court, which should be

21   exercised in the context of public policy strongly favoring the pretrial settlement of

22   class action lawsuits. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir.

23   1992).  "[T]here is an overriding public interest in settling and quieting litigation,"

24   and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*,

25   529 F.2d 943, 950 (9th Cir. 1976).

26        Recognizing that a settlement represents an exercise of judgment by the

27   negotiating parties, the Ninth Circuit has held that "the court's intrusion upon what

28   is otherwise a private consensual agreement negotiated between the parties to a

1    lawsuit must be limited to the extent necessary to reach a reasoned judgment that

2    the agreement is not the product of fraud or overreaching by, or collusion between,

3    the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

4    and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688

5    F.2d 615, 625 (9th Cir. 1982).

6        In considering whether to grant preliminary approval of class action

7    settlements, courts make a preliminary evaluation of the fairness of the settlements

8    prior to issuing notice to the class and prior to holding a final settlement hearing.

9    The general standard by which courts are guided when deciding whether to grant

10   preliminary approval of a class action settlement is whether the proposed

11   settlement falls within the range of what could be found "fair, adequate and

12   reasonable," so that notice may be given to the proposed class and a hearing for

13   final approval can be scheduled. *Class Plaintiffs*, 955 F.2d at 1276.

14       At this point, the Court need not answer the ultimate question:  whether the

15   Settlements are fair, reasonable and adequate.  When the Court makes this ultimate

16   determination at a later point, the Court will be asked to review the following

17   factors:  the strength of Plaintiffs' case; the risk, expense, complexity, and likely

18   duration of further litigation; the risk of maintaining class action status throughout

19   the trial; the amount offered in the Settlements; the extent of discovery completed,

20   and the stage of the proceedings; and the experience and views of counsel.  *See*

21   *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).

22       The parties here request only that the Court take the first step in the

23   settlement approval process and grant preliminary approval of the proposed

24   Settlements. The proposed Settlements, which provide approximately $125 million

25   in cash for distribution to eligible Class Members before deduction of Court-

26   awarded fees and expenses, are unquestionably beneficial to the Class.  Given the

27   complexities of this action and the continued risks if the parties were to proceed,

28

1   the Settlements represent a reasonable resolution and eliminate the risk that the

2   Class might recover less or nothing at all.

3        As outlined in the proposed Preliminary Approval Order, if the Court grants

4   preliminary approval, Lead Plaintiff, through the Claims Administrator, will notify

5   Class Members of the Settlements by mailing the Notice and Proof of Claim to

6   Class Members.  The Notice advises Class Members of the essential terms of the

7   Settlements, information regarding Lead Counsel's fee and expense application,

8   and the proposed plan for allocating the Settlement proceeds among Class

9   Members.   The Notice also sets forth the procedure for objecting to the

10  Settlements, Plan of Allocation or the request for an award of attorneys' fees and

11  expenses; sets out the procedure for opting out of the Class; and provides specifics

12  on the date, time, and place of the Final Settlement Hearing.   The proposed

13  Preliminary Approval Order further requires Lead Plaintiff to cause the Summary

14  Notice to be published once in the national edition of *The Wall Street Journal* and

15  over the *PR Newswire*.  Because the Notice and Summary Notice fairly apprise

16  Class Members of their rights with respect to the Settlements, they represent the

17  best notice practicable under the circumstances.

18       As summarized below, and as will be detailed further in a subsequent motion

19  for final approval of the Settlements, a preview of the factors considered by courts

20  in granting final approval of class action settlements demonstrates that these

21  Settlements are well within the range of possible approval.

**1.    The Settlements Were Vigorously Negotiated
        And Are Supported By Experienced Counsel**

24       There is an initial presumption that the proposed settlement is fair and

25  reasonable when it is the result of arm's-length negotiations.  *See Fulford v.*

26  *Logitech, Inc.,* 2010 U.S. Dist. LEXIS 29042, at *6 (N.D. Cal. Mar. 5, 2010)

27  (citing *In re Consol. Pinnacle W. Sec. Litig.,* 51 F.3d 194, 197 n.6 (9th Cir. 1995)).

28  In   addition,   courts   recognize   that   the   opinion   of   experienced   counsel

supporting the settlement is entitled to considerable weight. *See, e.g., In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).

The Settlements are the result of extensive arm's-length negotiations by experienced counsel which occurred for over one year and through numerous mediation sessions and correspondences facilitated by the Mediator. Based upon Lead Counsel's familiarity with the factual and legal issues of this action, the investigation performed, the discovery work completed, and the work in preparing for and participating in the mediations, Lead Counsel was ultimately able to negotiate an excellent result for the Class. This result takes into account the defenses of Defendants, and the risks that the action might not survive a motion for summary judgment, that Lead Plaintiff would not prevail at trial or upon appeal, or that there would be less funds available to the Class after a successful result at trial or on appeal than those being agreed to at this time.

## 2. The Substantial Benefits Obtained For The Class, Especially In Light Of Serious Risks Of Lesser Or No Recovery, Support Approval Of The Settlements

Under the terms of the Settlements, Defendants agreed to create a fund consisting of approximately $125 million in cash for the Class. This is a significant recovery, particularly in light of the risks of continued litigation. If the action had continued, Lead Plaintiff faced substantial risks, including establishing Defendants' liability and the full amount of the Class's damages at summary judgment or trial. In addition, litigating this complex securities class action to completion would result in significant expense and delay.

The recoveries obtained by Lead Counsel through global settlements are also particularly extraordinary in light of the multiple parties involved in the

negotiations.  For example, as set forth in detail in the Stipulations, Lead Plaintiff was able to obtain substantial sums from the New Century Insurance Carriers that will be allocated to settle the claims asserted by the Class, the Trustee, and the Kodiak plaintiffs.  Of those sums, $65,077,088 in cash will be paid to the Class.[6] In addition, the Settlements provide for payment of additional funds by KPMG ($44,750,000 in cash) and the Underwriter Defendants ($15,000,000 in cash) solely for the benefit of the Class.

As will be explained in further detail in advance of the Final Settlement Hearing, including through a declaration of Lead Plaintiff's damages consultant, the total estimated damages calculated by Lead Plaintiff's damages consultant were in excess of the amounts recovered.  In evaluating the Settlements, however, Lead Plaintiff took into account the fact that the Class could have a far less recovery if, for example, KPMG succeeded on its motion for summary judgment because KPMG's motion threatened to eliminate all claims against KPMG and to greatly reduce damages recoverable against the Underwriter Defendants. Moreover, continued litigation as to the New Century Individual Defendants would have further depleted the available insurance which was the primary source of available recovery as to those Defendants who would have faced continued litigation not only with the Class, but also with the SEC, the Trustee and Kodiak.

In sum, these recoveries, totaling nearly $125,000,000 and obtained in the face of a lesser recovery or no recovery at all, support approval of the Settlements.

---

[6] The break-down of the payments by the Insurance Carriers and the New Century officers, individually, is set forth in paragraphs nine through eleven of the Global Settlement Stipulation.  Lead Plaintiff was able to obtain the vast amount of Director and Officer insurance available to satisfy any judgment, millions of which had already been expended in defense costs.  Paragraph eleven also demonstrates that over 70% of the cash settlement funds contributed by the director and officer Defendants (including the insurance contributions), or $65,077,088, is being allocated to the resolution of the Class claims as opposed to those being allocated to settle the actions brought by the Trustee and Kodiak.

### 3.   The Stage Of The Proceedings And Discovery Completed Support Approval Of The Settlements

The stage of the proceedings and discovery completed are additional factors considered by courts when determining the fairness of settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, prior to the execution of the Settlement Stipulations, Lead Counsel conducted a thorough investigation of the facts and circumstances, having interviewed dozens of witnesses and searched through and analyzed large amounts of the over 38 million pages of documents obtained through discovery.  At the time the Settlements were reached, Lead Plaintiff had briefed the opposition to Defendant KPMG's motion for summary judgment, which was pending before this Court.  There can be no question that at the time the Settlements were reached, Lead Counsel had a clear view of the strengths and weaknesses of the Class's claims.  Additionally, Lead Plaintiff, an institutional investor, monitored this case throughout the course of the litigation and participated in the negotiations of the Settlements.  Thus, the proposed Settlements are the product of serious, informed, non-collusive negotiations, are well within the range of possible approval, and do not have any obvious deficiencies.  For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlements and direct that notice of the Settlements be given to members of the Class.

### B.   The Class Should Be Certified For Settlement Purposes

The parties have stipulated that the Court may, for settlement purposes only, certify the Class and appoint Plaintiffs as the Class Representatives, and Lead Counsel as the Class Counsel.  *See* Stipulations, ¶2.  The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *See Hanlon*, 150 F.3d 1011.  Classes for the purpose of settlement are recognized

PRELIMINARY APPROVAL MOTION
Case No. 2:07-cv-00931-DDP (FMOx)

1  under the general scheme of Rule 23, provided that the class is eventually

2  determined to meet the certification requirements under Rule 23. *Id.*

3       Federal Rule of Civil Procedure 23(a) sets forth four prerequisites to class

4  certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

5  representation.  In addition, the class must meet one of the three requirements in

6  Rule 23(b).

7       Courts have generally found securities claims to be particularly well-suited

8  for class action status because they allow for the policies behind the securities laws

9  to be enforced in circumstances where there are numerous investors with small

10  individual claims that otherwise would effectively be barred from litigation.  *See*

11  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  This action is no exception

12  and, as explained below, the parties agree that, for purposes of the Settlements, the

13  Class should be certified as satisfying each of the requirements set forth in Rule 23.

14       **1.     Numerosity**

15       Rule 23(a)(1) requires that the class be so numerous that joinder of all class

16  members is impracticable.  For purposes of Rule 23(a)(1), "[i]mpracticable does

17  not mean impossible, only that it would be difficult or inconvenient to join all

18  members of the class."  *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 588

19  (N.D. Cal. 2009) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

20  913-14 (9th Cir. 1964)).  "Numerosity does not presume a strict numerical cut-off.

21  Courts have certified classes whose membership sizes range from less than one

22  hundred to over one hundred thousand."  *In re VeriSign Inc. Sec. Litig.,* 2005 U.S.

23  Dist. LEXIS 10438, at *12 (N.D. Cal. Jan. 13, 2005).  "In cases involving

24  securities traded on national stock exchanges, numerosity is practically a given."

25  *Id.*; *see also Juniper*, 264 F.R.D. at 588 ("Some courts have assumed that the

26  numerosity requirement is met in securities fraud suits involving nationally traded

27  stocks.").  Mathematical computation of class size is not a prerequisite for class

28  certification, and the court may use common sense assumptions to support a

1   finding of numerosity when the class is obviously large.  *See Schwartz v. Harp*,

2   108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in

3   the proposed class does not defeat class certification.").

4        Here, millions of shares of New Century securities were traded during the

5   Class Period.   In addition, beneficial holders of New Century securities are

6   believed to number in the thousands and are geographically located throughout the

7   United States, making joinder of all Class Members impractical.   Thus, the

8   numerosity element is satisfied.

9                **2.   Commonality**

10       The commonality requirement is satisfied where, as here, there are

11  "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  There

12  need be only one issue common to class members.  *Hanlon*, 150 F.3d at 1019.

13  Generally, courts have liberally construed the commonality prerequisite, requiring

14  only that "the named plaintiffs share at least one question of fact or law with the

15  grievances of the proposed class."  *Siemer v. Assocs. First Capital Corp.*, 2000

16  U.S. Dist. LEXIS 21244, at *32 (D. Ariz. Dec. 13, 2000).   "[A] few factual

17  variations among the class grievances will not defeat commonality so long as class

18  members' claims arise from 'shared legal issues' or 'a common core of salient

19  facts.'"  *Conn. Ret. Plans and Trust Funds v. Amgen, Inc.,* 2009 U.S. Dist. LEXIS

20  71653, at *13 (C.D. Cal. Aug. 12, 2009).

21       Here, questions which are common to the proposed Class include, among

22  others:  (i) whether the federal securities laws were violated by Defendants'

23  alleged acts; (ii) whether the Company's publicly disseminated releases and

24  statements during the Class Period omitted and/or misrepresented material facts;

25  (iii) whether the prices of New Century securities during the Class Period were

26  artificially inflated due to the alleged material nondisclosures and/or

27  misrepresentations; and (iv) whether members of the Class have sustained damages

28  and, if so, what is the appropriate measure of damages.  In short, because the core

1  contention of all Class Members is that they purchased and/or acquired New

2  Century securities at artificially inflated prices, and suffered damages as a result of

3  the alleged securities violations, the commonality requirement of Rule 23(a)(2) is

4  satisfied.  *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D.

5  Cal. 2008) (finding "core issue" in a securities litigation to be plaintiffs'

6  "acquisition of [defendant] common stock at artificially inflated prices").

### 3.   **Typicality**

8      Rule 23(a)(3) requires that "the claims or defenses of the representative

9  parties are typical of the claims or defenses of the class." *Juniper,* 264 F.R.D. at

10  589.   Typicality does not require that all members of the Class be *identically*

11  situated. *See Hanlon*, 150 F.3d at 1020.  "The Ninth Circuit has held that typical

12  claims need only be 'reasonably coextensive with those of absent class members;

13  they need not be substantially identical.'"  *Crossen v. CV Therapeutics*, 2005 WL

14  1910928, at *4 (N.D. Cal. Aug. 10, 2005) (quoting *Hanlon,* 150 F.3d at 1020).

15  Like commonality, typicality is interpreted permissively. *Juniper*, 264 F.R.D. at

16  588.  Consequently, differences in the amount of damages, the size or manner of

17  purchase or holding, and the nature of the purchase or holding are insufficient to

18  defeat class certification.  *See In re LDK Solar Sec. Litig.,* 255 F.R.D. 519, 530

19  (N.D. Cal. 2009); *In re THQ Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *12

20  (C.D. Cal. Mar. 22, 2002); *Schaefer v. Overland Express Family of Funds*, 169

21  F.R.D. 124, 128-29 (S.D. Cal. 1996).

22      Here, Plaintiffs' claims and the claims of members of the Class arise from

23  the same alleged conduct by Defendants.  Plaintiffs allege that, like the other

24  members of the Class, they purchased and/or acquired New Century securities at

25  prices that were inflated because Defendants, in violation of the federal securities

26  laws, issued false and materially misleading statements and/or omissions.  Further,

27  the proof that Plaintiffs would present to establish their claims would also prove

28  the claims of the rest of the Class.  *See In re Applied Micro Circuits Corp. Sec.*

*Litig.,* 2003 U.S. Dist. LEXIS 14492, at *13 (S.D. Cal. July 10, 2003) (typicality satisfied where plaintiff acquired securities inflated by the defendant's false and misleading statements).   Additionally, Plaintiffs are not subject to any unique defenses that could make them atypical members of the Class.   Therefore, Plaintiffs respectfully submits that this Court should find that Plaintiffs' claims are typical of the Class.

### 4.   Adequacy

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   In the Ninth Circuit, the adequacy requirement is met where, as here, the plaintiffs: (1) "do not have conflicts of interest with the proposed class"; and (2) "are represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007) (citing *Hanlon*, 150 F.3d at 1020); *see also LDK*, 255 F.R.D. at 532.   Here, the requirements for adequacy are satisfied.

Here, as described above, Plaintiffs have claims that are typical of and coextensive with those of the Class.   Plaintiffs, like all Class Members, purchased or otherwise acquired New Century securities at artificially inflated prices during the Class Period as a result of the Defendants' alleged materially false and misleading statements and/or omissions, and were allegedly damaged thereby. Further, Plaintiffs have retained counsel highly experienced in securities class action litigation and which have successfully prosecuted many securities and other complex class actions throughout the United States.   Thus, Plaintiffs are adequate representatives of the Class, and their counsel are qualified, experienced and capable of prosecuting this action, in satisfaction of Rule 23(a)(4).

### 5.   Common Questions Of Law Predominate And A Class Action Is The Superior Method Of Adjudication

Finally, in addition to the four requirements of Rule 23(a), a class must also satisfy one of the three subparts of Rule 23(b).   Here, a class action is superior to

other available methods, as required by Rule 23(b)(3).  To ensure that the class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over issues that are particular to a class representative. Generally, common questions will predominate over any differences between individual class members "[w]hen 'a common nucleus of misrepresentations, material omissions and market manipulations [exists].'" *In re Cooper Cos., Inc. Sec. Litig.,* 254 F.R.D. 628, 639-40 (C.D. Cal. 2009).  Further, the superiority of class actions to address securities fraud has been consistently upheld.  *Id.* at 642.

The predominance test is met in this action and a class action is superior to other available methods.  The same set of operative facts applies to each Class Member – each Class Member purchased and/or acquired New Century securities during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions, and was allegedly harmed when the undisclosed facts came to light.  If Plaintiffs and each of the Class Members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants to establish liability.  Accordingly, the foregoing, the requirements of Rule 23(a) and (b) are satisfied and there are no issues which would prevent the Court from certifying the Class for settlement purposes and appointing Plaintiffs as class representatives.  *See Hanlon*, 150 F.3d at 1022 (citing 7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)); *see also LDK*, 255 F.R.D. at 530; *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) (granting motion for class certification where "[t]he predominant questions of law or fact at issue in this case are the alleged misrepresentation[s] Defendants made during the Class Period and are common to the class").

## C.    The Proposed Plan Of Allocation Is Fair And Reasonable

A plan of allocation should be approved if it is fair, reasonable and adequate. *In re Omnivision Techs.,* 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008); *Class*

1    *Plaintiffs*, 955 F.2d at 1284-85.   "An allocation formula need only have a

2    reasonable, rational basis, particularly if recommended by experienced and

3    competent class counsel."   *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319,

4    344 (S.D.N.Y. 2005) (citation omitted).   The goal of an equitable plan of allocation

5    is fairness to the class as a whole, taking into consideration the strengths of claims

6    based upon available facts and evidence, as well as the size of the fund to be

7    distributed.   *See Omnivision,* 559 F. Supp. 2d at 1045; *see also Glass v. UBS Fin.*

8    *Servs.,* 331 Fed. Appx. 452, 454 (9th Cir. 2009) (unpubl.); *In re Mego Fin. Corp.*

9    *Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000).

10       Here, Lead Plaintiff seeks only preliminary approval of the Plan of

11   Allocation so that Notice of the Plan can be sent to Class Members.   At the Final

12   Settlement Hearing, the Court will have before it a more complete record,

13   including additional briefing from Lead Plaintiff, a declaration in support of the

14   Plan by Lead Plaintiff's damages consultant, and any comments from Class

15   Members, before making a final determination on the Plan of Allocation.   As set

16   forth below, the proposed Plan of Allocation plainly meets the standards for

17   preliminary approval.

18       Plaintiffs and Lead Counsel have developed the proposed Plan of Allocation

19   set forth in paragraphs 32 through 85 of the Notice, attached as Exhibit A-1 to the

20   proposed Preliminary Approval Order.   The Plan of Allocation provides that Class

21   Members who file timely and valid Proof of Claim forms will receive a *pro rata*

22   share of the settlement funds based on their recognized losses.   The Plan of

23   Allocation was developed in consultation with Lead Plaintiff's damages expert,

24   Professor H. Nejat Seyhun, Ph.D.   It calculates each claimant's "Recognized Loss

25   Claim," using a formula that reflects the likely provable damages that could have

26   been obtained had this litigation proceeded to trial.

27       As set forth in the Notice, the Plan of Allocation is based upon the following

28   premises:  (1) the market price of New Century securities was artificially inflated;

(2) the degree of inflation varied throughout the Class Period and decreased with each partial disclosure of adverse information; and (3) the value of the Recognized Loss Amount varies depending on when the claimant bought and/or sold the New Century securities.

The Plan of Allocation also recognizes differences among the claims applicable to the various settling defendants.  First, Securities Act claims were brought (and could only be brought) only on behalf of the Preferred Shares, and not on behalf of the other securities, and only against the Underwriter Defendants.  Thus, as explained in the Notice, the net settlement amount being paid by the Underwriter Defendants ($15 million) will be distributed only to Authorized Claimants who purchased Preferred Shares, whereas the net settlement amounts being paid by KPMG and the New Century officers and directors will be distributed to all Authorized Claimants who otherwise have a Recognized Loss Claim under the Plan of Allocation.  Second, in the view of experienced Lead Counsel and Lead Plaintiff's damages consultant, in light of the speculative and derivative nature of options securities, the relative risks of prevailing at trial on behalf of purchasers of Call Options and sellers of Put Options were greater than the risks of prevailing on the claims on behalf of purchasers of common stock and Preferred Shares.  Taking this factor into account, the Plan of Allocation allocates a limit of 10% of the overall disbursements from the KPMG and New Century director and officer settlements to Call Options and Put Options, representing a 50% discount to what those securities would otherwise potentially receive on a *pro rata* basis.  Differences of this nature among class members are common in securities litigation and are commonly addressed by a plan of allocation in class actions.  *See Glass,* 331 Fed. Appx. at 455 (affirming plan for distributing settlement proceeds that treats various class members differently based on differences in recoverable damages); *see also In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (finding it is "reasonable to allocate more

of the settlement to class members with stronger claims on the merits");

*Omnivision,* 559 F. Supp. 2d at 1045; *Mego Fin.*, 213 F.3d at 461.

In sum, the Plan of Allocation has a rational basis, is fully supported by Lead Counsel and Plaintiffs and should be preliminarily approved so that Notice of the Plan can be disseminated to Class Members.

### D.    The Notice To The Class Is Adequate

Notice of a proposed settlement must be given to class members in the most practicable manner under the circumstances, describing "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980); *see also* Fed. R. Civ. P. 23(c)(2)(B). In addition, "every settlement notice must include a statement explaining a plaintiff's recovery." *Wireless Facilities*, 253 F.R.D. at 636 (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007)).

Here, the Notice more than satisfies these standards. Among other things, the Notice informs Class Members of:  (1) the amount of the Settlements, determined in the aggregate and on an average per-share basis[7]; (2) the reasons why the parties propose the Settlements; (3) a statement as to the issues on which

---

[7]   For example, the Notice explains that assuming that all Class Members participate in the Settlements, Lead Plaintiff's damages consultant estimates that the average distribution per damaged share will be approximately $0.69 per share of New Century common stock, approximately $2.08 per share of New Century Preferred Stock, approximately $0.11 per Call Option, and approximately $0.25 per Put Option, before deduction of Court-approved fees, expenses and costs. This number is calculated by, for each type of security, dividing the relevant gross settlement amount by the number of estimated damages shares or options. This assumes that 100% of the damaged shares submit valid claim forms. Studies indicate that, in reality however, a substantial percentage of class members may elect to not file claims. To the extent that Class Members do not file claims, the recovery per share for valid claims filed will increase. The actual amount of recovery per security will depend on how many valid claims are submitted.

the parties disagree with respect to the amount of damages which would have been recoverable at trial; (4) a statement describing Lead Counsel's intended fee and expense application and support therefor[8]; and (5) Lead Counsel's contact information. *See* 15 U.S.C.A. §78u-4(a)(7)(A)-(F). The Notice also describes the rights of Class Members, including their rights to exclude themselves from the Class or object to the Settlements.[9]

As detailed in the proposed Preliminary Approval Order and in the Proposed Schedule attached hereto as Exhibit 1, Lead Counsel and the Claims Administrator propose to mail copies of the Class Notice (substantially in the form of Exhibit A-1 to the proposed Preliminary Approval Order) and the Proof of Claim form (substantially in the form of Exhibit A-2 to the proposed Preliminary Approval Order) by first class mail to all persons and entities who can be identified from the shareholder lists of New Century, as are in the Trustee's possession. The Claims Administrator will also mail copies of the Notice to the largest banks and brokerage houses requesting that the Notice be sent to all persons and entities for

---

[8] The Notice explains that Lead Counsel has not received any payment for its services in pursuing claims against Defendants on behalf of the Class, nor has Lead Counsel been reimbursed for its out-of-pocket expenses. Before the Final Settlement Hearing, Lead Counsel intends to apply to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 12% of the Settlement Amount, and Litigation Expenses not to exceed $4.5 million, plus interest from the date of funding at the same rate as earned by the Settlement Fund. If the Court approves Lead Counsel's fee and Litigation Expense application, Lead Plaintiff's damages consultant estimates that the average cost per damaged share will not exceed approximately $0.11 per share of common stock, approximately $0.32 per share of Preferred Stock, approximately $0.02 per Call Option, and approximately $0.04 per Put Option.

[9] As explained in the Notice, the Individual Defendants, Insurance Carriers, Underwriter Defendants or KPMG may terminate the Settlements if requests for exclusion are received from potential Class Members representing over a certain amount of shares as stated in Supplemental Agreements. Upon request, the Supplemental Agreements will be submitted under seal for the Court's review.

1   whom they acted as nominee purchaser of New Century securities. In addition,

2   Lead Counsel intends to publish a Summary Notice (substantially in the form of

3   Exhibit A-3 to the proposed Preliminary Approval Order) in the national edition of

4   *The Wall Street Journal* and over the *PR Newswire* and provide a link to the Notice

5   and the Proof of Claim form, as well as other case documents, on the website

6   created by the Claims Administrator specifically for these Settlements.

7        The proposed notice program fulfills the requirements of due process and

8   satisfies Rule 23(e) because it alerts and informs those members of the Class who

9   can be identified through reasonable efforts of the information set forth above.

10  *See, e.g., In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D.

11  Cal. Nov. 26, 2007) (approving similar notice regimen); *In re Immune Response*

12  *Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *see also Rodriguez v. W.*

13  *Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it

14  'generally describes the terms of the settlement in sufficient detail to alert those

15  with adverse viewpoints to investigate and to come forward and be heard'")

16  (citations omitted); *Silber v. Mabon,* 18 F.3d 1449, 1452-54 (9th Cir. 1994)

17  (approving notice sent by first class mail as the "best notice practicable").

18  **V.   CONCLUSION**

19       For all of the above reasons, Lead Plaintiff respectfully requests that this

20  unopposed motion for preliminary approval of Settlements be granted.  A proposed

21  schedule of settlement events is attached hereto as Exhibit 1.

22  Dated: July 30, 2010          Respectfully submitted,

23                                  BERNSTEIN LITOWITZ BERGER

24                                    & GROSSMANN LLP

25  

26                           */s/ Salvatore J. Graziano*

27                           SALVATORE J. GRAZIANO

28            BLAIR A. NICHOLAS
          ELIZABETH LIN
          NIKI L. MENDOZA

BENJAMIN GALDSTON
TAKEO A. KELLAR
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

-and-

SALVATORE J. GRAZIANO
LAUREN A. MCMILLEN
1285 Avenue of the Americas
New York, NY  10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Lead Counsel for Lead Plaintiff*
*The New York State Teachers' Retirement*
*System and the Class*


MARVIN L. FRANK
Murray, Frank & Sailer LLP
275 Madison Avenue
New York, NY 10016
Tel:   (212) 682-1818
Fax:   (212) 682-1892


*Counsel for Plaintiff Carl Larson*


JEFFREY ZWERLING
Zwerling, Schachter & Zwerling, LLP
41 Madison Avenue
New York, NY 10010
Tel:   (212) 223-3900
Fax:   (212) 371-5969


*Counsel for Plaintiff Charles Hooten*

PRELIMINARY APPROVAL MOTION
Case No. 2:07-cv-00931-DDP (FMOx)

## TABLE OF CONTENTS TO EXHIBITS TO

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS

| EXHIBIT | TITLE |
|---------|-------|
| 1 | Proposed Schedule |
| 2 | Stipulation Of Global Settlement With New Century Officers And Directors (with exhibits thereto) |
| 3 | Stipulation Of Settlement Between Plaintiffs And KPMG (with exhibits thereto) |
| 4 | Stipulation Of Settlement Between Plaintiffs And The Underwriter Defendants (with exhibits thereto) |