# EXHIBIT 4
# TO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS

Case No. 2:07-cv-00931-DDP (FMOx)

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

8

## CENTRAL DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| IN RE NEW CENTURY | Case No. 2:07-cv-00931-DDP (FMOx) (Lead Case) |

10
11
12
13
14
15

## STIPULATION OF SETTLEMENT BETWEEN PLAINTIFFS AND THE UNDERWRITER DEFENDANTS

16
17
18
19
20
21
22
23
24
25
26
27
28

This Stipulation of Settlement (the "Stipulation") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into between and among Lead Plaintiff New York State Teachers' Retirement System ("Lead Plaintiff") and Plaintiffs Carl Larson and Charles Hooten (collectively "Plaintiffs"), Plaintiffs in the above-captioned consolidated class action (the "Consolidated Action"), on behalf of themselves and the Class (as hereinafter defined), and defendants Bear, Stearns & Co. Inc., now known as J.P. Morgan Securities Inc., Deutsche Bank Securities Inc., Piper Jaffray & Co., Stifel, Nicolaus & Co., Inc., JMP Securities LLC, Roth Capital Partners, Morgan Stanley & Co., Inc., and Jefferies & Company, Inc. (the "Underwriter Defendants") (collectively, with Plaintiffs, the "Parties"), by and through their respective counsel. The Underwriter Settlement is intended to settle all Settled Claims (as defined below) against the Underwriter Defendants and all other Released Underwriter Parties (as defined below).

WHEREAS:

A.      All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶1 herein.

B.      Beginning on or about February 8, 2007, securities class action complaints were filed in the United States District Court for the Central District of California against certain of the Defendants; and the actions were consolidated by Order dated June 26, 2007;

C.      By Order dated June 26, 2007, the Court appointed the New York State Teachers' Retirement System as Lead Plaintiff for the Consolidated Action and approved its selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the Class;

D.      On September 14, 2007, Plaintiffs filed their Consolidated Class Action Complaint ("Consolidated Complaint") asserting claims against Defendants under the Securities Exchange Act of 1934 ("Exchange Act") and the Securities

Act of 1933 ("Securities Act") on behalf of all persons and entities who purchased or otherwise acquired New Century Financial Corporation ("New Century" or the "Company") common stock; New Century 9.125% Series A Cumulative Redeemable Preferred Stock ("Series A Preferred Stock"); New Century 9.75% Series B Cumulative Redeemable Preferred Stock ("Series B Preferred Stock"); and/or New Century call options and/or who sold New Century put options during the time period from May 5, 2005, through and including March 13, 2007, either in the Offerings, pursuant to a registration statement, or in the market, and who, upon disclosure of certain facts, were injured thereby;

E.     Beginning on November 2, 2007, Defendants filed motions to dismiss the Consolidated Complaint, which Plaintiffs opposed on December 14, 2007;

F.     By Order dated January 31, 2008, the Court granted the motions to dismiss with leave to amend the complaint;

G.     On March 24, 2008, Plaintiffs filed their Amended Consolidated Class Action Complaint ("Amended Complaint"), alleging claims against Defendants pursuant to the Securities Act and the Exchange Act;

H.     Pursuant to stipulation, on April 30, 2008, Plaintiffs filed their Second Amended Consolidated Class Action Complaint (the "Complaint"), alleging claims against Defendants pursuant to the Securities Act and the Exchange Act;

I.     Beginning on June 2, 2008, Defendants filed motions to dismiss the Complaint, which Plaintiffs opposed on July 7, 2008;

J.     Following a hearing, by Order dated December 3, 2008, the Court substantially denied Defendants' motions to dismiss;

K.     Beginning on January 26, 2009, Defendants answered the Complaint;

L.     The Parties began discovery in or about April 2009, including filing multiple motions to compel and motions for protective order, and serving discovery requests, responses and voluminous documents;

M.   On January 13, 2010, Defendant KPMG filed a motion for summary judgment, which Plaintiffs opposed on March 15, 2010;

N.   The Parties have participated in mediation sessions and additional discussions before the Honorable Daniel Weinstein, and subsequently were able to reach agreements in principle to settle this Consolidated Action on the terms set forth herein;

O.   The Underwriter Defendants deny any wrongdoing whatsoever and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Underwriter Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Underwriter Defendants have asserted.   The Parties recognize, however, that the litigation has been filed by Plaintiffs and defended by the Underwriter Defendants in good faith and in compliance with Federal Rule of Civil Procedure 11, that the litigation is being voluntarily settled after receiving advice of counsel, and that the terms of the settlement are fair, adequate and reasonable.   This Stipulation shall not be construed or deemed to be a concession by any plaintiff of any infirmity in the claims asserted in the action;

P.   Lead Counsel represents that it has conducted an extensive investigation and thorough discovery relating to the claims and the underlying events and transactions alleged in the Complaint.   Lead Counsel represents that it has analyzed the evidence adduced through discovery and has researched the applicable law with respect to the claims of Plaintiffs and the other members of the Class (as defined herein) and the potential defenses thereto;

Q.   Based upon their investigation and discovery as set forth above, Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Plaintiffs and the other members of the Class, and in their best interests, and have agreed to settle the claims raised in the action pursuant to the terms and provisions of this Stipulation, after considering

(1) the benefits that the Class will receive from the Underwriter Settlement, (2) the attendant risks of litigation, and (3) the desirability of permitting the Underwriter Settlement to be consummated as provided by the terms of this Stipulation;

NOW THEREFORE, without any admission or concession on the part of Plaintiffs of any lack of merit of the action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by the Released Underwriter Parties (as defined herein), it is hereby STIPULATED AND AGREED, by and among the Parties, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties hereto from the Underwriter Settlement, that all Settled Claims (as defined below) as against the Released Underwriter Parties (as defined below) and all Released Parties' Claims (as defined below) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.     As used in this Stipulation, the following terms have the following meanings:

a)     "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim Form and all required documentation to the Claims Administrator, in accordance with the requirements established by the Plan of Allocation approved by the Court, that is approved for payment from the Net Settlement Fund.

b)     "Claim" means a completed and signed Proof of Claim Form submitted to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

c)     "Claim Form" or "Claim Form and Release" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to

Exhibit A, that a Claimant or Class Member must complete should that Claimant or Class Member seek to share in a distribution of the Net Settlement Fund.

d)   "Claimant" means a person or entity that submits a Claim Form to the Claims Administrator seeking to share in the proceeds of the Net Settlement Fund.

e)   "Claims Administrator" means the firm of Analytics Incorporated.

f)   "Claims Against Directors And Officers" means the claims as defined in paragraph 6.

g)   "Class" means all persons and entities who purchased or otherwise acquired New Century common stock, New Century Series A Preferred Stock, New Century Series B Preferred Stock, and/or New Century call options and/or who sold New Century put options, during the time period from May 5, 2005, through and including March 13, 2007, either in the Offerings (as defined herein), pursuant to a registration statement, or in the market, and who, upon disclosure of certain facts alleged in the Complaint, were injured thereby. Excluded from the Class are (a) Defendants; (b) members of the immediate families of Individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person or entity who was a partner, executive officer, director or controlling person of New Century (including any of its subsidiaries or affiliates) or of any Defendant; (e) any entity in which any Defendant has a controlling interest; and (f) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

h)   "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

i)      "Class Member" means a person or entity that is a member of the Class and does not exclude himself, herself or itself by filing a request for exclusion in accordance with the requirements set forth in the Notice.

j)      "Class Period" means the period from May 5, 2005, through and including March 13, 2007.

k)      "Complaint" means the Second Amended Consolidated Class Action Complaint filed by Plaintiffs in the Consolidated Action, on or about April 30, 2008.

l)      "Court" means the United States District Court for the Central District of California.

m)      "Defendants" means the Underwriter Defendants, KPMG, and the Individual Defendants.

n)      "Effective Date" means the date on which all the following shall have occurred: (a) the Court has entered the Preliminary Approval Order; (b) payment of the Underwriter Settlement Amount has been made pursuant to ¶8 below; (c) notice has been provided to the Class, and the Underwriters have not exercised any right to terminate this Underwriter Stipulation and Settlement pursuant to the Supplemental Agreement described in ¶32 below; (d) the Court has approved the Underwriter Settlement, following a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (e) the Court has entered the Underwriter Judgment, substantially in the form annexed hereto as Exhibit B, which has become Final; and (f) the Court has entered the Officer And Director Judgment and KPMG Judgment, which have become Final.

o)      "Escrow Account" means an account maintained to hold the Settlement Fund, which shall be controlled exclusively by Lead Counsel and deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.

p)    "Escrow Agent" means the financial institution selected by Lead Counsel to serve as escrow agent.

q)    "Escrow Agreement" means the agreement among Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

r)    "Final" when referring to an order or judgment means: (i) that the time for appeal or appellate review of the order or judgment has expired; or (ii) if there has been an appeal, (a) that the appeal has been decided without causing a material change in the order or judgment; or (b) that the order or judgment has been upheld on appeal and is no longer subject to appellate review by further appeal or writ of certiorari.

s)    "Individual Defendants" means Robert K. Cole, Brad A. Morrice, the Estate of Edward F. Gotschall, Patti M. Dodge, Fredric J. Forster, Michael M. Sachs, Harold A. Black, Donald E. Lange, Terrence P. Sandvik, Richard A. Zona, Marilyn A. Alexander, David Einhorn, and William J. Popejoy.

t)    "KPMG" means KPMG LLP.

u)    "KPMG Judgment" means a judgment entered by the Court which, among other things, includes a release by KPMG and the other Released Auditor Parties of each and every claim against the Underwriter Defendants and the other Released Underwriter Parties, arising under federal, state, common or foreign law, arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Consolidated Action.

v)    "Lead Counsel" means the law firm of Bernstein Litowitz Berger & Grossmann LLP.

w)    "Lead Plaintiff" means the New York State Teachers' Retirement System.

x)     "Litigation Expenses" means the costs and expenses incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the Consolidated Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

y)     "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any attorneys' fees awarded by the Court; and (iv) any Litigation Expenses awarded by the Court.

z)     "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be sent to members of the Class.

aa)     "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and Lead Counsel in connection with (i) providing notice to the Class; and (ii) administering the Claims process.

bb)     "Offerings" means the public offerings pursuant to which New Century Series A and B Preferred Stock were offered to the public in June 2005 and August 2006, respectively.

cc)     "Officer And Director Judgment" means a judgment entered by the Court which, among other things, includes a release by the Individual Defendants of each and every claim against the Underwriter Defendants and the Released Underwriter Parties whether arising under federal, state, common or foreign law, arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Consolidated Action.

dd)     "Parties" means the Underwriter Defendants and Plaintiffs, on behalf of themselves and the Class Members.

ee)   "Plaintiffs" means Lead Plaintiff, Carl Larson and Charles Hooten.

ff)   "Plaintiffs' Counsel" means Lead Counsel and all other counsel who, at the direction and under the supervision of Lead Counsel, represent Class Members in the Consolidated Action.

gg)   "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

hh)   "Preliminary Approval Order" or "Notice Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Underwriter Settlement and directing notice be provided to the Class.

ii)   "Released Auditor Parties" means KPMG and any and all of its partners, principals, officers, directors, employees, agents, attorneys and affiliates. "Released Auditor Parties" does not include any Defendants other than KPMG.

jj)   "Released Parties' Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Underwriter Defendants. "Released Parties' Claims" does not include claims relating to the enforcement of the Underwriter Settlement.

kk)   "Released Underwriter Parties" means the Underwriter Defendants and any and all of their respective parent companies, subsidiaries, affiliates, heirs, executors, administrators, predecessors, successors and assigns, and any and all of their current and former officers, directors, employees, agents and attorneys. "Released Underwriter Parties" does not include any Defendants other than the Underwriter Defendants.

ll)   "Settled Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown, whether arising

under federal, state, common or foreign law, that Plaintiffs or any other member of the Class (a) asserted in the Complaint, or (b) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint, and that arise out of or relate to the purchase of New Century common stock, New Century Series A Preferred Stock, New Century Series B Preferred Stock, and/or New Century call options and/or the sale of New Century put options during the Class Period.  Additionally, "Settled Claims" does not include claims relating to the enforcement of the Underwriter Settlement.

mm)   "Settlement Fund" means the Underwriter Settlement Amount, and any and all interest earned thereon.

nn)   "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(1)(c) of the Federal Rules of Civil Procedure to consider approval of the Underwriter Settlement.

oo)   "Settling Individuals" means the Individual Defendants, Jeffrey D. Goldberg, Patrick Flanagan, Kevin M. Cloyd, Joseph F. Eckroth, Jr., and Stergios Theologides.

pp)   "Summary Notice" means the publication notice, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

qq)   "Taxes" means: (i) all federal, state and/or local taxes of any kind on any income earned by the Settlement Fund; and (ii) the reasonable expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants).

rr)   "Underwriter Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered pursuant to

Rule 54(b) of the Federal Rules of Civil Procedure approving the Underwriter Settlement.

ss)    "Underwriter Settlement" means the proposed settlement as set forth in this Stipulation.

tt)    "Underwriter Settlement Amount" means the sum of $15,000,000.00 in cash which the Underwriter Defendants shall pay or cause to be paid into the Escrow Account as set forth in ¶8 below.

uu)    "Underwriter Defendants" means Bear, Stearns & Co. Inc., now known as J.P. Morgan Securities Inc., Deutsche Bank Securities Inc., Piper Jaffray & Co., Stifel, Nicolaus & Co., Inc., JMP Securities LLC, Roth Capital Partners, Morgan Stanley & Co., Inc., and Jefferies & Company, Inc.

vv)    "Unknown Claims" means any and all Settled Claims that Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Underwriter Parties, and any Released Parties' Claims that any Released Underwriter Party does not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Underwriter Settlement. With respect to any and all Settled Claims and Released Parties' Claims, the Parties stipulate and agree that upon the Effective Date, the Plaintiffs and the Released Underwriter Parties shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Underwriter Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known

by him or her must have materially affected his or her

settlement with the debtor.

Plaintiffs and the Released Underwriter Parties acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Released Parties' Claims was separately bargained for and was a key element of the Underwriter Settlement.

## CLASS CERTIFICATION

2.    The Parties stipulate and agree to: (a) certification of the Consolidated Action as a class action for the purposes of settlement pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) appointment of Plaintiffs as the Class Representatives; and (c) appointment of Lead Counsel as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. Following execution of this Stipulation, Plaintiffs, with the consent of the Underwriter Defendants, shall apply to the Court for entry of the Preliminary Approval Order, which will certify the Consolidated Action to proceed as a class action.  The Parties shall have the right to withdraw from the agreement to stipulate and agree to class certification and the appointment of Class Representatives and Class Counsel in the event that the Underwriter Settlement does not become Final.

## RELEASE OF CLAIMS

3.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Consolidated Action against the Underwriter Defendants; and shall fully and finally release any and all Settled Claims as against all Released Underwriter Parties and shall also release as against the Plaintiffs and all other Class Members any and all Released Parties' Claims, and shall also fully and finally release other claims as set forth below.

4.      Pursuant to the Underwriter Judgment, upon the Effective Date, Plaintiffs and members of the Class, on behalf of themselves, their parent companies, subsidiaries, affiliates, heirs, executors, administrators, predecessors, successors and assigns, and any and all of their current and former officers, directors, employees, agents and attorneys shall be deemed by operation of law to have released, waived, discharged and dismissed each and every Settled Claim, and shall forever be enjoined from prosecuting any or all Settled Claims, against any Released Underwriter Party.

5.      Pursuant to the Underwriter Judgment, upon the Effective Date, the Underwriter Defendants and each of the other Released Underwriter Parties, on behalf of themselves, their parent companies, subsidiaries, affiliates, heirs, executors, administrators, predecessors, successors and assigns, and any and all of their current and former officers, directors, employees, agents and attorneys shall be deemed by operation of law to have released, waived, discharged and dismissed each and every one of the Released Parties' Claims, and shall forever be enjoined from prosecuting any or all of the Released Parties' Claims, against Plaintiffs and their employees, agents and attorneys, and all other Class Members.

6.      Pursuant to the Underwriter Judgment, upon the Effective Date, the Underwriter Defendants and the Released Underwriter Parties shall be deemed by operation of law to have released, waived, discharged and dismissed each and every claim, and shall forever be enjoined from prosecuting any claim, against any of the Settling Individuals, whether arising under federal, state, common or foreign law, arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Consolidated Action ("Claims Against Directors And Officers"), conditioned upon the Underwriter Defendants and the other Released Underwriter Parties receiving substantively reciprocal releases from the Settling Individuals.

7.     Pursuant to the Underwriter Judgment, upon the Effective Date, the Underwriter Defendants and the Released Underwriter Parties shall be deemed by operation of law to have released, waived, discharged and dismissed each and every claim, and shall forever be enjoined from prosecuting any claim, against KPMG and the other Released Auditor Parties arising under federal, state, common or foreign law, arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Consolidated Action, conditioned upon the Underwriter Defendants and the Released Underwriter Parties receiving substantively reciprocal releases from KPMG and the other Released Auditor Parties.

## THE SETTLEMENT CONSIDERATION

8.     Within ten (10) calendar days after entry of the Preliminary Approval Order, Plaintiffs shall provide counsel for the Underwriter Defendants with a duly-authorized W-9 and effective wire instructions.  Within twenty (20) calendar days after entry of the Preliminary Approval Order, or within ten (10) calendar days of receipt of Plaintiffs' duly-authorized W-9 and effective wire instructions as set forth in this paragraph, whichever is later, the Underwriter Defendants shall pay or cause to be paid into the Escrow Account a total of $15,000,000.00 in cash (the "Underwriter Settlement Amount").

9.     If any portion of the Underwriter Settlement Amount is not paid into the Escrow Account in the timeframe as designated above in ¶8, Plaintiffs have the option to:  (i) terminate the Underwriter Settlement; or (ii) require that the Underwriter Defendants pay or cause to be paid interest at the rate of 5% per annum from the time the payments are due until deposited, which interest shall be paid at the time the funds are subsequently paid into the Escrow Account.

## USE OF SETTLEMENT FUNDS

10.     The Settlement Fund shall be used to pay: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any attorneys' fees awarded by the Court;

and (iv) any Litigation Expenses awarded by the Court.  The balance remaining in the Settlement Fund, after payment of items (i)-(iv), shall be distributed to Authorized Claimants as provided below.

11.   The Net Settlement Fund shall be distributed to Authorized Claimants as provided herein.  Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances of less than $100,000 may be invested in money market mutual funds comprised exclusively of investments secured by the full faith and credit of the United States.

12.   The Parties hereto agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by Paragraph 13 below.  Lead Counsel shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Upon written request, the Underwriter Defendants will provide promptly to Lead Counsel any statements or information required for

tax purposes, including the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

13.    All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without prior Order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Settlement Fund shall indemnify and hold all Released Underwriter Parties harmless for any Taxes and related expenses of any kind whatsoever (including without limitation, taxes payable by reason of any such indemnification), if any, payable by Underwriter Defendants by reason of any income earned on the Settlement Fund.  The Underwriter Defendants shall notify the Escrow Agent promptly if they receive any notice of any claim for Taxes relating to the Settlement Fund.

14.    This is not a claims-made settlement.  Once the Effective Date occurs, neither the Underwriter Defendants, their insurance carriers, nor any other Released Underwriter Parties nor any other person or entity that contributed to the Settlement Fund on their behalf, will have the right or ability to get back any of the Underwriter Settlement Amount or any interest accrued thereon, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants,

the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

15.   The Claims Administrator shall discharge its duties under Lead Counsel's supervision and subject to the jurisdiction of the Court.   Except as otherwise provided herein, the Released Underwriter Parties shall have no responsibility whatsoever for the administration of the Underwriter Settlement, and shall have no liability whatsoever to any person, including, but not limited to, the Class Members, in connection with any such administration.   Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Class at the address of each such person as set forth in the records of New Century or its transfer agent(s), or who otherwise may be identified through further reasonable effort.   Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Preliminary Approval Order or whatever other form or manner might be ordered by the Court.   For the purpose of identifying and providing notice to the Class, promptly upon execution of this Stipulation, Plaintiffs shall seek shareholder lists from the Trustee for New Century or others.   In addition, the Underwriter Defendants shall make best efforts to cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) New Century's shareholder lists to the extent that such documents have been located after a reasonably diligent search of the documents already gathered or produced to Plaintiffs.   The Underwriter Defendants represent, and Plaintiffs and their counsel recognize, that any such lists will only include the names of purchasers of securities in the initial Offerings and that the current owners of the securities may differ significantly from the names on the list. The Underwriter Defendants offer no assurance that they will be able to locate any shareholder lists in the documents gathered or produced to Plaintiffs, nor can they provide any assurance that any shareholder lists that they do locate have any useful contact information, such as current addresses.

16.    Lead Counsel may pay from the Escrow Account, without further approval from the Underwriter Defendants or other Defendants or further order of the Court, the Notice and Administration Costs actually incurred.  Such costs and expenses shall include, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners of New Century securities, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing Notice and processing the submitted claims, and the fees, if any, of the Escrow Agent.  In the event that the Underwriter Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Underwriter Defendants or any other person or entity who or which contributed to the Settlement Fund on their behalf.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

17.    Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel. Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include reimbursement of the expenses of Plaintiffs in accordance with 15 U.S.C. § 78u-4(a)(4).   Neither Underwriter Defendants, nor any other Released Underwriter Party, shall take any position with respect to Lead Counsel's applications or awards discussed in this paragraph. Such matters are not the subject of any agreement between Underwriter Defendants and Plaintiffs other than what is set forth in this Stipulation.

18.    Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel, with the Court's approval, immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Underwriter Settlement or any part thereof, subject to Lead Counsel's obligation to pay back any such amount if, as a result of any appeal, further proceeding or successful collateral attack, the

attorneys' fee or Litigation Expense award is amended, modified or does not become Final. Lead Counsel shall make the appropriate refund or repayment in full no later than ten (10) business days after receiving from Underwriter Defendants' counsel or from a court of appropriate jurisdiction notice of the termination of the Underwriter Settlement or notice of any reduction of the award of attorneys' fees and/or Litigation Expenses. An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of this Stipulation.

19. Lead Counsel shall have the sole authority to allocate the Court-awarded attorneys' fees amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the prosecution and settlement of the Consolidated Action. Underwriter Defendants shall have no responsibility for any such allocation and shall not be liable for any claims relating to such allocation.

## CLAIMS ADMINISTRATOR

20. The Claims Administrator shall administer the process of receiving, reviewing and approving or denying Claims under Lead Counsel's supervision and subject to the jurisdiction of the Court. Other than Underwriter Defendants' obligation to use best efforts to attempt to locate and provide New Century's shareholder lists, as provided herein, none of the Underwriter Defendants shall have any responsibility for, involvement in or liability for providing notice to the Class, the administration of the Underwriter Settlement, the allocation of the Settlement proceeds, or the reviewing or challenging of Claims of members of the Class. Underwriter Defendants and their respective counsel shall cooperate in the administration of the Underwriter Settlement to the extent reasonably necessary to effectuate its terms. The allocation of the Net Settlement Fund among Authorized Claimants shall be subject to a Plan of Allocation to be proposed by Lead Counsel and approved by the Court. Underwriter Defendants shall take no position with

respect to such proposed Plan of Allocation; such Plan of Allocation is a matter separate and apart from the proposed Settlement between the Underwriter Defendants and Plaintiffs, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.

21.   The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves.

22.   The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court.

23.   Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation and Underwriter Settlement, including the terms of the Judgment to be entered in the Consolidated Action and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Released Underwriter Party concerning any Settled Claim.

24.   Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund.   Neither Underwriter Defendants, nor any other Released Underwriter Party, shall have any liability, obligation or responsibility whatsoever for the administration of the Underwriter Settlement or disbursement of the Net Settlement Fund.   Neither Underwriter Defendants nor any other Released Underwriter Party shall be permitted to review, contest or object to any Claim Form or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim Form or Claim for payment by a Class Member.   Lead Counsel shall have

the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

25.   For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.   Each Class Member shall be required to submit a Claim Form and Release, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable, by the date set by the Court;

b.   Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (d) below;

c.   Claim Forms that do not meet the submission requirements may be rejected.   Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.   The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below;

d.   If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days

---

-21-

after the date of mailing of the notice required in subparagraph (c) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.   If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court; and

e.   The administrative determinations of the Claims Administrator accepting and rejecting Claims shall be presented to the Court, on notice to Underwriter Defendants' counsel, for approval by the Court in the Class Distribution Order.

26.   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.   No discovery shall be allowed on the merits of this Consolidated Action or this Underwriter Settlement in connection with the processing of Claim Forms.

27.   Lead Counsel will apply to the Court, on notice to all Parties, for a Class Distribution Order: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any additional unpaid or anticipated administration fees and expenses associated with the administration of the Underwriter Settlement from the Escrow Account; (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account; and (iv) other relief as appropriate.

28.   Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.   All Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the

Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Underwriter Settlement, including the terms of the Judgment to be entered in this Consolidated Action and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Underwriter Parties concerning any and all of the Settled Claims.

29.    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

## **TERMS OF THE JUDGMENT**

30.    If the Underwriter Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Underwriter Defendants' counsel shall request that the Court enter an Underwriter Judgment, substantially in the form annexed hereto as Exhibit B, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

## **WAIVER OR TERMINATION**

31.    Within thirty (30) days of: (a) the Court's declining to enter, without leave to resubmit, the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Underwriter Judgment in any material respect; or (d) the date upon which the Underwriter Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court, the Parties each shall have the right to terminate the Underwriter Settlement and this Stipulation by providing written notice to all other Parties of an election to do so.  However, any decision with respect to an application for attorneys' fees or Litigation Expenses, or with respect to any plan of allocation, shall not be considered material to the Underwriter Settlement and shall not be grounds for termination.

32.     In addition, if Class Members who purchased or acquired more than a certain number of shares of New Century Series A Preferred Stock and Series B Preferred Stock during the Class Period properly elect to exclude themselves from the Class in accordance with the requirements for requesting exclusion provided in the Notice, as specified in a separate supplemental agreement among the Parties (the "Supplemental Agreement"), Underwriter Defendants shall have the option, which option must be exercised unanimously amongst them, to terminate this Underwriter Settlement and Stipulation.

33.     Lead Counsel and Underwriter Defendants' counsel shall request jointly that the deadline for submitting exclusions from the Class be at least twenty-one (21) days prior to the Final Approval Hearing.  Copies of all timely requests for exclusion from the Class received by the Claims Administrator (or other person designated to receive exclusion requests) shall be provided to Lead Counsel and Underwriter Defendants' counsel no later than fifteen (15) days prior to the Final Approval Hearing.   If the threshold stated in the Supplemental Agreement is reached, Underwriter Defendants shall have until 5:00 p.m. PDT of the seventh day before the Final Approval Hearing to inform Lead Counsel, in writing, that they unanimously elect to exercise their option to terminate the Underwriter Settlement and this Stipulation.  Lead Counsel shall have the right to communicate with the holders of such shares and, if a sufficient number of them withdraw in writing their requests for exclusion such that the total number of shares purchased during the Class Period represented by the remaining "opt outs" represents less than the threshold, the notice of termination shall be deemed withdrawn.

34.     Except as otherwise provided herein, in the event that the Underwriter Settlement is terminated, the Parties shall be deemed to have reverted to their respective status in this Consolidated Action immediately prior to May 5, 2010, and, except as otherwise expressly provided, the Parties shall proceed in all

respects as if this Stipulation and any related orders had not been entered, and any portion of the Underwriter Settlement consideration previously paid (including any and all interest, income, or other investment return actually accrued), less any amounts paid or incurred for Notice and Administration Costs actually incurred and paid or payable and/or Taxes paid or owing, shall revert to the person(s) making the deposits, within fourteen (14) business days after written notification of such event by Lead Counsel to the Escrow Agent, pursuant to the terms of the Escrow Agreement.

## NO ADMISSION OF WRONGDOING

35.   This Stipulation, whether or not consummated, and any proceedings taken pursuant to it:

a.   shall not be offered or received against any of the Released Underwriter Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Underwriter Parties with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted against any of the Released Underwriter Parties in this Consolidated Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Underwriter Parties;

b.   shall not be offered or received against any of the Released Underwriter Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Underwriter Parties, or against the Plaintiffs or any Class Members as evidence of any infirmity in the claims of Plaintiffs or the other Class Members;

c.   shall not be offered or received against any of the Released Underwriter Parties, or against the Plaintiffs or any other Class Members, as evidence of a presumption, concession or admission with respect to any liability,

negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Underwriter Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, Underwriter Defendants, any other Released Underwriter Party, or any Class Member may refer to it to effectuate the protection from liability granted them hereunder;

d.      shall not be construed against any of the Released Underwriter Parties, Plaintiffs or any other Class Members as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

e.      shall not be construed against Plaintiffs or any other Class Members as an admission, concession, or presumption that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Underwriter Settlement Amount; and

f.      shall not be construed as or received in evidence as an admission, concession or presumption that class certification is appropriate in this Consolidated Action, except for purposes of this Underwriter Settlement.

## CAFA NOTICE

36.      Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b), not later than ten (10) days after the proposed Underwriter Settlement is filed in the Court, Underwriter Defendants shall cause to be served upon the appropriate State official of each State and the Attorney General of the United States a CAFA Notice  The Parties will request that, pursuant to 28 U.S.C. § 1715(d), the Final Approval Hearing be scheduled for no earlier than ninety (90) days following the deadline for Underwriter Defendants to serve the CAFA Notice as stated in this paragraph. Any failure by Underwriter Defendants to comply with

the CAFA Notice requirements will not provide grounds for delay of the Final Approval Hearing or entry of the Underwriter Judgment.

## **MISCELLANEOUS PROVISIONS**

37.   All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

38.   Underwriter Defendants each warrant that, as to the payments made by or on behalf of it, at the time of such payment, it was not insolvent, nor did nor will the payment required to be made by or on behalf of it render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.   This representation is made by Underwriter Defendants and not by their counsel.

39.   If a case is commenced in respect of any Underwriter Defendant (or any insurance carrier contributing to the Underwriter Settlement Amount) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of any of the Underwriter Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Lead Counsel, the Parties shall jointly move the Court to vacate and set aside the releases given and the Judgment entered in favor of Underwriter Defendants and the other Released Underwriter Parties pursuant to this Stipulation, which releases and Judgment shall be null and void; the Parties shall be restored to their respective positions in the litigation immediately prior to May 5, 2010; and any cash amounts in the Settlement Fund shall be returned as provided in Paragraph 34 above.

40. The Parties intend this Underwriter Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Plaintiffs, any other Class Members and their attorneys against all Released Underwriter Parties with respect to all Settled Claims. Accordingly, the Parties agree not to assert in any forum that this Consolidated Action was brought or defended in bad faith or without a reasonable basis. The Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of this Consolidated Action. The Parties agree that the amount paid and the other terms of this Settlement were negotiated at arm's-length in good faith by the Parties, including a mediation conducted by a professional mediator, the Hon. Daniel Weinstein of JAMS (the "Mediator"), and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

41. While retaining their rights to deny that the claims asserted in the Consolidated Action were meritorious, Underwriter Defendants in any statement made to any media representative (whether or not for attribution) will not deny that the Consolidated Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. In all events, the Parties shall refrain from any accusations of wrongful or actionable conduct by any Party concerning the prosecution and resolution of the Consolidated Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

42. This Stipulation may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all signatories hereto or their successors-in-interest.

43. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

44.     The administration and consummation of this Underwriter Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and enforcing the terms of this Stipulation.

45.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

46.     This Stipulation and its exhibits constitute the entire agreement among the Parties hereto concerning this Underwriter Settlement, and no representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

47.     This Stipulation may be executed in one or more original and/or faxed counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the signatories of this Stipulation shall exchange among themselves copies of original signed counterparts.

48.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

49.     The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

50.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of

1  arm's-length negotiations between the Parties and all Parties have contributed

2  substantially and materially to the preparation of this Stipulation.

3      51.    All counsel and any other person executing this Stipulation and any of

4  the exhibits hereto, or any related Underwriter Settlement documents, warrant and

5  represent that they have the full authority to do so and that they have the authority

6  to take appropriate action required or permitted to be taken pursuant to the

7  Stipulation to effectuate its terms.

8      52.    Counsel for the Parties agree to cooperate fully with one another in

9  seeking Court approval of the Preliminary Approval Order, the Stipulation and this

10  Underwriter Settlement, and to use best efforts to promptly agree upon and execute

11  all such other documentation as may be reasonably required to obtain final

12  approval by the Court of the Settlement.

13      53.    If any Party is required to give notice to any other Party under this

14  Stipulation, such notice shall be in writing and shall be deemed to have been duly

15  given upon receipt of hand delivery or facsimile transmission with confirmation of

16  receipt.

17  DATED AS OF:  July 23, 2010      BERNSTEIN LITOWITZ BERGER
                      & GROSSMANN LLP

20                      SALVATORE J. GRAZIANO

21                      BLAIR A. NICHOLAS
22                      ELIZABETH LIN
                       NIKI L. MENDOZA
                       BENJAMIN GALDSTON
23                      TAKEO A. KELLAR
                       12481 High Bluff Drive, Suite 300
24                      San Diego, CA 92130
                       Tel:  (858) 793-0070
25                      Fax:  (858) 793-0323
                       -and-
26                      SALVATORE J. GRAZIANO
                       LAUREN A. MCMILLEN
27                      1285 Avenue of the Americas
                       New York, NY 10019
28                      Tel: (212) 554-1400
                       Fax: (212) 554-1444

1

2   MURRAY, FRANK & SAILER LLP
    MARVIN L. FRANK
3   275 Madison Avenue, Suite 801
    New York, NY 10016
4   Tel: (212) 682-1818
    Fax: (212) 682-1892

5   ZWERLING, SCHACHTER
       & ZWERLING LLP
6   JEFFREY C. ZWERLING
    41 Madison Avenue
7   New York, NY 10010
    Tel: (212) 223-3900
8   Fax: (212) 371-5969

9   *Lead Counsel for Lead Plaintiff The New
    York State Teachers' Retirement System and*
10  *the Class, and Plaintiffs Carl Larson and*
    *Charles Hooten*

11

12

13  PAUL, HASTINGS, JANOFSKY
       & WALKER LLP

14

15

16  WILLIAM SULLIVAN
17  JOHN S. DURRANT
    515 South Flower Street, 25th Floor
18  Los Angeles, CA 90071
    Tel:  (213) 683-6000
    Fax:  (213) 627-0705
19

20  *Attorneys for Defendants Bear Stearns &
    Co. Inc., now known as J.P. Morgan*
21  *Securities Inc., Deutsche Bank Securities*
    *Inc., Jefferies & Company Inc., JMP*
22  *Securities LLC, Morgan Stanley & Co. Inc.,*
    *Piper Jaffray & Co., Roth Capital Partners*
23  *LLC, Stifel Nicolaus & Co. Inc.*

24

25

26

27

28

-31-         UW STIPULATION OF SETTLEMENT
             Case No. 2:07-cv-00931-DDP (FMOx)